# Exhibit 3

Conformed Version of the Debtors' Second Amended
Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code
(including Exhibits and Schedules thereto)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Case No.11-44738-11 (Jointly Administered) Chapter 11 |
| HMC/CAH CONSOLIDATED, INC. et al., | ) ) ) | Hon. Dennis R. Dow |
| Debtors.[1] | ) ) ) |  |

**DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION
UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

**(NO SUBSTANTIVE CONSOLIDATION)**

HUSCH BLACKWELL LLP
Attorneys for Debtors and
 Debtors in Possession
4801 Main Street, Suite 1000
Kansas City, MO  64112
(816) 983-8000

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: HMC/CAH Consolidated, Inc. (6921); CAH Acquisition Company #1, LLC (4473); CAH Acquisition Company #2, LLC (2041); CAH Acquisition Company #3, LLC (1827); CAH Acquisition Company #4, Inc. (0680); CAH Acquisition Company #5, LLC (0149); CAH Acquisition Company 6, LLC (4641); CAH Acquisition Company 7, LLC (5335); CAH Acquisition Company 9, LLC (1868); CAH Acquisition Company 10, LLC (2520); CAH Acquisition Company 11, LLC (0527); CAH Acquisition Company 12, LLC (0967); and CAH Acquisition Company 16, LLC (2420).

# TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................1

ARTICLE I.  DEFINED TERMS ....................................................................................1

   1.01     Administrative Claim ...........................................................................1

   1.02     Affiliate ................................................................................................1

   1.03     Allowed ................................................................................................1

   1.04     Allowed Convenience Claim ...............................................................2

   1.05     Available Cash .....................................................................................2

   1.06     Avoidance Actions ...............................................................................2

   1.07     Ballot ...................................................................................................2

   1.08     Bankruptcy Code .................................................................................2

   1.09     Bankruptcy Court ................................................................................2

   1.10     Bankruptcy Rules ................................................................................2

   1.11     Bar Date ..............................................................................................2

   1.12     Business Day ........................................................................................3

   1.13     Cash .....................................................................................................3

   1.14.01     CFG Bank ...................................................................................3

   1.14.02     CFG Bank Loan .........................................................................3

   1.14.03     CFG Loan Document .................................................................3

   1.14.04     CFG Collateral ..........................................................................3

   1.15     Allowed CFG Secured Claim ...............................................................3

   1.16     Chapter 11 Cases .................................................................................3

   1.17     Citizens ...............................................................................................3

   1.18     Citizens Loan ......................................................................................3

   1.19     Citizens Secured Claim .......................................................................3

   1.20     Claim ...................................................................................................3

   1.21     Class ....................................................................................................3

   1.22     Class 1 Earnout Rights .......................................................................4

   1.23     Class 2 Earnout Rights .......................................................................5

   1.24     Collateral ............................................................................................5

   1.25     Committee ...........................................................................................6

1.26     Committee Adversary Complaint ...................................................................6

1.27     Confirmation Date ..............................................................................................6

1.28     Confirmation Hearing ........................................................................................6

1.29     Confirmation Order ............................................................................................6

1.30     Cure Amount ......................................................................................................6

1.31     Debtors ...............................................................................................................6

1.32     Deficiency Claim ................................................................................................6

1.33     Disallowed ..........................................................................................................6

1.34     Disclosure Statement .........................................................................................6

1.35     Disputed Claim ...................................................................................................6

1.36     Disputed Claims Reserves ................................................................................7

1.37     Distribution Date ................................................................................................7

1.38     DMA Secured Claim ...........................................................................................7

1.39     Earnout Payment Date .......................................................................................7

1.40     Effective Date .....................................................................................................7

1.41     ERP .....................................................................................................................7

1.42     Federal Judgment Rate ......................................................................................7

1.43     Fee Claim ............................................................................................................7

1.44     Final Order ..........................................................................................................7

1.45     First Liberty Bank Loan ......................................................................................7

1.46     First Liberty Bank Secured Claim ......................................................................8

1.47     GAAP ...................................................................................................................8

1.48     Gemino ................................................................................................................8

1.49     Gemino Loan .......................................................................................................8

1.50     Gemino Secured Claim .......................................................................................8

1.51     Gemino Subordination Agreement .....................................................................8

1.52     General Unsecured Claim ...................................................................................8

1.53     Guaranty Claim ...................................................................................................8

1.54     HHI ......................................................................................................................8

1.55     HHI Litigation ......................................................................................................8

1.56     HHI Secured Claim .............................................................................................8

1.57     HHI Settlement Agreement .................................................................................8

1.58     HHS Overpayment Secured Claim .....................................................................9

1.59    HUD ...............................................................................................................9

1.60    Insider Claim .................................................................................................9

1.61    Insurance Carriers .........................................................................................9

1.62    Intercompany Claim ......................................................................................9

1.63    IRS ..................................................................................................................9

1.64    Joint Plan .......................................................................................................9

1.65    Midland ..........................................................................................................9

1.66    Midland Loan .................................................................................................9

1.67    Midland Secured Claim ..................................................................................9

1.68    Old Equity Interests .......................................................................................9

1.69    Participating New Equity Owners ..................................................................9

1.70    Person .............................................................................................................9

1.71    Petition Date .................................................................................................10

1.72    Plans .............................................................................................................10

1.73    Plan Monitor ................................................................................................10

1.74    Plan Supplement ..........................................................................................10

1.75    Prepetition ....................................................................................................10

1.76    Priority Claim ..............................................................................................10

1.77    Priority Non-Tax Claim ...............................................................................10

1.78    Priority Tax Claim .......................................................................................10

1.79    Professional ..................................................................................................10

1.80    Projected EBITDA ......................................................................................10

1.81    Ratable Proportion .......................................................................................10

1.82    Reorganized Debtors ....................................................................................10

1.83    Schedules ......................................................................................................10

1.84    Secured Claim ..............................................................................................11

1.85    Series A Preferred Stock ..............................................................................11

1.86    Series B Preferred Stock ..............................................................................11

1.87    Signature, sign or signed ..............................................................................11

1.88    Subsequent Distribution Date .......................................................................11

1.89    Tax Code ......................................................................................................11

1.90    Till Rate .......................................................................................................11

1.91    Tort Claim ....................................................................................................11

1.92   Treasury Regulations ..........................................................................11

1.93   Wall Street Journal Prime Rate ..........................................................11

**ARTICLE II.   TREATMENT OF ADMINISTRATIVE CLAIMS .........................12**

2.01   Administrative Claims in General ......................................................12

2.02   Administrative Claims Bar Date..........................................................12

2.03   Priority Tax Claims .............................................................................12

**ARTICLE III.   CLASSIFICATION OF CLAIMS AND EQUITY
INTERESTS...........................................................................................................12**

3.01   HMC Plan ............................................................................................13

3.02   CAH 1 Plan ..........................................................................................13

3.03   CAH 2 Plan ..........................................................................................14

3.04   CAH 3 Plan ..........................................................................................14

3.05   CAH 4 Plan ..........................................................................................15

3.06   CAH 5 Plan ..........................................................................................15

3.07   CAH 6 Plan ..........................................................................................16

3.08   CAH 7 Plan ..........................................................................................16

3.09   CAH 9 Plan ..........................................................................................17

3.10   CAH 10 Plan ........................................................................................17

3.11   CAH 11 Plan ........................................................................................18

3.12   CAH 12 Plan ........................................................................................18

3.13   CAH 16 Plan ........................................................................................19

**ARTICLE IV.   IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS
AND EQUITY INTERESTS .................................................................................19**

4.01   Unimpaired Classes of Claims. ...........................................................19

4.02   Impaired Classes of Claims and Equity Interests. ..............................20

**ARTICLE V.   TREATMENT OF CLASSES OF CLAIMS AND EQUITY
INTERESTS...........................................................................................................23**

HMC PLAN ....................................................................................................23

5.01   HMC Class 1A (Gemino Secured Claim). ...........................................23

    (a)      Impairment; Voting. ......................................................23
    (b)      Treatment...........................................................................23

5.02   HMC Class 1B (HHI Secured Claim). .................................................24

    (a)      Impairment; Voting. ......................................................24

|       | (b)  | Treatment. ..................................................................................................... | 24 |

5.03    HMC Class 1C (Sun Finance Secured Claim). ..................................................24

|       | (a)  | Impairment; Voting. ........................................................................................ | 24 |
|       | (b)  | Treatment. ..................................................................................................... | 24 |

5.04    HMC Class 1D (Fidelity Security Life Insurance Co. Secured Claim). .......25

|       | (a)  | Impairment; Voting. ........................................................................................ | 25 |
|       | (b)  | Treatment. ..................................................................................................... | 25 |

5.05    HMC Class 1E (Rosalia Hall Secured Claim). ..................................................25

|       | (a)  | Impairment; Voting. ........................................................................................ | 25 |
|       | (b)  | Treatment. ..................................................................................................... | 25 |

5.06    HMC Class 1G (Richard Jones Secured Claim). ..............................................25

|       | (a)  | Impairment; Voting. ........................................................................................ | 25 |
|       | (b)  | Treatment. ..................................................................................................... | 25 |

5.07    HMC Class 1H (Commerce Bank Secured Claim). ..........................................25

|       | (a)  | Impairment; Voting. ........................................................................................ | 25 |
|       | (b)  | Treatment. ..................................................................................................... | 25 |

5.08    HMC Class 1I (Ally Financial Secured Claim). ................................................25

|       | (a)  | Impairment; Voting. ........................................................................................ | 25 |
|       | (b)  | Treatment. ..................................................................................................... | 26 |

5.09    HMC Class 1J (DFP, LLC Secured Claim). ......................................................26

|       | (a)  | Impairment; Voting. ........................................................................................ | 26 |
|       | (b)  | Treatment. ..................................................................................................... | 26 |

5.10    HMC Class 1K (Larry Arthur Secured Claim). ..............................................26

|       | (a)  | Impairment; Voting. ........................................................................................ | 26 |
|       | (b)  | Treatment. ..................................................................................................... | 26 |

5.11    HMC Class 3A (Convenience Claims). ..............................................................26

|       | (a)  | Impairment; Voting. ........................................................................................ | 26 |
|       | (b)  | Treatment. ..................................................................................................... | 26 |

5.12    HMC Class 3B (General Unsecured Claims). ...................................................27

|       | (a)  | Impairment; Voting. ........................................................................................ | 27 |
|       | (b)  | Treatment. ..................................................................................................... | 27 |
|       | (c)  | Tort Claims. .................................................................................................. | 27 |

5.13    HMC Class 3C (HHI General Unsecured Claim). ..........................................28

|       | (a)  | Impairment; Voting. ........................................................................................ | 28 |
|       | (b)  | Treatment. ..................................................................................................... | 28 |

5.14    HMC Class 4 (Old Equity Interests). ................................................................28

|  | (a) | Impairment; Voting. | 28 |
|  | (b) | Treatment. | 28 |
| CAH 1 PLAN | | | 28 |
| 5.15 | CAH 1 Class 1A (Citizens Secured Claim). | | 28 |
|  | (a) | Impairment; Voting. | 28 |
|  | (b) | Treatment. | 28 |
| 5.16 | CAH 1 Class 1B (HHI Secured Claim). | | 29 |
|  | (a) | Impairment; Voting. | 29 |
|  | (b) | Treatment. | 29 |
| 5.17 | CAH 1 Class 1C (HHS Overpayment Secured Claim). | | 29 |
|  | (a) | Impairment; Voting. | 29 |
|  | (b) | Treatment. | 29 |
| 5.18 | CAH 1 Class 1E (Washington County Secured Claim). | | 30 |
|  | (a) | Impairment; Voting. | 30 |
|  | (b) | Treatment. | 30 |
| 5.19 | CAH 1 Class 3A (Convenience Claims). | | 30 |
|  | (a) | Impairment; Voting. | 30 |
|  | (b) | Treatment. | 30 |
| 5.20 | CAH 1 Class 3B (General Unsecured Claims). | | 31 |
|  | (a) | Impairment; Voting. | 31 |
|  | (b) | Treatment. | 31 |
|  | (c) | Tort Claims. | 31 |
| 5.21 | CAH 1 Class 3C (HHI General Unsecured Claim). | | 32 |
|  | (a) | Impairment; Voting. | 32 |
|  | (b) | Treatment. | 32 |
| 5.22 | CAH 1 Class 4 (Old Equity Interests). | | 32 |
|  | (a) | Impairment; Voting. | 32 |
|  | (b) | Treatment. | 32 |
| CAH 2 PLAN | | | 32 |
| 5.23 | CAH 2 Class 1A (Gemino Secured Claim). | | 32 |
|  | (a) | Impairment; Voting. | 32 |
|  | (b) | Treatment. | 32 |
| 5.24 | CAH 2 Class 1B (HHI Secured Claim). | | 33 |
|  | (a) | Impairment; Voting. | 33 |
|  | (b) | Treatment. | 33 |
| 5.25 | CAH 2 Class 1C (HHS Overpayment Secured Claim). | | 33 |

(a)     Impairment; Voting. ...................................................................................33
(b)     Treatment. ..................................................................................................33

5.26    CAH 2 Class 3A (Convenience Claims). ...........................................................34

(a)     Impairment; Voting. ...................................................................................34
(b)     Treatment. ..................................................................................................34

5.27    CAH 2 Class 3B (General Unsecured Claims). ..................................................34

(a)     Impairment; Voting. ...................................................................................34
(b)     Treatment. ..................................................................................................34
(c)     Tort Claims. ...............................................................................................35

5.28    CAH 2 Class 3C (HHI General Unsecured Claim). ...........................................35

(a)     Impairment; Voting. ...................................................................................35
(b)     Treatment. ..................................................................................................35

5.29    CAH 2 Class 4 (Old Equity Interests). ...............................................................36

(a)     Impairment; Voting. ...................................................................................36
(b)     Treatment. ..................................................................................................36

CAH 3 PLAN .....................................................................................................................36

5.30    CAH 3 Class 1A (Gemino Secured Claim). .......................................................36

(a)     Impairment; Voting. ...................................................................................36
(b)     Treatment. ..................................................................................................36

5.31    CAH 3 Class 1B (HHI Secured Claim). ..............................................................36

(a)     Impairment; Voting. ...................................................................................36
(b)     Treatment. ..................................................................................................36

5.32    CAH 3 Class 1C (HHS Overpayment Secured Claim). ......................................37

(a)     Impairment; Voting. ...................................................................................37
(b)     Treatment. ..................................................................................................37

5.33    CAH 3 Class 3A (Convenience Claims). ...........................................................38

(a)     Impairment; Voting. ...................................................................................38
(b)     Treatment. ..................................................................................................38

5.34    CAH 3 Class 3B (General Unsecured Claims). ..................................................38

(a)     Impairment; Voting. ...................................................................................38
(b)     Treatment. ..................................................................................................38
(c)     Tort Claims. ...............................................................................................38

5.35    CAH 3 Class 3C (HHI General Unsecured Claim). ...........................................39

(a)     Impairment; Voting. ...................................................................................39
(b)     Treatment. ..................................................................................................39

5.36    CAH 3 Class 4 (Old Equity Interests). ...............................................................39

(a)      Impairment; Voting. ........................................................................39
(b)      Treatment. ......................................................................................39

CAH 4 PLAN ...............................................................................................40

5.37    CAH 4 Class 1A (Midland Secured Claim). ..............................................40

(a)      Impairment; Voting. ........................................................................40
(b)      Treatment. ......................................................................................40

5.38    CAH 4 Class 1B (HHS Overpayment Secured Claim). ...............................41

(a)      Impairment; Voting. ........................................................................41
(b)      Treatment. ......................................................................................41

5.39    CAH 4 Class 3A (Convenience Claims). ...................................................42

(a)      Impairment; Voting. ........................................................................42
(b)      Treatment. ......................................................................................42

5.40    CAH 4 Class 3B (General Unsecured Claims)............................................43

(a)      Impairment; Voting. ........................................................................43
(b)      Treatment. ......................................................................................43
(c)      Tort Claims.....................................................................................43

5.41    CAH 4 Class 3C (HHI General Unsecured Claim). ....................................44

(a)      Impairment; Voting. ........................................................................44
(b)      Treatment. ......................................................................................44

5.42    CAH 4 Class 4 (Old Equity Interests). .....................................................44

(a)      Impairment; Voting. ........................................................................44
(b)      Treatment. ......................................................................................44

CAH 5 PLAN ...............................................................................................44

5.43    CAH 5 Class 1A (Gemino Secured Claim). ...............................................44

(a)      Impairment; Voting. ........................................................................44
(b)      Treatment. ......................................................................................44

5.44    CAH 5 Class 1B (HHI Secured Claim). ....................................................44

(a)      Impairment; Voting. ........................................................................44
(b)      Treatment. ......................................................................................45

5.45    CAH 5 Class 1C (HHS Overpayment Secured Claim). ...............................45

(a)      Impairment; Voting. ........................................................................45
(b)      Treatment. ......................................................................................45

5.46    CAH 5 Class 2 (Priority Non-Tax Claims). ...............................................46

(a)      Impairment; Voting. ........................................................................46
(b)      Treatment. ......................................................................................46

5.47    CAH 5 Class 3A (Convenience Claims). ...................................................46

|  |  | (a) | Impairment; Voting. ........................................................... | 46 |
|  |  | (b) | Treatment. .......................................................................... | 46 |
| 5.48 | CAH 5 Class 3B (General Unsecured Claims)................................................ | | | 47 |
|  |  | (a) | Impairment; Voting. ........................................................... | 47 |
|  |  | (b) | Treatment. .......................................................................... | 47 |
|  |  | (c) | Tort Claims. ....................................................................... | 47 |
| 5.49 | CAH 5 Class 3C (HHI General Unsecured Claim). ....................................... | | | 48 |
|  |  | (a) | Impairment; Voting. ........................................................... | 48 |
|  |  | (b) | Treatment. .......................................................................... | 48 |
| 5.50 | CAH 5 Class 4 (Old Equity Interests). ........................................................ | | | 48 |
|  |  | (a) | Impairment; Voting. ........................................................... | 48 |
|  |  | (b) | Treatment. .......................................................................... | 48 |

CAH 6 PLAN ........................................................................................................ 48

| 5.51 | CAH 6 Class 1A (First Liberty Bank Secured Claim). ................................. | | | 48 |
|  |  | (a) | Impairment; Voting. ........................................................... | 48 |
|  |  | (b) | Treatment. .......................................................................... | 48 |
| 5.52 | CAH 6 Class 1B (DFP, LLC Secured Claim). ............................................... | | | 49 |
|  |  | (a) | Impairment; Voting. ........................................................... | 49 |
|  |  | (b) | Treatment. .......................................................................... | 49 |
| 5.53 | CAH 6 Class 1C (Fidelity Security Life Insurance Co. Secured Claim). ...... | | | 49 |
|  |  | (a) | Impairment; Voting. ........................................................... | 49 |
|  |  | (b) | Treatment. .......................................................................... | 49 |
| 5.54 | CAH 6 Class 1D (Larry Arthur Secured Claim). .......................................... | | | 49 |
|  |  | (a) | Impairment; Voting. ........................................................... | 49 |
|  |  | (b) | Treatment. .......................................................................... | 49 |
| 5.55 | CAH 6 Class 1E (Richard Jones Secured Claim). ......................................... | | | 50 |
|  |  | (a) | Impairment; Voting. ........................................................... | 50 |
|  |  | (b) | Treatment. .......................................................................... | 50 |
| 5.56 | CAH 6 Class 1F (Rosalia Hall Secured Claim). ............................................ | | | 50 |
|  |  | (a) | Impairment; Voting. ........................................................... | 50 |
|  |  | (b) | Treatment. .......................................................................... | 50 |
| 5.57 | CAH 6 Class 1G (Sun Finance Inc. Secured Claim)...................................... | | | 50 |
|  |  | (a) | Impairment; Voting. ........................................................... | 50 |
|  |  | (b) | Treatment. .......................................................................... | 50 |
| 5.58 | CAH 6 Class 1H (HHS Overpayment Secured Claim). ................................. | | | 51 |
|  |  | (a) | Impairment; Voting. ........................................................... | 51 |

  (b)  Treatment. ...................................................................................51

5.59 CAH 6 Class 3A (Convenience Claims). .................................................52

  (a)  Impairment; Voting. ...........................................................52
  (b)  Treatment. ...........................................................................52

5.60 CAH 6 Class 3B (General Unsecured Claims). .........................................52

  (a)  Impairment; Voting. ...........................................................52
  (b)  Treatment. ...........................................................................52
  (c)  Tort Claims. .........................................................................52

5.61 CAH 6 Class 3C (HHI General Unsecured Claim). .................................53

  (a)  Impairment; Voting. ...........................................................53
  (b)  Treatment. ...........................................................................53

5.62 CAH 6 Class 3D (CARAJOTO General Unsecured Claim) .....................53

  (a)  Impairment; Voting. ...........................................................53
  (b)  Treatment. ...........................................................................53

5.63 CAH 6 Class 4 (Old Equity Interests). ....................................................54

  (a)  Impairment; Voting. ...........................................................54
  (b)  Treatment. ...........................................................................54

CAH 7 PLAN .........................................................................................................54

5.64 CAH 7 Class 1A (Gemino Secured Claim). ............................................54

  (a)  Impairment; Voting. ...........................................................54
  (b)  Treatment. ...........................................................................54

5.65 CAH 7 Class 1B (HHS Overpayment Secured Claim). ...........................54

  (a)  Impairment; Voting. ...........................................................54
  (b)  Treatment. ...........................................................................54

5.66 CAH 7 Class 3A (Convenience Claims). .................................................55

  (a)  Impairment; Voting. ...........................................................55
  (b)  Treatment. ...........................................................................55

5.67 CAH 7 Class 3B (General Unsecured Claims). .........................................56

  (a)  Impairment; Voting. ...........................................................56
  (b)  Treatment. ...........................................................................56
  (c)  Tort Claims. .........................................................................56

5.68 CAH 7 Class 3C (HHI General Unsecured Claim). .................................57

  (a)  Impairment; Voting. ...........................................................57
  (b)  Treatment. ...........................................................................57

5.69 CAH 7 Class 4 (Old Equity Interests). ....................................................57

  (a)  Impairment; Voting. ...........................................................57

(b)       Treatment. ................................................................................................ 57

CAH 9 PLAN ......................................................................................................... 57

5.70      CAH 9 Class 1A (Gemino Secured Claim). ................................................. 57

    (a)       Impairment; Voting. ................................................................................ 57
    (b)       Treatment. ................................................................................................ 57

5.71      CAH 9 Class 1B (HHI Secured Claim). ...................................................... 57

    (a)       Impairment; Voting. ................................................................................ 57
    (b)       Treatment. ................................................................................................ 58

5.72      CAH 9 Class 1C (HHS Overpayment Secured Claim). ............................... 58

    (a)       Impairment; Voting. ................................................................................ 58
    (b)       Treatment. ................................................................................................ 58

5.73      CAH 9 Class 3A (Convenience Claims). ..................................................... 59

    (a)       Impairment; Voting. ................................................................................ 59
    (b)       Treatment. ................................................................................................ 59

5.74      CAH 9 Class 3B (General Unsecured Claims). ............................................ 59

    (a)       Impairment; Voting. ................................................................................ 59
    (b)       Treatment. ................................................................................................ 59
    (c)       Tort Claims. .............................................................................................. 60

5.75      CAH 9 Class 3C (HHI General Unsecured Claim). ..................................... 60

    (a)       Impairment; Voting. ................................................................................ 60
    (b)       Treatment. ................................................................................................ 60

5.76      CAH 9 Class 4 (Old Equity Interests). ........................................................ 61

    (a)       Impairment; Voting. ................................................................................ 61
    (b)       Treatment. ................................................................................................ 61

CAH 10 PLAN ....................................................................................................... 61

5.77      CAH 10 Class 1A (Gemino Secured Claim). ............................................... 61

    (a)       Impairment; Voting. ................................................................................ 61
    (b)       Treatment. ................................................................................................ 61

5.78      CAH 10 Class 1B (HHI Secured Claim). .................................................... 61

    (a)       Impairment; Voting. ................................................................................ 61
    (b)       Treatment. ................................................................................................ 61

5.79      CAH 10 Class 1C (DMA Secured Claim). .................................................. 62

    (a)       Impairment; Voting. ................................................................................ 62
    (b)       Treatment. ................................................................................................ 62

5.80      CAH 10 Class 1E (Shelco, Inc. Secured Claim). ......................................... 62

    (a)       Impairment; Voting. ................................................................................ 62

    (b)    Treatment. ......................................................................................62

5.81    CAH 10 Class 3A (Convenience Claims). ........................................62

    (a)    Impairment; Voting. .................................................................62
    (b)    Treatment. ................................................................................62

5.82    CAH 10 Class 3B (General Unsecured Claims)................................63

    (a)    Impairment; Voting. .................................................................63
    (b)    Treatment. ................................................................................63
    (c)    Tort Claims. .............................................................................63

5.83    CAH 10 Class 3C (HHI General Unsecured Claim). ........................64

    (a)    Impairment; Voting. .................................................................64
    (b)    Treatment. ................................................................................64

5.84    CAH 10 Class 4 (Old Equity Interests). ..........................................64

    (a)    Impairment; Voting. .................................................................64
    (b)    Treatment. ................................................................................64

CAH 11 PLAN ........................................................................................64

5.85    CAH 11 Class 1A (Gemino Secured Claim). ...................................64

    (a)    Impairment; Voting. .................................................................64
    (b)    Treatment. ................................................................................64

5.86    CAH 11 Class 1B (CFG Community Bank Secured Claim)...............64

    (a)    Impairment; Voting. .................................................................64
    (b)    Treatment. ................................................................................65

5.87    CAH 11 Class 1C (HHI Secured Claim). .........................................66

    (a)    Impairment; Voting. .................................................................66

5.88    CAH 11 Class 1D (HHS Overpayment Secured Claim). ..................67

    (a)    Impairment; Voting. .................................................................67
    (b)    Treatment. ................................................................................67

5.89    CAH 11 Class 3A (Convenience Claims). ........................................68

    (a)    Impairment; Voting. .................................................................68
    (b)    Treatment. ................................................................................68

5.90    CAH 11 Class 3B (General Unsecured Claims)................................68

    (a)    Impairment; Voting. .................................................................68
    (b)    Treatment. ................................................................................68
    (c)    Tort Claims. .............................................................................68

5.91    CAH 11 Class 3C (HHI General Unsecured Claim). ........................69

    (a)    Impairment; Voting. .................................................................69
    (b)    Treatment. ................................................................................69

5.92    CAH 11 Class 4 (Old Equity Interests). ..........................................................................69

    (a)    Impairment; Voting. .....................................................................................69
    (b)    Treatment. .....................................................................................................70

CAH 12 PLAN ............................................................................................................................70

5.93    CAH 12 Class 1A (Gemino Secured Claim). .................................................................70

    (a)    Impairment; Voting. .....................................................................................70
    (b)    Treatment. .....................................................................................................70

5.94    CAH 12 Class 1B (HHS Overpayment Secured Claim). ................................................70

    (a)    Impairment; Voting .......................................................................................70
    (b)    Treatment. .....................................................................................................70

5.95    CAH 12 Class 3A (Convenience Claims). .....................................................................71

    (a)    Impairment; Voting. .....................................................................................71
    (b)    Treatment. .....................................................................................................71

5.96    CAH 12 Class 3B (General Unsecured Claims)..............................................................71

    (a)    Impairment; Voting. .....................................................................................71
    (b)    Treatment. .....................................................................................................72
    (c)    Tort Claims. ...................................................................................................72

5.97    CAH 12 Class 3C (HHI General Unsecured Claim). .....................................................72

    (a)    Impairment; Voting. .....................................................................................72
    (b)    Treatment. .....................................................................................................73

5.98    CAH 12 Class 4 (Old Equity Interests). ........................................................................73

    (a)    Impairment; Voting. .....................................................................................73
    (b)    Treatment. .....................................................................................................73

CAH 16 PLAN ............................................................................................................................73

5.99    CAH 16 Class 1A (Gemino Secured Claim). .................................................................73

    (a)    Impairment; Voting. .....................................................................................73
    (b)    Treatment. .....................................................................................................73

5.100   CAH 16 Class 1B (HHS Overpayment Secured Claim). ................................................73

    (a)    Impairment; Voting. .....................................................................................73
    (b)    Treatment. .....................................................................................................73

5.101   CAH 16 Class 1C (Bank of Commerce & Trust Co. Secured Claim). ..........................74

    (a)    Impairment; Voting. .....................................................................................74
    (b)    Treatment. .....................................................................................................74

5.102   CAH 16 Class 1D (M&T Bank Secured Claim). ...........................................................75

    (a)    Impairment; Voting. .....................................................................................75
    (b)    Treatment. .....................................................................................................75

5.103   CAH 16 Class 1E (Winthrop Secured Claim). ...............................................75

5.104   CAH 16 Class 3A (Convenience Claims). .....................................................75

    (a)     Impairment; Voting. ...................................................................75
    (b)     Treatment................................................................................75

5.105   CAH 16 Class 3B (General Unsecured Claims)...............................................76

    (a)     Impairment; Voting. ...................................................................76
    (b)     Treatment................................................................................76
    (c)     Tort Claims...............................................................................76

5.106   CAH 16 Class 3C (HHI General Unsecured Claim). ......................................77

    (a)     Impairment; Voting. ...................................................................77
    (b)     Treatment................................................................................77

5.107   CAH 16 Class 4 (Old Equity Interests). ........................................................77

    (a)     Impairment; Voting. ...................................................................77
    (b)     Treatment................................................................................77

**ARTICLE VI.  PROVISIONS GOVERNING DISTRIBUTIONS.........................................77**

6.01   Record Date for Distributions...........................................................................77

6.02   Date of Distributions. .....................................................................................77

6.03   Single Satisfaction of Identical Claims Filed against Multiple Debtors. ...................78

6.04   Disbursements. ..............................................................................................78

6.05   Subsequent Distributions.................................................................................78

6.06   Distributions of Cash.......................................................................................78

6.07   Allocations after Effective Date. ......................................................................78

6.08   Delivery of Distributions and Undeliverable Distributions.......................................78

6.09   Compliance with Tax Requirements. ................................................................78

6.10   Time Bar to Cash Payments. ...........................................................................79

6.11   Professional Fees and Expenses. ....................................................................79

6.12   Transactions on Business Days. ......................................................................79

6.13   Allocation of Distributions. ..............................................................................79

**ARTICLE VII.  MEANS FOR IMPLEMENTATION AND EXECUTION
OF THE PLANS ...........................................................................................................80**

7.01   Participating New Equity Owners Will Fund Plans. ..................................................80

7.02   Corporate Action. ...........................................................................................80

7.03   Effectuating Documents and Further Transactions. .............................................80

7.04   Closing of the Chapter 11 Cases.......................................................................80

7.05    Appointmentn and Authority of the Plan Monitor. ......................................................80

**ARTICLE VIII.  PROCEDURES FOR RESOLVING AND TREATING
DISPUTED CLAIMS ............................................................................................81**

8.01    No Distribution Pending Allowance.............................................................................81

8.02    Resolution of Disputed Claims.....................................................................................82

8.03    Estimation......................................................................................................................82

8.04    Allowance of Disputed Claims.....................................................................................82

8.05    Release of Funds from Disputed Claims Reserves.......................................................82

8.06    Deadline to File Objections to Claims..........................................................................83

**ARTICLE IX.  TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES ........................................................................................83**

9.01    Generally. .....................................................................................................................83

9.02    Payment of Cure Costs. ...............................................................................................83

9.03    Approval of Assumption, Assumption and Assignment or Rejection of
Executory Contracts and Unexpired Leases.................................................................83

9.04    Claims for Damages. ....................................................................................................84

9.05    Postpetition Executory Contracts and Unexpired Leases.............................................84

**ARTICLE X.  CONDITIONS TO CONFIRMATION AND EFFECTIVE
DATE .....................................................................................................................84**

10.01    Conditions Precedent to Effective Date of Plans........................................................84

10.02    Waiver of Conditions Precedent..................................................................................85

10.03    Effect of Failure of Conditions...................................................................................85

**ARTICLE XI.  EFFECTS OF CONFIRMATION ...................................................85**

11.01    No Substantive Consolidation. ...................................................................................85

11.02    Vesting of Debtors' Assets and Claims in Reorganized Debtors.................................85

(a)    Debtors' Assets...............................................................................85

11.03    Binding Effect. ............................................................................................................86

11.04    Discharge of Claims. ...................................................................................................86

11.05    Discharge. ....................................................................................................................86

11.06    Cancellation of Warrants. ............................................................................................86

11.07    Injunction or Stay. .......................................................................................................86

11.08    Release of Assets. ........................................................................................................87

11.09    Term of Injunctions or Stays. ......................................................................................87

11.10   Rights of Action. ...................................................................................... 87

11.11   Exculpation. ............................................................................................... 87

11.12   Releases. ..................................................................................................... 87

11.13   HHI Claims and the HHI Settlement Agreement. ...................................... 88

**ARTICLE XII.   RETENTION OF JURISDICTION** ................................................. 93

**ARTICLE XIII.   ADDITIONAL PROVISIONS** ....................................................... 96

13.01   Effectuating Documents and Further Transactions. ................................... 96

13.02   Fees, Interest, and Expenses Incurred by Secured Lenders. ...................... 96

13.03   Withholding and Reporting Requirements. ................................................ 96

13.04   Satisfaction of Claims before the Effective Date. ..................................... 96

13.05   Continuation of Corporate Organizational Documents, By-Laws and
         Corporate Governance. ............................................................................... 96

13.06   Officers of Reorganized Debtors. .............................................................. 97

13.07   Special Provisions Regarding Insider Claims, Intercompany Claims and
         Subsidiary Interests. .................................................................................. 97

13.08   Subordination Agreements. ........................................................................ 97

13.09   Assumption of Obligations under Management Incentive Program ........... 98

13.10   Modification of Plan(s). ............................................................................. 98

13.11   Revocation or Withdrawal of the Plans. .................................................... 98

13.12   Plan Supplement ......................................................................................... 98

13.13   Payment of Statutory Fees. ........................................................................ 99

13.14   Post-Effective Date Professional Fees and Expenses ................................ 99

13.15   Dissolution of the Committee. .................................................................... 99

13.16   Exemption from Transfer Taxes ................................................................. 99

13.17   Exemption from Securities Laws. ............................................................... 99

13.18   Retention of Net Operating Losses. ........................................................... 99

13.19   Expedited Tax Determination. .................................................................... 99

13.20   Exhibits/Schedules. .................................................................................... 99

13.21   Substantial Consummation. ...................................................................... 100

13.22   Severability of Plan Provisions ................................................................ 100

13.23   Voting of Claims and Equity Interests. ..................................................... 100

13.24   Agreements with the Debtors. .................................................................. 100

13.25   Confirmability and Severability of Plans. ................................................ 100

13.26   Nonconsensual Confirmation. ..........................................................................100

13.27   Successors and Assigns. ..................................................................................100

13.28   Notices. ..........................................................................................................101

13.29   Governing Law. ..............................................................................................101

13.30   Tax Reporting and Compliance. .....................................................................101

13.31   Filing of Additional Documents. ....................................................................101

13.32   Rules of Interpretation and Computation of Time. .........................................101

13.33   Conflict of Terms. ..........................................................................................102

13.34   No Distributions to Equity ..............................................................................102

## INTRODUCTION

HMC/CAH Consolidated, Inc. ("HMC"); CAH Acquisition Company #1, LLC ("CAH 1"); CAH Acquisition Company #2, LLC ("CAH 2"); CAH Acquisition Company #3, LLC ("CAH 3"); CAH Acquisition Company #4, Inc. ("CAH 4"); CAH Acquisition Company #5, LLC ("CAH 5"); CAH Acquisition Company 6, LLC ("CAH 6"); CAH Acquisition Company 7, LLC ("CAH 7"); CAH Acquisition Company 9, LLC ("CAH 9"); CAH Acquisition Company 10, LLC ("CAH 10"); CAH Acquisition Company 11, LLC ("CAH 11"); CAH Acquisition Company 12, LLC ("CAH 12"); and CAH Acquisition Company 16, LLC ("CAH 16"), as debtors and debtors in possession, hereby propose the following plans of reorganization pursuant to section 1121 (a) of the Bankruptcy Code. Each Debtor is a proponent of its respective Plan within the meaning of section 1129 of the Bankruptcy Code.

Reference is made to the Disclosure Statement, to be filed in connection herewith, for a discussion of the Debtors' history, businesses, properties, certain postpetition events, issues which may affect estimated distributions, and for a summary and analysis of the Joint Plan and certain related matters. All holders of Claims against the Debtors entitled to vote on a respective Debtor's Plan are advised to read the Joint Plan and the Disclosure Statement in their entirety before voting to accept or reject the respective Plan(s).

## ARTICLE I.

## DEFINED TERMS

As used in the Joint Plan, capitalized terms have the meanings set forth below. Any term that is not otherwise defined in the Joint Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**1.01    *Administrative Claim*** means any right to payment constituting a cost or expense of administration of the Chapter 11 Case allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' estates, (b) any actual and necessary costs and expenses of operating the Debtors' businesses, (c) any indebtedness or obligations incurred or assumed by the applicable Debtor, as debtor in possession, during the Chapter 11 Case, and (d) any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under sections 330 or 503 of the Bankruptcy Code.

**1.02    *Affiliate*** has the meaning set forth in section 101(2) of the Bankruptcy Code.

**1.03    *Allowed*** means, with reference to any Claim, (a) any Claim against any Debtor which has been listed by the applicable Debtor in its Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of Claim has been filed, (b) any Claim as to which no objection to allowance has been timely interposed in accordance with section 502 of the Bankruptcy Code and Bankruptcy Rule 3007, pursuant to

section 8.02 of this Plan, or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, (c) any Claim as to which, upon the lifting of the automatic stay pursuant to section 362 of the Bankruptcy Code, the liability of the applicable Debtor, allowance and the amount thereof are determined by final order of a court of competent jurisdiction other than the Bankruptcy Court, or (d) any Claim expressly allowed pursuant to this Plan.

      *1.04**    Allowed Convenience Claim* means (i) any Allowed General Unsecured Claim against a Debtor in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against a Debtor in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim and capped at $1,000.

      *1.05**    Available Cash* means, as of the Effective Date, all Cash of a Debtor realized from its business operations, the sale or other disposition of its assets, the interest earned on invested funds or from any other source, less (i) the amount of Cash estimated and reserved by Debtor to fund adequately the administration of its Plan, the Chapter 11 Case, the Disputed Claims Reserve, on and after the Effective Date; and (ii) the amount of Cash required by Debtor to satisfy in full its Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Priority Non-Tax Claims.

      *1.06**    Avoidance Actions* means, without limitation, any and all actions, causes of action, liabilities; obligations, rights, suits, debts, sums of money, damages; judgments, Claims and demands whatsoever, whether known or unknown, in law (including, without limitation, pursuant to sections 510, 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code or equivalent provisions of applicable non-bankruptcy law), equity or otherwise.

      *1.07**    Ballot* means the forms distributed by the applicable Debtor to each holder of an impaired Claim that is entitled to vote on which form the holder of such Claim is to indicate acceptance or rejection of the Plan.

      *1.08**    Bankruptcy Code* means title 11 of the United States Code as now in effect or hereafter amended, as applicable to the Chapter 11 Cases.

      *1.09**    Bankruptcy Court* means the United States Bankruptcy Court for the Western District of Missouri in which the Chapter 11 Case was commenced on October 10, 2011, or any other court with jurisdiction over the Chapter 11 Case.

      *1.10**    Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure and the local rules of the Court, as now in effect or hereafter amended.

      *1.11**    Bar Date* means the applicable deadline by which a proof of Claim shall have been, or shall be, filed, as established by the Confirmation Order and any other order of the Court, including the Order Establishing May 15, 2012, as the Bar Date for Filing Proofs of Claim and Claims Pursuant to 503(b)(9) and Approving Form of Notice.

**1.12    Business Day** means any day other than a Saturday, Sunday or any other day on which banking institutions in Kansas City, Missouri are required or authorized to close by law or executive order.

**1.13    Cash** means legal tender of the United States of America.

**1.14.01 CFG Bank** means CFG Community Bank.

**1.14.02 CFG Bank Loan** means the $2,502,710.00 loan that CFG Bank extended to CAH 11, as evidenced by, among other things: (a) that certain *Loan Agreement*, dated March 31, 2010, by and between CAH 11 and CFG Bank (the "CFG Loan Agreement"); and (ii) a *Promissory Note*, dated March 31, 2010, executed and delivered by CAH 11 to the order of CFG Bank in the original principal amount of $2,502,710.00 (the "CFG Note").

**1.14.03    CFG Loan Documents** means, collectively, the CFG Loan Agreement, the CFG Note, the CFG Subordination Agreement (as hereafter defined), and all other agreements, guaranties, mortgages, deeds of trust, security agreements, UCC financing statements, instruments and other documents executed and/or delivered with, to or in favor of CFG Bank in connection with the CFG Bank Loan.

**1.14.04    CFG Collateral** means all assets of CAH 11 which now or hereafter serve as security for the indebtedness and obligations owed to CFG Bank under the CFG Loan Documents, the Allowed CFG Secured Claim and the Joint Plan.

**1.15    Allowed CFG Secured Claim** means the Secured Claim of CFG Bank in the CAH 11 case, which shall be deemed to be an Allowed Secured Claim in the amount of not less than $2,507,089.74, as of the Petition Date, plus all post-petition interest, attorneys' fees, expenses and other amounts owed to CFG Bank that have accrued or may hereafter accrue pursuant to the CFG Loan Documents (but excluding default interest and any late payment penalty).

**1.16    Chapter 11 Cases** means the Debtors' chapter 11 cases pending in the Court.

**1.17    Citizens** means Citizens Bank, N.A.

**1.18    Citizens Loan** means:  that certain Promissory Note #23467017, between Citizens and CAH 1, dated September 30, 2008, in the original amount of $1,645,588.34 and all related agreements, documents, notes, certificates and instruments.

**1.19    Citizens Secured Claim** means the Citizens Secured Claim, pursuant to the Citizens Loan.

**1.20    Claim** means a "claim" as defined in section 101(5) of the Bankruptcy Code, against any Debtor.

**1.21    Class** means a category of holders of Claims or Old Equity Interests, as described in Section 3.01 of the Plan.

**1.22** **_Class 1 Earnout Rights_** means those rights of holders of Allowed General Unsecured Claims that elect OPTION 2 treatment to the payment of 100% of the amount of such Allowed Claims pursuant to interests in a note or notes payable and issued by HMC for the aggregate amount of the Class 1 Earnout Rights with each holder's interest equal to the full amount of such holder's Allowed General Unsecured Claim.  The Class 1 Earnout Rights shall be paid on a *pro rata* basis from distributions on account of the note as follows:

(I) The greater, during any particular fiscal year until such time as all such Allowed Claims are paid in full, of (i) the amount ("EBITDA Payment"), which shall be distributed by the Reorganized Debtors to the holders of such Allowed Claims on the Earnout Payment Date, (a) for fiscal year 2013, by which the actual EBITDA for fiscal year 2013 exceeded 97.5% of such fiscal year's Projected EBITDA and (b) for succeeding fiscal years thereafter, by which such fiscal year's actual EBITDA exceeded 80% of such fiscal year's Projected EBITDA (an "EBITDA Event"), or (ii) if any balance is outstanding with respect to Class 1 Earnout Rights on the closing date for permanent financing (not construction financing) for the replacement of one of the Debtors' hospitals (a "Replacement Event"), then 20% of the original total amount of the Class 1 Earnout Rights as of the Effective Date will be redeemed and distributed on a *pro rata* basis within 30 days of such closing date or as soon thereafter as is reasonably practicable; provided, however, (a) that in no event will the Reorganized Debtors be required to pay more than 100% of the amount of Class 1 Earnout Rights, plus applicable interest and (b) that, in the event that more than one Replacement Event occurs in a given fiscal year, the Reorganized Debtors' obligations pursuant to a Replacement Event will not exceed 20% of the original total amount of the Class 1 Earnout Rights as of the Effective Date of the Joint Plan in any given fiscal year; provided further, however, that those obligations will carry forward to successive fiscal years to account for the additional Replacement Events which occurred during the single fiscal year, but in no event will the Reorganized Debtors' obligations pursuant to Replacement Events during any fiscal year be greater than 20% of the original total amount of the Class 1 Earnout Rights as of the Effective Date of the Joint Plan in any given fiscal year;

(II) Upon the closing of a sale by the Reorganized Debtors of all or substantially all of the Reorganized Debtors' assets to a third-party buyer or a sale or other transfer, directly or indirectly, of more than 50% of equity interests or voting rights in HMC/CAH Consolidated, Inc. prior to the repayment of the original total amount of the Class 1 Earnout Rights, plus applicable interest, (a "Change Event") the Reorganized Debtors will pay any unpaid portion of the Class 1 Earnout Rights in full, plus accrued but unpaid interest;

(III) Any balance outstanding with respect to Class 1 Earnout Rights on the date which is 11 years after the Effective Date (together with a Replacement Event, an EBITDA Event, and a Change Event, an "Option 2 Payment Event"), shall be paid in full with applicable interest.

Class 1 Earnout Rights will accrue interest at an annual rate of 2% which accrued interest shall be payable only at the time of an Option 2 Payment Event.

Until such time as all Class 1 Earnout Rights are paid in full, Intercompany Claims shall not receive distributions under the Plan and shall not be used in calculating the amount of the *pro rata* payments to be made to holders of Class 1 Earnout Rights.

A Plan Monitor shall be appointed to enforce the rights of the holders of Class 1 Earnout Rights.  The power and authority of the Plan Monitor is described in more detail in Section 7.05 below.

As described more fully in Section 13.34 below, until such time as all Class 1 Earnout Rights shall have been paid in full, the Reorganized Debtors shall be limited in the distributions allowed to be made to holders of Equity Interests in the Reorganized Debtors.

**1.23    *Class 2 Earnout Rights*** means non-voting equity interests in HMC provided to Participating New Equity Owners in Ratable Proportion to the funds that such Participating New Equity Owners provide to fund distributions to creditors pursuant to the Joint Plan.

No distributions shall be made to owners of Class 2 Earnout Rights until all senior classes have been paid in full, at which point the Class 2 Earnout Rights will receive distributions on the same terms and conditions and using the same formula as was used for determining distributions in connection with Class 1 Earnout Rights.  Class 2 Earnout Rights will accrue interest at an annual rate of 2%.  If HMC fails to make such payments as contemplated above as and when due to holders of Class 2 Earnout Rights pursuant to the Joint Plan, the holders of Class 2 Earnout Rights shall be entitled to elect two additional members to the Board of Directors of Reorganized HMC at a special election within 60 days of HMC receiving notice of such default.

Notwithstanding the above, to the extent that the Court determines that the contemplated issuance of the non-voting equity interests in HMC is inappropriate in light of Section 1123(a)(6) of the Bankruptcy Code or otherwise, HMC will instead issue a note for the aggregate amount of Class 2 Earnout Rights which will be paid *pro rata* to holders of Class 2 Earnout Rights on the same terms and conditions as described above with respect to non-voting equity interests.

Similarly, if the issuance of either non-voting equity interests or the note by HMC (both as described immediately above) is determined by the Court not to be "fair and equitable" as required by Section 1129(b)(2) of the Bankruptcy Code, each of the Reorganized Debtors shall issue a separate note for the benefit of their applicable creditors to be paid on the same terms and conditions as described above.

In the event that either HMC or each of the Reorganized Debtors issue a note in lieu of non-voting equity interests, holders of Class 2 Earnout Rights shall **not** be entitled to elect any additional members to the Board of Directors of Reorganized HMC, or any of the Reorganized Debtors, upon a failure to make appropriate payments under the Joint Plan or otherwise.

**1.24    *Collateral*** means any property or interest in property of the estate of the Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

**1.25**    **Committee** means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

**1.26**    **Committee Adversary Complaint** means that adversary proceeding (Case No. 12-04117-drd), commenced by the Committee on or about May 25, 2012 against Fidelity Security Life Insurance Company, Rosalia Hall, Richard Jones, Larry Arthur, DFP, LLC, Sun Finance, Inc., and CAROJOTO, LLC.

**1.27**    **Confirmation Date** means the date on which the Clerk of the Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**1.28**    **Confirmation Hearing** means the hearing to be held by the Bankruptcy Court regarding confirmation of the Debtors' Plans, as such hearing may be adjourned or continued from time to time.

**1.29**    **Confirmation Order** means the Final Order of the Bankruptcy Court confirming the Debtors' Plans pursuant to section 1129 of the Bankruptcy Code.

**1.30**    **Cure Amount** means the amount of Cash required for the assumption of an unexpired lease or executory contract pursuant to section 365(b) of the Bankruptcy Code equal to all accrued, due, and unpaid monetary obligations, without interest, or such other amount as may be agreed to by the parties thereto or ordered by the Bankruptcy Court, under such executory contract or lease to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

**1.31**    **Debtors** means HMC; CAH 1; CAH 2; CAH 3; CAH 4; CAH 5; CAH 6; CAH 7; CAH 9; CAH 10; CAH 11; CAH 12; and CAH 16.

**1.32**    **Deficiency Claim** means the portion, if any, of a Secured Claim that exceeds the value of the collateral securing such Claim.

**1.33**    **Disallowed** means any Claim that is not Allowed.

**1.34**    **Disclosure Statement** means the written disclosure statement (including all schedules to such disclosure statement) that relates to the Joint Plan, as the same may be amended, modified or supplemented from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.35**    **Disputed Claim** means, with reference to a Claim, any Claim (a) which has been or hereafter is listed on the Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement of the parties or by an order of the Bankruptcy Court, (b) which is disputed under the Joint Plan, (c) as to which the Debtor has interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, or section 8.02 of this Plan, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, (d) any Claim, proof of which was filed in an amount greater than the amount reflected for such Claim as listed on the Schedules and for which the time to file an objection has not yet expired, (e) any Claim

proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim was not timely or properly filed, and (f) any Tort Claim.

   **1.36** ***Disputed Claims Reserves*** means those certain reserves created for Disputed Claims whose holders have elected OPTION 1 treatment.

   **1.37** ***Distribution Date*** means that date on which a distribution is to be made pursuant to the Joint Plan as more particularly described in Section 6.02.

   **1.38** ***DMA Secured Claim*** means the Secured Claim of the North Carolina Division of Medical Assistance ("DMA") premised upon certain Medicaid-related recoupments.

   **1.39** ***Earnout Payment Date*** means that date which is 10 business days after (i) the expiration of the EBITDA Review Period (as defined in Section 7.05 below) or (ii) the date on which the Reorganized Debtors receive written, binding notification from the Plan Monitor that it will not lodge a dispute with respect to such fiscal year.

   **1.40** ***Effective Date*** means the first Business Day on which all conditions precedent to the Effective Date specified in Section 10.01 of the Joint Plan shall have been satisfied or waived as provided in Section 10.02 of the Joint Plan with respect to each of the respective Debtors.

   **1.41** ***ERP*** means an "extended repayment plan" between the U.S. Department of Health and Human Services ("HHS") and a Debtor which provides for the repayment of an overpayment (the amount of which is determined through an audit process) in reimbursements by the Centers for Medicare and Medicaid Services ("CMS") to such Debtor for Medicare services provided by such Debtor.  Such repayments take place over a time period of up to 60 months from future Medicare disbursements pursuant to, and at an interest rate determined by, the applicable federal statutes and/or regulations.

   **1.42** ***Federal Judgment Rate*** means the rate specified in 28 U.S.C. § 1961 as made applicable in bankruptcy, by section 726(a)(5) of the Bankruptcy Code, which rate was 0.11% as of October 11, 2011.

   **1.43** ***Fee Claim*** means an Administrative Claim under section 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Chapter 11 Cases on or prior to the Effective Date.

   **1.44** ***Final Order*** means an order that has not been reversed, stayed, modified or amended and as to which the time to appeal, petition for certiorari; or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending; provided, however, that the possibility that a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

   **1.45** ***First Liberty Bank Loan*** means that certain Loan Agreement, dated December 6, 2010, between First Liberty Bank and CAH 6, pursuant to which First Liberty Bank

loaned CAH 6 $9,300,000.00 and all related agreements, documents, notes, certificates, and instruments.

      *1.46*    *First Liberty Bank Secured Claim* means the First Liberty Bank Secured Claim, pursuant to the First Liberty Bank Loan.

      *1.47*    *GAAP* means Generally Accepted Accounting principles, the widely accepted set of authoritative rules, conventions, standards, and procedures for reporting financial information, as established by the Financial Accounting Standards Board.

      *1.48*    *Gemino* means HMC/CAH Note Acquisition Company, LLC, which acquired all the rights of Gemino Healthcare Finance, LLC with respect to the Gemino Loan.

      *1.49*    *Gemino Loan* means that certain Credit Agreement, dated April 12, 2012, among Gemino and certain of the other Debtors, pursuant to which Gemino provided a secured revolving credit facility in the amount of $6 million.

      *1.50*    *Gemino Secured Claim* means the Gemino Secured Claim, pursuant to the Gemino Loan.

      *1.51*    *Gemino Subordination Agreement* means that certain Intercreditor and Subordination Agreement, dated April 12, 2010, by and between Gemino and HHI, as amended, modified, or restated from time to time.

      *1.52*    *General Unsecured Claim* means any unsecured, non-priority Claim against the Debtors that is not an Administrative Claim, Priority Tax Claim, Priority Non-Tax Secured Claim, Convenience Claim, or Intercompany Claim.

      *1.53*    *Guaranty Claim* means a Claim filed against a Debtor the basis for which is a guaranty of an obligation owed to such Claimant by another Debtor entity.

      *1.54*    *HHI* means HPCG Hospital Investment, LLC.

      *1.55*    *HHI Litigation* means the lawsuit filed in the Circuit Court of Jackson County, Missouri on June 30, 2011, by HMC, CAH 1, CAH 2, CAH 3, CAH 5, CAH 7, CAH 9, CAH 10 and CAH 11 against HHI and others, alleging, among other things, breach of contract, fraud, and contractual and tortious breach of implied duty of good faith and fair dealing.

      *1.56*    *HHI Secured Claim* means that portion of HHI's Claim that is secured pursuant to that certain Master Funding Agreement and Amended and Restated Credit Agreement dated as of August 21, 2009 and the HHI Settlement Agreement.

      *1.57*    *HHI Settlement Agreement* means that certain agreement among the Debtors and HHI which resolves the various disputes between the parties including, but not limited to, the HHI Litigation and the amount and validity of HHI's Claims against the Debtors' estates, which agreement is embodied in this Joint Plan and described in more detail in Section 11.13 below.

*1.58*   ***HHS Overpayment Secured Claim*** means a Secured Claim filed by HHS based upon an alleged or agreed overpayment in reimbursements by CMS to such Debtor for Medicare services provided by such Debtor.

*1.59*   ***HUD*** means U.S. Department of Housing and Urban Development.

*1.60*   ***Insider Claim*** means a Claim held by an insider as that term is defined under section 101(31) of the Bankruptcy Code.

*1.61*   ***Insurance Carriers*** means those carriers identified on Schedule 1 of the Plan Supplement.

*1.62*   ***Intercompany Claim*** means:   (a) any account reflecting intercompany indebtedness by any one of the Debtors with respect to another Debtor incurred prior to the Petition Date, or (b) any Claim not reflected in such book entries that was held by any of the Debtors against another Debtor prior to the Petition Date.

*1.63*   ***IRS*** means the U.S. Internal Revenue Service.

*1.64*   ***Joint Plan*** means the thirteen separate and distinct chapter 11 plans of reorganization for the Debtors, and all exhibits, supplements, and schedules to the Plans, as the same may be amended, modified or supplemented

*1.65*   ***Midland*** means Midland Loan Services, Inc.

*1.66*   ***Midland Loan*** means (i) that certain Mortgage Note, dated October 15, 2003, between Midland and CAH 4, in the original amount of $7,668,000.00 (the "Midland Prepetition Note"), (ii) that certain Regulatory Agreement dated as of October 13, 2003, as thereafter modified by that certain Regulatory Agreement dated as of March 31, 2009; and (iii) all other related agreements, documents, notes, certificates, and instruments.  The Midland Loan is insured by HUD.

*1.67*   ***Midland Secured Claim*** means the Midland Secured Claim, pursuant to the Midland Loan.

*1.68*   ***Old Equity Interests*** means the interest of any holder of an equity security of HMC or the other Debtors represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in the Debtors, whether or not transferable; *provided, however*, that no warrant, issued or unissued, shall be included in this definition.

*1.69*   ***Participating New Equity Owners*** means those Persons who have contributed capital to fund the Debtors' Plans.

*1.70*   ***Person*** means an individual, partnership, corporation, cooperative, trust, unincorporated organization, association, joint venture or a government or agency or political subdivision thereof.

1.71    **Petition Date** means October 10, 2011.

1.72    **Plans** means the thirteen separate and distinct chapter 11 plans of reorganization for the Debtors, and all exhibits, supplements, and schedules to the Plans, as the same may be amended, modified, or supplemented.

1.73    **Plan Monitor** means that person, more fully described in Section 7.05, endowed by the Joint Plan with certain limited authority to enforce the rights of holders of Class 1 Earnout Rights.

1.74    **Plan Supplement** means the supplement to the Plans containing certain documents relevant to the implementation of such Plans or the treatment of Allowed Claims thereunder.  The Plan Supplement will be filed with the Bankruptcy Court no later than 10 days before the Confirmation Hearing.

1.75    **Prepetition** means any time before the Petition Date.

1.76    **Priority Claim** means a Priority Tax Claim or Priority Non-Tax Claim.

1.77    **Priority Non-Tax Claim** means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.78    **Priority Tax Claim** means a Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.79    **Professional** means (i) any professional employed in the Chapter 11 Case pursuant to section 327, 328, 1103, or 1114 of the Bankruptcy Code; and (ii) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

1.80    **Projected EBITDA** means those amounts set forth on Schedule 1.80 of the Joint Plan.

1.81    **Ratable Proportion** means a proportionate share, so that the ratio of (a) the amount of property distributed to the holder of an Allowed Claim and Class 1 Earnout Rights, or allocated to the Disputed Claims Reserve on behalf of a holder of a Disputed Claim, in a Class, to (b) the amount distributed to the holders of all Allowed Claims, or allocated to the Disputed Claims Reserve on behalf of all holders of Disputed Claims, in such Class, is the same as the ratio (x) such Claim bears to (y) the total amount of all Claims (including Disputed Claims) in such Class.

1.82    **Reorganized Debtors** means the Debtors on or after the Effective Date.

1.83    **Schedules** mean the schedules of assets and liabilities; the list of holders of Old Equity Interests, and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications to such schedules, lists, and statements through the Confirmation Date.

**1.84    Secured Claim** means a Claim that is secured by a lien on property in which an estate has an interest, or that is subject to a set-off under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in such estate's interest in such property or to the extent of the amount subject to a set-off, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of a set-off, pursuant to section 553 of the Bankruptcy Code.

**1.85    Series A Preferred Stock** means those equity interests in HMC as created and defined in HMC's organizational documents, as amended by and through the Joint Plan.

**1.86    Series B Preferred Stock** means those equity interests in HMC as created and defined in HMC's organizational documents, as amended by and through the Joint Plan.

**1.87    Signature, sign or signed** means an actual physical signature or a 'pdf' scan of a physical signature. 'E-signatures' and electronic mail that does not include a scan of such physical signature shall not constitute a signature for purposes of the Plans.

**1.88    Subsequent Distribution Date** means, following the Effective Date, a date which shall occur at the end of each subsequent six-month period, or more frequently as may be determined by the Reorganized Debtors, on which a Ratable Proportion of the additional distributable Cash is distributed to the holders of Allowed Claims in accordance with Article VI of the Joint Plan.

**1.89    Tax Code** means title 26 of the United States Code, as amended from time to time.

**1.90    Till Rate** means the fixed rate of interest equal to the yield on a United States Treasury Bill, Note, or Bond with the same maturity as the term provided for payment of an Allowed Claim in effect at the time of the entry of the Confirmation Order plus a risk factor of 2% as provided in *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004).

**1.91    Tort Claim** means any Claim that has not been compromised and settled or otherwise resolved (a) relating to personal injury, wrongful death, medical malpractice, property damage, products liability, or other similar Claim asserted against the Debtor, or (b) arising under any federal, state or local statute, rule, regulation or ordinance governing, regulating or relating to health, safety, hazardous substances or the environment, including, in each case, unasserted and other intangible Claims.

**1.92    Treasury Regulations** means final, temporary and proposed regulations promulgated by the U.S. Treasury Department in respect of the Tax Code.

**1.93    Wall Street Journal Prime Rate** means, as used in connection with the First Liberty Bank Loan, that annual rate of interest published in the *Wall Street Journal* which represents the base rate on corporate loans posted by at least 75% of the nation's thirty (30) largest banks.

**ARTICLE II.**

11

## TREATMENT OF ADMINISTRATIVE CLAIMS
## AND PRIORITY TAX CLAIMS

**2.01    *Administrative Claims in General*.**  On the Effective Date, or as soon thereafter as is reasonably practicable, except to the extent that a holder of an Allowed Administrative Expense Claim against the Debtors agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Claim; *provided, however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the applicable Debtor, as debtor in possession, shall be paid by the applicable Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

**2.02    *Administrative Claims Bar Date*.**  Requests for payment of Administrative Claims must be filed and served on the applicable Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than 35 days after the entry of the Confirmation Order, *provided*, *however*, that Claims pursuant to Section 503(b)(9) of the Bankruptcy Code are governed by the Court's Twenty-Day Claims Order [Docket No. 199], and such Claims are subject to the claims objection deadlines contained in Sections 8.02 and 8.06 hereof.  Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims and that do not file and serve such a request by the applicable Administrative Claims Bar Date will be forever barred from asserting such Administrative Claims against the applicable Debtor, or their respective property, and such Administrative Claims will be deemed discharged as of the Effective Date.  In the event that any party with standing objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be filed with respect to an Administrative Claim previously Allowed by Final Order of the Bankruptcy Court.

**2.03    *Priority Tax Claims*.**  On the Effective Date, or as soon thereafter as is reasonably practicable, pursuant to section 1129(a)(9) of the Bankruptcy Code, unless otherwise agreed to by the holder of an Allowed Priority Tax Claim and the applicable Debtor, each holder of an Allowed Priority Tax Claim shall be paid in full, in Cash, in an amount equal to such Allowed Priority Tax Claim.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Old Equity Interests in the Debtor.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified, and are accorded treatment as set forth in Article II.  Except as set forth above, all Claims and Equity Interests are classified for all purposes, including voting, confirmation, and distribution pursuant to the Debtors' respective Plans, as follows:

### 3.01    *HMC Plan*.

| | |
|---|---|
| HMC Class 1A | HMC Class 1A consists of the Gemino Secured Claim against HMC. |
| HMC Class 1B | HMC Class 1B consists of the HHI Secured Claim against HMC. |
| HMC Class 1C | HMC Class 1C consists of the Sun Finance Secured Claim against HMC. |
| HMC Class 1D | HMC Class 1D consists of the Fidelity Security Life Insurance Co. Secured Claims against HMC. |
| HMC Class 1E | HMC Class 1E consists of the Rosalia Hall Secured Claims against HMC. |
| HMC Class 1F | HMC Class 1F consists of the Richard Jones Secured Claims against HMC. |
| HMC Class 1G | HMC Class 1G consists of the Commerce Bank Secured Claims against HMC. |
| HMC Class 1H | HMC Class 1H consists of the Ally Financial Secured Claims against HMC. |
| HMC Class 1I | HMC Class 1I consists of the DFP, LLC Secured Claim against HMC. |
| HMC Class 1J | HMC Class 1J consists of the Larry Arthur Secured Claim against CAH HMC. |
| HMC Class 3A | HMC Class 3A consists of all Convenience Claims against HMC. |
| HMC Class 3B | HMC Class 3B consists of all General Unsecured Claims against HMC. |
| HMC Class 3C | HMC Class 3C consists of the HHI General Unsecured Claim against HMC. |
| HMC Class 4 | HMC Class 4 consists of all Old Equity Interests in HMC. |

### 3.02    *CAH 1 Plan*.

| | |
|---|---|
| CAH 1 Class 1A | CAH 1 Class 1A consists of the Citizens Secured Claim against CAH 1. |
| CAH 1 Class 1B | CAH 1 Class 1B consists of the HHI Secured Claim against CAH 1. |

| | |
|---|---|
| CAH 1 Class 1C | CAH 1 Class 1C consists of the HHS Overpayment Secured Claims against CAH 1. |
| CAH 1 Class 1D | CAH 1 Class 1D consists of the DMA Secured Claim against CAH 1. |
| CAH 1 Class 3A | CAH 1 Class 3A consists of all Convenience Claims against CAH 1. |
| CAH 1 Class 3B | CAH 1 Class 3B consists of all General Unsecured Claims against CAH 1. |
| CAH 1 Class 3C | CAH 1 Class 3C consists of the HHI General Unsecured Claim against CAH 1. |
| CAH 1 Class 4 | CAH 1 Class 4 consists of all Old Equity Interests in CAH 1. |

### 3.03    *CAH 2 Plan*.

| | |
|---|---|
| CAH 2 Class 1A | CAH 2 Class 1A consists of the Gemino Secured Claim against CAH 2. |
| CAH 2 Class 1B | CAH 2 Class 1B consists of the HHI Secured Claim against CAH 2. |
| CAH 2 Class 1C | CAH 2 Class 1C consists of the HHS Overpayment Secured Claims against CAH 2. |
| CAH 2 Class 3A | CAH 2 Class 3A consists of all Convenience Claims against CAH 2. |
| CAH 2 Class 3B | CAH 2 Class 3B consists of all General Unsecured Claims against CAH 2. |
| CAH 2 Class 3C | CAH 2 Class 3C consists of the HHI General Unsecured Claim against CAH 2. |
| CAH 2 Class 4 | CAH 2 Class 4 consists of all Old Equity Interests in CAH 2. |

### 3.04    *CAH 3 Plan*.

| | |
|---|---|
| CAH 3 Class 1A | CAH 3 Class 1A consists of the Gemino Secured Claim against CAH 3. |
| CAH 3 Class 1B | CAH 3 Class 1B consists of the HHI Secured Claim against CAH 3. |
| CAH 3 Class 1C | CAH 3 Class 1C consists of the HHS Overpayment Secured Claims against CAH 3. |

| | |
|---|---|
| CAH 3 Class 3A | CAH 3 Class 3A consists of all Convenience Claims against CAH 3. |
| CAH 3 Class 3B | CAH 3 Class 3B consists of all General Unsecured Claims against CAH 3. |
| CAH 3 Class 3C | CAH 3 Class 3C consists of the HHI General Unsecured Claim against CAH 3. |
| CAH 3 Class 4 | CAH 3 Class 4 consists of all Old Equity Interests in CAH 3. |

### 3.05   *CAH 4 Plan*.

| | |
|---|---|
| CAH 4 Class 1A | CAH 4 Class 1A consists of the Midland Secured Claim against CAH 4. |
| CAH 4 Class 1B | CAH 4 Class 1B consists of the HHS Overpayment Secured Claims against CAH 4. |
| CAH 4 Class 3A | CAH 4 Class 3A consists of all Convenience Claims against CAH 4. |
| CAH 4 Class 3B | CAH 4 Class 3B consists of all General Unsecured Claims against CAH 4. |
| CAH 4 Class 3C | CAH 4 Class 3C consists of the HHI General Unsecured Claim against CAH 4. |
| CAH 4 Class 4 | CAH 4 Class 4 consists of all Old Equity Interests in CAH 4. |

### 3.06   *CAH 5 Plan*.

| | |
|---|---|
| CAH 5 Class 1A | CAH 5 Class 1A consists of the Gemino Secured Claim against CAH 5. |
| CAH 5 Class 1B | CAH 5 Class 1B consists of the HHI Secured Claim against CAH 5. |
| CAH 5 Class 1C | CAH 5 Class 1C consists of the HHS Overpayment Secured Claims against CAH 5. |
| CAH 5 Class 2 | CAH 5 Class 2 consists of all Priority Non-Tax Claims against CAH 5. |
| CAH 5 Class 3A | CAH 5 Class 3A consists of all Convenience Claims against CAH 5. |
| CAH 5 Class 3B | CAH 5 Class 3B consists of all General Unsecured Claims against CAH 5. |

| | |
|---|---|
| CAH 5 Class 3C | CAH 5 Class 3C consists of the HHI General Unsecured Claim against CAH 5. |
| CAH 5 Class 4 | CAH 5 Class 4 consists of all Old Equity Interests in CAH 5. |

### 3.07   *CAH 6 Plan*.

| | |
|---|---|
| CAH 6 Class 1A | CAH 6 Class 1A consists of the First Liberty Bank Secured Claim against CAH 6. |
| CAH 6 Class 1B | CAH 6 Class 1B consists of the DFP, LLC Secured Claim against CAH 6. |
| CAH 6 Class 1C | CAH 6 Class 1C consists of the Fidelity Security Life Insurance Co. Secured Claim against CAH 6. |
| CAH 6 Class 1D | CAH 6 Class 1D consists of the Larry Arthur Secured Claim against CAH 6. |
| CAH 6 Class 1E | CAH 6 Class 1E consists of the Richard Jones Secured Claim against CAH 6. |
| CAH 6 Class 1F | CAH 6 Class 1F consists of the Rosalia Hall Secured Claim against CAH 6. |
| CAH 6 Class 1G | CAH 6 Class 1G consists of the Sun Finance Inc. Secured Claim against CAH 6. |
| CAH 6 Class 1H | CAH 6 Class 1H consists of the HHS Overpayment Secured Claims against CAH 6. |
| CAH 6 Class 3A | CAH 6 Class 3A consists of all Convenience Claims against CAH 6. |
| CAH 6 Class 3B | CAH 6 Class 3B consists of all General Unsecured Claims against CAH 6. |
| CAH 6 Class 3C | CAH 6 Class 3C consists of the HHI General Unsecured Claim against CAH 6. |
| CAH 6 Class 3D | CAH 6 Class 3D consists of the General Unsecured Claim OF CAROJOTO against CAH 6. |
| CAH 6 Class 4 | CAH 6 Class 4 consists of all Old Equity Interests in CAH 6. |

### 3.08   *CAH 7 Plan*.

| | |
|---|---|
| CAH 7 Class 1A | CAH 7 Class 1A consists of the Gemino Secured Claim against CAH 7. |

| | |
|---|---|
| CAH 7 Class 1B | CAH 7 Class 1B consists of the HHS Overpayment Secured Claims against CAH 7. |
| CAH 7 Class 3A | CAH 7 Class 3A consists of all Convenience Claims against CAH 7. |
| CAH 7 Class 3B | CAH 7 Class 3B consists of all General Unsecured Claims against CAH 7. |
| CAH 7 Class 3C | CAH 7 Class 3C consists of the HHI General Unsecured Claim against CAH 7. |
| CAH 7 Class 4 | CAH 7 Class 4 consists of all Old Equity Interests in CAH 7. |

### 3.09    *CAH 9 Plan*.

| | |
|---|---|
| CAH 9 Class 1A | CAH 9 Class 1A consists of the Gemino Secured Claim against CAH 9. |
| CAH 9 Class 1B | CAH 9 Class 1B consists of the HHI Secured Claim against CAH 9. |
| CAH 9 Class 1C | CAH 9 Class 1C consists of the HHS Overpayment Secured Claims against CAH 9. |
| CAH 9 Class 3A | CAH 9 Class 3A consists of all Convenience Claims against CAH 9. |
| CAH 9 Class 3B | CAH 9 Class 3B consists of all General Unsecured Claims against CAH 9. |
| CAH 9 Class 3C | CAH 9 Class 3C consists of the HHI General Unsecured Claim against CAH 9. |
| CAH 9 Class 4 | CAH 9 Class 4 consists of all Old Equity Interests in CAH 9. |

### 3.10    *CAH 10 Plan*.

| | |
|---|---|
| CAH 10 Class 1A | CAH 10 Class 1A consists of the Gemino Secured Claim against CAH 10. |
| CAH 10 Class 1B | CAH 10 Class 1B consists of the HHI Secured Claim against CAH 10. |
| CAH 10 Class 1C | CAH 10 Class 1C consists of the DMA Secured Claims against CAH 10. |
| CAH 10 Class 1D | CAH 10 Class 1D consists of the Shelco, Inc. Secured Claims against CAH 10. |

| | |
|---|---|
| CAH 10 Class 3A | CAH 10 Class 3A consists of all Convenience Claims against CAH 10. |
| CAH 10 Class 3B | CAH 10 Class 3B consists of all General Unsecured Claims against CAH 10. |
| CAH 10 Class 3C | CAH 10 Class 3C consists of the HHI General Unsecured Claim against CAH 10. |
| CAH 10 Class 4 | CAH 10 Class 4 consists of all Old Equity Interests in CAH 10. |

### 3.11    *CAH 11 Plan*.

| | |
|---|---|
| CAH 11 Class 1A | CAH 11 Class 1A consists of the Gemino Secured Claim against CAH 11. |
| CAH 11 Class 1B | CAH 11 Class 1B consists of the CFG Community Bank Secured Claim against CAH 11. |
| CAH 11 Class 1C | CAH 11 Class 1C consists of the HHI Secured Claim against CAH 11. |
| CAH 11 Class 1D | CAH 11 Class 1D consists of the HHS Overpayment Secured Claims against CAH 11. |
| CAH 11 Class 3A | CAH 11 Class 3A consists of all Convenience Claims against CAH 11. |
| CAH 11 Class 3B | CAH 11Class 3B consists of all General Unsecured Claims against CAH 11. |
| CAH 11 Class 3C | CAH 11Class 3C consists of the HHI General Unsecured Claim against CAH 11. |
| CAH 11 Class 4 | CAH 11Class 4 consists of all Old Equity Interests in CAH 11. |

### 3.12    *CAH 12 Plan*.

| | |
|---|---|
| CAH 12 Class 1A | CAH 12 Class 1A consists of the Gemino Secured Claim against CAH 12. |
| CAH 12 Class 1B | CAH 12 Class 1D consists of the HHS Overpayment Secured Claims against CAH 12. |
| CAH 12 Class 3A | CAH 12 Class 3A consists of all Convenience Claims against CAH 12. |
| CAH 12 Class 3B | CAH 12 Class 3B consists of all General Unsecured Claims against CAH 12. |

CAH 12 Class 3C                    CAH 12 Class 3C consists of the HHI General Unsecured Claim
                                  against CAH 12.

CAH 12 Class 4                     CAH 12 Class 4 consists of all Old Equity Interests in CAH 12.

### 3.13    CAH 16 Plan.

CAH 16 Class 1A                    CAH 16 Class 1A consists of the Gemino Secured Claim against
                                  CAH 16.

CAH 16 Class 1B                    CAH 16 Class 1B consists of the HHS Overpayment Secured
                                  Claims against CAH 16.

CAH 16 Class 1C                    CAH 16 Class 1C consists of the Bank of Commerce & Trust
                                  Co. Secured Claims against CAH 16.

CAH 16 Class 1D                    CAH 16 Class 1D consists of the M&T Bank Secured Claims
                                  against CAH 16.

CAH 16 Class 1E                    CAH 16 Class 1E consists of the Winthrop Secured Claim
                                  against CAH 16.

CAH 16 Class 3A                    CAH 16 Class 3A consists of all Convenience Claims against
                                  CAH 16.

CAH 16 Class 3B                    CAH 16 Class 3B consists of all General Unsecured Claims
                                  against CAH 16.

CAH 16 Class 3C                    CAH 16 Class 3C consists of the HHI General Unsecured Claim
                                  against CAH 16.

CAH 16 Class 4                     CAH 16 Class 4 consists of all Old Equity Interests in CAH 16.

## ARTICLE IV.

## IDENTIFICATION OF IMPAIRED CLASSES OF CLAIMS AND EQUITY INTERESTS

**4.01    Unimpaired Classes of Claims**.  Classes described in this Section are not
impaired under the respective Plans:

### HMC Plan:

HMC Class 4 (Old Equity Interests)
HMC Class 1G (Commerce Bank Secured Claim)
HMC Class 1H (Ally Financial Secured Claim)

### CAH 1 Plan:

CAH 1 Class 4 (Old Equity Interests)

19

**CAH 2 Plan:**

CAH 2 Class 4 (Old Equity Interests)

**CAH 3 Plan:**

CAH 3 Class 4 (Old Equity Interests)

**CAH 4 Plan:**

CAH 4 Class 4 (Old Equity Interests)

**CAH 5 Plan:**

CAH 5 Class 4 (Old Equity Interests)

**CAH 6 Plan:**

CAH 6 Class 4 (Old Equity Interests)

**CAH 7 Plan:**

CAH 7 Class 4 (Old Equity Interests)

**CAH 9 Plan:**

CAH 9 Class 4 (Old Equity Interests)

**CAH 10 Plan:**

CAH 10 Class 4 (Old Equity Interests)

**CAH 11 Plan:**

CAH 11 Class 4 (Old Equity Interests)

**CAH 12 Plan:**

CAH 12 Class 4 (Old Equity Interests)

**CAH 16 Plan:**

CAH 16 Class 1C (Bank of Commerce & Trust Co. Secured Claim)
CAH 16 Class 4 (Old Equity Interests)


*4.02*   *Impaired Classes of Claims and Equity Interests*.  Classes described in
this Section are impaired under this Plan:

**HMC Plan:**

HMC Class 1A (Gemino Secured Claim)
HMC Class 1B (HHI Secured Claim)
HMC Class 1C (Sun Finance Secured Claim)
HMC Class 1D (Fidelity Security Life Insurance Co. Secured Claim)
HMC Class 1E (Rosalia Hall Secured Claim)
HMC Class 1F (Richard Jones Secured Claim)
HMC Class 1G (DFP, LLC Secured Claim)
HMC Class 1J  (Larry Arthur Secured Claim)
HMC Class 3A (Convenience Claims)
HMC Class 3B (General Unsecured Claims)
HMC Class 3C (HHI Unsecured Claims)

**CAH 1 Plan**:

CAH 1 Class 1A (Citizens Secured Claim)
CAH 1 Class 1B (HHI Secured Claim)
CAH 1 Class 1C (HHS Overpayment Secured Claim)
CAH 1 Class 1D (DMA Secured Claim)
CAH 1 Class 3A (Convenience Claims)
CAH 1 Class 3B (General Unsecured Claims)
CAH 1 Class 3C (HHI Unsecured Claims)

**CAH 2 Plan:**

CAH 2 Class 1A (Gemino Secured Claim)
CAH 2 Class 1B (HHI Secured Claim)
CAH 2 Class 1C (HHS Overpayment Secured Claim)
CAH 2 Class 3A (Convenience Claims)
CAH 2 Class 3B (General Unsecured Claims)
CAH 2 Class 3C (HHI Unsecured Claims)

**CAH 3 Plan:**

CAH 3 Class 1A (Gemino Secured Claim)
CAH 3 Class 1B (HHI Secured Claim)
CAH 3 Class 1C (HHS Overpayment Secured Claim)
CAH 3 Class 3A (Convenience Claims)
CAH 3 Class 3B (General Unsecured Claims)
CAH 3 Class 3C (HHI Unsecured Claims)

**CAH 4 Plan:**

CAH 4 Class 1A (Midland Secured Claim)
CAH 4 Class 1B (HHS Overpayment Secured Claim)
CAH 4 Class 3A (Convenience Claims)
CAH 4 Class 3B (General Unsecured Claims)

CAH 4 Class 3C (HHI Unsecured Claims)

**CAH 5 Plan:**

CAH 5 Class 1A (Gemino Secured Claim)
CAH 5 Class 1B (HHI Secured Claim)
CAH 5 Class 1C (HHS Overpayment Secured Claim)
CAH 5 Class 3A (Convenience Claims)
CAH 5 Class 3B (General Unsecured Claims)
CAH 5 Class 3C (HHI Unsecured Claims)

**CAH 6 Plan:**

CAH 6 Class 1A (First Liberty Bank Secured Claim)
CAH 6 Class 1B (DFP, LLC Secured Claim)
CAH 6 Class 1C (Fidelity Security Life Insurance Co. Secured Claim)
CAH 6 Class 1D (Larry Arthur Secured Claim)
CAH 6 Class 1E (Richard Jones Secured Claim)
CAH 6 Class 1F (Rosalia Hall Secured Claim)
CAH 6 Class 1G (Sun Finance Inc. Secured Claim)
CAH 6 Class 1H (HHS Overpayment Secured Claim)
CAH 6 Class 3A (Convenience Claims)
CAH 6 Class 3B (General Unsecured Claims)
CAH 6 Class 3C (HHI Unsecured Claims)
CAH 6 Class 3D (CAROJOTO Unsecured Claims)

**CAH 7 Plan:**

CAH 7 Class 1A (Gemino Secured Claim)
CAH 7 Class 1B (HHS Overpayment Secured Claim)
CAH 7 Class 3A (Convenience Claims)
CAH 7 Class 3B (General Unsecured Claims)
CAH 7 Class 3C (HHI Unsecured Claims)

**CAH 9 Plan:**

CAH 9 Class 1A (Gemino Secured Claim)
CAH 9 Class 1B (HHI Secured Claim)
CAH 9 Class 1C (HHS Overpayment Secured Claim)
CAH 9 Class 3A (Convenience Claims)
CAH 9 Class 3B (General Unsecured Claims)
CAH 9 Class 3C (HHI Unsecured Claims)

**CAH 10 Plan:**

CAH 10 Class 1A (Gemino Secured Claim)
CAH 10 Class 1B (HHI Secured Claim)
CAH 10 Class 1C (DMA Secured Claims)

CAH 10 Class 1D (Shelco, Inc. Secured Claim)
CAH 10 Class 3A (Convenience Claims)
CAH 10 Class 3B (General Unsecured Claims)
CAH 10 Class 3C (HHI Unsecured Claims)

**CAH 11 Plan:**

CAH 11 Class 1A (Gemino Secured Claim)
CAH 11 Class 1B (CFG Community Bank Secured Claim)
CAH 11 Class 1C (HHI Secured Claim)
CAH 11 Class 1D (HHS Overpayment Secured Claim)
CAH 11 Class 3A (Convenience Claims)
CAH 11 Class 3B (General Unsecured Claims)
CAH 11 Class 3C (HHI Unsecured Claims)

**CAH 12 Plan:**

CAH 12 Class 1A (Gemino Secured Claim)
CAH 12 Class 1B (HHS Overpayment Secured Claim)
CAH 12 Class 3A (Convenience Claims)
CAH 12 Class 3B (General Unsecured Claims)
CAH 12 Class 3C (HHI Unsecured Claims)

**CAH 16 Plan:**

CAH 16 Class 1A (Gemino Secured Claim)
CAH 16 Class 1B (HHS Overpayment Secured Claim)
CAH 16 Class 1D (M&T Bank Secured Claim)
CAH 16 Class 1E (Winthrop Secured Claim)
CAH 16 Class 3A (Convenience Claims)
CAH 16 Class 3B (General Unsecured Claims)
CAH 16 Class 3C (HHI Unsecured Claims)

## ARTICLE V.

## TREATMENT OF CLASSES OF CLAIMS AND EQUITY INTERESTS

## HMC PLAN

### 5.01    *HMC Class 1A (Gemino Secured Claim)*.

(a)    <u>Impairment; Voting</u>.  HMC Class 1A Claim is impaired by the Plan.  The creditor in HMC Class 1A is entitled to vote the amount of the Allowed Gemino Secured Claim to accept or reject the Plan.

(b)    <u>Treatment</u>.  On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized HMC shall commence payment on the obligations comprising HMC Class 1A, pursuant to the Plan.  The maturity date of the Gemino Loan will be

extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7% or such other rate as may be agreed to by the parties or approved by the Bankruptcy Court, but, in such event, the rate shall be no more favorable than the highest rate approved for a non-Insider secured lender.  All covenants of the Gemino Loan remain unaltered by the HMC bankruptcy case and Gemino shall retain its Prepetition liens.

### 5.02    HMC Class 1B (HHI Secured Claim).

(a)    Impairment; Voting.  HMC Class 1B Claim is impaired by the Plan.  The creditor in HMC Class 1B is entitled to vote the amount of the Allowed HHI Secured Claim as allocated to HMC pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)    Treatment.  On the Effective Date, or as soon thereafter as is reasonably practicable, and pursuant to the terms of the HHI Settlement Agreement, Reorganized HMC shall commence payment on the obligations comprising HMC Class 1B, pursuant to the Plan, and HHI shall retain its Prepetition liens and shall be granted certain additional liens and security interests in HMC.  The HHI Secured Claim will be paid in monthly installments of principal and interest amortized over an eight-year term with interest accruing at a fixed rate of 6% without prepayment penalties. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans) as detailed in Section 11.13 below.

### 5.03    HMC Class 1C (Sun Finance Secured Claim).

(a)    Impairment; Voting.   HMC Class 1C Claim is impaired by the Plan.  The creditor in HMC Class 1C is entitled to vote the amount of the Allowed Sun Finance Secured Claim to accept or reject the Plan.

(b)    Treatment.   On the Effective Date, Reorganized HMC shall commence payment on the obligations comprising HMC Class 1C, pursuant to the Plan.  The maturity date of Sun Finance Loan will be extended to five years from Effective Date of Plan with principal and interest paid monthly and amortized over the five year term with interest accruing at a fixed rate of 6%.  All provisions for default rate under the Sun Finance Loan will be excised.  All other covenants of the Sun Finance Loan will remain unaltered and Sun Finance will retain its Prepetition liens to the full scope and extent as they existed before the Petition Date.  In exchange for the payment of $1.00 by HMC to the holder of the HMC Class 1C Sun Finance Secured Claim, such holder shall agree to reduce the amount of the Allowed Sun Finance Secured Claim from $1.25 million to $1 million effective December 31, 2012.   The holder of the Sun Finance Secured Claim shall be granted, upon the Effective Date, (i) 250,000 shares of common stock in Reorganized HMC and (ii) new warrants exercisable for the purchase of 1,250,000 shares of common stock in Reorganized HMC and on the same terms and conditions as those certain warrants issued to the holder of the Sun Finance Secured Claim before the Petition Date and which may be exercised at Sun Finance's discretion.

**5.04     HMC Class 1D (Fidelity Security Life Insurance Co. Secured Claim)**.

(a)     <u>Impairment; Voting</u>.  HMC Class 1D Claim is impaired by the Plan.  The creditor in HMC Class 1D is entitled to vote the amount of the Allowed Fidelity Security Life Insurance Co. Secured Claim to accept or reject the Plan.

(b)     <u>Treatment</u>.   The holder of the HMC Class 1D Claim holds a Secured Claim against CAH 6 which Claim shall be paid and satisfied in full by CAH 6 through the treatment afforded CAH 6 Class 1C and will not paid be paid by HMC, but will retain its lien on the equity interests in CAH 4 and CAH 6.

**5.05     HMC Class 1E (Rosalia Hall Secured Claim)**.

(a)     <u>Impairment; Voting</u>.  HMC Class 1E Claim is impaired by the Plan.  The creditor in HMC Class 1E is entitled to vote the amount of the Allowed Rosalia Hall Secured Claim to accept or reject the Plan.

(b)     <u>Treatment</u>.   The holder of the HMC Class 1E Claim holds a Secured Claim against CAH 6 which Claim shall be paid and satisfied in full by CAH 6 through the treatment afforded CAH 6 Class 1F and will not paid be paid by HMC, but will retain its lien on the equity interests in CAH 4 and CAH 6.

**5.06     HMC Class 1F (Richard Jones Secured Claim)**.

(a)     <u>Impairment; Voting</u>.  HMC Class 1F Claim is impaired by the Plan.  The creditor in HMC Class 1F is entitled to vote the amount of the Allowed Richard Jones Secured Claim to accept or reject the Plan.

(b)     <u>Treatment</u>.   The holder of the HMC Class 1F Claim holds a Secured Claim against CAH 6 which Claim shall be paid and satisfied in full by CAH 6 through the treatment afforded CAH 6 Class 1E and will not paid be paid by HMC, but will retain its lien on the equity interests in CAH 4 and CAH 6.

**5.07     HMC Class 1G (Commerce Bank Secured Claim)**.

(a)     <u>Impairment; Voting</u>.  HMC Class 1G Claim is unimpaired by the Plan.  Each holder of HMC Class 1G Claim is conclusively presumed to accept the Plan.

(b)     <u>Treatment</u>.   The holder of the HMC Class 1G Claim will be paid pursuant to its agreement with HMC and retain its security interest in its Collateral.  HMC's obligations under the loan documents shall be unaltered by this Plan; provided however, that any technical default under any *ipso facto* clause relating to the filing of the Chapter 11 Cases shall be waived.

**5.08     HMC Class 1H (Ally Financial Secured Claim)**.

(a)     <u>Impairment; Voting</u>.  HMC Class 1H Claim is unimpaired by the Plan.  Each holder of HMC Class 1I Claim is conclusively presumed to accept the Plan.

(b)   Treatment.  The holder of the HMC Class 1H Claim will be paid pursuant to its agreement with HMC and retain its security interest in its Collateral. HMC's obligations under the loan documents shall be unaltered by this Plan; provided however, that any technical default under any *ipso facto* clause relating to the filing of the Chapter 11 Cases shall be waived.

### 5.09   HMC Class 1I (DFP, LLC Secured Claim).

(a)   Impairment; Voting.  HMC Class 1I Claim is impaired by the Plan. The creditor in HMC Class 1I is entitled to vote the amount of the Allowed DFP, LLC Secured Claim to accept or reject the Plan.

(b)   Treatment.  The holder of the HMC Class 1I Claim holds a Secured Claim against CAH 6 which Claim shall be paid and satisfied in full by CAH 6 through the treatment afforded CAH 6 Class 1B and will not paid be paid by HMC, but will retain its lien on the equity interests in CAH 4 and CAH 6.

### 5.10   HMC Class 1J (Larry Arthur Secured Claim).

(a)   Impairment; Voting.  HMC Class 1J Claim is impaired by the Plan. The creditor in HMC Class 1J is entitled to vote the amount of the Allowed Larry Arthur Secured Claim to accept or reject the Plan.

(b)   Treatment.  The holder of the HMC Class 1J Claim holds a Secured Claim against CAH 6 which Claim shall be paid and satisfied in full by CAH 6 through the treatment afforded CAH 6 Class 1D and will not paid be paid by HMC, but will retain its lien on the equity interests in CAH 4 and CAH 6.

### 5.11   HMC Class 3A (Convenience Claims).

(a)   Impairment; Voting.   HMC Class 3A is impaired by the Plan. Each holder of an Allowed HMC Class 3A Claim is entitled to vote to accept or reject the Plan.

(b)   Treatment.  Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against HMC in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against HMC in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000.  Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim:   OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Earnout Rights.  Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

### 5.12    HMC Class 3B (General Unsecured Claims).

(a)    Impairment; Voting.    HMC Class 3B is impaired by the Plan. Each General Unsecured Creditor in HMC Class 3B with an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.    Each holder of an Allowed General Unsecured Claim in HMC Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the Reorganized Debtor on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Earnout Rights.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this HMC Class 3B and make an election as a member of this Class.

(c)    Tort Claims.    All Tort Claims are Disputed Claims.    Any Tort Claim as to which a proof of Claim was timely filed in the Chapter 11 Cases will be determined and liquidated either in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action is pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceedings as the same may be approved by order of the Bankruptcy Court.    The Debtor, however, reserves the right to seek estimation of any and all Tort Claims in a court or courts of competent jurisdiction.    The Debtor also reserves the right to object to Tort Claims which include punitive damages in the underlying claim as disallowable penalties under the Bankruptcy Code.    To the extent that a Tort Claim is determined and liquidated pursuant to a final, non-appealable judgment in such a tribunal or in any such alternative dispute resolution or similar proceeding, such Tort Claim, subject to the following paragraph, shall be deemed an Allowed General Unsecured Claim in such liquidated amount and satisfied in accordance with the treatment specified in HMC Class 3B for holders of General Unsecured Claims.

To the extent that any holder of a Tort Claim has recourse to any insurance policy (in excess of the Debtor's deductible amounts) issued to or for the benefit of the Debtor, the holder of such Claim must first, to the satisfaction of the Debtor or the Reorganized Debtor, use its best efforts to collect its Allowed Claims from the Insurance Carrier.    Any remaining unpaid portion of such Tort Claim shall be treated as an Allowed General Unsecured Claim. Any liquidated and determined Tort Claim shall be the obligation of, and satisfied by, any applicable insurance agreement providing coverage for the Tort Claim.    Any Tort Claim within the deductible amount shall be asserted solely against the Debtor of Reorganized Debtor whether OPTION 1 or OPTION 2 treatment is selected by the holder of such Tort Claim, but in either event not against any Insurance Carrier.

### 5.13    *HMC Class 3C (HHI General Unsecured Claim)*.

(a)    <u>Impairment; Voting</u>.  HMC Class 3C is impaired by the Plan.  The creditor in HMC Class 3C is entitled to vote the amount of its Allowed HHI General Unsecured Claim as allocated to HMC pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)    <u>Treatment</u>.  On the Effective Date, and pursuant to the terms of the HHI Settlement Agreement (as described in greater detail in Section 11.13 below), HHI will receive, in full satisfaction of its Allowed HHI General Unsecured Claim: (i) Series B Preferred Stock with comparable economic rights to Series A Preferred Stock (and with the same priority for any distributions, based on their preferred stock ownership, from the Debtors) and (ii) Series C Preferred Stock. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans).

### 5.14    *HMC Class 4 (Old Equity Interests)*.

(a)    <u>Impairment; Voting</u>.  HMC Class 4 is unimpaired by the Plan. Each holder of HMC Class 4 Equity Interest is conclusively presumed to accept the Plan.

(b)    <u>Treatment</u>.  All members of HMC Class 4 Equity Interests shall retain such interest after the Effective Date, provided, however, that no holder of such HMC Class 4 Equity Interests shall receive any distribution under the Plan until all Class 1 Earnout Rights and Class 2 Earnout Rights shall have been redeemed in full.

## <u>CAH 1 PLAN</u>

### 5.15    *CAH 1 Class 1A (Citizens Secured Claim)*.

(a)    <u>Impairment; Voting</u>.  CAH 1 Class 1A Claim is impaired by the Plan.  The creditor in CAH 1 Class 1A is entitled to vote the amount of the Allowed Citizens Secured Claim to accept or reject the Plan.

(b)    <u>Treatment</u>.    On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 1 shall commence monthly payments of principal and interest with respect to the obligations comprising CAH 1 Class 1A based on a 20-year amortization following the Effective Date with interest payable at an adjustable rate (adjusted as of the first day of each calendar quarter) equal to the Wall Street Journal Prime Rate plus 1.5% - but which interest rate will not rise above 8.5% or fall below 6.25%.  Citizens shall retain its Prepetition lien and the maturity date of the Citizens Loan will be extended to the earlier of:  (i) 4 years from the Effective Date of the Plan or (ii) the date or replacement of the hospital securing CAH 1 Class 1A's liens.  The Citizens Loan shall be further modified to remove any provisions allowing default rates of interest.  All other covenants of the Citizens Loan remain unaltered by the CAH 1 bankruptcy case.

### 5.16    *CAH 1 Class 1B (HHI Secured Claim)*.

(a)     <u>Impairment; Voting</u>.  CAH 1 Class 1B Claim is impaired by the Plan.  The creditor in CAH 1 Class 1B is entitled to vote the amount of the Allowed HHI Secured Claim as allocated to CAH 1 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)     <u>Treatment</u>.  On the Effective Date, or as soon thereafter as is reasonably practicable, and pursuant to the terms of the HHI Settlement Agreement, Reorganized CAH 1 shall commence payment on the obligations comprising CAH 1 Class 1B, pursuant to the Plan, and HHI shall retain its Prepetition liens and shall be granted certain additional liens and security interests in CAH 1.  The HHI Secured Claim will be paid in monthly installments of principal and interest amortized over an eight-year term with interest accruing at a fixed rate of 6% without prepayment penalties. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans) as detailed in Section 11.13 below.

### 5.17    *CAH 1 Class 1C (HHS Overpayment Secured Claim)*.

(a)     <u>Impairment; Voting</u>.  CAH 1 Class 1C Claim is impaired by the Plan.  The creditor in CAH 1 Class 1C is entitled to vote the amount of the Allowed HHS Overpayment Secured Claim to accept or reject the Plan.

(b)     <u>Treatment</u>.  The CAH 1 HHS Overpayment Secured Claim consists of the Claims of HHS with respect to various prior fiscal years for the alleged or agreed overpayment in reimbursements by CMS to the Debtor for Medicare services provided by the Debtor.  For fiscal years prior to 2011, HHS' Claims were subject to voluntary ERP payment plans.  Since the Petition Date, the Debtor has filed its cost report for fiscal year 2011.  Upon and after the Effective Date, Reorganized CAH 1 will make payments on the prepetition ERPs with interest as set by applicable regulations such that the Debtor shall complete such prepetition ERPs within the agreed time period.  Any payments made or recoupments effectuated by HHS will be applied against the amounts owed under the prepetition ERP.  With respect to the portion of the CAH 1 Class 1C Claim which pertains to amounts from fiscal years not currently subject to a prepetition ERP, Reorganized CAH 1 shall have commenced and will continue after the Effective Date to pay such Claim from future Medicare Accounts Receivable in equal monthly installments with interest fixed at a rate per HHS regulations based on the date of the filing of the applicable cost report under an ERP agreed to by HHS.  Provided the Debtor or Reorganized CAH 1 shall be in compliance with such ERPs, HHS shall not offset or recoup from future Medicare Accounts Receivable amounts in excess of the accumulated monthly payments due under the ERP.  Attached as Schedule 8.1 to the Disclosure Statement is a listing of such Claims for each Debtor, the respective amounts of each Claim as of June 30, 2012, and, with respect to existing ERPs, the applicable interest rate and the remaining term as of June 30, 2012 under each existing ERP.  To the extent an ERP has been paid in full during the pendency of the Bankruptcy Case, such Claim is listed as having been satisfied on Schedule 8.1.  The Plan shall not prohibit or affect HHS' rights to conduct an audit or assert a higher amount owing by the Debtor as a consequence of such audit.  The amounts set forth on Schedule 8.1 shall be deemed allowed and

not subject to further objection by the Debtor or Reorganized Debtor; provided, however, that the Debtor reserves the right to object to any additional amounts that may be asserted as the result of an audit within sixty-three (63) days of such Claim being asserted.  Any such dispute regarding additional amounts shall be a Claim for purposes of the Court's retention of jurisdiction, but the Debtor's right to object to such additional amounts shall not be subject to the time limits contained in Section 8.02.

As soon as practicable after the Effective Date, HHS agrees to pay the applicable Debtor any cost-report settlement, retro-lump sum payment, or other similar payment, that, due to federal regulations, was not payable on an interim basis to the Debtors as a consequence of the existing Chapter 11 Cases.  The amounts of such payments are set forth on Schedule 8.1 of the Disclosure Statement.

The applicable Debtor and HHS have agreed to enter into ERPs for any current Medicare overpayment for fiscal year 2012 pursuant to and on the terms of existing federal regulations and to forbear from adjusting reimbursement rates to recoup such amounts though rate adjustments.

HHS' agreement to the terms of this Plan is expressly conditioned upon the Debtor's agreement not to sell the Debtors' hospitals in these pending Chapter 11 Cases.

### 5.18    *CAH 1 Class 1D (DMA Secured Claim)*.

(a)    <u>Impairment; Voting</u>.    CAH 1 Class 1D Claim is impaired by the Plan.  The creditor in CAH 1 Class 1D is entitled to vote the amount of the Allowed DMA Secured Claim to accept or reject the Plan.

(b)    <u>Treatment</u>.  The Allowed amount of the CAH 1 Class D Claim is $20,237.00 and will be paid without objection from DMA in accordance with an extended repayment plan over 36 months at 5% simple interest in regular monthly amounts by recoupment from future Medicaid payments or by direct payment in full of any monthly shortfall and in accordance with the Plan

### 5.19    *CAH 1 Class 3A (Convenience Claims)*.

(a)    <u>Impairment; Voting</u>.  CAH 1 Class 3A is impaired by the Plan. Each holder of an Allowed CAH 1Class 3A Claim is entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>.  Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 1 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 1 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000.  Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim:    <u>OPTION 1</u> – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or <u>OPTION 2</u> – payment in full of its Allowed Convenience Claim in the form of Class 1 Earnout Rights.  Holders of Allowed Convenience Claims will be deemed to

have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

**5.20   *CAH 1 Class 3B (General Unsecured Claims)*.**

(a)   Impairment; Voting.   CAH 1 Class 3B is impaired by the Plan. Each General Unsecured Creditor in CAH 1 Class 3B with an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)   Treatment.   Each holder of an Allowed General Unsecured Claim in CAH 1 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution comprised of its Ratable Proportion of $164,027 to be distributed by the Reorganized Debtor on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Earnout Rights.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 1 Class 3B and make an election as a member of this Class.

(c)   Tort Claims.   All Tort Claims are Disputed Claims.   Any Tort Claim as to which a proof of Claim was timely filed in the Chapter 11 Cases will be determined and liquidated either in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action is pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceedings as the same may be approved by order of the Bankruptcy Court.   The Debtor, however, reserves the right to seek estimation of any and all Tort Claims in a court or courts of competent jurisdiction.   The Debtor also reserves the right to object to Tort Claims which include punitive damages in the underlying claim as disallowable penalties under the Bankruptcy Code.   To the extent that a Tort Claim is determined and liquidated pursuant to a final, non-appealable judgment in such a tribunal or in any such alternative dispute resolution or similar proceeding, such Tort Claim, subject to the following paragraph, shall be deemed an Allowed General Unsecured Claim in such liquidated amount and satisfied in accordance with the treatment specified as CAH 1 Class 3B for holders of General Unsecured Claims.

To the extent that any holder of a Tort Claim has recourse to any insurance policy (in excess of the Debtor's deductible amounts) issued to or for the benefit of the Debtor, the holder of such Claim must first, to the satisfaction of the Debtor or the Reorganized Debtor, use its best efforts to collect its Allowed Claims from the Insurance Carrier.   Any remaining unpaid portion of such Tort Claim shall be treated as an Allowed General Unsecured Claim. Any liquidated and determined Tort Claim shall be the obligation of, and satisfied by, any applicable insurance agreement providing coverage for the Tort Claim.   Any Tort Claim within the deductible amount shall be asserted solely against the Debtor of Reorganized Debtor whether

31

OPTION 1 or OPTION 2 treatment is selected by the holder of such Tort Claim, but in either event not against any Insurance Carrier.

### 5.21   *CAH 1 Class 3C (HHI General Unsecured Claim)*.

(a)   <u>Impairment; Voting</u>.   CAH 1 Class 3C is impaired by the Plan. The creditor in CAH 1 Class 3C is entitled to vote the amount of its Allowed HHI General Unsecured Claim as allocated to CAH 1 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)   <u>Treatment</u>.   On the Effective Date, and pursuant to the terms of the HHI Settlement Agreement (as described in greater detail in Section 11.13 below), HHI will receive, in full satisfaction of its Allowed HHI General Unsecured Claim: (i) Series B Preferred Stock with comparable economic rights to Series A Preferred Stock (and with the same priority for any distributions, based on their preferred stock ownership, from the Debtors) and (ii) Series C Preferred Stock. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans).

### 5.22   *CAH 1 Class 4 (Old Equity Interests)*.

(a)   <u>Impairment; Voting</u>.   CAH 1 Class 4 is unimpaired by the Plan. Each holder of CAH 1Class 4 Equity Interest is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)   <u>Treatment</u>.   CAH 1 Class 4 Equity Interests shall remain unaffected by the Plan.

**CAH 2 PLAN**

### 5.23   *CAH 2 Class 1A (Gemino Secured Claim)*.

(a)   <u>Impairment; Voting</u>.   CAH 2 Class 1A Claim is impaired by the Plan.   The creditor in CAH 2 Class 1A is entitled to vote the amount of the Allowed Gemino Secured Claim to accept or reject the Plan.

(b)   <u>Treatment</u>.   On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 2 shall commence payment on the obligations comprising CAH 2 Class 1A, pursuant to the Plan.   The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7% or such other rate as may be agreed to by the parties or approved by the Bankruptcy Court, but, in such event, the rate shall be no more favorable than the highest rate approved for a non-Insider secured lender.   All covenants of the Gemino Loan remain unaltered by the CAH 2 bankruptcy case and Gemino shall retain its Prepetition liens.

### 5.24    *CAH 2 Class 1B (HHI Secured Claim)*.

(a)      Impairment; Voting.  CAH 2 Class 1B Claim is impaired by the Plan.  The creditor in CAH 2 Class 1B is entitled to vote the amount of the Allowed HHI Secured Claim as allocated to CAH 2 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)      Treatment.  On the Effective Date, or as soon thereafter as is reasonably practicable, and pursuant to the terms of the HHI Settlement Agreement, Reorganized CAH 2 shall commence payment on the obligations comprising CAH 2 Class 1B, pursuant to the Plan, and HHI shall retain its Prepetition liens and shall be granted certain additional liens and security interests in CAH 2.  The HHI Secured Claim will be paid in monthly installments of principal and interest amortized over an eight-year term with interest accruing at a fixed rate of 6% without prepayment penalties. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans) as detailed in Section 11.13 below.

### 5.25    *CAH 2 Class 1C (HHS Overpayment Secured Claim)*.

(a)      Impairment; Voting.  CAH 2 Class 1C Claim is impaired by the Plan.  The creditor in CAH 2 Class 1C is entitled to vote the amount of the Allowed HHS Overpayment Secured Claim to accept or reject the Plan.

(b)      Treatment.  The CAH 2 HHS Overpayment Secured Claim consists of the Claims of HHS with respect to various prior fiscal years for the alleged or agreed overpayment in reimbursements by CMS to the Debtor for Medicare services provided by the Debtor.  For fiscal years prior to 2011, HHS' Claims were subject to voluntary ERP payment plans.  Since the Petition Date, the Debtor has filed its cost report for fiscal year 2011.  Upon and after the Effective Date, Reorganized CAH 2 will make payments on the prepetition ERPs with interest as set by applicable regulations such that the Debtor shall complete such prepetition ERPs within the agreed time period.  Any payments made or recoupments effectuated by HHS will be applied against the amounts owed under the prepetition ERP.  With respect to the portion of the CAH 2 Class 1C Claim which pertains to amounts from fiscal years not currently subject to a prepetition ERP, Reorganized CAH 2 shall have commenced and will continue after the Effective Date to pay such Claim from future Medicare Accounts Receivable in equal monthly installments with interest fixed at a rate per HHS regulations based on the date of the filing of the applicable cost report under an ERP agreed to by HHS.  Provided the Debtor or Reorganized CAH 2 shall be in compliance with such ERPs, HHS shall not offset or recoup from future Medicare Accounts Receivable amounts in excess of the accumulated monthly payments due under the ERP.  Attached as Schedule 8.1 to the Disclosure Statement is a listing of such Claims for each Debtor, the respective amounts of each Claim as of June 30, 2012, and, with respect to existing ERPs, the applicable interest rate and the remaining term as of June 30, 2012 under each existing ERP.  To the extent an ERP has been paid in full during the pendency of the Bankruptcy Case, such Claim is listed as having been satisfied on Schedule 8.1.  The Plan shall not prohibit or affect HHS' rights to conduct an audit or assert a higher amount owing by the Debtor as a consequence of such audit.  The amounts set forth on Schedule 8.1 shall be deemed allowed and

not subject to further objection by the Debtor or Reorganized Debtor; provided, however, that the Debtor reserves the right to object to any additional amounts that may be asserted as the result of an audit within sixty-three (63) days of such Claim being asserted. Any such dispute regarding additional amounts shall be a Claim for purposes of the Court's retention of jurisdiction, but the Debtor's right to object to such additional amounts shall not be subject to the time limits contained in Section 8.02.

As soon as practicable after the Effective Date, HHS agrees to pay the applicable Debtor any cost-report settlement, retro-lump sum payment, or other similar payment, that, due to federal regulations, was not payable on an interim basis to the Debtors as a consequence of the existing Chapter 11 Cases. The amounts of such payments are set forth on Schedule 8.1 of the Disclosure Statement.

The applicable Debtor and HHS have agreed to enter into ERPs for any current Medicare overpayment for fiscal year 2012 pursuant to and on the terms of existing federal regulations and to forbear from adjusting reimbursement rates to recoup such amounts though rate adjustments.

HHS' agreement to the terms of this Plan is expressly conditioned upon the Debtor's agreement not to sell the Debtors' hospitals in these pending Chapter 11 Cases.

### 5.26    *CAH 2 Class 3A (Convenience Claims)*.

(a)    <u>Impairment; Voting</u>. CAH 2 Class 3A is impaired by the Plan. Each holder of an Allowed CAH 2 Class 3A Claim is entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>. Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 2 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 2 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000. Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim:   <u>OPTION 1</u> – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or <u>OPTION 2</u> – payment in full of its Allowed Convenience Claim in the form of Class 1 Earnout Rights. Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

### 5.27    *CAH 2 Class 3B (General Unsecured Claims)*.

(a)    <u>Impairment; Voting</u>. CAH 2 Class 3B is impaired by the Plan. Each General Unsecured Creditor in CAH 2 Class 3B with an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>. Each holder of an Allowed General Unsecured Claim in CAH 2 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: <u>OPTION 1</u> – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by

the Reorganized Debtor on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Earnout Rights.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 2 Class 3B and make an election as a member of this Class.

(c)     Tort Claims.   All Tort Claims are Disputed Claims.  Any Tort Claim as to which a proof of Claim was timely filed in the Chapter 11 Cases will be determined and liquidated either in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action is pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceedings as the same may be approved by order of the Bankruptcy Court.   The Debtor, however, reserves the right to seek estimation of any and all Tort Claims in a court or courts of competent jurisdiction.   The Debtor also reserves the right to object to Tort Claims which include punitive damages in the underlying claim as disallowable penalties under the Bankruptcy Code.   To the extent that a Tort Claim is determined and liquidated pursuant to a final, non-appealable judgment in such a tribunal or in any such alternative dispute resolution or similar proceeding, such Tort Claim, subject to the following paragraph, shall be deemed an Allowed General Unsecured Claim in such liquidated amount and satisfied in accordance with the treatment specified in CAH 2 Class 3B for holders of General Unsecured Claims.

To the extent that any holder of a Tort Claim has recourse to any insurance policy (in excess of the Debtor's deductible amounts) issued to or for the benefit of the Debtor, the holder of such Claim must first, to the satisfaction of the Debtor or the Reorganized Debtor, use its best efforts to collect its Allowed Claims from the Insurance Carrier.   Any remaining unpaid portion of such Tort Claim shall be treated as an Allowed General Unsecured Claim. Any liquidated and determined Tort Claim shall be the obligation of, and satisfied by, any applicable insurance agreement providing coverage for the Tort Claim.  Any Tort Claim within the deductible amount shall be asserted solely against the Debtor of Reorganized Debtor whether OPTION 1 or OPTION 2 treatment is selected by the holder of such Tort Claim, but in either event not against any Insurance Carrier.

### 5.28    *CAH 2 Class 3C (HHI General Unsecured Claim)*.

(a)     Impairment; Voting.   CAH 2 Class 3C is impaired by the Plan. The creditor in CAH 2 Class 3C is entitled to vote the amount of its Allowed HHI General Unsecured Claim as allocated to CAH 2 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)     Treatment.   On the Effective Date, and pursuant to the terms of the HHI Settlement Agreement (as described in greater detail in Section 11.13 below), HHI will receive, in full satisfaction of its Allowed HHI General Unsecured Claim:  (i) Series B Preferred

Stock with comparable economic rights to Series A Preferred Stock (and with the same priority for any distributions, based on their preferred stock ownership, from the Debtors) and (ii) Series C Preferred Stock. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans).

### 5.29    *CAH 2 Class 4 (Old Equity Interests)*.

(a)    <u>Impairment; Voting</u>.    CAH 2 Class 4 is unimpaired by the Plan. Each holder of CAH 2 Class 4 Equity Interest is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>.    CAH 2 Class 4 Equity Interests shall remain unaffected by the Plan.

## CAH 3 PLAN

### 5.30    *CAH 3 Class 1A (Gemino Secured Claim)*.

(a)    <u>Impairment; Voting</u>.    CAH 3 Class 1A Claim is impaired by the Plan.  The creditor in CAH 3 Class 1A is entitled to vote the amount of the Allowed Gemino Secured Claim to accept or reject the Plan.

(b)    <u>Treatment</u>.    On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 3 shall commence payment on the obligations comprising CAH 3 Class 1A, pursuant to the Plan.  The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7% or such other rate as may be agreed to by the parties or approved by the Bankruptcy Court, but, in such event, the rate shall be no more favorable than the highest rate approved for a non-Insider secured lender.  All covenants of the Gemino Loan remain unaltered by the CAH 3 bankruptcy case and Gemino shall retain its Prepetition liens.

### 5.31    *CAH 3 Class 1B (HHI Secured Claim)*.

(a)    <u>Impairment; Voting</u>.    CAH 3 Class 1B Claim is impaired by the Plan.  The creditor in CAH 3 Class 1B is entitled to vote the amount of the Allowed HHI Secured Claim as allocated to CAH 3 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)    <u>Treatment</u>.    On the Effective Date, or as soon thereafter as is reasonably practicable, and pursuant to the terms of the HHI Settlement Agreement, Reorganized CAH 3 shall commence payment on the obligations comprising CAH 3 Class 1B, pursuant to the Plan, and HHI shall retain its Prepetition liens and shall be granted certain additional liens and security interests in CAH 3.  The HHI Secured Claim will be paid in monthly installments of principal and interest amortized over an eight-year term with interest accruing at a fixed rate of 6% without prepayment penalties. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's

agreement to support, and vote all of its Claims to accept, the Plans) as detailed in Section 11.13 below.

### 5.32   *CAH 3 Class 1C (HHS Overpayment Secured Claim)*.

(a)     Impairment; Voting.   CAH 3 Class 1C Claim is impaired by the Plan.   The creditor in CAH 3 Class 1C is entitled to vote the amount of the Allowed HHS Overpayment Secured Claim to accept or reject the Plan.

(b)     Treatment.   The CAH 3 HHS Overpayment Secured Claim consists of the Claims of HHS with respect to various prior fiscal years for the alleged or agreed overpayment in reimbursements by CMS to the Debtor for Medicare services provided by the Debtor.   For fiscal years prior to 2011, HHS' Claims were subject to voluntary ERP payment plans.   Since the Petition Date, the Debtor has filed its cost report for fiscal year 2011.   Upon and after the Effective Date, Reorganized CAH 3 will make payments on the prepetition ERPs with interest as set by applicable regulations such that the Debtor shall complete such prepetition ERPs within the agreed time period.   Any payments made or recoupments effectuated by HHS will be applied against the amounts owed under the prepetition ERP.   With respect to the portion of the CAH 3 Class 1C Claim which pertains to amounts from fiscal years not currently subject to a prepetition ERP, Reorganized CAH 3 shall have commenced and will continue after the Effective Date to pay such Claim from future Medicare Accounts Receivable in equal monthly installments with interest fixed at a rate per HHS regulations based on the date of the filing of the applicable cost report under an ERP agreed to by HHS.   Provided the Debtor or Reorganized CAH 3 shall be in compliance with such ERPs, HHS shall not offset or recoup from future Medicare Accounts Receivable amounts in excess of the accumulated monthly payments due under the ERP.   Attached as Schedule 8.1 to the Disclosure Statement is a listing of such Claims for each Debtor, the respective amounts of each Claim as of June 30, 2012, and, with respect to existing ERPs, the applicable interest rate and the remaining term as of June 30, 2012 under each existing ERP.   To the extent an ERP has been paid in full during the pendency of the Bankruptcy Case, such Claim is listed as having been satisfied on Schedule 8.1.   The Plan shall not prohibit or affect HHS' rights to conduct an audit or assert a higher amount owing by the Debtor as a consequence of such audit.   The amounts set forth on Schedule 8.1 shall be deemed allowed and not subject to further objection by the Debtor or Reorganized Debtor; provided, however, that the Debtor reserves the right to object to any additional amounts that may be asserted as the result of an audit within sixty-three (63) days of such Claim being asserted.   Any such dispute regarding additional amounts shall be a Claim for purposes of the Court's retention of jurisdiction, but the Debtor's right to object to such additional amounts shall not be subject to the time limits contained in Section 8.02.

As soon as practicable after the Effective Date, HHS agrees to pay the applicable Debtor any cost-report settlement, retro-lump sum payment, or other similar payment, that, due to federal regulations, was not payable on an interim basis to the Debtors as a consequence of the existing Chapter 11 Cases.   The amounts of such payments are set forth on Schedule 8.1 of the Disclosure Statement.

The applicable Debtor and HHS have agreed to enter into ERPs for any current Medicare overpayment for fiscal year 2012 pursuant to and on the terms of existing

federal regulations and to forbear from adjusting reimbursement rates to recoup such amounts though rate adjustments.

HHS' agreement to the terms of this Plan is expressly conditioned upon the Debtor's agreement not to sell the Debtors' hospitals in these pending Chapter 11 Cases.

### 5.33    *CAH 3 Class 3A (Convenience Claims)*.

(a)    Impairment; Voting.    CAH 3 Class 3A is impaired by the Plan. Each holder of an Allowed CAH 3 Class 3A Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.    Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 3 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 3 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000.  Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim:   OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Earnout Rights.   Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

### 5.34    *CAH 3 Class 3B (General Unsecured Claims)*.

(a)    Impairment; Voting.    CAH 3 Class 3B is impaired by the Plan. Each General Unsecured Creditor in CAH 3 Class 3B with an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.    Each holder of an Allowed General Unsecured Claim in CAH 3 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution comprised of its Ratable Proportion of $54,676 to be distributed by the Reorganized Debtors on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Earnout Rights.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 3 Class 3B and make an election as a member of this Class.

(c)    Tort Claims.    All Tort Claims are Disputed Claims.  Any Tort Claim as to which a proof of Claim was timely filed in the Chapter 11 Cases will be determined and liquidated either in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action is pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or

similar proceedings as the same may be approved by order of the Bankruptcy Court.   The Debtor, however, reserves the right to seek estimation of any and all Tort Claims in a court or courts of competent jurisdiction.   The Debtor also reserves the right to object to Tort Claims which include punitive damages in the underlying claim as disallowable penalties under the Bankruptcy Code.   To the extent that a Tort Claim is determined and liquidated pursuant to a final, non-appealable judgment in such a tribunal or in any such alternative dispute resolution or similar proceeding, such Tort Claim, subject to the following paragraph, shall be deemed an Allowed General Unsecured Claim in such liquidated amount and satisfied in accordance with the treatment specified in CAH 3 Class 3B for holders of General Unsecured Claims.

To the extent that any holder of a Tort Claim has recourse to any insurance policy (in excess of the Debtor's deductible amounts) issued to or for the benefit of the Debtor, the holder of such Claim must first, to the satisfaction of the Debtor or the Reorganized Debtor, use its best efforts to collect its Allowed Claims from the Insurance Carrier.   Any remaining unpaid portion of such Tort Claim shall be treated as an Allowed General Unsecured Claim. Any liquidated and determined Tort Claim shall be the obligation of, and satisfied by, any applicable insurance agreement providing coverage for the Tort Claim.   Any Tort Claim within the deductible amount shall be asserted solely against the Debtor of Reorganized Debtor whether OPTION 1 or OPTION 2 treatment is selected by the holder of such Tort Claim, but in either event not against any Insurance Carrier.

### 5.35   *CAH 3 Class 3C (HHI General Unsecured Claim)*.

(a)      Impairment; Voting.   CAH 3 Class 3C is impaired by the Plan. The creditor in CAH 3 Class 3C is entitled to vote the amount of its Allowed HHI General Unsecured Claim as allocated to CAH 3 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)      Treatment.   On the Effective Date, and pursuant to the terms of the HHI Settlement Agreement (as described in greater detail in Section 11.13 below), HHI will receive, in full satisfaction of its Allowed HHI General Unsecured Claim: (i) Series B Preferred Stock with comparable economic rights to Series A Preferred Stock (and with the same priority for any distributions, based on their preferred stock ownership, from the Debtors) and (ii) Series C Preferred Stock. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans).

### 5.36   *CAH 3 Class 4 (Old Equity Interests)*.

(a)      Impairment; Voting.   CAH 3 Class 4 is unimpaired by the Plan. Each holder of CAH 3 Class 4 Equity Interest is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)      Treatment.    CAH 3 Class 4 Equity Interests shall remain unaffected by the Plan.

**CAH 4 PLAN**

### 5.37    *CAH 4 Class 1A (Midland Secured Claim)*.

(a)    <u>Impairment; Voting</u>.    CAH 4 Class 1A Claim is impaired by the Plan.  The creditor in CAH 4 Class 1A is entitled to vote the amount of the Allowed Midland Secured Claim to accept or reject the Plan.

(b)    <u>Treatment</u>.    On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 4 will continue making monthly payments pursuant to the existing loan documents.  Except as provided herein, the Midland Loan shall remain unaltered by the CAH 4 bankruptcy case, and Midland shall retain its Prepetition lien.  Midland's claim for attorneys' fees and expenses pursuant to Section 506(b) of the Bankruptcy Code shall be allowed in the amount of $17,500 to be paid on the Effective Date.  Midland's loan agreement shall be amended to include the following provision:

> <u>Lender's Costs and Expenses</u>.  Borrower will pay to Lender, on demand, all reasonable costs and expenses which Lender incurs to enforce the Loan Documents, protect Lender's interests under the Loan Documents, or to otherwise collect any amounts due under the Loan Documents, including, without limitation, reasonable attorneys' fees and expenses, irrespective of whether litigation is commenced, and, if litigation is commenced, all court costs and reasonable expenses of Lender in connection therewith. Borrower's obligation to pay all such costs and expenses of Lender includes any appellate proceedings (irrespective of which party prevailed at the trial court or at the lower appellate court), any bankruptcy case or other insolvency proceedings, and any arbitration or other proceedings.

Additionally, Midland will release a portion of the real property subject to Midland's real property mortgage legally described as follows:

> A tract of land located in the South Half of the Northeast Quarter (5/2 NE/4) of Section 31, Township 18 North, Range 7 East of the Indian Base and Meridian, Creek County, State of Oklahoma, according to the U. S. Government Survey thereof, lying East of the existing State Highway right of way more particularly described as follows, to-wit Commencing at the Southwest Corner of said 5/2 NE/4 of Section 31; thence N89°27'49"E along the South line of said S/2 NE/4 a distance of 1375.52 feet; thence N00°32[1]11"W a distance of 170.00 feet; thence N00°32' 11"W a distance of 426.00 feet; thence N89°27'49"E a distance of 218.64 feet thence N00°32[1]11"W a distance of 119.00 feet to the true point of beginning; thence N 00°32'11" W a distance of 26.00 feet, thence 589°27'49"W a distance of 300.00 feet; thence S00°32[1]11"E a

distance of 26.00 feet; thence N89°27'49"E a distance of 300.00
Feet to the point of beginning.

CAH 4 shall be entitled to file a copy of the Confirmation Order in the real
estate records to document the release of mortgage contemplated herein.  However, CAH 4 may
request Midland to execute a partial release of mortgage in a form for filing with the register of
deeds and mutually acceptable to CAH 4 and Midland to memorialize the release contemplated
herein.

CAH 4 shall execute and deliver to Midland within thirty days after the
Effective Date a leasehold mortgage in that certain Master Lease Agreement by and between
CAH Acquisition Company #4, Inc. and the Drumright Memorial Hospital Foundation, as
amended, in a form acceptable to Midland.

Furthermore, pursuant to the Midland Loan and the Regulatory
Agreement, CAH 4 must fund that certain mortgage funding reserve account.  HUD has filed a
separate unsecured claim for the deficiency balance under the mortgage funding reserve account.
CAH 4 will fully fund that reserve account in one or more payments on or before December 31,
2015 in full satisfaction of any alleged deficiency which shall be deemed a cure of any default
under the Regulatory Agreement.  HUD shall not be entitled to separate relief from the treatment
of Midland for the mortgage reserve account.  To avoid any doubt, nothing contained in the Joint
Plan shall alter or amend the Regulatory Agreement.  At or prior to the Confirmation Hearing,
the Debtors shall provide a written management agreement by and between HMC and CAH 4 for
review and approval by HUD in conformity with the Regulatory Agreement.  In addition, on or
before the date of the Confirmation Hearing, the Debtors will endeavor to obtain agreement
regarding a date certain by which certain audits of the CAH 4 facility will be completed in
compliance with the Regulatory Agreement.

### 5.38    *CAH 4 Class 1B (HHS Overpayment Secured Claim)*.

(a)      <u>Impairment; Voting</u>.  CAH 4 Class 1B Claim is impaired by the
Plan.  The creditor in CAH 4 Class 1B is entitled to vote the amount of the Allowed HHS
Overpayment Secured Claim to accept or reject the Plan.

(b)      <u>Treatment</u>.    The CAH 4 HHS Overpayment Secured Claim
consists of the Claims of HHS with respect to various prior fiscal years for the alleged or agreed
overpayment in reimbursements by CMS to the Debtor for Medicare services provided by the
Debtor.  For fiscal years prior to 2011, HHS' Claims were subject to voluntary ERP payment
plans.  Since the Petition Date, the Debtor has filed its cost report for fiscal year 2011.  Upon and
after the Effective Date, Reorganized CAH 4 will make payments on the prepetition ERPs with
interest as set by applicable regulations such that the Debtor shall complete such prepetition
ERPs within the agreed time period.  Any payments made or recoupments effectuated by HHS
will be applied against the amounts owed under the prepetition ERP.  With respect to the portion
of the CAH 4 Class 1B Claim which pertains to amounts from fiscal years not currently subject
to a prepetition ERP, Reorganized CAH 4 shall have commenced and will continue after the
Effective Date to pay such Claim from future Medicare Accounts Receivable in equal monthly
installments with interest fixed at a rate per HHS regulations based on the date of the filing of the

41

applicable cost report under an ERP agreed to by HHS.  Provided the Debtor or Reorganized
CAH 4 shall be in compliance with such ERPs, HHS shall not offset or recoup from future
Medicare Accounts Receivable amounts in excess of the accumulated monthly payments due
under the ERP.  Attached as Schedule 8.1 to the Disclosure Statement is a listing of such Claims
for each Debtor, the respective amounts of each Claim as of June 30, 2012, and, with respect to
existing ERPs, the applicable interest rate and the remaining term as of June 30, 2012 under each
existing ERP.  To the extent an ERP has been paid in full during the pendency of the Bankruptcy
Case, such Claim is listed as having been satisfied on Schedule 8.1.  The Plan shall not prohibit
or affect HHS' rights to conduct an audit or assert a higher amount owing by the Debtor as a
consequence of such audit.  The amounts set forth on Schedule 8.1 shall be deemed allowed and
not subject to further objection by the Debtor or Reorganized Debtor; provided, however, that the
Debtor reserves the right to object to any additional amounts that may be asserted as the result of
an audit within sixty-three (63) days of such Claim being asserted.  Any such dispute regarding
additional amounts shall be a Claim for purposes of the Court's retention of jurisdiction, but the
Debtor's right to object to such additional amounts shall not be subject to the time limits
contained in Section 8.02.

As soon as practicable after the Effective Date, HHS agrees to pay the
applicable Debtor any cost-report settlement, retro-lump sum payment, or other similar
payment, that, due to federal regulations, was not payable on an interim basis to the Debtors as a
consequence of the existing Chapter 11 Cases.  The amounts of such payments are set forth on
Schedule 8.1 of the Disclosure Statement.

The applicable Debtor and HHS have agreed to enter into ERPs for any
current Medicare overpayment for fiscal year 2012 pursuant to and on the terms of existing
federal regulations and to forbear from adjusting reimbursement rates to recoup such amounts
though rate adjustments.

HHS' agreement to the terms of this Plan is expressly conditioned upon
the Debtor's agreement not to sell the Debtors' hospitals in these pending Chapter 11 Cases.

### 5.39    *CAH 4 Class 3A (Convenience Claims)*.

(a)    <u>Impairment; Voting</u>.  CAH 4 Class 3A is impaired by the Plan.
Each holder of an Allowed CAH 4 Class 3A Claim is entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>.  Holders of Allowed Convenience Claims are (i) any
Allowed General Unsecured Claim against CAH 4 in an amount less than or equal to $1,000; and
(ii) any Allowed General Unsecured Claim against CAH 4 in an amount from $1,001 up to and
including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated
as an Allowed Convenience Claim to be Allowed in the amount of $1,000.  Each holder of an
Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience
Claim:   <u>OPTION 1</u> – cash on the Effective Date in the amount of 50% of its Allowed
Convenience Claim; or <u>OPTION 2</u> – payment in full of its Allowed Convenience Claim in the
form of Class 1 Earnout Rights.  Holders of Allowed Convenience Claims will be deemed to
have elected OPTION 1 if they do not return a timely ballot making an election by the deadline
set by the Court for voting on the approval of this Plan.

### 5.40    *CAH 4 Class 3B (General Unsecured Claims)*.

(a)    <u>Impairment; Voting</u>.  CAH 4 Class 3B is impaired by the Plan. Each General Unsecured Creditor in CAH 4 Class 3B with an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>.  Each holder of an Allowed General Unsecured Claim in CAH 4 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: <u>OPTION 1</u> – a distribution comprised of its Ratable Proportion of $82,013 to be distributed by the Reorganized Debtor on the Distribution Date; or <u>OPTION 2</u> – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Earnout Rights.

Holders of Allowed General Unsecured Claims will be deemed to have elected <u>OPTION 1</u> if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 4 Class 3B and make an election as a member of this Class.

(c)    <u>Tort Claims</u>.  All Tort Claims are Disputed Claims.  Any Tort Claim as to which a proof of Claim was timely filed in the Chapter 11 Cases will be determined and liquidated either in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action is pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceedings as the same may be approved by order of the Bankruptcy Court.  The Debtor, however, reserves the right to seek estimation of any and all Tort Claims in a court or courts of competent jurisdiction.  The Debtor also reserves the right to object to Tort Claims which include punitive damages in the underlying claim as disallowable penalties under the Bankruptcy Code.  To the extent that a Tort Claim is determined and liquidated pursuant to a final, non-appealable judgment in such a tribunal or in any such alternative dispute resolution or similar proceeding, such Tort Claim, subject to the following paragraph, shall be deemed an Allowed General Unsecured Claim in such liquidated amount and satisfied in accordance with the treatment specified in CAH 4 Class 3B for holders of General Unsecured Claims.

To the extent that any holder of a Tort Claim has recourse to any insurance policy (in excess of the Debtor's deductible amounts) issued to or for the benefit of the Debtor, the holder of such Claim must first, to the satisfaction of the Debtor or the Reorganized Debtor, use its best efforts to collect its Allowed Claims from the Insurance Carrier.  Any remaining unpaid portion of such Tort Claim shall be treated as an Allowed General Unsecured Claim.  Any liquidated and determined Tort Claim shall be the obligation of, and satisfied by, any applicable insurance agreement providing coverage for the Tort Claim.  Any Tort Claim within the deductible amount shall be asserted solely against the Debtor of Reorganized Debtor whether OPTION 1 or OPTION 2 treatment is selected by the holder of such Tort Claim, but in either event not against any Insurance Carrier.

### 5.41    *CAH 4 Class 3C (HHI General Unsecured Claim)*.

(a)    <u>Impairment; Voting</u>.  CAH 4 Class 3C is impaired by the Plan. The creditor in CAH 4 Class 3C is entitled to vote the amount of its Allowed HHI General Unsecured Claim as allocated to CAH 4 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)    <u>Treatment</u>.  On the Effective Date, and pursuant to the terms of the HHI Settlement Agreement (as described in greater detail in Section 11.13 below), HHI will receive, in full satisfaction of its Allowed HHI General Unsecured Claim: (i) Series B Preferred Stock with comparable economic rights to Series A Preferred Stock (and with the same priority for any distributions, based on their preferred stock ownership, from the Debtors) and (ii) Series C Preferred Stock. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans).

### 5.42    *CAH 4 Class 4 (Old Equity Interests)*.

(a)    <u>Impairment; Voting</u>.  CAH 4 Class 4 is unimpaired by the Plan. Each holder of CAH 4 Class 4 Equity Interest is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>.    CAH 4 Class 4 Equity Interests shall remain unaffected by the Plan.

## CAH 5 PLAN

### 5.43    *CAH 5 Class 1A (Gemino Secured Claim)*.

(a)    <u>Impairment; Voting</u>.  CAH 5 Class 1A Claim is impaired by the Plan.  The creditor in CAH 5 Class 1A is entitled to vote the amount of the Allowed Gemino Secured Claim to accept or reject the Plan.

(b)    <u>Treatment</u>.  On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 5 shall commence payment on the obligations comprising CAH 5 Class 1A, pursuant to the Plan.  The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7% or such other rate as may be agreed to by the parties or approved by the Bankruptcy Court, but, in such event, the rate shall be no more favorable than the highest rate approved for a non-Insider secured lender.  All covenants of the Gemino Loan remain unaltered by the CAH 5 bankruptcy case and Gemino shall retain its Prepetition liens.

### 5.44    *CAH 5 Class 1B (HHI Secured Claim)*.

(a)    <u>Impairment; Voting</u>.  CAH 5 Class 1B Claim is impaired by the Plan.  The creditor in CAH 5 Class 1B is entitled to vote the amount of the Allowed HHI

Secured Claim as allocated to CAH 5 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)   Treatment.   On the Effective Date, or as soon thereafter as is reasonably practicable, and pursuant to the terms of the HHI Settlement Agreement, Reorganized CAH 5 shall commence payment on the obligations comprising CAH 5 Class 1B, pursuant to the Plan, and HHI shall retain its Prepetition liens and shall be granted certain additional liens and security interests in CAH 5.  The HHI Secured Claim will be paid in monthly installments of principal and interest amortized over an eight-year term with interest accruing at a fixed rate of 6% without prepayment penalties. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans) as detailed in Section 11.13 below.

### 5.45   *CAH 5 Class 1C (HHS Overpayment Secured Claim)*.

(a)   Impairment; Voting.   CAH 5 Class 1C Claim is impaired by the Plan.  The creditor in CAH 5 Class 1C is entitled to vote the amount of the Allowed HHS Overpayment Secured Claim to accept or reject the Plan.

(b)   Treatment.   The CAH 5 HHS Overpayment Secured Claim consists of the Claims of HHS with respect to various prior fiscal years for the alleged or agreed overpayment in reimbursements by CMS to the Debtor for Medicare services provided by the Debtor.  For fiscal years prior to 2011, HHS' Claims were subject to voluntary ERP payment plans.  Since the Petition Date, the Debtor has filed its cost report for fiscal year 2011.  Upon and after the Effective Date, Reorganized CAH 5 will make payments on the prepetition ERPs with interest as set by applicable regulations such that the Debtor shall complete such prepetition ERPs within the agreed time period.  Any payments made or recoupments effectuated by HHS will be applied against the amounts owed under the prepetition ERP.  With respect to the portion of the CAH 5 Class 1C Claim which pertains to amounts from fiscal years not currently subject to a prepetition ERP, Reorganized CAH 5 shall have commenced and will continue after the Effective Date to pay such Claim from future Medicare Accounts Receivable in equal monthly installments with interest fixed at a rate per HHS regulations based on the date of the filing of the applicable cost report under an ERP agreed to by HHS.  Provided the Debtor or Reorganized CAH 5 shall be in compliance with such ERPs, HHS shall not offset or recoup from future Medicare Accounts Receivable amounts in excess of the accumulated monthly payments due under the ERP.  Attached as Schedule 8.1 to the Disclosure Statement is a listing of such Claims for each Debtor, the respective amounts of each Claim as of June 30, 2012, and, with respect to existing ERPs, the applicable interest rate and the remaining term as of June 30, 2012 under each existing ERP.  To the extent an ERP has been paid in full during the pendency of the Bankruptcy Case, such Claim is listed as having been satisfied on Schedule 8.1.  The Plan shall not prohibit or affect HHS' rights to conduct an audit or assert a higher amount owing by the Debtor as a consequence of such audit.  The amounts set forth on Schedule 8.1 shall be deemed allowed and not subject to further objection by the Debtor or Reorganized Debtor; provided, however, that the Debtor reserves the right to object to any additional amounts that may be asserted as the result of an audit within sixty-three (63) days of such Claim being asserted.  Any such dispute regarding additional amounts shall be a Claim for purposes of the Court's retention of jurisdiction, but the

Debtor's right to object to such additional amounts shall not be subject to the time limits contained in Section 8.02.

As soon as practicable after the Effective Date, HHS agrees to pay the applicable Debtor any cost-report settlement, retro-lump sum payment, or other similar payment, that, due to federal regulations, was not payable on an interim basis to the Debtors as a consequence of the existing Chapter 11 Cases. The amounts of such payments are set forth on Schedule 8.1 of the Disclosure Statement.

The applicable Debtor and HHS have agreed to enter into ERPs for any current Medicare overpayment for fiscal year 2012 pursuant to and on the terms of existing federal regulations and to forbear from adjusting reimbursement rates to recoup such amounts though rate adjustments.

HHS' agreement to the terms of this Plan is expressly conditioned upon the Debtor's agreement not to sell the Debtors' hospitals in these pending Chapter 11 Cases.

### 5.46    *CAH 5 Class 2 (Priority Non-Tax Claims)*.

(a)    <u>Impairment; Voting</u>.  CAH 5 Class 2 is impaired by the Plan.  Each holder of an Allowed Priority Non-Tax Claim in CAH 5 Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>.  Each holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction of such Claim, payments in twelve equal monthly installments with interest paid at the Federal Judgment Rate, or such other rate as agreed to by the parties or determined by the Bankruptcy Court but in no event greater than the *Till* Rate, in a total amount equal to such Allowed Priority Non-Tax Claim.

### 5.47    *CAH 5 Class 3A (Convenience Claims)*.

(a)    <u>Impairment; Voting</u>.  CAH 5 Class 3A is impaired by the Plan.  Each holder of an Allowed CAH 5 Class 3A Claim is entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>.  Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 5 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 5 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000.  Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim:   <u>OPTION 1</u> – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or <u>OPTION 2</u> – payment in full of its Allowed Convenience Claim in the form of Class 1 Earnout Rights.  Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

46

### 5.48    *CAH 5 Class 3B (General Unsecured Claims)*.

(a)    Impairment; Voting.  CAH 5 Class 3B is impaired by the Plan. Each General Unsecured Creditor in CAH 5 Class 3B with an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  Each holder of an Allowed General Unsecured Claim in CAH 5 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution comprised of its Ratable Proportion of $60,089 to be distributed by the Reorganized Debtor on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Earnout Rights.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 5 Class 3B and make an election as a member of this Class.

(c)    Tort Claims.  All Tort Claims are Disputed Claims.  Any Tort Claim as to which a proof of Claim was timely filed in the Chapter 11 Cases will be determined and liquidated either in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action is pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceedings as the same may be approved by order of the Bankruptcy Court.  The Debtor, however, reserves the right to seek estimation of any and all Tort Claims in a court or courts of competent jurisdiction.  The Debtor also reserves the right to object to Tort Claims which include punitive damages in the underlying claim as disallowable penalties under the Bankruptcy Code.  To the extent that a Tort Claim is determined and liquidated pursuant to a final, non-appealable judgment in such a tribunal or in any such alternative dispute resolution or similar proceeding, such Tort Claim, subject to the following paragraph, shall be deemed an Allowed General Unsecured Claim in such liquidated amount and satisfied in accordance with the treatment specified in CAH 5 Class 3B for holders of General Unsecured Claims.

To the extent that any holder of a Tort Claim has recourse to any insurance policy (in excess of the Debtor's deductible amounts) issued to or for the benefit of the Debtor, the holder of such Claim must first, to the satisfaction of the Debtor or the Reorganized Debtor, use its best efforts to collect its Allowed Claims from the Insurance Carrier.  Any remaining unpaid portion of such Tort Claim shall be treated as an Allowed General Unsecured Claim.  Any liquidated and determined Tort Claim shall be the obligation of, and satisfied by, any applicable insurance agreement providing coverage for the Tort Claim.  Any Tort Claim within the deductible amount shall be asserted solely against the Debtor of Reorganized Debtor whether OPTION 1 or OPTION 2 treatment is selected by the holder of such Tort Claim, but in either event not against any Insurance Carrier.

### 5.49    *CAH 5 Class 3C (HHI General Unsecured Claim)*.

(a)    <u>Impairment; Voting</u>.  CAH 5 Class 3C is impaired by the Plan. The creditor in CAH 5 Class 3C is entitled to vote the amount of its Allowed HHI General Unsecured Claim as allocated to CAH 5 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)    <u>Treatment</u>.  On the Effective Date, and pursuant to the terms of the HHI Settlement Agreement (as described in greater detail in Section 11.13 below), HHI will receive, in full satisfaction of its Allowed HHI General Unsecured Claim: (i) Series B Preferred Stock with comparable economic rights to Series A Preferred Stock (and with the same priority for any distributions, based on their preferred stock ownership, from the Debtors) and (ii) Series C Preferred Stock. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans).

### 5.50    *CAH 5 Class 4 (Old Equity Interests)*.

(a)    <u>Impairment; Voting</u>.  CAH 5 Class 4 is unimpaired by the Plan. Each holder of CAH 5 Class 4 Equity Interest is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>.   CAH 5 Class 4 Equity Interests shall remain unaffected by the Plan.

## CAH 6 PLAN

### 5.51    *CAH 6 Class 1A (First Liberty Bank Secured Claim)*.

(a)    <u>Impairment; Voting</u>.  CAH 6 Class 1A Claim is impaired by the Plan.  The creditor in CAH 6 Class 1A is entitled to vote the amount of the Allowed First Liberty Bank Secured Claim to accept or reject the Plan.

(b)    <u>Treatment</u>.  On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 6 shall commence payment on the obligations comprising CAH 6 Class 1A, pursuant to the Plan.  The maturity date of the First Liberty Bank Loan will be extended to two years past the current maturity date, with monthly payments of principal and interest based on a reamortization over the extended term with interest payable at an adjustable rate (adjusted as of the first day of each calendar quarter) equal to the Wall Street Journal Prime Rate plus 1.5%   but which interest rate will not rise above 8.5% or fall below 6.25%.  The provision in the loan documents for a default rate of interest will be removed.  All other terms of the First Liberty Bank Loan remain unaltered by the CAH 6 bankruptcy case and First Liberty Bank shall retain its Prepetition liens.

### 5.52    *CAH 6 Class 1B (DFP, LLC Secured Claim)*.

(a)    Impairment; Voting.  CAH 6 Class 1B Claim is impaired by the Plan.  The creditor in CAH 6 Class 1B is entitled to vote the amount of the Allowed DFP, LLC Secured Claim to accept or reject the Plan.

(b)    Treatment.  On the Effective Date, Reorganized CAH 6 shall commence payment on the obligations comprising CAH 6 Class 1B, pursuant to the Plan.  The maturity date of the DFP, LLC Loan will be extended to five years and eight months from Effective Date of the Plan with eight months of interest-only payments followed by five years of monthly payments of principal and interest based on a 5-year amortization following the initial eight months after the Effective Date with interest payable at a fixed rate of 6%.  All provisions for default rate under the DFP, LLC Loan will be excised.  All other covenants of the DFP, LLC Loan will remain unaltered and the DFP, LLC will retain its Prepetition liens.

### 5.53    *CAH 6 Class 1C (Fidelity Security Life Insurance Co. Secured Claim)*.

(a)    Impairment; Voting.  CAH 6 Class 1C Claim is impaired by the Plan.  The creditor in CAH 6 Class 1C is entitled to vote the amount of the Allowed Fidelity Security Life Insurance Co. Secured Claim to accept or reject the Plan.

(b)    Treatment.  On the Effective Date, Reorganized CAH 6 shall commence payment on the obligations comprising CAH 6 Class 1C, pursuant to the Plan.  The maturity date of the Fidelity Security Life Insurance Co. Loan will be extended to five years and eight months from Effective Date of the Plan with eight months of interest-only payments followed by five years of monthly payments of principal and interest based on a 5-year amortization following the initial eight months after the Effective Date with interest payable at a fixed rate of 6%.  All provisions for default rate under the Fidelity Security Life Insurance Co. Loan will be excised.  All other covenants of the Fidelity Security Life Insurance Co. Loan will remain unaltered and the Fidelity Security Life Insurance Co. will retain its Prepetition liens.

### 5.54    *CAH 6 Class 1D (Larry Arthur Secured Claim)*.

(a)    Impairment; Voting.  CAH 6 Class 1D Claim is impaired by the Plan.  The creditor in CAH 6 Class 1D is entitled to vote the amount of the Allowed Larry Arthur Secured Claim to accept or reject the Plan.

(b)    Treatment.  On the Effective Date, Reorganized CAH 6 shall commence payment on the obligations comprising CAH 6 Class 1D, pursuant to the Plan.  The maturity date of the Larry Arthur Loan will be extended to five years and eight months from Effective Date of the Plan with eight months of interest-only payments followed by five years of monthly payments of principal and interest based on a 5-year amortization following the initial eight months after the Effective Date with interest payable at a fixed rate of 6%.  All provisions for default rate under the Larry Arthur Loan will be excised.  All other covenants of the Larry Arthur Loan will remain unaltered and the Larry Arthur will retain his Prepetition liens.

### 5.55   *CAH 6 Class 1E (Richard Jones Secured Claim)*.

(a)   <u>Impairment; Voting</u>.   CAH 6 Class 1E Claim is impaired by the Plan.   The creditor in CAH 6 Class 1E is entitled to vote the amount of the Allowed Richard Jones Secured Claim to accept or reject the Plan.

(b)   <u>Treatment</u>.   On the Effective Date, Reorganized CAH 6 shall commence payment on the obligations comprising CAH 6 Class 1E, pursuant to the Plan.   The maturity date of the Richard Jones Loan will be extended to five years and eight months from Effective Date of the Plan with eight months of interest-only payments followed by five years of monthly payments of principal and interest based on a 5-year amortization following the initial eight months after the Effective Date with interest payable at a fixed rate of 6%.   All provisions for default rate under the Richard Jones Loan will be excised.   All other covenants of the Richard Jones Loan will remain unaltered and the Richard Jones will retain his Prepetition liens.

### 5.56   *CAH 6 Class 1F (Rosalia Hall Secured Claim)*.

(a)   <u>Impairment; Voting</u>.   CAH 6 Class 1F Claim is impaired by the Plan.   The creditor in CAH 6 Class 1F is entitled to vote the amount of the Allowed Rosalia Hall Secured Claim to accept or reject the Plan.

(b)   <u>Treatment</u>.   On the Effective Date, Reorganized CAH 6 shall commence payment on the obligations comprising CAH 6 Class 1F, pursuant to the Plan.   The maturity date of the Rosalia Hall Loan will be extended to five years and eight months from Effective Date of the Plan with eight months of interest-only payments followed by five years of monthly payments of principal and interest based on a 5-year amortization following the initial eight months after the Effective Date with interest payable at a fixed rate of 6%.   All provisions for default rate under the Rosalia Hall Loan will be excised.   All other covenants of the Rosalia Hall Loan will remain unaltered and the Rosalia Hall will retain her Prepetition liens.

### 5.57   *CAH 6 Class 1G (Sun Finance Inc. Secured Claim)*.

(a)   <u>Impairment; Voting</u>.   CAH 6 Class 1G Claim is impaired by the Plan.   The creditor in CAH 6 Class 1G is entitled to vote the amount of the Allowed Sun Finance Inc. Secured Claim to accept or reject the Plan.

(b)   <u>Treatment</u>.   On the Effective Date, Reorganized CAH 6 shall commence payment on the obligations comprising CAH 6 Class 1G, pursuant to the Plan.   The maturity date of the Allowed Sun Finance Inc. Loan will be extended to five years and eight months from Effective Date of the Plan with eight months of interest-only payments followed by five years of monthly payments of principal and interest based on a 5-year amortization following the initial eight months after the Effective Date with interest payable at a fixed rate of 6%.   All provisions for default rate under the Sun Finance Inc. Loan will be excised. All other covenants of the Allowed Sun Finance Inc. Loan will remain unaltered and the Allowed Sun Finance Inc. will retain its Prepetition liens.

### 5.58    *CAH 6 Class 1H (HHS Overpayment Secured Claim)*.

(a)    Impairment; Voting.    CAH 6 Class 1H Claim is impaired by the Plan.    The creditor in CAH 6 Class 1H is entitled to vote the amount of the Allowed HHS Overpayment Secured Claim to accept or reject the Plan.

(b)    Treatment.    The CAH 6 HHS Overpayment Secured Claim consists of the Claims of HHS with respect to various prior fiscal years for the alleged or agreed overpayment in reimbursements by CMS to the Debtor for Medicare services provided by the Debtor.    For fiscal years prior to 2011, HHS' Claims were subject to voluntary ERP payment plans.    Since the Petition Date, the Debtor has filed its cost report for fiscal year 2011.    Upon and after the Effective Date, Reorganized CAH 6 will make payments on the prepetition ERPs with interest as set by applicable regulations such that the Debtor shall complete such prepetition ERPs within the agreed time period.    Any payments made or recoupments effectuated by HHS will be applied against the amounts owed under the prepetition ERP.    With respect to the portion of the CAH 6 Class 1H Claim which pertains to amounts from fiscal years not currently subject to a prepetition ERP, Reorganized CAH 6 shall have commenced and will continue after the Effective Date to pay such Claim from future Medicare Accounts Receivable in equal monthly installments with interest fixed at a rate per HHS regulations based on the date of the filing of the applicable cost report under an ERP agreed to by HHS.    Provided the Debtor or Reorganized CAH 6 shall be in compliance with such ERPs, HHS shall not offset or recoup from future Medicare Accounts Receivable amounts in excess of the accumulated monthly payments due under the ERP.    Attached as Schedule 8.1 to the Disclosure Statement is a listing of such Claims for each Debtor, the respective amounts of each Claim as of June 30, 2012, and, with respect to existing ERPs, the applicable interest rate and the remaining term as of June 30, 2012 under each existing ERP.    To the extent an ERP has been paid in full during the pendency of the Bankruptcy Case, such Claim is listed as having been satisfied on Schedule 8.1.    The Plan shall not prohibit or affect HHS' rights to conduct an audit or assert a higher amount owing by the Debtor as a consequence of such audit.    The amounts set forth on Schedule 8.1 shall be deemed allowed and not subject to further objection by the Debtor or Reorganized Debtor; provided, however, that the Debtor reserves the right to object to any additional amounts that may be asserted as the result of an audit within sixty-three (63) days of such Claim being asserted.    Any such dispute regarding additional amounts shall be a Claim for purposes of the Court's retention of jurisdiction, but the Debtor's right to object to such additional amounts shall not be subject to the time limits contained in Section 8.02.

As soon as practicable after the Effective Date, HHS agrees to pay the applicable Debtor any cost-report settlement, retro-lump sum payment, or other similar payment, that, due to federal regulations, was not payable on an interim basis to the Debtors as a consequence of the existing Chapter 11 Cases.    The amounts of such payments are set forth on Schedule 8.1 of the Disclosure Statement.

The applicable Debtor and HHS have agreed to enter into ERPs for any current Medicare overpayment for fiscal year 2012 pursuant to and on the terms of existing federal regulations and to forbear from adjusting reimbursement rates to recoup such amounts though rate adjustments.

HHS' agreement to the terms of this Plan is expressly conditioned upon the Debtor's agreement not to sell the Debtors' hospitals in these pending Chapter 11 Cases.

### 5.59    *CAH 6 Class 3A (Convenience Claims)*.

(a)      Impairment; Voting.   CAH 6 Class 3A is impaired by the Plan. Each holder of an Allowed CAH 6 Class 3A Claim is entitled to vote to accept or reject the Plan.

(b)      Treatment.   Holders of Allowed Convenience Claims are any Allowed General Unsecured Claim against CAH 6 in an amount less than or equal to $1,000. Each holder of an Allowed Convenience Claim will receive payment in full of its Allowed Convenience Claim within 30 days of the Effective Date.

### 5.60    *CAH 6 Class 3B (General Unsecured Claims)*.

(a)      Impairment; Voting.   CAH 6 Class 3B is impaired by the Plan. Each General Unsecured Creditor in CAH 6 Class 3B with an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)      Treatment.   Each holder of an Allowed General Unsecured Claim in CAH 6 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution comprised of *pro rata* payments of $32,000 per month for seven months commencing after the second month following the Effective Date until payment of the lesser of (a) $224,000 (in the aggregate) or (b) payment-in-full with interest at the Federal Judgment Rate is completed; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Earnout Rights.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 6 Class 3B and make an election as a member of this Class.

(c)      Tort Claims.   All Tort Claims are Disputed Claims.   Any Tort Claim as to which a proof of Claim was timely filed in the Chapter 11 Cases will be determined and liquidated either in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action is pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceedings as the same may be approved by order of the Bankruptcy Court.   The Debtor, however, reserves the right to seek estimation of any and all Tort Claims in a court or courts of competent jurisdiction.   The Debtor also reserves the right to object to Tort Claims which include punitive damages in the underlying claim as disallowable penalties under the Bankruptcy Code.   To the extent that a Tort Claim is determined and liquidated pursuant to a final, non-appealable judgment in such a tribunal or in any such alternative dispute resolution or similar proceeding, such Tort Claim, subject to the following paragraph, shall be deemed an

52

Allowed General Unsecured Claim in such liquidated amount and satisfied in accordance with the treatment specified in CAH 6 Class 3B for holders of General Unsecured Claims.

To the extent that any holder of a Tort Claim has recourse to any insurance policy (in excess of the Debtor's deductible amounts) issued to or for the benefit of the Debtor, the holder of such Claim must first, to the satisfaction of the Debtor or the Reorganized Debtor, use its best efforts to collect its Allowed Claims from the Insurance Carrier. Any remaining unpaid portion of such Tort Claim shall be treated as an Allowed General Unsecured Claim. Any liquidated and determined Tort Claim shall be the obligation of, and satisfied by, any applicable insurance agreement providing coverage for the Tort Claim. Any Tort Claim within the deductible amount shall be asserted solely against the Debtor of Reorganized Debtor whether OPTION 1 or OPTION 2 treatment is selected by the holder of such Tort Claim, but in either event not against any Insurance Carrier.

### 5.61    CAH 6 Class 3C (HHI General Unsecured Claim).

(a)    Impairment; Voting.  CAH 6 Class 3C is impaired by the Plan. The creditor in CAH 6 Class 3C is entitled to vote the amount of its Allowed HHI General Unsecured Claim as allocated to CAH 6 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)    Treatment.  On the Effective Date, and pursuant to the terms of the HHI Settlement Agreement (as described in greater detail in Section 11.13 below), HHI will receive, in full satisfaction of its Allowed HHI General Unsecured Claim: (i) Series B Preferred Stock with comparable economic rights to Series A Preferred Stock (and with the same priority for any distributions, based on their preferred stock ownership, from the Debtors) and (ii) Series C Preferred Stock. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans).

### 5.62    CAH 6 Class 3D (CAROJOTO General Unsecured Claim).

(a)    Impairment; Voting.  CAH 6 Class 3D is impaired by the Plan. The creditor in CAH 6 Class 3D is entitled to vote the amount of its Allowed General Unsecured Claim to accept or reject the Plan.

(b)    Treatment.  On the Effective Date, Reorganized CAH 6 shall commence payment on the obligations comprising CAH 6 Class 3D, pursuant to the Plan. The maturity date of the CAROJOTO Loan will be extended to five years and eight months from Effective Date of the Plan with monthly payments of principal and interest based on a 5-year amortization following the initial eight months after the Effective Date with interest payable at a fixed rate of 6% to begin eight months after the Effective Date (with no payments of principal or interest to be made to CAROJOTO until such date).

### 5.63    *CAH 6 Class 4 (Old Equity Interests)*.

(a)    Impairment; Voting.  CAH 6 Class 4 is unimpaired by the Plan. Each holder of CAH 6 Class 4 Equity Interest is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    Treatment.   CAH 6 Class 4 Equity Interests shall remain unaffected by the Plan.

## CAH 7 PLAN

### 5.64    *CAH 7 Class 1A (Gemino Secured Claim)*.

(a)    Impairment; Voting.  CAH 7 Class 1A Claim is impaired by the Plan.  The creditor in CAH 7 Class 1A is entitled to vote the amount of the Allowed Gemino Secured Claim to accept or reject the Plan.

(b)    Treatment.   On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 7 shall commence payment on the obligations comprising CAH 7 Class 1A, pursuant to the Plan.  The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7% or such other rate as may be agreed to by the parties or approved by the Bankruptcy Court, but, in such event, the rate shall be no more favorable than the highest rate approved for a non-Insider secured lender.  All covenants of the Gemino Loan remain unaltered by the CAH 7 bankruptcy case and Gemino shall retain its Prepetition liens.

### 5.65    *CAH 7 Class 1B (HHS Overpayment Secured Claim)*.

(a)    Impairment; Voting.  CAH 7 Class 1B Claim is impaired by the Plan.  The creditor in CAH 7 Class 1B is entitled to vote the amount of the Allowed HHS Overpayment Secured Claim to accept or reject the Plan.

(b)    Treatment.   The CAH 7 HHS Overpayment Secured Claim consists of the Claims of HHS with respect to various prior fiscal years for the alleged or agreed overpayment in reimbursements by CMS to the Debtor for Medicare services provided by the Debtor.  For fiscal years prior to 2011, HHS' Claims were subject to voluntary ERP payment plans.  Since the Petition Date, the Debtor has filed its cost report for fiscal year 2011.  Upon and after the Effective Date, Reorganized CAH 7 will make payments on the prepetition ERPs with interest as set by applicable regulations such that the Debtor shall complete such prepetition ERPs within the agreed time period.  Any payments made or recoupments effectuated by HHS will be applied against the amounts owed under the prepetition ERP.  With respect to the portion of the CAH 7 Class 1B Claim which pertains to amounts from fiscal years not currently subject to a prepetition ERP, Reorganized CAH 7 shall have commenced and will continue after the Effective Date to pay such Claim from future Medicare Accounts Receivable in equal monthly installments with interest fixed at a rate per HHS regulations based on the date of the filing of the applicable cost report under an ERP agreed to by HHS.  Provided the Debtor or Reorganized CAH 7 shall be in compliance with such ERPs, HHS shall not offset or recoup from future

Medicare Accounts Receivable amounts in excess of the accumulated monthly payments due under the ERP.  Attached as Schedule 8.1 to the Disclosure Statement is a listing of such Claims for each Debtor, the respective amounts of each Claim as of June 30, 2012, and, with respect to existing ERPs, the applicable interest rate and the remaining term as of June 30, 2012 under each existing ERP.  To the extent an ERP has been paid in full during the pendency of the Bankruptcy Case, such Claim is listed as having been satisfied on Schedule 8.1.  The Plan shall not prohibit or affect HHS' rights to conduct an audit or assert a higher amount owing by the Debtor as a consequence of such audit.  The amounts set forth on Schedule 8.1 shall be deemed allowed and not subject to further objection by the Debtor or Reorganized Debtor; provided, however, that the Debtor reserves the right to object to any additional amounts that may be asserted as the result of an audit within sixty-three (63) days of such Claim being asserted.  Any such dispute regarding additional amounts shall be a Claim for purposes of the Court's retention of jurisdiction, but the Debtor's right to object to such additional amounts shall not be subject to the time limits contained in Section 8.02.

As soon as practicable after the Effective Date, HHS agrees to pay the applicable Debtor any cost-report settlement, retro-lump sum payment, or other similar payment, that, due to federal regulations, was not payable on an interim basis to the Debtors as a consequence of the existing Chapter 11 Cases.  The amounts of such payments are set forth on Schedule 8.1 of the Disclosure Statement.

The applicable Debtor and HHS have agreed to enter into ERPs for any current Medicare overpayment for fiscal year 2012 pursuant to and on the terms of existing federal regulations and to forbear from adjusting reimbursement rates to recoup such amounts though rate adjustments.

HHS' agreement to the terms of this Plan is expressly conditioned upon the Debtor's agreement not to sell the Debtors' hospitals in these pending Chapter 11 Cases.

### 5.66    *CAH 7 Class 3A (Convenience Claims)*.

(a)    Impairment; Voting.  CAH 7 Class 3A is impaired by the Plan. Each holder of an Allowed CAH 7 Class 3A Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 7 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 7 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000.  Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim:  OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Earnout Rights.  Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

### 5.67    *CAH 7 Class 3B (General Unsecured Claims)*.

(a)    Impairment; Voting.    CAH 7 Class 3B is impaired by the Plan. Each General Unsecured Creditor in CAH 7 Class 3B with an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.    Each holder of an Allowed General Unsecured Claim in CAH 7 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the Reorganized Debtor on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Earnout Rights.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 7 Class 3B and make an election as a member of this Class.

(c)    Tort Claims.    All Tort Claims are Disputed Claims.    Any Tort Claim as to which a proof of Claim was timely filed in the Chapter 11 Cases will be determined and liquidated either in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action is pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceedings as the same may be approved by order of the Bankruptcy Court.    The Debtor, however, reserves the right to seek estimation of any and all Tort Claims in a court or courts of competent jurisdiction.    The Debtor also reserves the right to object to Tort Claims which include punitive damages in the underlying claim as disallowable penalties under the Bankruptcy Code.    To the extent that a Tort Claim is determined and liquidated pursuant to a final, non-appealable judgment in such a tribunal or in any such alternative dispute resolution or similar proceeding, such Tort Claim, subject to the following paragraph, shall be deemed an Allowed General Unsecured Claim in such liquidated amount and satisfied in accordance with the treatment specified in CAH 7 Class 3B for holders of General Unsecured Claims.

To the extent that any holder of a Tort Claim has recourse to any insurance policy (in excess of the Debtor's deductible amounts) issued to or for the benefit of the Debtor, the holder of such Claim must first, to the satisfaction of the Debtor or the Reorganized Debtor, use its best efforts to collect its Allowed Claims from the Insurance Carrier.    Any remaining unpaid portion of such Tort Claim shall be treated as an Allowed General Unsecured Claim. Any liquidated and determined Tort Claim shall be the obligation of, and satisfied by, any applicable insurance agreement providing coverage for the Tort Claim.    Any Tort Claim within the deductible amount shall be asserted solely against the Debtor of Reorganized Debtor whether OPTION 1 or OPTION 2 treatment is selected by the holder of such Tort Claim, but in either event not against any Insurance Carrier.

### 5.68    *CAH 7 Class 3C (HHI General Unsecured Claim)*.

(a)    <u>Impairment; Voting</u>.  CAH 7 Class 3C is impaired by the Plan. The creditor in CAH 7 Class 3C is entitled to vote the amount of its Allowed HHI General Unsecured Claim as allocated to CAH 7 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)    <u>Treatment</u>.  On the Effective Date, and pursuant to the terms of the HHI Settlement Agreement (as described in greater detail in Section 11.13 below), HHI will receive, in full satisfaction of its Allowed HHI General Unsecured Claim: (i) Series B Preferred Stock with comparable economic rights to Series A Preferred Stock (and with the same priority for any distributions, based on their preferred stock ownership, from the Debtors) and (ii) Series C Preferred Stock. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans).

### 5.69    *CAH 7 Class 4 (Old Equity Interests)*.

(a)    <u>Impairment; Voting</u>.  CAH 7 Class 4 is unimpaired by the Plan. Each holder of CAH 7 Class 4 Equity Interest is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>.    CAH 7 Class 4 Equity Interests shall remain unaffected by the Plan.

## CAH 9 PLAN

### 5.70    *CAH 9 Class 1A (Gemino Secured Claim)*.

(a)    <u>Impairment; Voting</u>.  CAH 9 Class 1A Claim is impaired by the Plan.  The creditor in CAH 9 Class 1A is entitled to vote the amount of the Allowed Gemino Secured Claim to accept or reject the Plan.

(b)    <u>Treatment</u>.  On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 9 shall commence payment on the obligations comprising CAH 9 Class 1A, pursuant to the Plan.  The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7% or such other rate as may be agreed to by the parties or approved by the Bankruptcy Court, but, in such event, the rate shall be no more favorable than the highest rate approved for a non-Insider secured lender.  All covenants of the Gemino Loan remain unaltered by the CAH 9 bankruptcy case and Gemino shall retain its Prepetition liens.

### 5.71    *CAH 9 Class 1B (HHI Secured Claim)*.

(a)    <u>Impairment; Voting</u>.  CAH 9 Class 1B Claim is impaired by the Plan.  The creditor in CAH 9 Class 1B is entitled to vote the amount of the Allowed HHI

Secured Claim as allocated to CAH 9 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)    Treatment.  On the Effective Date, or as soon thereafter as is reasonably practicable, and pursuant to the terms of the HHI Settlement Agreement, Reorganized CAH 9 shall commence payment on the obligations comprising CAH 9 Class 1B, pursuant to the Plan, and HHI shall retain its Prepetition liens and shall be granted certain additional liens and security interests in CAH 9.  The HHI Secured Claim will be paid in monthly installments of principal and interest amortized over an eight-year term with interest accruing at a fixed rate of 6% without prepayment penalties. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans) as detailed in Section 11.13 below.

### 5.72    CAH 9 Class 1C (HHS Overpayment Secured Claim).

(a)    Impairment; Voting.  CAH 9 Class 1C Claim is impaired by the Plan.  The creditor in CAH 9 Class 1C is entitled to vote the amount of the Allowed HHS Overpayment Secured Claim to accept or reject the Plan.

(b)    Treatment.  The CAH 9 HHS Overpayment Secured Claim consists of the Claims of HHS with respect to various prior fiscal years for the alleged or agreed overpayment in reimbursements by CMS to the Debtor for Medicare services provided by the Debtor.  For fiscal years prior to 2011, HHS' Claims were subject to voluntary ERP payment plans.  Since the Petition Date, the Debtor has filed its cost report for fiscal year 2011.  Upon and after the Effective Date, Reorganized CAH 9 will make payments on the prepetition ERPs with interest as set by applicable regulations such that the Debtor shall complete such prepetition ERPs within the agreed time period.  Any payments made or recoupments effectuated by HHS will be applied against the amounts owed under the prepetition ERP.  With respect to the portion of the CAH 9 Class 1C Claim which pertains to amounts from fiscal years not currently subject to a prepetition ERP, Reorganized CAH 9 shall have commenced and will continue after the Effective Date to pay such Claim from future Medicare Accounts Receivable in equal monthly installments with interest fixed at a rate per HHS regulations based on the date of the filing of the applicable cost report under an ERP agreed to by HHS.  Provided the Debtor or Reorganized CAH 9 shall be in compliance with such ERPs, HHS shall not offset or recoup from future Medicare Accounts Receivable amounts in excess of the accumulated monthly payments due under the ERP.  Attached as Schedule 8.1 to the Disclosure Statement is a listing of such Claims for each Debtor, the respective amounts of each Claim as of June 30, 2012, and, with respect to existing ERPs, the applicable interest rate and the remaining term as of June 30, 2012 under each existing ERP.  To the extent an ERP has been paid in full during the pendency of the Bankruptcy Case, such Claim is listed as having been satisfied on Schedule 8.1.  The Plan shall not prohibit or affect HHS' rights to conduct an audit or assert a higher amount owing by the Debtor as a consequence of such audit.  The amounts set forth on Schedule 8.1 shall be deemed allowed and not subject to further objection by the Debtor or Reorganized Debtor; provided, however, that the Debtor reserves the right to object to any additional amounts that may be asserted as the result of an audit within sixty-three (63) days of such Claim being asserted.  Any such dispute regarding additional amounts shall be a Claim for purposes of the Court's retention of jurisdiction, but the

Debtor's right to object to such additional amounts shall not be subject to the time limits contained in Section 8.02.

As soon as practicable after the Effective Date, HHS agrees to pay the applicable Debtor any cost-report settlement, retro-lump sum payment, or other similar payment, that, due to federal regulations, was not payable on an interim basis to the Debtors as a consequence of the existing Chapter 11 Cases.  The amounts of such payments are set forth on Schedule 8.1 of the Disclosure Statement.

The applicable Debtor and HHS have agreed to enter into ERPs for any current Medicare overpayment for fiscal year 2012 pursuant to and on the terms of existing federal regulations and to forbear from adjusting reimbursement rates to recoup such amounts though rate adjustments.

HHS' agreement to the terms of this Plan is expressly conditioned upon the Debtor's agreement not to sell the Debtors' hospitals in these pending Chapter 11 Cases.

### 5.73    *CAH 9 Class 3A (Convenience Claims)*.

(a)    Impairment; Voting.  CAH 9 Class 3A is impaired by the Plan. Each holder of an Allowed CAH 9 Class 3A Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 9 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 9 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000.  Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim:    OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Earnout Rights.  Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

### 5.74    *CAH 9 Class 3B (General Unsecured Claims)*.

(a)    Impairment; Voting.  CAH 9 Class 3B is impaired by the Plan. Each General Unsecured Creditor in CAH 9 Class 3B with an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  Each holder of an Allowed General Unsecured Claim in CAH 9 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the Reorganized Debtor on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Earnout Rights.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 9 Class 3B and make an election as a member of this Class.

(c)    Tort Claims.    All Tort Claims are Disputed Claims.    Any Tort Claim as to which a proof of Claim was timely filed in the Chapter 11 Cases will be determined and liquidated either in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action is pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceedings as the same may be approved by order of the Bankruptcy Court.    The Debtor, however, reserves the right to seek estimation of any and all Tort Claims in a court or courts of competent jurisdiction.    The Debtor also reserves the right to object to Tort Claims which include punitive damages in the underlying claim as disallowable penalties under the Bankruptcy Code.    To the extent that a Tort Claim is determined and liquidated pursuant to a final, non-appealable judgment in such a tribunal or in any such alternative dispute resolution or similar proceeding, such Tort Claim, subject to the following paragraph, shall be deemed an Allowed General Unsecured Claim in such liquidated amount and satisfied in accordance with the treatment specified in CAH 9 Class 3B for holders of General Unsecured Claims.

To the extent that any holder of a Tort Claim has recourse to any insurance policy (in excess of the Debtor's deductible amounts) issued to or for the benefit of the Debtor, the holder of such Claim must first, to the satisfaction of the Debtor or the Reorganized Debtor, use its best efforts to collect its Allowed Claims from the Insurance Carrier.    Any remaining unpaid portion of such Tort Claim shall be treated as an Allowed General Unsecured Claim. Any liquidated and determined Tort Claim shall be the obligation of, and satisfied by, any applicable insurance agreement providing coverage for the Tort Claim.    Any Tort Claim within the deductible amount shall be asserted solely against the Debtor of Reorganized Debtor whether OPTION 1 or OPTION 2 treatment is selected by the holder of such Tort Claim, but in either event not against any Insurance Carrier.

### 5.75    *CAH 9 Class 3C (HHI General Unsecured Claim)*.

(a)    Impairment; Voting.    CAH 9 Class 3C is impaired by the Plan. The creditor in CAH 9 Class 3C is entitled to vote the amount of its Allowed HHI General Unsecured Claim as allocated to CAH 9 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)    Treatment.    On the Effective Date, and pursuant to the terms of the HHI Settlement Agreement (as described in greater detail in Section 11.13 below), HHI will receive, in full satisfaction of its Allowed HHI General Unsecured Claim: (i) Series B Preferred Stock with comparable economic rights to Series A Preferred Stock (and with the same priority for any distributions, based on their preferred stock ownership, from the Debtors) and (ii) Series C Preferred Stock. HHI's treatment under the Plan is expressly subject to the terms and

conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans).

### 5.76   *CAH 9 Class 4 (Old Equity Interests)*.

(a)   <u>Impairment; Voting</u>.  CAH 9 Class 4 is unimpaired by the Plan. Each holder of CAH 9 Class 4 Equity Interest is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)   <u>Treatment</u>.   CAH 9 Class 4 Equity Interests shall remain unaffected by the Plan.

## CAH 10 PLAN

### 5.77   *CAH 10 Class 1A (Gemino Secured Claim)*.

(a)   <u>Impairment; Voting</u>.  CAH 10 Class 1A Claim is impaired by the Plan.  The creditor in CAH 10 Class 1A is entitled to vote the amount of the Allowed Gemino Secured Claim to accept or reject the Plan.

(b)   <u>Treatment</u>.   On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 10 shall commence payment on the obligations comprising CAH 10 Class 1A, pursuant to the Plan.  The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7% or such other rate as may be agreed to by the parties or approved by the Bankruptcy Court, but, in such event, the rate shall be no more favorable than the highest rate approved for a non-Insider secured lender.  All covenants of the Gemino Loan remain unaltered by the CAH 10 bankruptcy case and Gemino shall retain its Prepetition liens.

### 5.78   *CAH 10 Class 1B (HHI Secured Claim)*.

(a)   <u>Impairment; Voting</u>.  CAH 10 Class 1B Claim is impaired by the Plan.  The creditor in CAH 10 Class 1B is entitled to vote the amount of the Allowed HHI Secured Claim as allocated to CAH 10 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)   <u>Treatment</u>.   On the Effective Date, or as soon thereafter as is reasonably practicable, and pursuant to the terms of the HHI Settlement Agreement, Reorganized CAH 10 shall commence payment on the obligations comprising CAH 10 Class 1B, pursuant to the Plan, and HHI shall retain its Prepetition liens and shall be granted certain additional liens and security interests in CAH 10.  The HHI Secured Claim will be paid in monthly installments of principal and interest amortized over an eight-year term with interest accruing at a fixed rate of 6% without prepayment penalties. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans) as detailed in Section 11.13 below.

### 5.79    *CAH 10 Class 1C (DMA Secured Claim)*.

(a)    <u>Impairment; Voting</u>.   CAH 10 Class 1C Claim is impaired by the Plan.   The creditor in CAH 10 Class 1C is entitled to vote the amount of the Allowed DMA Secured Claim to accept or reject the Plan.

(b)    <u>Treatment</u>.   The Allowed amount of the CAH 10 Class 1C Claim is $328,269.00 and will be paid without objection from DMA in accordance with an extended repayment plan over 36 months at 5% simple interest in regular monthly amounts by recoupment from future Medicaid payments or by direct payment in full of any monthly shortfall and in accordance with the Plan.

### 5.80    *CAH 10 Class 1D (Shelco, Inc. Secured Claim)*.

(a)    <u>Impairment; Voting</u>.   CAH 10 Class 1D Claim is impaired by the Plan.   The creditor in CAH 10 Class 1D is entitled to vote the amount of the Allowed Shelco, Inc. Secured Claim to accept or reject the Plan.

(b)    <u>Treatment</u>.   Shelco, Inc. shall receive an Allowed Secured Claim against the estate of CAH 10 in the amount of $40,000 to be paid in equal monthly installments of principal and interest amortized over a thirty-six month term with interest accruing at a fixed *Till* Rate of 3.75%.   In addition, Shelco, Inc. shall receive an Allowed CAH 10 Class 3B Claim in the amount of $33,438.76 which will receive OPTION 1 treatment under the CAH 10 Plan. The allowance and payment of the secured and unsecured Claims pursuant to the CAH 10 Plan shall be in full and final satisfaction of any Claim Shelco, Inc. may have against any of the Debtors.   Shelco shall vote its Class 1D and Class 3B Claims to accept the CAH 10 Plan.

### 5.81    *CAH 10 Class 3A (Convenience Claims)*.

(a)    <u>Impairment; Voting</u>.   CAH 10 Class 3A is impaired by the Plan. Each holder of an Allowed CAH 10 Class 3A Claim is entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>.   Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 10 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 10 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000.   Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim:   <u>OPTION 1</u> – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or <u>OPTION 2</u> – payment in full of its Allowed Convenience Claim in the form of Class 1 Earnout Rights.   Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

### 5.82    *CAH 10 Class 3B (General Unsecured Claims)*.

(a)    Impairment; Voting.  CAH 10 Class 3B is impaired by the Plan. Each General Unsecured Creditor in CAH 10 Class 3B with an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  Each holder of an Allowed General Unsecured Claim in CAH 10 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution comprised of its Ratable Proportion of $220,691 to be distributed by the Reorganized Debtor on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Earnout Rights.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 10 Class 3B and make an election as a member of this Class.

(c)    Tort Claims.  All Tort Claims are Disputed Claims.  Any Tort Claim as to which a proof of Claim was timely filed in the Chapter 11 Cases will be determined and liquidated either in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action is pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceedings as the same may be approved by order of the Bankruptcy Court.  The Debtor, however, reserves the right to seek estimation of any and all Tort Claims in a court or courts of competent jurisdiction.  To the extent that a Tort Claim is determined and liquidated pursuant to a final, non-appealable judgment in such a tribunal or in any such alternative dispute resolution or similar proceeding, such Tort Claim, subject to the following paragraph, shall be deemed an Allowed General Unsecured Claim in such liquidated amount and satisfied in accordance with the treatment specified in CAH 10 Class 3B for holders of General Unsecured Claims.

To the extent that any holder of a Tort Claim has recourse to any insurance policy (in excess of the Debtor's deductible amounts) issued to or for the benefit of the Debtor, the holder of such Claim must first, to the satisfaction of the Debtor or the Reorganized Debtor, use its best efforts to collect its Allowed Claims from the Insurance Carrier.  Any remaining unpaid portion of such Tort Claim shall be treated as an Allowed General Unsecured Claim.  Any liquidated and determined Tort Claim shall be the obligation of, and satisfied by, any applicable insurance agreement providing coverage for the Tort Claim.  Any Tort Claim within the deductible amount shall be asserted solely against the Debtor of Reorganized Debtor whether OPTION 1 or OPTION 2 treatment is selected by the holder of such Tort Claim, but in either event not against any Insurance Carrier.

### 5.83    *CAH 10 Class 3C (HHI General Unsecured Claim)*.

(a)    <u>Impairment; Voting</u>.  CAH 10 Class 3C is impaired by the Plan. The creditor in CAH 10 Class 3C is entitled to vote the amount of its Allowed HHI General Unsecured Claim as allocated to CAH 10 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)    <u>Treatment</u>.  On the Effective Date, and pursuant to the terms of the HHI Settlement Agreement (as described in greater detail in Section 11.13 below), HHI will receive, in full satisfaction of its Allowed HHI General Unsecured Claim: (i) Series B Preferred Stock with comparable economic rights to Series A Preferred Stock (and with the same priority for any distributions, based on their preferred stock ownership, from the Debtors) and (ii) Series C Preferred Stock. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans).

### 5.84    *CAH 10 Class 4 (Old Equity Interests)*.

(a)    <u>Impairment; Voting</u>.  CAH 10 Class 4 is unimpaired by the Plan. Each holder of CAH 10 Class 4 Equity Interest is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>.    CAH 10 Class 4 Equity Interests shall remain unaffected by the Plan.

## CAH 11 PLAN

### 5.85    *CAH 11 Class 1A (Gemino Secured Claim)*.

(a)    <u>Impairment; Voting</u>.  CAH 11 Class 1A Claim is impaired by the Plan.  The creditor in CAH 11 Class 1A is entitled to vote the amount of the Allowed Gemino Secured Claim to accept or reject the Plan.

(b)    <u>Treatment</u>.    On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 11 shall commence payment on the obligations comprising CAH 11 Class 1A, pursuant to the Plan.  The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7% or such other rate as may be agreed to by the parties or approved by the Bankruptcy Court, but, in such event, the rate shall be no more favorable than the highest rate approved for a non-Insider secured lender.  All covenants of the Gemino Loan remain unaltered by the CAH 11 bankruptcy case and Gemino shall retain its Prepetition liens.

### 5.86    *CAH 11 Class 1B (CFG Community Bank Secured Claim)*.

(a)    <u>Impairment; Voting</u>.  CAH 11 Class 1B Claim is impaired by the Plan.  The creditor in CAH 11 Class 1B is entitled to vote the amount of the Allowed CFG Community Bank Secured Claim to accept or reject the Plan.

(b)    <u>Treatment</u>.    The CFG Bank Loan matured at the end of March, 2012.  CFG Bank has agreed to extend the maturity date of the CFG Loan with Reorganized CAH 11 for a term 36 months from the Effective Date of the CAH 11 Plan.

(i)    <u>Interest Rate</u>.  Interest shall accrue on the unpaid principal balance of the obligations comprising the Allowed CFG Secured Claim until paid in full at the fixed annual rate of interest of Six and One-Quarter Percent (6.25%) per annum or such other interest rate as may be agreed to by CFG Bank and Reorganized CAH 11.

(ii)    <u>Monthly Principal and Interest Payments</u>.  Commencing on the first (1st) day of the month following the Effective Date, unless such Effective Date is the first (1st) day of a month in which case on the Effective Date, and continuing on the same calendar day of each succeeding month thereafter up to and including the 35th month following the Effective Date, Reorganized CAH 11 shall tender to CFG Bank, in immediately available funds, level monthly payments of principal and interest with respect to the obligations comprising the Allowed CFG Secured Claim based on a 20 year amortization schedule, when and as each such payment comes due and calculated utilizing the interest rate provided for in Section 5.86(b)(i) above.

(iii)    <u>Additional Monthly Payments</u>.  In addition to the monthly payments described above, following the Effective Date Reorganized CAH 11 shall tender to CFG Bank, in immediately available funds, the monthly payments called for in Schedule 5.86(b) attached hereto, when and as each such monthly payment comes due under Schedule 5.86(b).  Commencing on the Effective Date, Reorganized CAH 11 shall also pay CFG Bank's Allowed Section 506(b) fees and expenses in 36 equal monthly installments.  With respect to CFG Bank's Allowed Section 506(b) fees and expenses, the Debtors agree that the post-petition interest accrual at the non-default interest rate shall be allowed.

(iv)    <u>Other Interim Payments</u>.   Reorganized CAH 11 shall continue to tender to CFG Bank, in immediately available funds, such additional payments identified in the CFG Loan Documents to fully fund all escrow amounts necessary to satisfy insurance, taxes and any other escrow items called for in the CFG Loan Documents when and as each such payment comes due thereunder.

(v)    <u>Final Payment</u>.  On or before the 1st day of the 36th month after the Effective Date, Reorganized CAH 11 shall tender to CFG Bank, in immediately available funds, a payment equal to all indebtedness that is owed at that time to CFG Bank with respect to the obligations comprising the Allowed CFG Secured Claim, including, without limitation, all principal, accrued and unpaid interest, and all costs, expenses, attorneys' fees and other sums owed to CFG Bank under or in connection with the CFG Loan, the CFG Loan Documents and the Allowed CFG Secured Claim.

(vi)    <u>CFG Bank Liens</u>.  Until such time as all indebtedness and obligations owed to CFG Bank under the CFG Loan Documents and this Plan have been paid in full, CFG Bank shall retain all of its liens and security interests in and to the CFG

Collateral and shall be granted certain additional liens and security interests in the assets of Reorganized CAH 11 as may be agreed to by CFG Bank and Reorganized CAH 11.

(vii)    <u>Rights and Remedies</u>.  Except as modified by the Joint Plan, the terms and conditions of the CFG Loan Documents are incorporated herein by reference and made a part hereof as if fully set forth herein.  Except as modified by the Joint Plan, all terms and conditions of the CFG Loan Documents shall remain unchanged, in full force and effect and are hereby ratified and confirmed by the parties hereto in all respects.  CFG Bank shall retain all of its rights and remedies under the CFG Loan Documents, the CFG Subordination Agreement, and applicable law.

(viii)    <u>Modification Agreement</u>.  CAH 11 and/or Reorganized CAH 11 shall execute and deliver to CFG Bank a Modification Agreement and such other documents as CFG Bank, in its sole and absolute discretion, may reasonably request under or in connection with the CFG Loan Documents, this Joint Plan or the Confirmation Order, for the purpose of modifying or amending the CFG Loan and CFG Note to reflect the various terms and conditions set forth herein.

(ix)    <u>Failure of Effective Date</u>.  To the extent the Plan fails to become effective pursuant to Section 10.03 of the Plan, any payments made to CFG Bank after the confirmation hearing on the Plan shall be treated as adequate protection payments.

### 5.87    *CAH 11 Class 1C (HHI Secured Claim)*.

(a)    <u>Impairment; Voting</u>.  CAH 11 Class 1C Claim is impaired by the Plan.  The creditor in CAH 11 Class 1C is entitled to vote the amount of Allowed HHI Secured Claim as allocated to CAH 11 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)    <u>Treatment</u>.  On the Effective Date, or as soon thereafter as is reasonably practicable, and subject to the terms of the HHI Settlement Agreement and the limitations and restrictions contained in Section 11.13(b) herein, Reorganized CAH 11 shall commence monthly interest payments on the HHI obligations allocated to CAH 11 based upon the Allocated Amount of principal at CAH 11 of $1,600,000 at a fixed rate of 6% without prepayment penalties.  Monthly principal payments shall be paid to HHI on the Allocated Amount from other Debtors on an amortization of eight (8) years.  The principal balance for the calculation of interest payable by CAH 11 may be adjusted from time-to-time based on payments from other Debtors as provided above.  Subject to Section 11.13(b), at such time as the secured claim of CFG Bank shall have been paid in full or as may otherwise be agreed by CFG Bank in writing, HHI may receive principal and interest payments from CAH 11.  HHI shall retain its Prepetition liens and shall be granted certain additional liens and security interests in CAH 11, which additional liens and security interests shall be junior in priority to the Allowed CFG Secured Claim as more fully set forth in Section 11.13(b).  HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans) as detailed in Section 11.13 below

(c)    The treatment provided HHI under this Section 5.87 shall be subject to the limitations related to CAH 11 and the CFG Subordination Agreement set forth in Section 11.13(b).

### 5.88    *CAH 11 Class 1D (HHS Overpayment Secured Claim)*.

(a)    <u>Impairment; Voting</u>.  CAH 11 Class 1D Claim is impaired by the Plan.  The creditor in CAH 11 Class 1D is entitled to vote the amount of the Allowed HHS Overpayment Secured Claim to accept or reject the Plan.

(b)    <u>Treatment</u>.    The CAH 11 HHS Overpayment Secured Claim consists of the Claims of HHS with respect to various prior fiscal years for the alleged or agreed overpayment in reimbursements by CMS to the Debtor for Medicare services provided by the Debtor.  For fiscal years prior to 2011, HHS' Claims were subject to voluntary ERP payment plans.  Since the Petition Date, the Debtor has filed its cost report for fiscal year 2011.  Upon and after the Effective Date, Reorganized CAH 11 will make payments on the prepetition ERPs with interest as set by applicable regulations such that the Debtor shall complete such prepetition ERPs within the agreed time period.  Any payments made or recoupments effectuated by HHS will be applied against the amounts owed under the prepetition ERP.  With respect to the portion of the CAH 11 Class 1D Claim which pertains to amounts from fiscal years not currently subject to a prepetition ERP, Reorganized CAH 11 shall have commenced and will continue after the Effective Date to pay such Claim from future Medicare Accounts Receivable in equal monthly installments with interest fixed at a rate per HHS regulations based on the date of the filing of the applicable cost report under an ERP agreed to by HHS.  Provided the Debtor or Reorganized CAH 11 shall be in compliance with such ERPs, HHS shall not offset or recoup from future Medicare Accounts Receivable amounts in excess of the accumulated monthly payments due under the ERP.  Attached as Schedule 8.1 to the Disclosure Statement is a listing of such Claims for each Debtor, the respective amounts of each Claim as of June 30, 2012, and, with respect to existing ERPs, the applicable interest rate and the remaining term as of June 30, 2012 under each existing ERP.  To the extent an ERP has been paid in full during the pendency of the Bankruptcy Case, such Claim is listed as having been satisfied on Schedule 8.1.  The Plan shall not prohibit or affect HHS' rights to conduct an audit or assert a higher amount owing by the Debtor as a consequence of such audit.  The amounts set forth on Schedule 8.1 shall be deemed allowed and not subject to further objection by the Debtor or Reorganized Debtor; provided, however, that the Debtor reserves the right to object to any additional amounts that may be asserted as the result of an audit within sixty-three (63) days of such Claim being asserted.  Any such dispute regarding additional amounts shall be a Claim for purposes of the Court's retention of jurisdiction, but the Debtor's right to object to such additional amounts shall not be subject to the time limits contained in Section 8.02.

As soon as practicable after the Effective Date, HHS agrees to pay the applicable Debtor any cost-report settlement, retro-lump sum payment, or other similar payment, that, due to federal regulations, was not payable on an interim basis to the Debtors as a consequence of the existing Chapter 11 Cases.  The amounts of such payments are set forth on Schedule 8.1 of the Disclosure Statement.

The applicable Debtor and HHS have agreed to enter into ERPs for any current Medicare overpayment for fiscal year 2012 pursuant to and on the terms of existing federal regulations and to forbear from adjusting reimbursement rates to recoup such amounts though rate adjustments.

HHS' agreement to the terms of this Plan is expressly conditioned upon the Debtor's agreement not to sell the Debtors' hospitals in these pending Chapter 11 Cases.

### 5.89   CAH 11 Class 3A (Convenience Claims).

(a)    Impairment; Voting.  CAH 11 Class 3A is impaired by the Plan. Each holder of an Allowed CAH 11 Class 3A Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 11 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 11 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000.  Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim:  OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Earnout Rights.  Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

### 5.90   CAH 11 Class 3B (General Unsecured Claims).

(a)    Impairment; Voting.  CAH 11 Class 3B is impaired by the Plan. Each General Unsecured Creditor in CAH 11 Class 3B with an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  Each holder of an Allowed General Unsecured Claim in CAH 11 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution comprised of its Ratable Proportion of $87,956 to be distributed by the Reorganized Debtor on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Earnout Rights.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 11 Class 3B and make an election as a member of this Class.

(c)    Tort Claims.  All Tort Claims are Disputed Claims.  Any Tort Claim as to which a proof of Claim was timely filed in the Chapter 11 Cases will be determined

and liquidated either in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action is pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceedings as the same may be approved by order of the Bankruptcy Court.   The Debtor, however, reserves the right to seek estimation of any and all Tort Claims in a court or courts of competent jurisdiction.   The Debtor also reserves the right to object to Tort Claims which include punitive damages in the underlying claim as disallowable penalties under the Bankruptcy Code.   To the extent that a Tort Claim is determined and liquidated pursuant to a final, non-appealable judgment in such a tribunal or in any such alternative dispute resolution or similar proceeding, such Tort Claim, subject to the following paragraph, shall be deemed an Allowed General Unsecured Claim in such liquidated amount and satisfied in accordance with the treatment specified in CAH 11 Class 3B for holders of General Unsecured Claims.

To the extent that any holder of a Tort Claim has recourse to any insurance policy (in excess of the Debtor's deductible amounts) issued to or for the benefit of the Debtor, the holder of such Claim must first, to the satisfaction of the Debtor or the Reorganized Debtor, use its best efforts to collect its Allowed Claims from the Insurance Carrier.   Any remaining unpaid portion of such Tort Claim shall be treated as an Allowed General Unsecured Claim. Any liquidated and determined Tort Claim shall be the obligation of, and satisfied by, any applicable insurance agreement providing coverage for the Tort Claim.   Any Tort Claim within the deductible amount shall be asserted solely against the Debtor of Reorganized Debtor whether OPTION 1 or OPTION 2 treatment is selected by the holder of such Tort Claim, but in either event not against any Insurance Carrier.

### 5.91   *CAH 11 Class 3C (HHI General Unsecured Claim)*.

(a)   <u>Impairment; Voting</u>.   CAH 11 Class 3C is impaired by the Plan. The creditor in CAH 11 Class 3C is entitled to vote the amount of its Allowed HHI General Unsecured Claim as allocated to CAH 11 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)   <u>Treatment</u>.   On the Effective Date, and pursuant to the terms of the HHI Settlement Agreement (as described in greater detail in Section 11.13 below), HHI will receive, in full satisfaction of its Allowed HHI General Unsecured Claim: (i) Series B Preferred Stock with comparable economic rights to Series A Preferred Stock (and with the same priority for any distributions, based on their preferred stock ownership, from the Debtors) and (ii) Series C Preferred Stock. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans).

### 5.92   *CAH 11 Class 4 (Old Equity Interests)*.

(a)   <u>Impairment; Voting</u>.   CAH 11 Class 4 is unimpaired by the Plan. Each holder of CAH 11 Class 4 Equity Interest is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    Treatment.    CAH 11 Class 4 Equity Interests shall remain unaffected by the Plan.

## CAH 12 PLAN

### 5.93    CAH 12 Class 1A (Gemino Secured Claim).

(a)    Impairment; Voting.    CAH 12 Class 1A Claim is impaired by the Plan.  The creditor in CAH 12 Class 1A is entitled to vote the amount of the Allowed Gemino Secured Claim to accept or reject the Plan.

(b)    Treatment.    On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 12 shall commence payment on the obligations comprising CAH 12 Class 1A, pursuant to the Plan.  The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7% or such other rate as may be agreed to by the parties or approved by the Bankruptcy Court, but, in such event, the rate shall be no more favorable than the highest rate approved for a non-Insider secured lender.  All covenants of the Gemino Loan remain unaltered by the CAH 12 bankruptcy case and Gemino shall retain its Prepetition liens.

### 5.94    CAH 12 Class 1B (HHS Overpayment Secured Claim).

(a)    Impairment; Voting.    CAH 12 Class 1B Claim is impaired by the Plan.  The creditor in CAH 12 Class 1B is entitled to vote the amount of the Allowed HHS Overpayment Secured Claim to accept or reject the Plan.

(b)    Treatment.    The CAH 12 HHS Overpayment Secured Claim consists of the Claims of HHS with respect to various prior fiscal years for the alleged or agreed overpayment in reimbursements by CMS to the Debtor for Medicare services provided by the Debtor.  For fiscal years prior to 2011, HHS' Claims were subject to voluntary ERP payment plans.  Since the Petition Date, the Debtor has filed its cost report for fiscal year 2011.  Upon and after the Effective Date, Reorganized CAH 12 will make payments on the prepetition ERPs with interest as set by applicable regulations such that the Debtor shall complete such prepetition ERPs within the agreed time period.  Any payments made or recoupments effectuated by HHS will be applied against the amounts owed under the prepetition ERP.  With respect to the portion of the CAH 12 Class 1B Claim which pertains to amounts from fiscal years not currently subject to a prepetition ERP, Reorganized CAH 12 shall have commenced and will continue after the Effective Date to pay such Claim from future Medicare Accounts Receivable in equal monthly installments with interest fixed at a rate per HHS regulations based on the date of the filing of the applicable cost report under an ERP agreed to by HHS.  Provided the Debtor or Reorganized CAH 12 shall be in compliance with such ERPs, HHS shall not offset or recoup from future Medicare Accounts Receivable amounts in excess of the accumulated monthly payments due under the ERP.  Attached as Schedule 8.1 to the Disclosure Statement is a listing of such Claims for each Debtor, the respective amounts of each Claim as of June 30, 2012, and, with respect to existing ERPs, the applicable interest rate and the remaining term as of June 30, 2012 under each existing ERP.  To the extent an ERP has been paid in full during the pendency of the Bankruptcy

Case, such Claim is listed as having been satisfied on Schedule 8.1. The Plan shall not prohibit or affect HHS' rights to conduct an audit or assert a higher amount owing by the Debtor as a consequence of such audit. The amounts set forth on Schedule 8.1 shall be deemed allowed and not subject to further objection by the Debtor or Reorganized Debtor; provided, however, that the Debtor reserves the right to object to any additional amounts that may be asserted as the result of an audit within sixty-three (63) days of such Claim being asserted. Any such dispute regarding additional amounts shall be a Claim for purposes of the Court's retention of jurisdiction, but the Debtor's right to object to such additional amounts shall not be subject to the time limits contained in Section 8.02.

As soon as practicable after the Effective Date, HHS agrees to pay the applicable Debtor any cost-report settlement, retro-lump sum payment, or other similar payment, that, due to federal regulations, was not payable on an interim basis to the Debtors as a consequence of the existing Chapter 11 Cases. The amounts of such payments are set forth on Schedule 8.1 of the Disclosure Statement.

The applicable Debtor and HHS have agreed to enter into ERPs for any current Medicare overpayment for fiscal year 2012 pursuant to and on the terms of existing federal regulations and to forbear from adjusting reimbursement rates to recoup such amounts though rate adjustments.

HHS' agreement to the terms of this Plan is expressly conditioned upon the Debtor's agreement not to sell the Debtors' hospitals in these pending Chapter 11 Cases.

### 5.95    *CAH 12 Class 3A (Convenience Claims)*.

(a)     <u>Impairment; Voting</u>. CAH 12 Class 3A is impaired by the Plan. Each holder of an Allowed CAH 12 Class 3A Claim is entitled to vote to accept or reject the Plan.

(b)     <u>Treatment</u>. Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 12 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 12 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000. Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim:    <u>OPTION 1</u> – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or <u>OPTION 2</u> – payment in full of its Allowed Convenience Claim in the form of Class 1 Earnout Rights. Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

### 5.96    *CAH 12 Class 3B (General Unsecured Claims)*.

(a)     <u>Impairment; Voting</u>. CAH 12 Class 3B is impaired by the Plan. Each General Unsecured Creditor in CAH 12 Class 3B with an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    <u>Treatment</u>.  Each holder of an Allowed General Unsecured Claim in CAH 12 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: <u>OPTION 1</u> – a distribution comprised of its Ratable Proportion of $50,000 to be distributed by the Reorganized Debtor on the Distribution Date; or <u>OPTION 2</u> – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Earnout Rights.

Holders of Allowed General Unsecured Claims will be deemed to have elected <u>OPTION 1</u> if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 12 Class 3B and make an election as a member of this Class.

(c)    <u>Tort Claims</u>.  All Tort Claims are Disputed Claims.  Any Tort Claim as to which a proof of Claim was timely filed in the Chapter 11 Cases will be determined and liquidated either in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action is pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceedings as the same may be approved by order of the Bankruptcy Court.  The Debtor, however, reserves the right to seek estimation of any and all Tort Claims in a court or courts of competent jurisdiction.  The Debtor also reserves the right to object to Tort Claims which include punitive damages in the underlying claim as disallowable penalties under the Bankruptcy Code.  To the extent that a Tort Claim is determined and liquidated pursuant to a final, non-appealable judgment in such a tribunal or in any such alternative dispute resolution or similar proceeding, such Tort Claim, subject to the following paragraph, shall be deemed an Allowed General Unsecured Claim in such liquidated amount and satisfied in accordance with the treatment specified in CAH 12 Class 3B for holders of General Unsecured Claims.

To the extent that any holder of a Tort Claim has recourse to any insurance policy (in excess of the Debtor's deductible amounts) issued to or for the benefit of the Debtor, the holder of such Claim must first, to the satisfaction of the Debtor or the Reorganized Debtor, use its best efforts to collect its Allowed Claims from the Insurance Carrier.  Any remaining unpaid portion of such Tort Claim shall be treated as an Allowed General Unsecured Claim.  Any liquidated and determined Tort Claim shall be the obligation of, and satisfied by, any applicable insurance agreement providing coverage for the Tort Claim.  Any Tort Claim within the deductible amount shall be asserted solely against the Debtor of Reorganized Debtor whether OPTION 1 or OPTION 2 treatment is selected by the holder of such Tort Claim, but in either event not against any Insurance Carrier.

### 5.97    *CAH 12 Class 3C (HHI General Unsecured Claim)*.

(a)    <u>Impairment; Voting</u>.  CAH 12 Class 3C is impaired by the Plan. The creditor in CAH 12 Class 3C is entitled to vote the amount of its Allowed HHI General Unsecured Claim as allocated to CAH 12 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)    Treatment.  On the Effective Date, and pursuant to the terms of the HHI Settlement Agreement (as described in greater detail in Section 11.13 below), HHI will receive, in full satisfaction of its Allowed HHI General Unsecured Claim: (i) Series B Preferred Stock with comparable economic rights to Series A Preferred Stock (and with the same priority for any distributions, based on their preferred stock ownership, from the Debtors) and (ii) Series C Preferred Stock.  HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans).

### 5.98    *CAH 12 Class 4 (Old Equity Interests)*.

(a)    Impairment; Voting.  CAH 12 Class 4 is unimpaired by the Plan. Each holder of CAH 12 Class 4 Equity Interest is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    Treatment.    CAH 12 Class 4 Equity Interests shall remain unaffected by the Plan.

## CAH 16 PLAN

### 5.99    *CAH 16 Class 1A (Gemino Secured Claim)*.

(a)    Impairment; Voting.  CAH 16 Class 1A Claim is impaired by the Plan.  The creditor in CAH 16 Class 1A is entitled to vote the amount of the Allowed Gemino Secured Claim to accept or reject the Plan.

(b)    Treatment.    On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized CAH 16 shall commence payment on the obligations comprising CAH 16 Class 1A, pursuant to the Plan.  The maturity date of the Gemino Loan will be extended to seven years from the Effective Date of the Plan, with monthly payments of principal and interest based on a 7-year amortization following the Effective Date with interest payable at a fixed rate of 7% or such other rate as may be agreed to by the parties or approved by the Bankruptcy Court, but, in such event, the rate shall be no more favorable than the highest rate approved for a non-Insider secured lender.  All covenants of the Gemino Loan remain unaltered by the CAH 16 bankruptcy case and Gemino shall retain its Prepetition liens.

### 5.100    *CAH 16 Class 1B (HHS Overpayment Secured Claim)*.

(a)    Impairment; Voting.  CAH 16 Class 1B Claim is impaired by the Plan.  The creditor in CAH 16 Class 1B is entitled to vote the amount of the Allowed HHS Overpayment Secured Claim to accept or reject the Plan.

(b)    Treatment.    The CAH 16 HHS Overpayment Secured Claim consists of the Claims of HHS with respect to various prior fiscal years for the alleged or agreed overpayment in reimbursements by CMS to the Debtor for Medicare services provided by the Debtor.  For fiscal years prior to 2011, HHS' Claims were subject to voluntary ERP payment plans.  Since the Petition Date, the Debtor has filed its cost report for fiscal year 2011.  Upon and after the Effective Date, Reorganized CAH 16 will make payments on the prepetition ERPs with

interest as set by applicable regulations such that the Debtor shall complete such prepetition ERPs within the agreed time period. Any payments made or recoupments effectuated by HHS will be applied against the amounts owed under the prepetition ERP. With respect to the portion of the CAH 16 Class 1B Claim which pertains to amounts from fiscal years not currently subject to a prepetition ERP, Reorganized CAH 16 shall have commenced and will continue after the Effective Date to pay such Claim from future Medicare Accounts Receivable in equal monthly installments with interest fixed at a rate per HHS regulations based on the date of the filing of the applicable cost report under an ERP agreed to by HHS. Provided the Debtor or Reorganized CAH 16 shall be in compliance with such ERPs, HHS shall not offset or recoup from future Medicare Accounts Receivable amounts in excess of the accumulated monthly payments due under the ERP. Attached as Schedule 8.1 to the Disclosure Statement is a listing of such Claims for each Debtor, the respective amounts of each Claim as of June 30, 2012, and, with respect to existing ERPs, the applicable interest rate and the remaining term as of June 30, 2012 under each existing ERP. To the extent an ERP has been paid in full during the pendency of the Bankruptcy Case, such Claim is listed as having been satisfied on Schedule 8.1. The Plan shall not prohibit or affect HHS' rights to conduct an audit or assert a higher amount owing by the Debtor as a consequence of such audit. The amounts set forth on Schedule 8.1 shall be deemed allowed and not subject to further objection by the Debtor or Reorganized Debtor; provided, however, that the Debtor reserves the right to object to any additional amounts that may be asserted as the result of an audit within sixty-three (63) days of such Claim being asserted. Any such dispute regarding additional amounts shall be a Claim for purposes of the Court's retention of jurisdiction, but the Debtor's right to object to such additional amounts shall not be subject to the time limits contained in Section 8.02.

As soon as practicable after the Effective Date, HHS agrees to pay the applicable Debtor any cost-report settlement, retro-lump sum payment, or other similar payment, that, due to federal regulations, was not payable on an interim basis to the Debtors as a consequence of the existing Chapter 11 Cases. The amounts of such payments are set forth on Schedule 8.1 of the Disclosure Statement.

The applicable Debtor and HHS have agreed to enter into ERPs for any current Medicare overpayment for fiscal year 2012 pursuant to and on the terms of existing federal regulations and to forbear from adjusting reimbursement rates to recoup such amounts though rate adjustments.

HHS' agreement to the terms of this Plan is expressly conditioned upon the Debtor's agreement not to sell the Debtors' hospitals in these pending Chapter 11 Cases.

### 5.101   CAH 16 Class 1C (Bank of Commerce & Trust Co. Secured Claim).

(a)    Impairment; Voting. CAH 16 Class 1C Claim is unimpaired by the Plan. The creditor in CAH 16 Class 1C is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    Treatment. CAH 16 will surrender the Collateral of the holder of the CAH 16 Class 1C Claim in full satisfaction of the CAH 16 Class 1C Claim.

### 5.102   CAH 16 Class 1D (M&T Bank Secured Claim).

(a)      Impairment; Voting.  CAH 16 Class 1D Claim is impaired by the Plan.  The creditor in CAH 1Class 1D is entitled to vote the amount of the Allowed M&T Bank Secured Claim to accept or reject the Plan.

(b)      Treatment.  The holder of the CAH 16 Class 1D Claim will retain its Prepetition liens and will be paid, by CAH 16, the value of its Collateral in the total amount of $5,000 over a term of 24 months plus interest at the *Till* Rate or such other rate agreed to by the parties or ordered by the Bankruptcy Court.  The balance of the CAH 16 Class 1D Claim is an Allowed Unsecured Claim which shall receive the treatment afforded CAH 16 Class 3B Claims. While the Debtor continues to hold the Collateral and until such time as the Claim has been satisfied pursuant to the Plan, the Debtor shall reasonably maintain and insure the Collateral in its possession.

### 5.103   CAH 16 Class 1E (Winthrop Secured Claim)..

(a)      Impairment; Voting.  CAH 16 Class 1C Claim is unimpaired by the Plan.  The creditor in CAH 16 Class 1C is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)      Treatment.  Winthrop Resources Corporation ("Winthrop") shall be granted an Allowed Secured Claim to the extent of the value of its Collateral as provided in Section 506(a) which shall be satisfied no later than the Effective Date by surrender of all such Collateral in CAH 16's custody and control in full satisfaction of the CAH 16 Class 1E Claim. In addition, the Debtors agree to make the Collateral in their possession, custody, and control available for surrender (and/or collect and ship such Collateral, at Winthrop's expense) to Winthrop, as soon as practicable after the Confirmation Date.

### 5.104   CAH 16 Class 3A (Convenience Claims).

(a)      Impairment; Voting.  CAH 16 Class 3A is impaired by the Plan. Each holder of an Allowed CAH 16 Class 3A Claim is entitled to vote to accept or reject the Plan.

(b)      Treatment.  Holders of Allowed Convenience Claims are (i) any Allowed General Unsecured Claim against CAH 16 in an amount less than or equal to $1,000; and (ii) any Allowed General Unsecured Claim against CAH 16 in an amount from $1,001 up to and including $4,000 that affirmatively elects to have its Allowed General Unsecured Claim treated as an Allowed Convenience Claim to be Allowed in the amount of $1,000.  Each holder of an Allowed Convenience Claim can elect to receive, in full satisfaction of its Allowed Convenience Claim:  OPTION 1 – cash on the Effective Date in the amount of 50% of its Allowed Convenience Claim; or OPTION 2 – payment in full of its Allowed Convenience Claim in the form of Class 1 Earnout Rights.  Holders of Allowed Convenience Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

### *5.105   CAH 16 Class 3B (General Unsecured Claims)*.

(a)    Impairment; Voting.   CAH 16 Class 3B is impaired by the Plan. Each General Unsecured Creditor in CAH 16 Class 3B with an Allowed General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.   Each holder of an Allowed General Unsecured Claim in CAH 16 Class 3B can elect to receive, in full satisfaction of its Allowed Unsecured Claim: OPTION 1 – a distribution comprised of its Ratable Proportion of $105,548 to be distributed by the Reorganized Debtor on the Distribution Date; or OPTION 2 – 100% of its Allowed General Unsecured Claim to be distributed as Class 1 Earnout Rights.

Holders of Allowed General Unsecured Claims will be deemed to have elected OPTION 1 if they do not return a timely ballot making an election by the deadline set by the Court for voting on the approval of this Plan.

Parties to an executory contract or unexpired lease that is not to be assumed pursuant to Article IX of the Plan must return a ballot in this CAH 16 Class 3B and make an election as a member of this Class.

(c)    Tort Claims.   All Tort Claims are Disputed Claims.   Any Tort Claim as to which a proof of Claim was timely filed in the Chapter 11 Cases will be determined and liquidated either in the administrative or judicial tribunal in which it is pending on the Effective Date or, if no action is pending on the Effective Date, in any administrative or judicial tribunal of appropriate jurisdiction, or in accordance with any alternative dispute resolution or similar proceedings as the same may be approved by order of the Bankruptcy Court.   The Debtor, however, reserves the right to seek estimation of any and all Tort Claims in a court or courts of competent jurisdiction.   The Debtor also reserves the right to object to Tort Claims which include punitive damages in the underlying claim as disallowable penalties under the Bankruptcy Code.   To the extent that a Tort Claim is determined and liquidated pursuant to a final, non-appealable judgment in such a tribunal or in any such alternative dispute resolution or similar proceeding, such Tort Claim, subject to the following paragraph, shall be deemed an Allowed General Unsecured Claim in such liquidated amount and satisfied in accordance with the treatment specified in CAH 16 Class 3B for holders of General Unsecured Claims.

To the extent that any holder of a Tort Claim has recourse to any insurance policy (in excess of the Debtor's deductible amounts) issued to or for the benefit of the Debtor, the holder of such Claim must first, to the satisfaction of the Debtor or the Reorganized Debtor, use its best efforts to collect its Allowed Claims from the Insurance Carrier.   Any remaining unpaid portion of such Tort Claim shall be treated as an Allowed General Unsecured Claim. Any liquidated and determined Tort Claim shall be the obligation of, and satisfied by, any applicable insurance agreement providing coverage for the Tort Claim.   Any Tort Claim within the deductible amount shall be asserted solely against the Debtor of Reorganized Debtor whether OPTION 1 or OPTION 2 treatment is selected by the holder of such Tort Claim, but in either event not against any Insurance Carrier.

### 5.106   *CAH 16 Class 3C (HHI General Unsecured Claim)*.

(a)      Impairment; Voting.  CAH 16 Class 3C is impaired by the Plan. The creditor in CAH 16 Class 3C is entitled to vote the amount of its Allowed HHI General Unsecured Claim as allocated to CAH 16 pursuant to the HHI Settlement Agreement to accept or reject the Plan.

(b)      Treatment.  On the Effective Date, and pursuant to the terms of the HHI Settlement Agreement (as described in greater detail in Section 11.13 below), HHI will receive, in full satisfaction of its Allowed HHI General Unsecured Claim: (i) Series B Preferred Stock with comparable economic rights to Series A Preferred Stock (and with the same priority for any distributions, based on their preferred stock ownership, from the Debtors) and (ii) Series C Preferred Stock. HHI's treatment under the Plan is expressly subject to the terms and conditions of the HHI Settlement Agreement (including, without limitation, HHI's agreement to support, and vote all of its Claims to accept, the Plans).

### 5.107   *CAH 16 Class 4 (Old Equity Interests)*.

(a)      Impairment; Voting.  CAH 16 Class 4 is unimpaired by the Plan. Each holder of CAH 16 Class 4 Equity Interest is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)      Treatment.   CAH 16 Class 4 Equity Interests shall remain unaffected by the Plan.

## ARTICLE VI.

## PROVISIONS GOVERNING DISTRIBUTIONS

**6.01   Record Date for Distributions**.   As of August 15, 2012, the various transfer registers for each of the Classes of Claims or Old Equity Interests as maintained by the Bankruptcy Court or the Debtors, respectively, shall be deemed closed for purposes of distribution and voting on the Plans, and there shall be no further changes made to reflect any new record holders of any Claims or Old Equity Interests.  The Debtors shall have no obligation to recognize any transfer of Claims or Old Equity Interests occurring on or after such date.  The Debtors or Reorganized Debtors may, in their discretion, recognize such transfers after the Effective Date.

**6.02   Date of Distributions**.    Unless otherwise provided herein, any distributions and deliveries to be made hereunder to the holders of Allowed Claims shall be made on the Effective Date, or as soon thereafter as is reasonably practicable.  The Reorganized Debtors shall commence distributions with respect to the OPTION 1 cash payments no later than six months from the Effective Date unless such date is extended by the Court.  If all Disputed Claims are not resolved or adjudicated by such date, the Reorganized Debtors shall hold appropriate funds in the to be distributed at a later date, as appropriate, upon the resolution of Disputed Claims.  With respect to distributions for all Allowed Claims other than Allowed Class 3B Claims in each of the Debtors' cases who have elected OPTION 1 treatment, the Debtors or

the Reorganized Debtors shall make such distributions on account of such Allowed Claims in accordance with and in the timeframe required by the appropriate provisions of the Plans.

      **6.03**    *Single Satisfaction of Identical Claims Filed against Multiple Debtors*. To the extent that any Claimant filed Claims against more than one Debtor for which the basis is identical, including, without limitation, Guaranty Claims, such Claimant shall only be entitled to a single recovery of the valid and Allowed Claim from the appropriate Debtor's estate.  For the avoidance of doubt, Guaranty Claims will be discharged pursuant to this Joint Plan, and such Claimant's Claim will be satisfied by the appropriate Debtor against which the holder of a Guaranty Claim has a direct obligation.

      **6.04**    *Disbursements*.  All distributions under the Plans shall be made by the Debtors or the Reorganized Debtors as applicable.

      **6.05**    *Subsequent Distributions*.  After the Effective Date, Subsequent Distributions shall be made by the applicable Reorganized Debtor as provided for in the applicable provisions of its respective Plan.

      **6.06**    *Distributions of Cash*.  Any payment of Cash made by the Debtors or the Reorganized Debtors pursuant to the Plans may be made at the option of the respective party making disbursements either by check drawn on a domestic bank or by wire transfer from a domestic bank.

      **6.07**    *Allocations after Effective Date*.  Allocations or disbursements made after the Effective Date for the benefit of the holders of Disputed Claims that later become Allowed Claims shall be deemed to have been made on the Effective Date.

      **6.08**    *Delivery of Distributions and Undeliverable Distributions*.  Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court, unless superseded by a new address as set forth (a) on a proof of claim filed by a holder of an Allowed Claim, or (b) in another writing notifying the Debtors or Reorganized Debtors of a change of address.  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtors or the Reorganized Debtors, as applicable, are notified of such holder's then-current address, at which time all missed distributions shall be made to such holder, without interest.  All Claims for undeliverable distributions shall be made on or before the earlier of (i) with respect to the initial distributions made on or after the Effective Date, one hundred and eighty-two (182) days after the date such initial undeliverable distribution was made, or (ii) with respect to the distributions made on a Subsequent Distribution Date, one hundred and eighty-two (182) days after the date such undeliverable distribution was made.  If a distribution cannot be made pursuant to the preceding sentence, any such holder's Claim shall be expunged.

      **6.09**    *Compliance with Tax Requirements*.  In connection with the Plans, to the extent applicable, the Debtors or the Reorganized Debtors, in making distributions under the Plans, shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plans shall be subject to such withholding and reporting requirements.  The respective party making distributions, as applicable, may

withhold the entire distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid by the respective party making distributions, as applicable, to the appropriate authority.  If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six months from the date of first notification to the Person in need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the holder's distribution shall be treated as an undeliverable distribution in accordance with this Article VI.

6.10    *Time Bar to Cash Payments*.  Checks issued by the Debtors or the Reorganized Debtors in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty-two (182) days after the date of issuance thereof.  Requests for reissuance of any check shall be made to the Debtors or the Reorganized Debtors by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the thirty-five (35) days after the expiration of the one hundred and eighty-two day period following the date of issuance of such check.

6.11    *Professional Fees and Expenses*.  Each professional person or firm retained with approval by order of the Bankruptcy Court or requesting compensation in the Chapter 11 Cases pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code, with the exception of any ordinary course professionals retained by the Debtors pursuant to an order of the Court, shall be required to file an application for an allowance of final compensation and reimbursement of expenses in the Chapter 11 Cases incurred through the Confirmation Date on or before a date to be set in the notice of a hearing for Approval of Final Fee Applications by the Bankruptcy Court in the Confirmation Order, which shall be no later than sixty-three (63) days after the Confirmation Date.  Objections to any such application shall be filed on or before a date to be set by the Bankruptcy Court in the Confirmation Order.  Professional fees shall be allocated among the Debtors consistent with the Debtors' Prepetition allocation of "Home Office" costs includable on each Debtor's Medicare cost report in a manner consistent with all applicable laws, rules, or regulations governing such cost reports. Such allocation shall not be deemed a distribution under the CAH 4 Regulatory Agreement.

6.12    *Transactions on Business Days*.  If the Effective Date, or any other date on which a transaction may occur under the Plans shall occur on a day that is not a Business Day, the transactions contemplated by the Plans to occur on such day shall instead occur on the next succeeding Business Day.

6.13    *Allocation of Distributions*.  Distributions to any holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

## ARTICLE VII.

## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLANS

*7.01    Participating New Equity Owners Will Fund Plans*.  On or before the Effective Date, the Participating New Equity Owners will provide the funding necessary for distributions to certain holders of Allowed Claims pursuant to the Debtors' Plans including those parties in all of the Debtors' cases which elect OPTION 1 treatment in Classes 3A, 3B, and 3C as well as certain Administrative Claims.   The Participating New Equity Owners will provide funding for such costs in an amount no less than $1 million and as much as $4 million.  The Participating New Equity Owners will receive all of the Class 2 Earnout Rights in return for such funding.  On or before the Effective Date, the Participating New Equity Owners will transfer, or cause to be transferred, funds to the Reorganized Debtors for holders of Allowed Class 3B Claims (in each of the Debtors' cases) which have elected OPTION 1 treatment under the respective Plans.   Distributions to classes of other Allowed Claims will be funded, pursuant to the terms of the respective Plans, from the post-Effective Date operations of the Reorganized Debtors and will paid, as provided for in the respective Debtors' Plans, by the Reorganized Debtors.  To the extent that the Participating New Equity Owners contribute an amount less than $4 million to fund the Plans, the balance up to $4.0 million shall be disbursed to the Reorganized Debtors on the Effective Date as an advance on the Gemino Loan and distributed as described above.

*7.02    Corporate Action*.  Upon the Effective Date, the Debtors shall perform each of the actions and effect each of the transfers required by the terms of the Joint Plan, in the time period allocated therefor.

*7.03    Effectuating Documents and Further Transactions*.  Each of the officers of the Debtors is authorized and directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, including without limitation, the Plan Supplement, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Joint Plan.

*7.04    Closing of the Chapter 11 Cases*.  When all Disputed Claims filed against the Debtors have either been expunged or become Allowed Claims and each of the Debtor's Plans have been substantially consummated, the Reorganized Debtors may seek authority from the Bankruptcy Court to close any or all the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.

*7.05    Appointment and Authority of Plan Monitor*.    The Debtors or Reorganized Debtors shall appoint a Plan Monitor which shall be a local accountant or chapter 7 trustee selected by the Committee who shall have the limited power and authority to enforce the rights of holders of Class 1 Earnout Rights to payment pursuant to an Option 2 Payment Event and related provisions.  The Reorganized Debtors shall pay the actual, reasonable fees and expenses of the Plan Monitor (including the actual, reasonable fees and expenses of any professional retained by the Plan Monitor) up to $25,000 per year; provided, however, that in any enforcement action brought by the Plan Monitor against any of the Reorganized Debtors, the prevailing party in such action shall be entitled to have its reasonable, actual fees and expenses

reimbursed by the non-prevailing party. For example, if the Plan Monitor prevails in its enforcement action, the Reorganized Debtors shall pay the Plan Monitor's actual, reasonable fees and expenses incurred in prosecuting such enforcement action. Likewise, if the Reorganized Debtors succeed in defeating the Plan Monitor's enforcement action, the amount of the Reorganized Debtors' actual, reasonable fees and expenses incurred in defending against the enforcement action shall be deducted from the amounts payable to holders of Class 1 Earnout Rights upon the next Option 2 Payment Event and shall reduce the total amount payable to holders of Class 1 Earnout Rights.

On or before January 31, 2014, and on or before January 31 of any year thereafter (until such time as all Class 1 Earnout Rights shall have been paid in full), the Reorganized Debtors shall provide to the Plan Monitor audited financial statements for the prior fiscal year. The Plan Monitor shall have 30 calendar days after receipt from the Reorganized Debtors of audited financial statements for a particular fiscal year to inform the Reorganized Debtors of a dispute with respect to the actual EBITDA calculations contained therein (the "EBITDA Review Period"). If the Plan Monitor does not inform the Reorganized Debtors of such a dispute within the EBITDA Review Period, the Plan Monitor will be deemed to have waived its rights to lodge any such dispute or prosecute an enforcement action with respect any Option 2 Payment Event for such fiscal year. The Reorganized Debtors will make the appropriate distributions with respect to the Class 1 Earnout Rights pursuant to the Joint Plan on or before the date (the "Earnout Payment Date") which is 10 business days after (i) the expiration of the EBITDA Review Period or (ii) the date on which the Reorganized Debtors receive written, binding notification from the Plan Monitor that it will not lodge a dispute with respect to such fiscal year. In the event of a dispute, the Reorganized Debtors will withhold any distributions with respect to Class 1 Earnout Rights until the resolution of such dispute or, to the extent applicable, conclusion of a related enforcement action.

Upon the payment in full of all Class 1 Earnout Rights, the rights and obligations of the Plan Monitor shall immediately cease, and the Reorganized Debtors shall be under no obligation to pay any additional fees and expenses for the period after such final payment is made.

## ARTICLE VIII.

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

**8.01    No Distribution Pending Allowance**.    Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim. With respect to all Disputed Claims, the Debtors or Reorganized Debtors shall withhold distributions and will make the appropriate distributions to holders of Disputed Claims to the extent such Claims are later Allowed as provided for in the Joint Plan. Until such time, only with respect to Class 3B Claims of holders who elect OPTION 1 treatment, the Reorganized Debtors shall withhold from the property to be distributed to holders of such beneficial interests in a segregated account or accounts the portion of such property allocable to such Disputed Claims and shall hold such property in the respective Disputed Claims Reserves. If any such Disputed Claims are disallowed, the Cash held in the

Disputed Claims Reserves shall be released as and to the extent the Reorganized Debtors determine such property is no longer necessary to fund unresolved Disputed Claims, and such Cash shall be distributed in accordance with Article VI hereof.  With respect to all other Disputed Claims, the Debtors or Reorganized Debtors shall withhold distributions and will make the appropriate distributions to holders of Disputed Claims to the extent such Claims are later Allowed as provided for in the Joint Plan.

**8.02    Resolution of Disputed Claims**.    Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Debtors and, following the Effective Date, the Reorganized Debtors shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code) to make and file objections to Claims against the Debtors and shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than **63** days after the entry of the Confirmation Order, except for those Claims related to Section 9.03.  Following the Effective Date, exclusive rights to prosecute or settle all objections to Claims asserted by the Debtors shall be vested in the Reorganized Debtors.  From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Debtors or the Reorganized Debtors elect to withdraw any such objection or the Debtors or the Reorganized Debtors and the claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise or otherwise resolve any Disputed Claim.

**8.03    Estimation**.    The Debtors and, following the Effective Date, the Reorganized Debtors may request that the Bankruptcy Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Reorganized Debtors have previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtors (or the Reorganized Debtors) may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.  On and after the Confirmation Date, Claims that have been estimated may be compromised, settled, withdrawn, or otherwise resolved subsequently, without further order of the Bankruptcy Court.

**8.04    Allowance of Disputed Claims**.  If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Reorganized Debtors shall, on the Subsequent Distribution Date following the date on which the Claim becomes an Allowed Claim, distribute to the holder of such Allowed Claim the distribution such holder would have been entitled to receive under the Plans if such Claim had been an Allowed Claim on the Effective Date or any Subsequent Distribution Date.

**8.05    Release of Funds from Disputed Claims Reserves**.    To the extent a Disputed Claim of a holder which elected Option 1 treatment is Disallowed, the Cash and other property that would otherwise be distributed pursuant to Section 8.04 hereof will instead be

distributed proportionally to holders of Claims which elected Option 1 treatment on a Subsequent Distribution Date.

**8.06    Deadline to File Objections to Claims**.  The deadline for the Debtors or the Reorganized Debtors to object to any and all Claims arising before the Petition Date, except for those Claims related to Section 9.03, shall be **63** days from the entry of the Confirmation Order, unless extended by an order of this Court for good cause shown.  If the deadline for the filing of such objections passes without an objection having been filed with respect to a Claim, such Claim shall be deemed to be an Allowed Claim.

## ARTICLE IX.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**9.01    Generally**.  Except as otherwise provided in Section 9.03 of the Joint Plan, pursuant to sections 365 and 1123(b) of the Bankruptcy Code, all prepetition executory contracts and unexpired leases that exist between the Debtors and any Person shall be deemed rejected by the Debtors on the Effective Date (with such rejection effective as of the Petition Date), except for any executory contract and unexpired lease:

(a)    which has been assumed, assumed and assigned, or rejected, as applicable, pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date; or

(b)    as to which a motion for approval of the assumption, assumption and assignment, or rejection, as applicable, of such contract or lease has been filed and/or served prior to the Confirmation Date; or

(c)    which is being assumed or assumed and assigned as set forth in Schedule 9.01, which shall be filed with the Plan Supplement.  The listing of a document on Schedule 9.01 to the Joint Plan shall not constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that the Debtors have any liability under such contract or lease.

**9.02    Payment of Cure Costs**.  Cure costs associated with the assumption of the executory contracts and unexpired leases pursuant to Section IX of the Joint Plan are listed with the applicable agreement on Schedule 9.01.  **A party to an executory contract or unexpired lease shall be bound by the Cure Amount identified on Schedule 9.01 unless such party files an objection to such Cure Amount by the date established for the filing of objections to the confirmation of the Plans**.  The cure payments will be made in equal monthly payments over 36 months beginning on the 28th day after the Effective Date.  The entry of the Confirmation Order shall be a conclusive determination that such cure is proper in amount and prompt pursuant to Section 365(b)(1)(A) and that adequate assurances of future performance have been provided.

**9.03    Approval of Assumption, Assumption and Assignment or Rejection of Executory Contracts and Unexpired Leases**.  The occurrence of the Effective Date shall constitute, as of the Confirmation Date, the approval, pursuant to sections 365 and 1123(b) of the Bankruptcy Code, of the assumption or the assumption and assignment of the executory

contracts and unexpired leases listed on Schedule 9.01, and the rejection, as applicable, of the executory contracts and unexpired leases rejected pursuant to Article IX of the Plans.

       **9.04**    ***Claims for Damages***.  Notwithstanding the prior orders establishing the deadlines for filing Claims against the Debtors, Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Joint Plan shall be filed and served on the Debtors or Reorganized Debtors (as applicable), pursuant to the procedures specified in the Confirmation Order, no later than **35** days after the entry of the Confirmation Order.  Any Claims not filed within such time will be forever barred from assertion against the Debtors (or the Reorganized Debtors), their estates, successors, or properties.  All Claims arising from the rejection of executory contracts and unexpired leases shall be treated as General Unsecured Claims under the Plans.  Objections to any such Claims shall be filed no later than **63** days after such Claim is filed and served, and the Bankruptcy Court shall determine any such objections.  If the Bankruptcy Court overrules any timely objection to such Claim; then that Claim, to the extent Allowed, shall be classified as an Allowed General Unsecured Claim and paid in accordance with the provisions of the appropriate Debtor's Plan on the later of (i) the next Subsequent Distribution Date and (ii) ten business days after the Claim has been Allowed by a Final Order; provided that no such payments shall be made prior to the entry of the Confirmation Order.

       **9.05**    ***Postpetition Executory Contracts and Unexpired Leases***.  All rights in connection with all executory contracts and unexpired leases assumed by the Debtors or entered into after the Petition Date that have not been assigned to a third party shall vest in the Reorganized Debtors, pursuant to section 1141(b) of the Bankruptcy Code.

## ARTICLE X.

## CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

       **10.01**  ***Conditions Precedent to Effective Date of Plans***.  The occurrence of the Effective Date of the Plans is subject to satisfaction of the following conditions precedent:

       (a)    The Confirmation Order, in a form and substance acceptable to the Debtors, the Committee, HHI, CFG Bank, and the Participating New Equity Owners, shall have been entered and is a Final Order.

       (b)    All other actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plans, including without limitation the documents comprising the Plan Supplement that are necessary for the effectuation of the Plans; shall have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived.

       (c)    All authorizations, consents and regulatory approvals, if any, required by the Debtors in connection with the consummation of the Plans are obtained and not revoked.

       (d)    Participating New Equity Owners have funded their respective funding commitments.

(e)      The confirmation of each and all of the Debtors' respective Plans.

*10.02   Waiver of Conditions Precedent*.   To the extent practicable and legally permissible, the conditions precedent in Sections 10.01(b), (c), (d), and (e) may be waived, in whole or in part, only with the approval of the Debtors.   Any such waiver of a condition precedent in Sections 10.01(b), (c), (d), and (e) may be effected at any time by filing a notice thereof with the Bankruptcy Court.   Notwithstanding the foregoing, Sections 10.01(a) hereof shall not be waived or modified by CAH 11 without the consent of the Committee, HHI, and CFG Bank.

*10.03   Effect of Failure of Conditions*.   In the event that the conditions specified in Section 10.01(b) and/or 10.01(d) have not been satisfied or waived in the manner provided in Section 10.02 on or before **126 days** after the Confirmation Date, then upon written notification filed by the Debtors with the Bankruptcy Court (a) the Confirmation Order shall be vacated, (b) no distributions under the Plans shall be made, (c) the Debtors and all holders of Claims and Old Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, (d) the time within which the Debtors may assume, assume and assign, or reject all prepetition executory contracts and unexpired leases shall be extended for a period of **35** days after the date the Confirmation Order is vacated, and (e) all the Debtors' obligations with respect to the Claims and Old Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person, in any further proceedings involving the Debtors.

## ARTICLE XI.

## EFFECTS OF CONFIRMATION

*11.01   No Substantive Consolidation*.   Confirmation of these Plans will not effectuate a substantive consolidation of any of the Debtors or Reorganized Debtors.

*11.02   Vesting of Debtors' Assets and Claims in Reorganized Debtors*.

(a)      Debtors' Assets.

(A)      As of the Effective Date, all of the Debtors' Assets and Claims and shall vest in the Reorganized Debtors as provided for in the Plans.

(B)      From and after the Effective Date, the Reorganized Debtors may dispose of the Debtors' Assets and Claims; free of any restrictions of the Bankruptcy Code, but in accordance with the provisions of the Plans.

(C)      As of the Effective Date, all assets of the Reorganized Debtors shall be free and clear of all Claims, Liens, encumbrances, charges and other interests; except as provided in the Plans or the Confirmation Order.

*11.03   Binding Effect.*  Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plans shall bind any holder of a Claim against or Old Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or interests including the Old Equity Interest of such holder is impaired under the Plans, whether or not such holder has accepted the Plans and whether or not such holder is entitled to a distribution under the Plans.

*11.04   Discharge of Claims*.  Except as provided in the Plans, the rights afforded in and the payments and distributions to be made under the Plans shall discharge all existing debts and Claims of any kind, nature or description whatsoever against any of the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as provided in the Plans, upon the Effective Date, all existing Claims against the Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of such Claims and Old Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtor, the Participating New Equity Owners, the Old Equity Interests, and their successors or assignees or any of their assets or properties, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.

*11.05   Discharge.*  Upon the Effective Date, in consideration of the distributions to be made under the Plans and except as otherwise expressly provided in the Plans, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Old Equity Interest and any Affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Old Equity Interests, rights and liabilities that arose prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Old Equity Interest in the Debtors.  For the avoidance of doubt, upon the Effective Date, this discharge, waiver, and release will be effective as to any and all provisions contained in any prepetition loan document, contract, or agreement of the Debtors which has been not been expressly assumed pursuant to the Plans.  Similarly, all agreements for calls, puts, issuance of warrants, or sales of securities existing as of the Petition Date are terminated and discharged, except as expressly set forth in the Plans.

*11.06   Cancellation of Warrants*.  Upon the Effective Date, any and all warrants issued in or by the Debtors prior to the Effective Date shall be cancelled and any rights thereunder shall be expressly terminated and discharged.

*11.07   Injunction or Stay.*  Except as otherwise expressly provided herein or in the Confirmation Order, all Persons or entities who have held, hold or may hold Claims against any of the Debtors are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner an action or other proceeding of any kind on any such Claim against any of the Reorganized Debtors, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any Reorganized Debtor with respect to such Claim, (c) creating, perfecting or enforcing any encumbrance of any kind against any Reorganized Debtor or against the property or interests in

property of any Reorganized Debtor with respect to such Claim, (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to any Reorganized Debtor or against the property or interests in the property of any Reorganized Debtor with respect to such Claim, (e) suspension of a software license or suspension of contractual services related to a software license, and (f) pursuing any claim released pursuant to this Article XI of the Joint Plan.

      *11.08* **Release of Assets**.  Until the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Debtors, their assets, and properties.  Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matter set forth in Article XII of the Joint Plan.

      *11.09* **Term of Injunctions or Stays**.  Unless otherwise provided in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

      *11.10* **Rights of Action**.  On the Effective Date, all of Debtors' rights, claims, causes of action, avoiding powers, suits and proceedings arising under sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code shall be vested exclusively in the Reorganized Debtors, including the Committee Adversary Complaint.  On the Effective Date, the Committee Adversary Complaint shall be dismissed with prejudice with each party to bear its own costs. Because the Joint Plan provides all creditors the choice of 100% payment though the election to receive Class 1 Earnout Rights, no causes of action for preferential transfers under Section 547 of the Bankruptcy Code will be prosecuted.  To avoid any doubt, all of the Debtors' rights, claims, and causes of action against HHI to the extent not released through operation of the Joint Plan, including, without limitation, those claims asserted in the HHI Litigation shall be exclusively vested in the Reorganized Debtors.  All claims, including derivative claims, not otherwise released herein, against officers, directors, agents and other representatives shall be vested exclusively in the Reorganized Debtors.

      *11.11* **Exculpation**.  Notwithstanding anything herein to the contrary, as of the Effective Date, none of the Debtors, the Participating New Equity Owners, the Committee, and their respective officers, directors, members, employees, accountants, financial advisors, investment bankers, agents, restructuring advisors and attorneys and representatives (but solely in their capacities as such) shall have or incur any liability for any Claim, cause of action or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation, consummation or administration of the Plans, property to be distributed under the Plans or any other act or omission in connection with the Chapter 11 Cases, the Plans, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; provided, however, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence.

      *11.12* **Releases**.  Effective as of the Confirmation Date but subject to the occurrence of the Effective Date, and in consideration of the services of:    (i) the present and former directors, officers, members, employees, affiliates, agents, financial advisors, restructuring advisors, attorneys and representatives of, or to, the Debtors who acted in such

capacities after the Petition Date; (ii) the Participating New Equity Owners; (iii) and the Committee (A) the Debtors, (B) each holder of a Claim that votes to accept a Debtor's Plan (or is deemed to accept a Debtor's Plan) and (C) to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each holder of a Claim that does not vote to accept a Debtor's Plan, shall release unconditionally and forever each present or former director, officer, member, employee, affiliate, agent, financial advisor, restructuring advisor, attorney and representative (and their respective affiliates) of the Debtors who acted in such capacity after the Petition Date, the Participating New Equity Owners, the Committee, and each of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, parent corporations, subsidiaries, partners, affiliates and representatives from any and all Claims or causes of action whatsoever in connection with, related to, or arising out of the Chapter 11 Cases, the pursuit of confirmation of the Plans, the consummation thereof, the administration thereof or the property to be distributed thereunder; provided, however, that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct or gross negligence of any such person or entity.

**11.13  HHI Claims and the HHI Settlement Agreement**.  (a) The Debtors and HHI have agreed, pursuant to the terms of the HHI Settlement Agreement described herein, to resolve the various disputes among the parties including the Debtors' claims and causes of action against HHI (including, without limitation, the HHI Litigation) and all of HHI's Claims in any of the Debtors' cases, including any counter-claims or causes of action that have been or could have been raised in the HHI Litigation (to the extent necessary, all such Claims are deemed to be governed by this Joint Plan).

Pursuant to the HHI Settlement Agreement, HHI shall receive (subject to and contingent upon the additional terms and conditions of the HHI Settlement Agreement as contained in this Section 11.13) the following treatment: (i) $5 million as an Allowed Secured Claim (the "HHI Allowed Secured Claim") be paid, pursuant to the Plans, in monthly installments of principal and interest amortized over an eight-year term with interest accruing at a fixed rate of 6% without prepayment penalties; (ii) in full satisfaction of its Allowed HHI General Unsecured Claim: (a) $7 million of Series B Preferred Stock with comparable economic rights to Series A Preferred Stock (and with the same priority for any distributions, based on their preferred stock ownership, from the Debtors) and (b) Series C Preferred Stock in the amount of $3.2 million (which stock shall be (i) non-voting and (ii) entitled to recovery of principal amount only (without any appreciation rights) and which will share, on a *pro rata* basis, with common stock up to the principal balance on a liquidation event of company).

With respect to the payment of HHI's Allowed Secured Claim, as to CAH 11 and CAH 11 only, the following shall apply provided there is no new default under the CFG subordination agreement with HHI: (i) CAH 11 may make monthly principal payments based on the amount of the HHI Allowed Secured Claim allocated to CAH 11 and based on a 20-year amortization; (ii) CAH 11 may make monthly interest payments at the rate of 6% based on the HHI Allowed Secured Claim allocated to CAH 11; and (iii) any principal payments paid by CAH 11 will reduce the allocated amount and the release price and cross-collateral cap dollar-for-dollar of principal reduction paid from CAH 11.  The restrictions in this paragraph are not restrictions on the payment of HHI's Allowed Secured Claim from any other Debtor, though

that certain Regulatory Agreement at CAH 4 may otherwise provide restrictions and such Regulatory Agreement is not modified or affected by the HHI Settlement Agreement.

Both Series A Preferred Stock and Series B Preferred Stock will be subject to sale and transfer restrictions for a period of three (3) years after the Effective Date. Series B Preferred Stock shall be entitled to appoint one (1) member of the Board of Directors of HMC (which shall reduce the rights of Series A Preferred Stock holders to appoint members of Board of Directors of HMC by one).  Any Person proposed by holders of Series B Preferred Stock to become a members of Board of Directors of HMC must be: (i) an investor in HHI or (ii) an acceptable industry expert, but in **no** event can such Person be (a) David Harbour, (b) any relative of David Harbour, or (c) an employee of David Harbour or a company owned or controlled by David Harbour.  Holders of Series B Preferred Stock shall propose such Person to become its member of the Board of Directors of HMC (the "Series B Director") to the nominating committee which nominating committee is composed solely of Series A directors.  The nominating committee shall review and approve the nomination, which approval shall not be unreasonably withheld, and upon approval of the nominating committee, the candidate for the position of Series B Director would be put to vote by the holders of Series B Preferred Stock alone.  The initial Series B Director shall be Daryl Deel.

On the Effective Date, HHI shall have a valid, perfected security interest in the following Debtors: HMC, CAH 1, CAH 2, CAH 3, CAH 5, CAH 9, CAH 10, CAH 11 (the "HHI Secured Claim Debtors") which will attach to both real and personal property (at all HHI Secured Claim Debtors **except** CAH 11 where it will only attach to personal and not to real property and, in which case, the Joint Plan serves as a consent to the filing of that UCC-1 under the terms of the existing CFG subordination agreement).  To the extent HHI does not currently hold such a lien or security interest on a particular asset at any of the HHI Secured Claim Debtors, then on the Effective Date HHI shall be granted such a valid, perfected lien or security interest pursuant to the Joint Plan; *provided, however*, that, if the Court determines that a Plan or multiple Plans cannot be approved as a consequence of the grant of such lien or security interest, then the lien or security interest shall attach to the Prepetition Collateral of such Debtors.

HHI's liens and security interests pursuant to this settlement will have the same priority as its Prepetition lien priority.  To the extent that HHI is granted a new lien and security interest in the property of an applicable Debtor, such liens and/or security interests shall be junior in priority to any Prepetition liens or security interests of the holders of any Allowed Secured Claims in such Debtor's property where such lien rights have been retained pursuant to this Joint Plan.

The HHI Allowed Secured Claim will be allocated among the HHI Secured Claim Debtors as indicated in the chart below.  HHI's security interest pursuant to the HHI Allowed Secured Claim would be cross-collateralized among the HHI Secured Claim Debtors, but the amount of the HHI Allowed Secured Claim collectible against any particular HHI Secured Claim Debtor would be limited by a 'cap' set forth in the table below.  The release price (the amount which would be required at any particular HHI Secured Claim Debtor to release the security interest against such Debtor's property) will be the lesser of: (i) the current total balance owed to HHI on its HHI Allowed Secured Claim or (ii) the amount indicated below.  The payment to HHI of a release price would release the Collateral with respect to the

applicable HHI Secured Claim Debtor and such amount will be applied to the total outstanding principal and interest under the HHI Allowed Secured Claim as of the date of such payment.

Principal reductions through payments against the HHI Allowed Secured Claim would not affect the cross-collateralization cap. Payment-in-full of a release price with respect to a particular HHI Secured Claim Debtor will release such Debtor from all liability under the HHI Allowed Secured Claim including any liens or security interests, but, such payment will **not** reduce or otherwise affect the release price or cross-collateralization cap for any other HHI Secured Claim Debtor or their assets.

Listed below are: the HHI Secured Claim Debtors subject to the HHI Allowed Secured Claim, the allocation of the HHI Allowed Secured Claim to each of the HHI Secured Claim Debtors, release price with respect to each HHI Secured Claim Debtor, and the cross-collateral cap with respect to each HHI Secured Claim Debtor.

| Debtor | Allocation Percentage | Allocated Amount | Release Price | Cross-Collateral Cap |
|--------|----------------------|------------------|---------------|----------------------|
| HMC | 2% | $100,000 | $110,000 | $120,000 |
| CAH 1 | 38% | $1,900,000 | $2,090,000 | $2,280,000 |
| CAH 2 | 5% | $250,000 | $275,000 | $300,000 |
| CAH 3 | 9% | $450,000 | $495,000 | $540,000 |
| CAH 5 | 7% | $350,000 | $385,000 | $420,000 |
| CAH 9 | 2% | $100,000 | $110,000 | $120,000 |
| CAH 10 | 5% | $250,000 | $275,000 | $300,000 |
| CAH 11 | 32% | $1,600,000 | $1,680,000 | $1,760,000 |
| **TOTAL** | **100%** | **$5,000,000** | **$5,420,000** | **$5,840,000** |

Upon tender of a release price in good and available funds with respect to a particular HHI Secured Claim Debtor, the Debtors (i) shall be authorized under Article 9 of the Uniform Commercial Code to file, without further notice or approval of HHI or the Court, any and all appropriate documents, including, without limitation, termination statements, with respect to such Debtor in order to terminate any lien or security interest and (ii) shall have an irrevocable power of attorney to file a mortgage release with respect to such Debtor in the applicable real estate records for the state and locality in which such Debtor is located.

In addition, the Gemino Subordination Agreement shall be amended to permit (i) the payment of HHI's Claims as provided for in the Joint Plan and (ii) the attachment and perfection of the liens and security interests as set forth in the Joint Plan. Any prior defaults (related to payments, the bankruptcy, or otherwise) under the Gemino Subordination Agreement shall be waived pursuant to the Joint Plan and only a new post-Effective Date default under the Gemino Subordination Agreement will trigger the rights under such agreement (and with respect to any payment default provisions of the Gemino Subordination Agreement, any such payment default provisions would be clarified to incorporate the payment terms for Gemino under the Plan, rather than the original Gemino Loan documents.

For the avoidance of doubt, any Claims of HHI not specifically treated as a part of this HHI Settlement Agreement shall be Disallowed.

Except with respect to the requirements of this Joint Plan, and effective as of the Effective Date, HHI shall release unconditionally and forever each of the Debtors and each present or former director, officer, member, employee, affiliate, agent, financial advisor, restructuring advisor, attorney and representative (and their respective affiliates) of the Debtors who acted in such capacity before and after the Petition Date, from any and all Claims or causes of action whatsoever, including with respect to the HHI Litigation, or in connection with, related to, or arising out of the Chapter 11 Cases, the pursuit of confirmation of the Plans, the consummation thereof, the administration thereof or the property to be distributed thereunder.

Except with respect to the requirements of this Joint Plan, and effective as of the Effective Date, each of the Debtors shall release unconditionally and forever HHI and each present or former director, officer, member, employee, affiliate, agent, financial advisor, restructuring advisor, attorney and representative (and their respective affiliates) of HHI who acted in such capacity before and after the Petition Date, from any and all Claims or causes of action whatsoever, including with respect to the HHI Litigation, or in connection with, related to, or arising out of the Chapter 11 Cases, the pursuit of confirmation of the Plans, the consummation thereof, the administration thereof or the property to be distributed thereunder.

HHI agrees to waive its rights against each and all of the Debtors pursuant to Section 1111(b) of the Bankruptcy Code.

This HHI Settlement Agreement, including, without limitation, the proposed treatment of HHI's Claims, the mutual releases provided by HHI and the Debtors, and the security interests granted to HHI pursuant to the Joint Plan is a part of a settlement agreement which the Debtors and HHI propose pursuant to Rule 9019 of the Bankruptcy Rules and the entry of an order confirming this Joint Plan shall constitute approval of such settlement pursuant to Bankruptcy Rule 9019.

The effectiveness of the HHI Settlement Agreement is expressly conditioned on: (i) the express consent of Gemino to the HHI Settlement Agreement and payments and grant of security interests provided therein; (ii) HHI's support for the Joint Plan, including, without limitation, HHI voting all of its Claims in each of the Debtors' cases in favor of the respective Plans; (iii) approval of the Bankruptcy Court; (iv) CFG's consent with respect the granting of liens or security interests in CAH 11; and (v) confirmation of the Joint Plan incorporating this HHI Settlement Agreement.

On the Effective Date or as soon thereafter as is reasonably practicable, the HHI Litigation, including any cross- or counter-claims, shall be dismissed with prejudice with each party to bear its own costs.

For voting purposes only, HHI and the Debtors agree that HHI may vote its Secured Claims in each of the applicable Debtors' cases in the amounts allocated herein above, and that HHI may vote its Unsecured Claims in each of the Debtors' bankruptcy cases in an amount equal to the difference between such allocated Claim amount and $16.1 million. In

those cases where HHI does not hold an allocated Allowed Secured Claim, HHI may vote its Claim as an Allowed Unsecured Claim in the amount of $16.1 million.

(b) Prior to the Petition Date, HHI, as "Subordinated Lender," and CFG Bank, as "Senior Lender", entered into the CFG Subordination Agreement, dated as of March 31, 2010, in order to set forth the relative rights and priorities of CFG Bank's senior secured liens and HHI's junior security interests vis-à-vis CAH 11.   A true and correct copy of the CFG Subordination Agreement is attached hereto as Schedule 11.13 and incorporated by reference herein.

HHI hereby irrevocably acknowledges, ratifies and confirms that: (a) HHI executed and delivered the CFG Subordination Agreement in favor of CFG Bank prior to the Petition Date; (b) all of the terms, covenants and conditions of the CFG Subordination Agreement are incorporated by reference into the Debtors' Plans as if fully set forth herein; (c) any and all security interests and liens that HHI purports to have against CAH 11, whether arising prepetition or post-petition, are and shall remain junior in priority to all of CFG Bank's liens and security interests in the CFG Collateral and any other assets of CAH 11; (d) all of the terms, covenants and conditions of the CFG Subordination Agreement are valid and enforceable, and shall continue to remain in full force and effect with respect to CFG Bank's Senior Loan and HHI's Subordinated Loan (as defined in the Subordination Agreement); (d) HHI is absolutely and unconditionally bound by, and shall strictly comply with, all of the terms, covenants and conditions of the Subordination Agreement.

With respect to the $5,000,000.00 HHI Secured Claim, HHI will receive an allocated secured claim in the amount of $1,600,000.00 against CAH 11.   HHI's allocated Secured Claim against CAH 11 shall be junior in priority to the Allowed CFG Secured Claim. Provided there is no default on the obligations owed to CFG Bank under the CFG Loan Documents, the Joint Plan or the Confirmation Order, CAH 11 shall be authorized to make interest payments to HHI on the allocated secured claim pursuant to the Plan based on 6% interest amortized over 8 years.   HHI will also be allowed to have a lien and security interest in junior priority position to CFG Bank on the personal property assets of CAH 11 commensurate with UCC Financing Statement No. 2010 1443559 filed with the Delaware Department of State as such statement may be continued from time-to-time.   If the Plan does not become effective pursuant to Section 10.3, then the Debtors, HHI and CFG Bank each reserves their respective rights under the CFG Subordination Agreement and nothing contained in this Plan shall be admissible or constitute an admission by any party.

Notwithstanding anything to the contrary set forth herein, the CFG Subordination Agreement shall continue to govern and control CFG Bank and HHI's respective rights to any payments to be made by CAH 11 under this Plan.   In the event of a default under the Plan or an "Event of Default" or "Default" under the CFG Loan Documents (as defined therein), CFG Bank, immediately thereafter, shall be immediately entitled to exercise and enforce all of its rights and remedies under the CFG Subordination Agreement, the other CFG Loan Documents, applicable law and otherwise with respect to the CFG Collateral and any payments that are owed at that time by CAH 11 to HHI under this Plan.

HHI shall execute and deliver to CFG Bank and any of CFG Bank's successors or assigns (collectively, the "CFG Bank Parties") such other and further documents as the CFG Bank Parties may request to carry out the terms and conditions of the CFG Subordination Agreement, all in a form and substance acceptable to the CFG Bank Parties.

The restrictions contained in this Section 11.13(b) relate to CAH 11 only. Nothing contained in this subsection 11.13(b) shall restrict or prohibit any other Debtor from making payments to HHI pursuant to the HHI Settlement Agreement and HHI shall be entitled to retain any such payment made pursuant to the Joint Plan.  For the avoidance of doubt, even if there is a default under the Joint Plan's treatment of CFG Bank, HHI shall continue to have the right to receive and retain payments after such a default from any other Debtor except CAH 11.

# ARTICLE XII.

# RETENTION OF JURISDICTION

The Bankruptcy Court shall have the exclusive jurisdiction of all matters arising out of, or related to, these Chapter 11 Cases and the Plans, pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation, to:

(a)    Hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, the allowance of Claims and Administrative Expense Claims resulting therefrom and any disputes with respect to executory contracts or unexpired leases relating to facts and circumstances arising out of or relating to the Chapter 11 Cases;

(b)    Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Old Equity Interest and to determine and resolve any objections to the allowance or priority of Claims or Old Equity Interests;

(c)    Enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, revoked, modified or vacated;

(d)    Issue such orders in aid of execution of the Plans, to the extent authorized by section 1142 of the Bankruptcy Code;

(e)    Consider any amendments to or modifications of the Plans or cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(f)    Hear and determine any disputes or issues arising in connection with the interpretation, implementation or enforcement of the Plans, the Confirmation Order, any transactions or payments contemplated hereby, any agreement, instrument, or other document governing or relating to any of the foregoing or any settlement approved by the Bankruptcy Court;

(g)     Determine requests for payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code;

(h)     Determine other requests for payment of Administrative Claims, Priority Tax Claims, and Priority Non-Tax Claims;

(i)     Hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals under sections 330, 331 and 503(b) of the Bankruptcy Code for periods ending on or before the Effective Date;

(j)     Determine any motions pending on the Confirmation Date for the rejection, assumption or assignment of executory contracts and unexpired leases and the allowance of any Claim allegedly resulting therefrom;

(k)     Recover all assets of the Debtors, property of the Debtors' estates and the assets of the Reorganized Debtors, wherever located;

(l)     Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plans;

(m)     Determine or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters and grant or deny any applications and motions involving the Debtors that may be pending in the Bankruptcy Court on or initiated after the Confirmation Date;

(n)     Enforce all orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Cases;

(o)     Determine such other matters and such other purposes as the Confirmation Order may provide;

(p)     Issue such orders as may be necessary or appropriate to implement, execute, and consummate the Plans and all contracts, instruments, releases, and other agreements or documents created in connection with the Plans, the Disclosure Statement, or the Confirmation Order;

(q)     Hear and determine all disputes involving the existence, scope, nature or otherwise of the discharges, releases, injunctions and exculpations granted under the Plans, the Confirmation Order, or the Bankruptcy Code;

(r)     Issue injunctions and effect any other actions that may be necessary or appropriate to restrain interference by any person or entity with the consummation, implementation or enforcement of the Plans, the Confirmation Order, or any other Order of the Bankruptcy Court;

(s)     Hear and resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, implementation, enforcement or interpretation of the Plans, whether by the Debtors, the Reorganized Debtors, or otherwise, or any contract,

instrument, release, or other agreement or document that is executed or created pursuant to the Joint Plan or any entity's rights arising from or obligations incurred in connection with the Joint Plan or such documents;

(t)     Modify the Joint Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Joint Plan, the Disclosure Statement, or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plans, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plans, the Disclosure Statement, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plans;

(u)     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation, or enforcement of the Plans or the Confirmation Order:

(v)     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors prior to the Effective Date or request by the Reorganized Debtors after the Effective Date for any expedited determination of tax under section 505(b) of the Bankruptcy Code);

(w)     (Enter an order establishing Bar Dates in respect of any Claims for which Bar Dates have not been established as of the Confirmation Date;

(x)     Determine compromises and settlements of Claims against the Debtors or the estates;

(y)     Determine all questions and disputes regarding title to the assets of the Debtors, the estates, or the Reorganized Debtors;

(z)     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated or distributions pursuant to the Joint Plan are enjoined or stayed;

(aa)     Determine any other matters that may arise in connection with or relate to the Joint Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Joint Plan, the Disclosure Statement, or the Confirmation Order;

(bb)     Enter an order or final decree closing the Chapter 11 Cases; and

(cc)     Hear any other matter not inconsistent with the Bankruptcy Code.

# ARTICLE XIII.

## ADDITIONAL PROVISIONS

**13.01  *Effectuating Documents and Further Transactions*.**  On or before the Effective Date, and without the need for any further order or authority, the Debtors shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to it as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plans.  The Debtors and the Reorganized Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plans and any securities issued pursuant to the Plans.

**13.02  *Fees, Interest, and Expenses Incurred by Secured Lenders*.**  All appropriate and agreed fees, interest, and expenses incurred by secured lenders and payable pursuant to a lender's underlying documentation for which the Debtors would be liable pursuant to Section 506(a) of the Bankruptcy Code but which was not paid during the pendency of the bankruptcy cases shall be added to the principal amount of the loan with respect to such lender and paid in accordance with the treatment accorded to such Claim in the applicable Plan.  Any disputes between the Debtors and a secured lender related to the appropriate amount of such fees, interest, and expenses shall be submitted to the Bankruptcy Court for review and determination.

**13.03  *Withholding and Reporting Requirements*.**  In connection with the Plans and all instruments issued in connection therewith and distributed thereon, any party issuing any instrument or making any distribution under the Plans shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plans shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plans shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any governmental unit, including income, withholding, and other tax obligations on account of such distribution. Any party issuing any instrument or making any distribution under the Plans has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

**13.04  *Satisfaction of Claims before the Effective Date*.**  To the extent that any of the Debtors, for whatever reason, have satisfied a Claim in full, by payment or otherwise, before the occurrence of the Effective Date, the respective Debtor shall not be required to provide a distribution to the holder of such Claim pursuant to the respective Debtor's Plan.

**13.05  *Continuation of Corporate Organizational Documents, By-Laws and Corporate Governance*.**  On the Effective Date, the management, control and operation of the Reorganized Debtors shall remain the general responsibility of the existing Board of Directors and any changes to the Board of Directors after the Effective Date shall be governed by the existing corporate governance provisions of its organizational documents and by-laws, subject to the provisions of the HHI Settlement Agreement and the rights of holders of Class 1 and Class 2

Earnout Rights in the event of a default.  In addition, on the Effective Date, the organizational documents shall be amended: (i) to prohibit (a) the issuance of non-voting equity securities, (b) the payment of any bonus, dividend, or any other such distribution from the Reorganized Debtors to the holders of Old Equity Interests on the basis of such Old Equity Interests, (c) the issuance of any equity interests with priority above Class 1 and Class 2 Earnout Rights until such time as all Class 1 and Class 2 Earnout Rights have been redeemed in full, and (d) issuance of any equity interest junior in priority to Class 1 and Class 2 Earnout Rights unless such equity interest is subject to the same distribution restrictions as Old Equity Interests; (ii) to remove certain provisions from the Debtors' by-laws related to the potential issuance of preferred stock pursuant to the Master Funding Agreement and Amended and Restated Credit Agreement with HHI; and (iii) to accommodate any other changes required to be made in conformity with the Joint Plan, including, but not limited to, any and all changes required to implement the HHI Settlement Agreement.

**13.06  Officers of Reorganized Debtors**.   The officers of the Debtors immediately prior to the Effective Date shall serve as the initial officers of the Reorganized Debtors on and after the Effective Date.  Such officers shall serve in accordance with applicable non-bankruptcy law and any employment agreement assumed pursuant to the Joint Plan or entered into with the Reorganized Debtors on or after the Effective Date.

**13.07  Special Provisions Regarding Insider Claims, Intercompany Claims and Subsidiary Interests**.  All Intercompany Claims shall be Allowed General Unsecured Claims in the amounts reflected in the books and records of the respective Debtor and listed on the Schedules and the holders of such Intercompany Claims shall be deemed to have cast ballots to accept the respective Debtor's Plan in the case in which such Claim is held in the amount at which such Claim is scheduled (but the votes of Insiders will not count for purposes of determining the acceptance of at least one class of claims that is impaired under the Plans pursuant to Section 1129(a)(10)).  No proofs of Claim evidencing Intercompany Claims must be filed.  For purposes of each Plan, such Intercompany Claims will be deemed to have elected OPTION 2 treatment to receive Class 1 Earnout Rights so as not to dilute those creditors electing OPTION 1.  Similarly, all Insider Claims that are Class 3B Claims against an applicable Debtor shall be deemed to elect OPTION 2 treatment to receive Class 1 Earnout Rights.  No proofs of Equity Interest evidencing Equity Interests of a Debtor held by another Debtor need be filed.

The Committee Adversary Complaint functions as a claims objection with respect to claim of the various Insiders named as defendants therein.  The vote of the defendants in the Committee Adversary Complaint will not be counted in the General Unsecured Classes as a consequence of that lawsuit unless those parties obtain an order of the Court estimating their Claims for voting purposes.

**13.08  Subordination Agreements**.   Except as specifically provided in this Joint Plan, pursuant to Section 510(a) of the Bankruptcy Code, any Prepetition subordination agreement shall continue in full force and effect; *provided, however* that any default or other provision of such agreement that was conditioned upon, contingent upon, or triggered by a Debtor's bankruptcy filing shall be waived as to these Chapter 11 Cases.  In all other respects, all such parties to any such subordination agreements shall have all of their respective rights as if the Debtors had not filed these Chapter 11 Cases, including, without limitation, the right to

enforce such agreement in the future based upon any subsequent bankruptcy filing by one or more of the Debtors.

          **13.09   *Assumption of Obligations under Management Incentive Program*.** Debtors and Reorganized Debtors will assume the obligations under the Debtors' management incentive programs under the same terms and conditions as existed before the Petition Date, which shall include the issuance of post-Effective Date warrants or options thereunder by the Debtors or Reorganized Debtors based on services performed after the Effective Date.

          **13.10   *Modification of Plan(s).*** Alterations, amendments, or modifications of or to a Plan or the Plans may be proposed in writing by the Debtors at any time prior to the Confirmation Date, provided that the Plan(s), as altered, amended, or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code and the Debtors shall have complied with section 1125 of the Bankruptcy Code. The Plan(s) may be altered, amended or modified at any time after the Confirmation Date and before substantial consummation, provided that the Plan(s), as altered, amended or modified, satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan(s), as altered, amended or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted a Plan shall be deemed to have accepted a Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

          Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plans without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

          **13.11   *Revocation or Withdrawal of the Plans*.** The Debtors reserve the right to revoke or withdraw a Plan or the Plans, in whole or in part, prior to the Confirmation Date. If a Debtor or the Debtors revoke or withdraw a Plan or the Plans in whole prior to the Confirmation Date, then the Plan or Plans, as the case may be, shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims or Old Equity Interests by or against the Debtor(s) or any other person or to prejudice in any manner the rights of the Debtor(s) or any person in any further proceedings involving the Debtor(s).The Debtors reserve the right to withdraw the Plan with respect to any Debtor and proceed with confirmation of the Plans with respect to any other Debtors. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims against or equity interests in such Debtors withdrawn from the Plans or any other person or to prejudice in any manner the rights of such Debtors or any person in any further proceedings involving such withdrawn Debtor(s).

          **13.12   *Plan Supplement*.** Plan Supplement and the documents contained therein shall be in form, scope and substance satisfactory to the Debtors, and shall be filed with the Bankruptcy Court no later than ten (10) calendar days before the Confirmation

Hearing. The Plan Supplement and the documents contained therein are incorporated into and made a part of the Plans as if set forth in full herein.

**13.13  *Payment of Statutory Fees*.** All fees payable under section 1930 of chapter 123 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid as and when due until a final decree is entered.

**13.14  *Post-Effective Date Professional Fees and Expenses*.** From and after the Effective Date, the Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred by the Reorganized Debtors.

**13.15  *Dissolution of the Committee*.** On the Effective Date, the Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Committee's attorneys, accountants and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

**13.16  *Exemption from Transfer Taxes*.** to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection with the Plans, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plans, any purchase, merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plans shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

**13.17  *Exemption from Securities Laws*.** To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law (and to the extent applicable), the issuance under the Joint Plan of Class 1 Earnout Rights and Class 2 Earnout Rights will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder.

**13.18  *Retention of Net Operating Losses*.** The Debtors and Reorganized Debtors shall retain any and all rights, interests, and benefits in or related to the Debtors' Net Operating Losses under the Tax Code and related Rules and Regulations, including, without limitation, Tax Code Section 382.

**13.19  *Expedited Tax Determination*.** The Debtors and the Reorganized Debtors are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any or all returns filed for, or on behalf of, the Debtors for any and all taxable periods (or portions thereof) ending after the Commencement Date through and including the Effective Date.

**13.20  *Exhibits/Schedules*.** All exhibits and schedules to the Plans, including the Plan Supplement, are incorporated into and are a part of the Plans as if set forth in full herein.

**13.21  Substantial Consummation**.  On the Effective Date, the Plans shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**13.22  Severability of Plan Provisions**.  In the event that, prior to the Confirmation Date, any term or provision of a Plan or the Plans is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan and/or Plans, as the case may be, shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan or Plans, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable in accordance with its terms.

**13.23  Voting of Claims and Equity Interests**.  Each holder of an Allowed Claim in an impaired Class of Claims that is receiving a distribution pursuant to a Debtor's Plan shall be entitled to vote to accept or reject such Plan as provided in the order approving the Disclosure Statement.  For purposes of calculating the number of Allowed Claims in a Class that has voted to accept or reject a Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one entity or its "affiliate" (as defined in the Securities Act of 1933 and the rules and regulations promulgated with respect to such Act) shall be aggregated and treated as one Allowed Claim in such Class; *provided, however*, that Claims acquired by an entity from unrelated entities shall not be aggregated for purposes of voting or Convenience Class election.

**13.24  Agreements with the Debtors**.  To the extent that the Plans anticipate or require the Debtor(s) to enter into an agreement or agreements pursuant to the Plans, any such agreement must be contained in a writing signed by the applicable Debtor(s).

**13.25  Confirmability and Severability of Plans**.  The confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied separately with respect to each Plan. Should any of the Debtors' proposed Plans not be confirmed, the Debtor may elect to alter, amend, revoke or withdraw the Plan or Plans or to seek confirmation thereof.

**13.26  Nonconsensual Confirmation**.  If any impaired Class with respect to any individual Debtor's Plan does not accept such Plan by the requisite statutory majorities provided in sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired Class is deemed to have rejected a Plan, the respective Debtor reserves the right (a) to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code and (b) to amend the Plan in accordance with Article X of the Plan as necessary to obtain entry of the Confirmation Order.

**13.27  Successors and Assigns**.  The Plans shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Equity Interests, and their respective successors and assigns.

*13.28   Notices*.  Any notice required or permitted under the Joint Plan shall be in writing and, unless otherwise expressly provided in the Joint Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed to the following parties:

*If to the Debtors*:

HMC/CAH Consolidated, Inc.
1100 Main Street, Suite 2350
Kansas City, Missouri 64105
Telephone: (816) 474-7800
Fax: (816) 474-2203
Attn: Dennis Davis, Esq.

*with copies to*:

HUSCH BLACKWELL LLP
Attorneys for Debtors and
Debtors in Possession
4801 Main Street, Suite 1000
Kansas City, Missouri  64112
Phone: (816) 983-8000
Facsimile: (816) 983-8080
Attn:  Mark T. Benedict, Esq. and
          Marshall C. Turner, Esq.

*13.29   Governing Law*.   Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under the Plans and any agreements, documents and instruments executed in connection with the Plans shall be governed by, and construed and enforced in accordance with, the laws of the State of Missouri, without giving effect to the principles of conflicts of law of such jurisdiction.

*13.30   Tax Reporting and Compliance*.   The Debtors and the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions under the Joint Plan shall be subject to any such withholding and reporting requirements.  For purposes of internal accounting and for tax purposes, the Reorganized Debtors shall be entitled to use "Fresh Start" accounting under GAAP.

*13.31   Filing of Additional Documents*.   On or before substantial consummation of the Joint Plan, the Debtors shall file such agreements and other documents, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Joint Plan.

*13.32   Rules of Interpretation and Computation of Time*.   For purposes of the Joint Plan, unless otherwise provided therein, (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural, (ii) any reference in the Joint Plan to a contract, instrument, release, or other agreement or

document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions, (iii) any reference in the Joint Plan to an existing document or schedule filed or to be filed means such document or schedule, as it may have been or may be amended, modified, or supplemented pursuant to the Joint Plan, (iv) any reference to an entity as a holder of a Claim or Equity Interest includes that entity's successors and assigns, (v) all references in the Joint Plan to Sections, Articles, and schedules are references to Sections, Articles, and schedules of or to the Joint Plan, (vi) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Joint Plan, (vii) the rules of construction set forth in section 102 of the Bankruptcy Code will apply, and (viii) in computing any period of time prescribed or allowed by the Joint Plan, Bankruptcy Rule 9006(a) will apply.

   ***13.33   Conflict of Terms***.   In the event of a conflict between the terms of the Joint Plan and the Disclosure Statement, the terms of the Joint Plan shall govern.

   ***13.34   No Distributions to Equity***.   Until such time as Class 1 Earnout Rights are paid in full with applicable interest, absent the written consent of the Plan Monitor (which such consent may be withheld in the Plan Monitor's sole discretion), the Reorganized Debtors shall not (a) pay dividends or make other distributions to holders of equity interests in the Reorganized Debtors on account of such equity interests, nor (b) pay cash bonuses or make other cash payments to shareholder Insiders (including Larry Arthur, James Sneed, Dennis Davis, Trent Skaggs and Gordon Docking) (including consulting fees paid to shareholder Insiders or their affiliates), other than (i) agreed salaries and (ii) any distributions of equity interests or related rights pursuant to the management incentive plan.   Officers' and non-officer shareholders' salaries shall not increase by more than 10% per year until payment in full of Class 1 Earnout Rights.   Notwithstanding the foregoing, the Reorganized Debtors: (a) may perform any payment obligations authorized by the Joint Plan including, without limitation, making any and all distributions to Insiders on the basis of Allowed Claims (but not Allowed Interests) held by such Insiders and (b) may enter into agreements with affiliates of Insiders related to the construction of replacement hospital facilities and make payments to such affiliates of Insiders pursuant to those agreements.   Nothing contained in this paragraph shall restrict shareholders of the Reorganized Debtors from selling or otherwise transferring ownership of their shares; <u>provided</u>, <u>however</u>, that such transferred shares (and their holders) shall remain subject to the same restrictions after such a transfer.

**[The remainder of this page left intentionally blank]**

Respectfully submitted,

**_HMC/CAH Consolidated, Inc._**

By: _/s/ Dennis Davis_
      Name:      Dennis Davis
      Title :     Chief Legal Officer

**_CAH Acquisition Company #1, LLC_**

By: _/s/ Dennis Davis_
      Name:      Dennis Davis
      Title :     Chief Legal Officer

**_CAH Acquisition Company #2, LLC_**

By: _/s/ Dennis Davis_
      Name:      Dennis Davis
      Title :     Chief Legal Officer

**_CAH Acquisition Company #3, LLC_**

By: _/s/ Dennis Davis_
      Name:      Dennis Davis
      Title :     Chief Legal Officer

**_CAH Acquisition Company #4, Inc._**

By: _/s/ Dennis Davis_
      Name:      Dennis Davis
      Title :     Chief Legal Officer

**CAH Acquisition Company #5, LLC**

By: /s/ *Dennis Davis*
       Name:      Dennis Davis
       Title :     Chief Legal Officer

**CAH Acquisition Company 6, LLC**

By: /s/ *Dennis Davis*
       Name:      Dennis Davis
       Title :     Chief Legal Officer

**CAH Acquisition Company 7, LLC**

By: /s/ *Dennis Davis*
       Name:      Dennis Davis
       Title :     Chief Legal Officer

**CAH Acquisition Company 9, LLC**

By: /s/ *Dennis Davis*
       Name:      Dennis Davis
       Title :     Chief Legal Officer

**CAH Acquisition Company 10, LLC**

By: /s/ *Dennis Davis*
       Name:      Dennis Davis
       Title :     Chief Legal Officer

**CAH Acquisition Company 11, LLC**

By: /s/ *Dennis Davis*
       Name:      Dennis Davis
       Title :     Chief Legal Officer

***CAH Acquisition Company 12, LLC***

By: /s/ *Dennis Davis*
       Name:      Dennis Davis
       Title  :     Chief Legal Officer


***CAH Acquisition Company 16, LLC***

By: /s/ *Dennis Davis*
       Name:      Dennis Davis
       Title  :     Chief Legal Officer

*/s/ Matthew Gartner*

| | |
|---|---|
| Mark T. Benedict | #44621 |
| Marshall C. Turner | #58053 |
| Matthew Gartner | #64320 |

HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080
mark.benedict@huschblackwell.com
marshall.turner@huschblackwell.com
matthew.gartner@huschblackwell.com

*Attorneys for the Debtors and
Debtors-in-Possession*

<u>Schedule 1</u>

Insurance Carriers

| Company | Policy Number | Coverage Type |
|---|---|---|
| Mesirow Insurance Services, Inc.<br>353 North Clark Street<br>Chicago IL 60654 | Broker | |
| Travelers Property and Casualty Co.<br>One Tower Square<br>Hartford CT 06183 | P6305008X545TIL12 | Commercial Property |
| National Union Fire Insurance<br>2704 Commerce Drive, Suite B<br>Harrisburg PA 17110 | CA3482244 | Business Auto |
| Wausau Business Insurance Co.<br>PO Box 1848<br>Warrenville, IL 60555 | WCKZ91455058042 | Workers Compensation Insurance- Kansas entities |
| Wausau Business Insurance Co.<br>PO Box 1848<br>Warrenville, IL 60555 | WCKZ91455058032 | Workers compensation insurance- all other locations |
| National Union Fire Insurance<br>2704 Commerce Drive, Suite B<br>Harrisburg PA 17110 | 6794833 | Professional/General Liability – Kansas entities |
| Lexington Insurance Company<br>100 Summer Street<br>Boston MA 02110 | 6794588 | Professional/General Liability- All other States |
| Lexington Insurance Company<br>100 Summer Street<br>Boston MA 02110 | 6794589 | Umbrella excess healthcare professional |
| StarNet Insurance Company<br>475 Steamboat Road<br>Greenwich, CT 06830 | BA120700141 | Aviation insurance- coverage for hospital helipads |
| Chartis Specialty Insurance Company<br>175 Water Street<br>New York NY 10038 | ST5593855 | Pollution insurance for storage tanks |
| Federal Insurance Company<br>82 Hopmeadow Street<br>PO Box 2002<br>Simsbury CT 06070 | 82088393 | Crime |
| Darwin National Assurance<br>311 South Wacker Drive, Suite 1100<br>Chicago IL 60606 | 03049507 | Directors & Officers Liability |
| Darwin National Assurance<br>311 South Wacker Drive, Suite 1100<br>Chicago IL 60606 | 03062984 | Employment Practices Liability |
| Darwin National Assurance | 03049578 | Fiduciary Liability |

| Company | Policy Number | Coverage Type |
|---|---|---|
| 311 South Wacker Drive, Suite 1100 Chicago IL 60606 | | |
| Starr Indemnity & Liability Co. 1-5 W Adams 18th Floor Chicago IL 60603 | SISIXFL21090912 | Excess D &O, Employment practices and Fiduciary |

## SCHEDULE 1.80

### Projected EBITDA

| Fiscal Year | Projected EBITDA Amount |
|---|---|
| 2013 | $11,715,835 |
| 2014 | $12,582,603 |
| 2015 | $11,795,444 |
| 2016 | $12,664,763 |
| 2017 | $12,841,507 |
| 2018 | $12,931,261 |
| 2019 | $13,325,011 |
| 2020 | $13,553,897 |
| 2021 | $13,800,859 |
| 2022 | $14,102,319 |
| 2023 | $14,371,786 |

Schedule 5.86(b)

| Payment Month | Additional Principal Payment |
|---|---|
| 1 | $3,462.90 |
| 2 | $3,480.21 |
| 3 | $3,497.61 |
| 4 | $3,515.10 |
| 5 | $3,532.68 |
| 6 | $3,550.34 |
| 7 | $3,568.09 |
| 8 | $3,585.93 |
| 9 | $3,603.86 |
| 10 | $3,621.88 |
| 11 | $3,639.99 |
| 12 | $3,658.19 |
| 13 | $3,676.48 |
| 14 | $3,694.86 |
| 15 | $3,713.34 |
| 16 | $3,731.90 |
| 17 | $3,750.56 |
| 18 | $3,769.32 |
| 19 | $3,788.16 |
| 20 | $3,807.10 |
| 21 | $3,826.14 |
| 22 | $3,845.27 |
| 23 | $3,864.50 |
| 24 | $3,883.82 |
| 25 | $3,903.24 |
| 26 | $3,922.75 |
| 27 | $3,942.37 |
| 28 | $3,962.08 |
| 29 | $3,981.89 |
| 30 | $4,001.80 |
| 31 | $4,021.81 |
| 32 | $4,041.92 |
| 33 | $4,062.13 |
| 34 | $4,082.44 |
| 35 | $4,102.85 |

<u>Schedule 8.2</u>
503(b)(9) Claims

**<u>Note</u>**:   As noted below, the Debtors dispute a number of the amounts asserted by claimants as 503(b)(9) claims.  To the extent applicable, the Debtors will file objections to those amounts seeking to reduce or eliminate such 503(b)(9) claims (with notice of such filing to the affected creditor).  To the extent that any "Agreed 503(b)(9) Claim Amounts" listed below pertain to an executory contract with any of the Debtors which is to be assumed pursuant to the Joint Plan, such Agreed 503(b)(9) Claim Amount will be paid as part of the Cure Amount for such contract pursuant to the procedures set forth in the Joint Plan.

| CAH Acquisition Company #1, LLC<br>Washington County Community Hospital<br>958 US Hwy 64 East<br>Plymouth, NC 27962 | | |
|---|---|---|
| **Vendor Name** | **Creditor Asserted 503(b)(9) Claim** | **Agreed 503(b)(9) Claim Amount** |
| McNair Oil Company | | $5,639.55 |
| AirGas National Welders | | $887.94 |
| Ortho Clinical Diagnostics | $754.21 | $754.21 |
| Medline Industries Inc | $3,844.12 (Disputed) | $48.70 |
| American Red Cross | $1,671.51 (Disputed) | $613.59 |
| Cardinal Health 200 LLC | $121.24 (Disputed) | $0.00 |
| Cardinal Health 411 | $1,117.99 | $1,117.99 |
| Owens And Minor Inc | $8,683.61 | $8,683.61 |

| CAH Acquisition Company #2, LLC<br>Oswego Medical Center<br>Oswego Community Hospital<br>800 Barker Drive<br>Oswego, KS 67356 | | |
|---|---|---|
| **Vendor Name** | **Creditor Asserted 503(b)(9) Claim** | **Agreed 503(b)(9) Claim Amount** |
| 4 State Maintenance Supply | | $461.32 |
| Alere North America Inc | | $4,308.12 |
| Apria Healthcare Inc | | $457.04 |
| G & W Foods | | $809.25 |
| Hd Supply Facil Maint Ltd | | $62.11 |
| Laboratory Supply Company | | $238.29 |
| Mccartys | | $136.77 |
| McKesson | $1,217.34 | $1,217.34 |
| Medline Industries Inc | $2,353.55 | $2,353.55 |
| Merry X-Ray | | $702.92 |
| Oswego Drug Store | | $1,447.93 |
| Prairie Fire Coffee | | $53.08 |
| Quill Corporation | | $674.61 |
| Siemens Healthcare Diagnostics | $1,985.38 | $1,985.38 |
| Superior Linen Serv Inc | | $866.66 |
| Sysco Of Kansas City | | $1,381.86 |
| | | |

| CAH Acquisition Company #3, LLC | | |
| :---: | :---: | :---: |
| Horton Community Hospital | | |
| 240 W 18th Street | | |
| Horton, KS  66439 | | |
| **Vendor Name** | **Creditor Asserted 503(b)(9) Claim** | **Agreed 503(b)(9) Claim Amount** |
| Airgas | | $368.44 |
| Amerisource Bergen Drug Corp. | $37,114.56 | $37,114.56 |
| Baxter Healthcare Corp | | $724.99 |
| BG Medical | | $1,771.95 |
| Briggs Corporation | | $74.04 |
| Byrne Medical/Minntech Corp | | $169.50 |
| Cardinal Health | $1,270.60 | $1,270.60 |
| CDW Government Inc | | $632.33 |
| Central Auto Parts | | $64.95 |
| Community Blood Center | | $223.58 |
| Conmed Corp | | $140.00 |
| CPSI | | $457.51 |
| DJ Orthopedics LLC | | $83.36 |
| Falls City Mercantile Co In | | $1,241.72 |
| Fisher Scientific Co | | $581.19 |
| Heartland Alarms Inc | | $6,702.00 |
| Hiawatha Community Hospital | | $48.07 |
| Hobart Corporation | | $213.79 |
| Horton Thriftway | | $335.16 |
| Ingenix | | $118.50 |
| J & J Health Care Systems I | | $255.06 |
| Laboratory Supply Company | | $913.07 |
| Lentz Express | | $144.89 |
| Medline Industries Inc | $141.11 | $141.11 |
| Merry X-Ray | | $520.90 |
| Monson Hardware | | $107.26 |
| Owens & Minor | $5,992.80 | $5,992.80 |
| Pepsi Cola Bottling Co | | $9.85 |
| Siemens  Healthcare | $1,019.70 | $1019.70 |
| Sightpath Medical Inc | | $926.00 |
| Staples Advantage | | $129.29 |
| | | |

| CAH Acquisition Company #4 Drumright Regional Hospital 610 West Bypass Drumright, OK 74030 | | |
|---|---|---|
| **Vendor Name** | **Creditor Asserted 503(b)(9) Claim** | **Agreed 503(b)(9) Claim Amount** |
| Aesculap, Inc. | | $1,053.63 |
| Airgas Mid South Inc | | $51.15 |
| B&C Business Products | | $1,026.30 |
| Beckman Coulter | | $135.08 |
| Cardinal Health - Pharm | | $7,320.99 |
| Duncan Equipment Co | | $108.71 |
| Grainger | | $144.74 |
| Infolab Inc. | | $1,074.29 |
| J & J Health Care System, Inc. | $424.79 (Disputed) | $119.73 |
| Medi-Sol | | $1,202.96 |
| Medline Industries Inc | $9,702.59 (Disputed) | $8,761.35 |
| Microaire | | $1,200.00 |
| Murphy's Drug | | $82.96 |
| Oklahoma Blood Institute | $5,268.00 (Disputed) | $1,971.00 |
| US Foodservice | | $1,815.58 |
| Williams Discount Foods | | $234.74 |
| | | |

| CAH ACQUISITION COMPANY #5, INC. Hillsboro Community Hospital 701 South Main Street Hillsboro, KS  67063 | | |
|---|---|---|
| **Vendor Name** | **Creditor Asserted 503(b)(9) Claim** | **Agreed 503(b)(9) Claim Amount** |
| Airgas Mid South Inc | | $425.10 |
| Alere North America Inc | | $550.10 |
| American Red Cross | | $893.00 |
| Beckman Coulter | | $7,600.71 |
| Cardinal Health Med Prod | $201.61 | $1,400.51 |
| Ecom Folders | | $290.76 |
| Mckesson | $3,079.49 | $3,079.49 |
| Medline | $2,629.34 (Disputed) | $1,186.91 |
| Newton Medical Center | | $660.29 |
| Route 56 Customs | | $152.32 |
| Staples | | $611.43 |
| Sysmex | | $170.40 |
| Vogts Hometown Market | | $17.43 |
| | | |

| CAH Acquisition Company #6, LLC I-70 Community Hospital 105 Hospital Drive Sweet Springs, MO 65351 | | |
|---|---|---|
| **Vendor Name** | **Creditor Asserted 503(b)(9) Claim** | **Agreed 503(b)(9) Claim Amount** |
| Airgas | | $15.74 |
| Alere | | $2,063.65 |
| Bernard | | $34.56 |
| Cardinal 200 | $5,511.84 | $5,511.84 |
| Cardinal 411 | $14,352.92 | $14,352.92 |
| Central | | $414.00 |
| Cook | | $260.00 |
| Crown | | $2,363.27 |
| Home Heating & Air Cond | | $86.74 |
| KCI Clinical Advantage | | $201.73 |
| Medical Arts | | $1,256.80 |
| Medline | $4,000.97 (Disputed) | $1,702.39 |
| Tri-Anim | | $263.08 |
| Us Endoscopy | | $780.53 |
| Zoll Medical | | $555.77 |
| | | |

| CAH ACQUISITION COMPANY #7, LLC<br>PRAGUE COMMUNITY HOSPITAL<br>1322 Klabzuba Avenue<br>Prague, OK 74864 | | |
|---|---|---|
| **Vendor Name** | **Creditor Asserted 503(b)(9) Claim** | **Agreed 503(b)(9) Claim Amount** |
| Airgas Mid South, Inc. | | $3,012.75 |
| Amsan | | $63.96 |
| Central Health Services | | $246.38 |
| Eureka Water Company | | $183.31 |
| Hospira Worldwide | | $653.50 |
| J & J Health Care Systems, Inc | $7,544.14 (Disputed) | $6,826.50 |
| KCI USA | | $1,351.67 |
| Laboratory Corp Of America | | $4,414.35 |
| Medical Arts Press | | $219.96 |
| Medline Industries Inc | $2,252.72 | $2,252.72 |
| Merry X-ray | $1,604.02 (Disputed) | $0.00 |
| Oklahoma Blood Institute | $1,993.00 (Disputed) | $0.00 |
| Parks Brothers | | $35.27 |
| Prague Pharmacy | | $254.22 |
| Quill Corporation | | $1,051.46 |
| Respironics | | $3,148.24 |
| Seminole Chemical & Supplies | | $823.38 |
| Southwest Medical Corp | | $821.25 |
| Superior Linen Service Inc | | $1,432.28 |
| Sysco Food Service Of Okla | | $1,106.80 |
| Terrell Lumber & Carpet | | $32.83 |
| | | |

| CAH Acquisition Company #9, LLC<br>Seiling Community Hospital<br>Hwy 60 NE<br>Seiling, OK 73663 | | |
|---|---|---|
| **Vendor Name** | **Creditor Asserted 503(b)(9) Claim** | **Agreed 503(b)(9) Claim Amount** |
| Ecolab | | $19.56 |
| Amsan | | $504.95 |
| API | | $58.00 |
| Cardinal Pharm 411 | $9,507.34 | $8,585.10 |
| Labsco | | $7,806.79 |
| Lampton's | | $907.91 |
| Oklahoma Blood Institute | $1,216.50 (Disputed) | $0.00 |
| Opti Medical | | $409.83 |
| Owens And Minor | $2,111.55 | $2,111.55 |
| Staples | | $1,255.94 |
| Western Drug | | $27.75 |
| | | |

| CAH ACQUISITION COMPANY #10, LLC<br>YADKIN VALLEY COMMUNITY HOSPITAL<br>624 West Main Street<br>PO Box 68<br>Yadkinville, NC  27055 | | |
|---|---|---|
| **Vendor Name** | **Creditor Asserted 503(b)(9) Claim** | **Agreed 503(b)(9) Claim Amount** |
| Air Products And Chemicals | | $691.70 |
| Medline Industries | | $650.83 |
| Cardinal Health 200 | $4,070.72 | $4,634.28 |
| Beckman Coulter | | $3,969.28 |
| Airgas National Welders | | $68.31 |
| Sightpath Medical | | $6,295.00 |
| Blue Ridge X-Ray | | $277.81 |
| Yadkinville Quality Hardware | | $100.37 |
| Alcon Pharmaceuticals | | $160.00 |
| Disher Packing | | $127.17 |
| Alsco | | $2,712.30 |
| CPSI | | $534.00 |
| Infolab Inc | | $1,180.45 |
| Johnson Controls | | $1,126.00 |
| Pet Dairy | | $51.50 |
| Baxter IV Systems | | $712.69 |
| Sysco | $3,830.38 (Disputed) | $2,655.51 |
| Office Depot | | $721.50 |
| Healthmark Industries | | $339.10 |
| Physician Discoveries | | $3,040.00 |
| AMS Sales Corporation | | $1,089.00 |
| Cardinal Pharmaceutical | | $9,172.62 |
| | | |

| CAH ACQUISITION COMPANY #11, LLC LAUDERDALE COMMUNITY HOSPITAL 326 Asbury Avenue Ripley, Tennessee  38063 | | |
|---|---|---|
| **Vendor Name** | **Creditor Asserted 503(b)(9) Claim** | **Agreed 503(b)(9) Claim Amount** |
| Arrow International, Inc. | | $1,104.12 |
| Praxair Distribution, Inc. | | $642.24 |
| GE Healthcare | | $214.28 |
| Grainger | | $33.71 |
| Mallinckrodt, Inc. | | $721.37 |
| Med-Rad | | $267.31 |
| Nexair, LLC | | $14.12 |
| Owens & Minor | $10,811.53 | $10,811.53 |
| Jackson Printers | | $24.08 |
| Abbott Nutrition | | $42.00 |
| Cardinal Health Nuclear Pharmacy | $153.44 | $153.44 |
| Hospira Worldwide, Inc. | | $565.89 |
| Total Funds by Hasler | | $519.99 |
| Boston Scientific Corporation | | $1,374.80 |
| Angiodynamics | | $1,736.50 |
| Coca Cola Bottling | | $334.55 |
| Turner Holdings, LLC | | $154.94 |
| Walmart | | $158.39 |
| Farmer Bros. Co. | | $135.11 |
| Laboratory Supply Company | | $527.28 |
| Hudson Aquatic Systems, LLC | | $66.90 |
| Lewis Brothers Bakeries, Inc. | | $49.80 |
| E.W. James & Sons Supermarket | | $7.04 |
| American Proficiency Institute | | $745.00 |
| Fox Distributors | | $38.01 |
| Lands True Value Hardware | | $111.88 |
| Shelia Conrad | | $120.00 |
| Fisher Healthcare | | $2,065.50 |
| GE Medical Systems Inform Tech | | $187.15 |
| Hardin Sysco | | $5,337.78 |
| Johnson & Johnson Healthcare | $306.21 (Disputed) | $0.00 |
| McKesson Pharmaceutical | $1,219.05 (Disputed) | $0.00 |
| Medline | $467.19 | $467.19 |

| CAH Acquisition Company #12, LLC<br>Fairfax Community Hospital<br>Taft Avenue & Hwy 18<br>PO Box 219<br>Fairfax, OK 74637-0219 | | |
|---|---|---|
| **Vendor Name** | **Creditor Asserted 503(b)(9) Claim** | **Agreed 503(b)(9) Claim Amount** |
| Cardinal Health Phmy -411 | $6792.56 | $6792.56 |
| Fairfax Drug | | $36.87 |
| Hospira | $1,143.73 | $1,143.73 |
| Integrity Biomedical | $500.00 (Disputed) | $0.00 |
| Lab Safety Supply | | $886.10 |
| Labsco | | $936.70 |
| Medline | $819.15 | $819.15 |
| Oklahoma Blood Institute | $850.50 (Disputed) | $0.00 |
| Owens & Minor | $1,479.72 | $1,479.72 |
| Palace Grocery | | $642.04 |
| Sysco | | $36.52 |
| TMG | | $1,080.39 |
| United Linen | | $1,456.84 |
| | | |

| CAH Acquisition Company #16, LLC Haskell County Community Hospital 401 NW H Street Stigler, OK 74462 | | |
|---|---|---|
| Vendor Name | Creditor Asserted 503(b)(9) Claim | Agreed 503(b)(9) Claim Amount |
| Airgas | | $951.65 |
| KCI | | $69.92 |
| Labsco | | $267.34 |
| Oklahoma Blood Institute | $6,019.00 | $6,019.00 |
| Owens & Minor | $2,273.51 | $2,273.51 |
| Sheltons | | $209.45 |
| Siemens Healthcare Diag. | $2,137.50 | $2,137.50 |
| Steris Corporation | | $548.68 |
| Stigler Home Center | | $45.50 |
| Stigler News Sentinel | | $11.25 |
| Stryker Endoscopy | | $359.16 |
| Stryker Instruments | | $281.96 |
| Superior Linen | | $9.36 |
| Supply & Service | | $264.00 |
| Sysco | | $903.61 |
| | | |

<u>Schedule 9.01</u>

Debtors' Lists of Executory Contracts and Unexpired Leases to be assumed
pursuant to the Debtors' Second Amended Joint Plan of Reorganization under
Chapter 11 of the Bankruptcy Code

**Note**: As noted in the charts below, all Cure Amounts stated are as of June 1, 2012, unless otherwise noted.  As such, the Cure Amounts are subject to revision to the extent that the Debtors (i) had included any post-petition amounts due as of the stated dates and the Debtors have subsequently satisfied such post-petition amounts or (ii) additional post-petition amounts have come due and have not yet been satisfied by the Debtors.   Similarly, a number of the Cure Amounts are currently subject to a pending objection.  The Debtors are attempting to reconcile any discrepancies with such objecting counterparties, and, as such, the Cure Amounts associated with these counterparties are subject to revision pursuant to that reconciliation and negotiation associated therewith.

**Note further** that the Debtors shall assume any and all agreements with respect to current policies with the Debtors' Insurance Carriers (as referenced on <u>Schedule 1</u> of the Joint Plan) pursuant to the Joint Plan to the extent that any such agreements would be deemed to be prepetition executory contracts.  The Debtors believe that all Cure Amounts with respect to such agreements are currently $0.

HMC/CAH Consolidated, Inc. (Case No. 11-44738)

| Counterparty | Start Date | Description | Cure Amount[1] |
|---|---|---|---|
| 3M<br>575 West Murray Boulevard<br>Murray UT 84123-4611 | 9/21/2010 | Medical Software License | $0.00 |
| Allstate<br>735 W. Harmony, Suite D<br>Neosho MO 64850 | 6/1/2011 | Employee Benefit Agreement | $0.00 |
| Blue Cross and Blue Shield of Kansas City<br>2300 Main Street<br>Kansas City, MO 64108 | 6/1/2011 | Employee Benefit Agreement | $0.00 |
| Central States Recovery, Inc.<br>1314 North Main<br>Hutchinson KS 67501 | 4/18/2011 | Collection Service Agreement | $0.00 |
| Clune Leasing<br>5950 Roe Ave<br>Mission, KS 66201 | 12/1/2009 | Furniture Lease | $8,675.01 |
| CPSI[2]<br>6600 Wall Street<br>Mobile AL 36695 | 12/22/2009 | Equipment Lease | $547,342.17 (prepetition); $0 (postpetition) |
| Delta Dental<br>PO Box 790320<br>St. Louis MO 63179 | 6/1/2011 | Employee Benefit Agreement | $3,430.18 |
| Farnum Street Financial, Inc.<br>240 Pondview Plaza<br>5850 Opus Parkway<br>Minnetonka MN 55343 | 6/1/2011 | Lease Agreement | $158,655.01[3] |
| Handshake Communications<br>1321 Burlington Road Suite F<br>KC, MO 64116 | 2/25/2011 | Office Equipment Lease | $41,776.00 |
| Med Assets Supply Chain System LLC<br>280 South Mount Auburn Rd<br>Cape Girardeau MO 63703 | 9/2/2011 | Supply Agreement | $0.00 |

---

[1] Unless otherwise noted, the cure amounts stated are as of June 1, 2012.

[2] The CPSI Cure Amounts will be paid in equal monthly installments over 12 months beginning on the 28th day after the Effective Date of the Plan. To the extent that the Debtor terminates the relevant agreement between CPSI and such Debtor before the end of this 12-month period, the balance of the CPSI Cure Amount with respect to such Debtor shall be paid to CPSI upon termination. The CPSI Cure Amount listed is as of November 1, 2012.

[3] As of October 31, 2012.

| Counterparty | Start Date | Description | Cure Amount[1] |
|---|---|---|---|
| Meditract, Inc.<br>Tract Manager, Inc.<br>736 Market Street, # 1200<br>Chattanooga TN  37402 | 9/1/2010 | Contract Management Program | $20,566.35 |
| Milliman Care Guidelines<br>719 2nd Ave., # 300<br>Seattle WA  98104 | 5/11/2010 | Healthcare Quality Program | $0.00 |
| Next Gen Healthcare Information Systems, Inc.<br>12301-B Diata Trace Parkway # 200<br>Austin TX  78727 | 5/16/2011 | Electronic Medical Records Software and Equipment | $0.00 |
| PEO of Nextaff, LLC<br>11660 West 75th Street<br>Overland Park KS  66214 | 5/14/2010 | Staffing and Payroll Services Agreement | $2,100.00 |
| Perceptive Software<br>22701 West 68th Terrace<br>Shawnee, KS 66226 | 8/4/2010 | Software Licensing Agreement | $41,575.05 |
| RSH & Associate LLC<br>Attn  Randy Hairgrove, President<br>PO Box 14515<br>Lenexa KS  66285 | 5/20/2011 | Collection Service Agreement | $0.00 |
| Shred It<br>Attn  Trudi Gorman<br>2616 South Vermont Ave.<br>Oklahoma City OK  73108 | 1/10/2011 | Document Shredding Agreement | $276.99 |
| Soft Script, Inc.<br>Attn Todd Michael Krim, JD MPH<br>2444 Wilshire Boulevard, # 280<br>Santa Monica CA  90403 | 8/6/2009 | Service Agreement | $0.00 |
| Toshiba Business Solutions<br>2732 NE Independence Ave<br>Lees Summit MO 64064<br>Lease Assigned to:<br>DeLage Landen<br>PO Box 41602<br>Philadelphia PA 19101 | 4/30/2010 | Office Equipment Lease | $9,347.79 |
| UNUM<br>11460 Tomahawk Creek Pkwy<br>Leawood KS 66211 | 6/2/2011 | Employee Benefit Agreement | $0.00 |

| Counterparty | Start Date | Description | Cure Amount[1] |
|---|---|---|---|
| Works & Lentz Inc.<br>Attn  Harry A. Lentz Jr.<br>1437 South Boulder # 900<br>Tulsa OK  74119-3631 | 6/27/2010 | Collection Services Agreement | $3,589.80 |

CAH Acquisition Company #1, LLC d/b/a Washington County Community Hospital

(Case No. 11-44739)

| Counterparty | Start Date | Description | Cure Amount[4] |
|---|---|---|---|
| 3M<br>575 West Murray Boulevard<br>Murray UT  84123-4611 | 9/26/2011 | Medical Software License | $18,140.97[5] |
| Access East, Inc<br>2100 Stantonsburg Rd<br>Greenville NC  27834-2818 | 1/1/2006 | Insurance Agreements | $0.00 |
| Aetna Health, Inc<br>151 Farmington Ave<br>Hartford CT  06156 | 2/1/2011 | Insurance Agreements | $0.00 |
| Airgas<br>PO Box 601985<br>Charlotte NC  28260-1985 | 5/17/2010 | Service Agreement | $14,288.52 |
| American Red Cross<br>135 N Market St<br>Washington NC  27889-4947 | 10/1/2008 | Blood Supply Agreement | $16,902.80 |
| Baxter Healthcare Corporation<br>65 Pitts Station Road<br>Marion NC  28752 | 11/23/2009 | Equipment Rental Agreement | $16,649.32 |
| Beaufort County Community College<br>Washington, NC | 1/1/2010 | Education Affiliation Agreement | $0.00 |
| Bio Merieux<br>100 Rodolphe Street<br>Durham, NC 27712 | 5/15/2009 | Lab Agreement | $503.44 |
| Blue Cross and Blue Shield of Kansas City<br>2300 Main Street<br>Kansas City, MO 64108 | 6/1/2011 | Employee Benefit Agreement | $0.00 |
| Blue Cross and Blue Shield of North Carolina<br>Attn  VP Network Management<br>5901 Chapel Hill Road<br>Durham NC  277707-0718 | 4/5/2008 | Insurance Agreements | $0.00 |

[4] Unless otherwise noted, the cure amounts stated are as of June 1, 2012.
[5] Pursuant to agreement memorialized in Order Confirming Debtors' Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "Confirmation Order") and to be paid in 24 equal monthly installments beginning on the 28th day after the Effective Date.

| Counterparty | Start Date | Description | Cure Amount[4] |
|---|---|---|---|
| Braemer, Inc<br>1285 Corporate Center Dr., Suite 150<br>Eagan MN  55121 | 1/1/2011 | Facility Service Agreement | $0.00 |
| Cardinal Health<br>3750 Torrey View Ct<br>San Diego, CA 92130 | 3/25/2008 | Equipment Rental And Support Agreement | $4,882.21 |
| Carolina Donor Services<br>909 East Arlington Boulevard<br>Greenville NC  27858 | 10/1/2008 | Service Agreement | $0.00 |
| Carrier<br>1711 A. Corporation Parkway<br>Raleigh, NC 27604 | 1/15/2011 | Service Agreement | $10,299.00 |
| CCN Managed Care, Inc.<br>17 Executive Park Drive. Suite 600<br>Atlanta GA 30329 | 1/4/2001 | Insurance Agreements | $0.00 |
| Chang Oak, MD<br>202 Quail Drive<br>Plymouth, NC 27692 | 2/28/2008 | Physician Employment Agreement | $0.00 |
| Cigna Healthcare of North Carolina<br>701 Corporate Center Drive<br>Raleigh NC  27607 | 8/15/2007 | Managed Care Agreement | $0.00 |
| Coeco Financial Services<br>PO BOX 41602<br>Philadelphia, PA 19101 | 6/15/2011 | Equipment Rental Agreement | $12,027.94 |
| Compliant Healthcare Technologies, LLC<br>10109 Division Drive<br>Raleigh NC  27603 | 3/2/2011 | Service Agreement | $2,378.15 |
| CPSI[6]<br>6600 Wall Street<br>Mobile AL 36895 | 3/2/2011 | Information Technology Service Agreements | $84,977.31 (prepetition); $23,756.93 (postpetition) |
| Eastern Radiologists, Inc<br>2101 West Arlington Blvd<br>Greenville NC  27834 | 3/17/2009 | Physician : Contracted Services | $4,468.00 |

[6] The CPSI Cure Amounts will be paid in equal monthly installments over 12 months beginning on the 28th day after the Effective Date of the Plan.  To the extent that the Debtor terminates the relevant agreement between CPSI and such Debtor before the end of this 12-month period, the balance of the CPSI Cure Amount with respect to such Debtor shall be paid to CPSI upon termination.  The CPSI Cure Amount listed is as of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[4] |
|---|---|---|---|
| Embarq<br>900 Springhill Rd<br>Mansfield, OH 44906 | 6/8/2007 | Services Contract | $0.00 |
| Farnum Street Financial, Inc.<br>240 Pondview Plaza<br>5850 Opus Parkway<br>Minnetonka MN 55343 | 6/1/2011 | Lease Agreement | $0.00 |
| Frontier School of Midwifery & Family Nursing, Inc<br>195 School Street<br>Hyden KY 41749 | 2/4/2011 | Affiliation Agreement | $0.00 |
| GE Healthcare<br>20225 Watertower Blvd.<br>Brookfield WI 53045 | 8/6/2010 | Mammography unit support and service agreement | $0.00 |
| GE Healthcare<br>20225 Watertower Blvd.<br>Brookfield WI 53045 | 8/2/2010 | Digital Mammography Equipment Lease | $24,218.45 |
| Great-West Life & Annuity Insurance Company, Inc<br>245 Perimeter Parkway<br>Atlanta GA 30346 | 9/1/2007 | Insurance Agreements | $0.00 |
| Greenville Pathology, PA<br>2515 Bowman Gray Dr<br>Greenville NC 27834 | 9/1/2009 | Service Agreement | $12,080.00 |
| Humana<br>dba Choicecare Network<br>PO Box 19013<br>Green Bay, WI 54307 | | Insurance Agreement | $0.00 |
| Human Arc<br>6301 Rockhill Rd., #200<br>Kansas City MO 64131 | 5/16/2011 | Billing Service Agreement | $0.00 |
| Integrated Health Plan, Inc<br>Attn VP / General Counsel<br>150-153rd Avenue, Suite 303<br>St Petersburg FL 33708-1856 | 9/15/2003 | Insurance Agreements | $0.00 |
| Martin Community College<br>1161 Kehukee Park Road<br>Williamston, NC 27892 | | Education Affiliation Agreement | $0.00 |
| MedCost, LLC<br>1399 Ashleybrook Lane, # 100<br>Winston Salem NC 27114-5347 | 11/15/1996 | Insurance Agreements | $0.00 |

| Counterparty | Start Date | Description | Cure Amount[4] |
|---|---|---|---|
| Mediacom Mid-Atlantic<br>719 Old Spartanburg Highway<br>Hendersonville, NC 28792 | 1/4/2002 | Cable Tv Agreement | $1,342.72 |
| MedPrime Capital<br>7808 Creekbridge Circle, # 250<br>Edina MN  55439 | 9/6/2011 | Equipment Rental Agreement | $10,257[7] |
| NBC Digital Health Network, Inc<br>900 Syvan Ave., Floor 2<br>Englewood Cliffs NJ  07632-3312 | 7/8/2009 | Miscellaneous Contracts | $3,955.00 |
| North Carolina Department of Correction<br>4201 Mail Service Center<br>Raleigh NC  27699-4201 | 2/1/2011 | Insurance Agreements | $0.00 |
| North Carolina State University College of Engineering<br>Box 7902<br>Raleigh, NC 27695 | 1/3/2011 | Service Agreement | $0.00 |
| Olympus America, Inc<br>3500 Corporate Parkway<br>Center Valley, PA 18034 | | Equipment Lease | $0.00 |
| Pitt Community College<br>1986 Pitt Tech Road<br>Winterville NC  28590 | 9/2/2009 | Education Affiliation Agreement | $0.00 |
| Pitt Memorial Hospital Foundation<br>2100 Stantonburg Road<br>PO Box 6028<br>Greenville, NC 27835 | 3/15/2010 | Medical Equipment Purchasing Agreement | $0.00 |
| Roche Diagnostics Corporation<br>911 S. Hague Rd.<br>Indianapolis, IN 4625 | 4/22/2009 | Service Agreement | $7,424.13 |
| Softscript, Inc<br>2444 Wilshire Blvd., # 280<br>Santa Monica CA  90403 | 8/5/2009 | Clinical Service Agreements | $8,110.38 |
| Stericycle, Inc<br>Corporate Headquarters<br>28161 N Keith Drive<br>Lake Forest IL  60045 | 9/1/2009 | Service Agreement | $8,631.71 |
| STERIS Corporation<br>Lock Box 771652<br>1652 Solution Center<br>Chicago IL  60677 | 4/1/2011 | Equipment Support/Service Agreement | $4,142.06 |

[7] As of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[4] |
|---|---|---|---|
| Three Rivers Provider Network, Inc<br>Corporate Headquarters<br>910 Hale Place # 101<br>Chula Vista CA  91914 | 11/25/2008 | Insurance Agreements | $1,272.00 |
| Tirupattur, Prakash R MD<br>978 US Highway 64 East<br>Plymouth NC 27962 | 9/1/2009 | Physician: Contracted Services And Equipment Rental | $1,663.00 |
| United HealthCare of North Carolina, Inc<br>3803 North Elm Street<br>Greensboro NC  27455 | 6/1/2005 | Insurance Agreements | $0.00 |
| Universal Hospital Services, Inc<br>951 Aviation Parkway # 1200<br>Morrisville NC  27560 | 2/1/2009 | Equipment Support/Service Agreement | $29,534.00 |
| University of North Carolina at Chapel Hill<br>103 South Building<br>Chapel Hill, NC 27599 | 8/1/2005 | Collaboration Agreement | $0.00 |
| Venable, Robert MD<br>326 Rear Pond Lane<br>Roper NC  27970 | 8/1/2008 | Physician: Employment Agreement | $3,752.00 |
| Waste Industries<br>500 Flander Filters Rd<br>Washington NC  27889 | 6/1/2010 | Service Agreement | $954.00 |
| Whitecap Linen<br> 117 N Davenport Farm Road<br>Columbia, SC 27925 | 6/15/2011 | Linen Supply And Laundry Services | $0.00 |
| Williamston Clinic Corp<br>104 Medical Drive<br>Williamston NC  27892 | 4/1/2011 | Clinical Service Agreements | $0.00 |
| Williamston Fire Extinguisher Service<br>201 East Boulevard<br>Williamston NC  27892-2659 | 2/18/2011 | Maintenance Agreement | $0.00 |
| Williamston Hospital Corp<br>dba Martin General Hospital<br>310 S McCaskey Drive<br>Williamston, NC 27892 | 5/1/2009 | Patient Transport Agreement | $18,994.14 |
| Wood, Dennis J PA-C<br>953 S Pamplico Highway<br>Pamplico SC  29583 | 7/1/2011 | Employment Agreement | $353.49 |

CAH Acquisition Company #2, LLC d/b/a Oswego Medical Center
(Case No. 11-44740)

| Counterparty | Start Date | Description | Cure Amount[8] |
|---|---|---|---|
| Antek HealthWare<br>228 Business Center Dr<br>Reisterstown MD 21136 | 3/23/2010 | Laboratory Service Agreement | $227.76 |
| Blue Cross Blue Shield of Kansas<br>1133 SW Topeka Blvd 66629<br>Topeka KS | 1/23/1998 | Insurance Agreements | $0.00 |
| Blue Cross and Blue Shield of Kansas City<br>2300 Main Street<br>Kansas City, MO 64108 | 6/1/2011 | Employee Benefit Agreement | $0.00 |
| careLearning<br>6820 Deerpath Road<br>Elkridge MD  21075 | 9/5/2008 | Education Affiliation Agreement | $2,500.00 |
| Century Midwest Companies, Inc<br>2908 S Santa Fe<br>Chanute KS  66720 | 2/20/2008 | Equipment Support/Service Agreement | $0.00 |
| Community Hospices of America<br>dba Hospice Compassus<br>200 E. Centennial Suite 9<br>Pittsburg, KS 66762 | 1/1/2011 | Clinical Service Agreements | $0.00 |
| CPSI[9]<br>6600 Wall Street<br>Mobile AL  36695 | 4/2/2009 | Software License & Service Agreement | $20,198.55 (prepetition); $19,086.10 (postpetition) |
| Consortium, Inc<br>TMIIC Services, Inc.<br>515 S Kansas Ave.<br>Topeka KS  66603-3415 | 10/10/2000 | Laboratory Service Agreement | $0.00 |
| Dan Hiben<br>c/o Oswego Community Hospital<br>800 Barker Drive<br>Oswego, KS 67356 | 8/23/2011 | Laboratory Service Agreement | $2,900.00 |

---

[8] Unless otherwise noted, the cure amounts stated are as of June 1, 2012.

[9] The CPSI Cure Amounts will be paid in equal monthly installments over 12 months beginning on the 28th day after the Effective Date of the Plan.  To the extent that the Debtor terminates the relevant agreement between CPSI and such Debtor before the end of this 12-month period, the balance of the CPSI Cure Amount with respect to such Debtor shall be paid to CPSI upon termination.  The CPSI Cure Amount listed is as of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[8] |
|---|---|---|---|
| Denison, Inc<br>405 Madison<br>Fredonia, KS 66736 | 10/7/2011 | Equipment Rental Agreement | $1,587.00 |
| Enserv Midwest, LLC<br>DEPARTMENT 4643<br>Carol Stream, IL 60122 | 11/1/2009 | Facility Service Agreement | $0.00 |
| Farnum Street Financial, Inc.<br>240 Pondview Plaza<br>5850 Opus Parkway<br>Minnetonka MN  55343 | 6/1/2011 | Lease Agreement | $0.00 |
| FirstGuard Health Plan, Inc<br>4001 Blue Parkway, Suite 300<br>Kansas City MO  64130 | 7/29/2004 | Insurance Agreements | $0.00 |
| Freeman Health System<br>1102 West 32nd Street<br>Joplin MO  64804 | 5/1//2006 | Helicopter Transport Agreement | $7,662.91 |
| GE Healthcare<br>2721 SW Regal Drive<br>Lees Summit MO  64082<br><br>3030 Ohmeda Dr.<br>Madison WI  53718 | 11/3/2010 | Equipment Rental Agreement- Bone Density | $1221.80[10] |
| GECC (GE Capital)<br>PO Box641419<br>Pittsburgh, PA 15264 | 9/30/2009 | Medical Equipment Services – Bone density scanner | $1,851.39 |
| Higher Calling Technologies<br>1816 BROADWAY<br>Parsons, KS 67357 | 2/10/2010 | Information Technology Service Agreements | $1,086.15 |
| Hospice Incorporated<br>313 S. Market<br>Wichita, KS 67202 | 9/19/2005 | Clinical Service Agreements | $0.00 |
| Humana Medicare Advantage Humana's Gold Plus Limo Provider Network | 10/1/2010 | Insurance Agreements | $0.00 |
| Kansas Department of Transportation | 11/5/2008 | Information Technology Service Agreements | $0.00 |
| Kansas Hospital Association<br>215 SW 8th Ave<br>Topeka, KS 66803 | 7/5/2011 | Business Associate Agreements | $0.00 |

---

[10] As of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[8] |
|---|---|---|---|
| Kansas Surgical Associates, LLC<br>Attn: Robert S. Huebner, MD<br>1011 Mt. Carmel Place<br>Pittsburg KS 66762 | 4/1/2010 | Physician : Contracted Services | $0.00 |
| Kern, Gordon MD<br>1104 Oregon<br>Oswego KS 67356 | 9/21/2009 | Physician: Employment Agreement | $53,000.00 |
| Labette Health<br>1902 SOUTH US HWY 59<br>Parsons, KS 67357 | 11/30/2010 | Affiliation and Lab Services Agreement | $41,915.09 |
| M. Dixit, M.D., LLC<br>PO BOX 1099<br>Parsons, KS 67356 | 11/1/2010 | Physician Services Agreement | $1,950.00 |
| Marmic Fire and Safety<br>112 N 13th Street<br>Parsons KS 67357 | 6/30/2008 | Facility Service Agreement | $4,183.35 |
| Medline Industries, Inc<br>PO BOX 121080<br>Dallas, TX 75312 | 5/12/2011 | Materials Management | $12,308.30 |
| Midwest Transplant Network, Inc<br>1900 W. 47th Place, Suite 400<br>Westwood, KS 66205 | 4/10/2009 | Organ Donation Agreement | $0.00 |
| Missouri Medical Collections, Inc<br>3952 S Fairview<br>Springfield, MO 65807 | 5/22/2007 | Collection Service Agreement | $0.00 |
| Mt Carmel Regional Medical Center<br>1102 E Centennial Drive<br>Pittsburg KS 66762 | 9/23/2009 | Critical Access Sponsorship Agreements | $0.00 |
| Murphy, Walter S DPM<br>906 Siggins<br>Coffeyville, KS 67337 | 10/5/2010 | Physician : Contracted Services | $0.00 |
| Nursing Program of Labette Community College<br>200 S. 14th Street<br>Parsons, KS 67357 | 10/1/2011 | Education Affiliation Agreement | $0.00 |
| Okie, Frederick Tabi MD LLC<br>1902 US Highway 59<br>Parsons, KS 67357 | 4/1/2011 | Physician: Employment Agreement | $0.00 |
| Pitney Bowes<br>PO BOX 371887 | 8/24/2010 | Equipment Support/Service | $311.49 |

12

| Counterparty | Start Date | Description | Cure Amount[8] |
|---|---|---|---|
| Pittsburgh, PA 15250 | | Agreement | |
| PrairieFire Coffee Roasters<br>10821 E 26th Street North<br>Wichita, KS 67226 | 10/5/2010 | Equipment Support/Service Agreement | $222.00 |
| Premier Specialty Network, LLC<br>Attn Robert Jackson DO, President<br>3610 Buttonwood Dr., Ste. 200<br>Columbia, MO 65201 | 11/3/2008 | Physician : Contracted Services | $32,589.02 |
| Reeh, Michael F MD<br>104 N Washington Street<br>Hillsboro KS 67063 | 9/5/2008 | Physician : Contracted Services | $720.00 |
| RFI LLC<br>21900 E. 96th Street<br>Broken Arrow, OK 74014 | 4/20/2010 | Equipment Rental Agreement | $6,535.25 |
| Shared Medical Services, Inc.<br>PO Box 330<br>Cottage Grove, WI 53527-0330 | | MRI services agreement | $4,176[11] |
| Siemens Diagnostics Finance Co, LLC<br>1717 Deerfield Road<br>Deerfield IL 60015 | 3/30/2010 | Equipment Purchase Agreement | $30,491.21 |
| Silver Recovery Service, Inc<br>609 McNair Street<br>Halstead, KS 67056 | 3/7/2011 | Service Agreement | $0.00 |
| SIZEWise Rentals, LLC<br>1600 E. Gennessee Street, Suite 950<br>Kansas City, MO 64102 | 12/1/2008 | Equipment Rental Agreement | $0.00 |
| Southeast Kansas Rehabilitation Services, LLC<br>1217 South 15th Street<br>Parsons KS 67357 | 8/1/2008 | Physical Therapy Agreements | $30,921.75 |
| Southwest Hospital Equipment Rental Company<br>21900 EAST 96TH STREET<br>Broken Arrow, OK 74014 | 9/4/2002 | Equipment Rental Agreement | $1,076.00 |
| St. John's Health System<br>2727 Mcclelland Blvd<br>Joplin, MO 64804 | 2008 | Affiliation Agreement | $0.00 |

---

[11] As of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[8] |
|---|---|---|---|
| Synova Sleep Services, LLC<br>4212 Poplar<br>Broken Arrow, OK 74011 | 8/26/2011 | Clinical Service Agreements | $4,500.00 |
| Sysmex America, Inc<br>One Nelson C. White Parkway<br>Mundelain, IL 60060 | 12/5/2009 | Laboratory Service Agreement | $3,191.13 |
| UNICARE Life & Health Insurance Company<br>120 Monument Circle<br>Indianapolis IN  46204 | 1/1/2007 | Insurance Agreements | $0.00 |
| United HealthCare Insurance Company<br>PO BOX 740819<br>Atlanta GA 30374 | 10/15/2005 | Insurance Agreements | $0.00 |
| University of Kansas Hospital Authority<br>3901 Rainbow Boulevard<br>Kansas City KS  66160 | 11/1/2007 | Transfer Agreement | $0.00 |
| University of Kansas Medical Center<br>3901 Rainbow Boulevard<br>Kansas City KS  66160 | 1/20/2010 | Clinical Affiliation Agreements | $0.00 |
| Via Christi Hospital Pittsburg, Inc<br>1 MT CARMEL WAY<br>Pittsburgh, KS 66762 | 1/1/2011 | Physician Services Agreement | $0.00 |
| Wichita State University 5015 E. 29th Street N<br>Wichita, KS 67220 | 1/1/2008 | Education Affiliation Agreement | $0.00 |

14

CAH Acquisition Company #3, LLC d/b/a Horton Community Hospital
(Case No. 11-44741)

| Counterparty | Start Date | Description | Cure Amount[12] |
|---|---|---|---|
| Airgas<br>PO Box 1152<br>Tulsa OK  74101 | 11/14/2005 | Supply Agreement | $9,777.94 |
| Baxter Healthcare Corporation<br>PO Box 70564<br>Chicago, IL 60673 | 3/25/2010 | Equipment Rental Agreement | $5,065.18 |
| Baytree Leasing<br>20 Tristate International, Suite 240<br>Lincolnshire IL 60069 | 5/24/2010 | Equipment Lease—Hematology Analyzer | $7,757.60[13] |
| Blue Cross and Blue Shield of Kansas City<br>2300 Main Street<br>Kansas City, MO 64108 | 6/1/2011 | Employee Benefit Agreement | $0.00 |
| Blue Cross Blue Shield of Kansas<br>1133 SW Topeka Blvd<br>Topeka KS  66629-0001 | 1/14/2010 | Insurance Agreements | $0.00 |
| Anesthesia Dynamics<br>Busch, Thomas CRNA<br>615 Lakeview Drive<br>Sabetha, KS 66534 | 12/1/2008 | Anesthesiology Services Agreement | $36,386 |
| Carefusion Solutions, LLC<br>3750 Torrey View Court<br>San Diego, CA 92130 | 4/20/2011 | Pharmacy Agreements | $0.00 |
| Century Health Solutions, Inc<br>620 SE Madison<br>Topeka KS  66607 | 12/10/1994 | Insurance Agreements | $0.00 |
| City of Horton<br>205 E 8th Street<br>PO Box 30<br>Horton KS  66439-0030 | 6/6/2011 | Ambulance Agreement | $0.00 |
| CL Gerwick & Associates, Inc<br>10560 BARKLEY, SUITE 340<br>Overland Park, KS 66212 | 4/1/2011 | Dietary Service Agreement | $962.20 |
| Community Blood Center of Kansas City<br>PO BOX 261474<br>Shawnee Mission, KS 66225 | 2/1/2010 | Laboratory Service Agreement | $5,664.35 |

---

[12] Unless otherwise noted, the cure amounts stated are as of June 1, 2012.
[13] As of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[12] |
|---|---|---|---|
| Coventry Health Care of Kansas, Inc<br>1001 East 101st Terr, Ste 300<br>Kansas City MO  64131-3368 | 11/6/2006 | Insurance Agreements | $0.00 |
| CPSI[14]<br>6600 Wall Street<br>Mobile, AL 36695 | 9/13/2009 | Computer Equipment And License | $116,829.67 (prepetition); $26,360.90 (postpetition) |
| Darren Paden Biomedical Services<br>23131 Interurban Road<br>Dearborn, MO 64439 | 5/1/2002 | Facility Service Agreement | $0.00 |
| Farnum Street Financial, Inc.<br>240 Pondview Plaza<br>5850 Opus Parkway<br>Minnetonka MN  55343 | 6/1/2011 | Lease Agreement | $0.00 |
| Great-West Healthcare<br>10851 Mastin, Ste 220<br>Overland Park KS  66210 | 4/1/2005 | Insurance Agreements | $0.00 |
| Greenville Technical College<br>506 S Pleasantburg Drive<br>Greenville, SC 29606 | 8/10/2011 | Affiliation Agreement | $0.00 |
| Health Partners of Kansas, Inc<br>550 N Lorraine<br>Wichita KS  67214 | 4/1/2007 | Insurance Agreements | $0.00 |
| Heartland Lions Eye Banks<br>404 Portland St.<br>Columbia, MO 65201 | 2/8/2006 | Miscellaneous Contracts | $0.00 |
| Holton Community Hospital<br>Holton, KS<br>110 Columbine Drive | 6/24/2008 | Cryostat Equipment Agreement | $0.00 |
| Holton Community Hospital<br>Holton, KS<br>110 Columbine Drive | 4/27/2009 | Occupational Therapy Service Agreement | $0.00 |
| Kansas University Physicians, Inc<br>3901 Rainbow Boulevard<br>Kansas City KS  66103 | 2/5/2010 | Physician Services Agreement | $0.00 |
| Laboratory Supply Company<br>3782 Reliable Parkway<br>Chicago IL  60686 | 3/23/10 | Equipment rental | $3075.95 |

[14] The CPSI Cure Amounts will be paid in equal monthly installments over 12 months beginning on the 28th day after the Effective Date of the Plan.  To the extent that the Debtor terminates the relevant agreement between CPSI and such Debtor before the end of this 12-month period, the balance of the CPSI Cure Amount with respect to such Debtor shall be paid to CPSI upon termination.  The CPSI Cure Amount listed is as of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[12] |
|---|---|---|---|
| Michele Koch NP<br>2351 232nd Rd.<br>Sabetha KS  66534 | 3/31/2008 | Employment Agreement | $0.00 |
| Midwest Transplant Network, Inc.<br>1900 W. 47th Place, Suite 400<br>Westwood, KS 66205 | 7/8/2009 | Clinical Affiliation Agreements | $0.00 |
| Mindray North America<br>390 Union Boulevard, Ste 600<br>Lakewood CO  80228 | 3/25/2011 | Equipment Rental Agreement | $3,559.05 |
| Morrison, Potter and Associates, Inc<br>201 S 4TH ST<br>Hiawatha, KS 66434 | 7/1/2008 | Speech Therapy Agreement | $110.00 |
| Nuclear Medicine<br>St. Francis Hospital<br>1700 SW 7th Street<br>Topeka, KS 66006 | 7/12/2011 | Service Agreement | $0.00 |
| Pitney Bowes<br>1313 N. Atlantic<br>Spokane, WA 99201 | 9/17/2007 | Postage Machine Rental Agreement | $8,977.00 |
| Preferred Health Systems<br>8535 E 21st Street North<br>Wichita KS  67206 | 1/1/2011 | Insurance Agreements | $0.00 |
| Premier Speciality Network<br>Attn: Robert Jackson DO, President<br>3610 Buttonwood Drive, Suite 200<br>Columbia, MO 65201 | 3/10/2009 | Rheumatology Physician Contracted Services Agreement | $33,022.08 |
| Premier Specialty Network, LLC<br>Attn  Robert Jackson DO, President<br>3610 Buttonwood Drive, Ste 200<br>Columbia MO  65201 | 2/1/2010 | Physician : Contracted Services | $0.00 |
| Premier Specialty Network, LLC<br>Attn: Robert Jackson, DO President<br>3610 Buttonwood Drive, Suite 200<br>Columbia, MO 65201 | 8/6/2010 | Urology Physician Contracted Services Agreement | $0.00 |
| Principal Health Care of Kansas City, Inc<br>1001 E. 101st Terrace Suite 300<br>Kansas City MO 64131 | 2/1/1999 | Insurance Agreements | $0.00 |
| Private Healthcare Systems (PHCS)<br>1100 Winter Street<br>Waltham MA  02451 | 3/1/2007 | Insurance Agreements | $0.00 |

17

| Counterparty | Start Date | Description | Cure Amount[12] |
|---|---|---|---|
| Rainbow Communications<br>BOX 266<br>Everest, KS 66424 | 1/13/2009 | Miscellaneous Contracts | $564.96 |
| Rural Health Resources of Jackson County, Inc<br>% Shea, Rigdon & Carver<br>PO Box 156<br>Dodge City, KS 67801 | 7/1/2009 | Occupational Therapy Service Agreement | $0.00 |
| Service-Rite Medical<br>PO BOX 1526<br>Great Bend KS 67530 | 3/5/1997 | Equipment Support/Service Agreement | $930.66 |
| Shared Medical Services, Inc<br>PO Box 330<br>Cottage Grove, WI 53527<br>Great Bend KS 53527 | 5/5/2008 | Radiology Services Agreement | $33,423.33 |
| Shred-It<br>10900 Lackman RD<br>Lenexa KS 66219 | 4/16/2008 | Facility Service Agreement | $345.00 |
| Sightpath Medical<br>5775 W OLD SHAKOPEE RD, Suite 90<br>Bloomington, MN  55437 | 6/1/2009 | Physician: Contracted Services | $13,296.00 |
| St Francis Health Center<br>1700 SW 7th Street<br>Topeka KS  66606-1690 | 7/18/2011 | Laboratory Service Agreement | $57,757.00 |
| St Francis Physician Hospital Organization, Inc<br>1700 West 7th Street<br>Topeka KS  66606 | 9/14/2006 | Insurance Agreements | $0.00 |
| STARS, Inc<br>201 S. 4TH ST.<br>Hiawatha, KS 66434 | 9/1/2009 | Physical Therapy Agreements | $30,161.71 |
| Stormont-Vail HealthCare<br>929 Mulvane<br>Topeka KS  66606 | 11/23/2010 | Radiology Services Agreement | $4,312.00 |
| Stormont-Vail HealthCare<br>929 Mulvane<br>Topeka KS  66606 | 10/10/2008 | Cah Sponsorship Agreements | $0.00 |
| The Kickapoo Tribe of Indians of The Reservation In Kansas<br>dba Kickapoo National Health Center<br>1117 Goldfinch Road<br>Horton KS  66439 | 2/1/2010 | Clinic Service Agreement | $0.00 |

| Counterparty | Start Date | Description | Cure Amount[12] |
|---|---|---|---|
| Toshiba America Medical Credit<br>1111 Old Eagle School Road<br>Wayne, PA 19087 | 3/24/2010 | Ultrasound Equipment Lease | $9,210.08 |
| Total Renal Care, Inc<br>1901 Euclid<br>Horton, KS 66439 | 10/11/2007 | Renal Dialysis Agreement | $0.00 |
| Tri County Manor Living Center<br>1890 Euclid<br>Horton, KS 66439 | 5/1/2008 | Linen Supply Contract | $11,838.60 |
| Trugreen<br>8420 Cole Parkway<br>Shawnee KS  66227 | 1/1/2011 | Maintenance Agreement | $626.00 |
| United HealthCare Insurance Company<br>9900 W 109th Street, Suite 200<br>Overland Park KS  66210 | 6/8/2011 | Insurance Agreements | $0.00 |
| University of Kansas Medical Center<br>3901 Rainbow Boulevard<br>Kansas City KS  66103 | 7/1/2011 | Staffing Agreement | $0.00 |
| Virtual Radiologic Corporation<br>Attn  Legal<br>11995 Singletree Lane, # 500<br>Eden Prairie MN  55344 | 7/27/2011 | Physician: Contracted Services | $0.00 |

CAH Acquisition Company #4, Inc. d/b/a Drumright Regional Hospital
(Case No. 11-44742)

| Counterparty | Start Date | Description | Cure Amount[15] |
|---|---|---|---|
| 3M<br>PO Box 844127<br>Dallas TX  75284-4128 | 2/25/2011 | Software License & Service Agreement | $4,312.66[16] |
| Abbott (Cell Dyne 3200)<br>100 Abbott Park Rd<br>Abbott Park, IL 60064 | 2/22/2011 | Lab Service Agreement | $6,865.00 |
| Aetna<br>Provider Contract Management<br>Network Operations - SW Region<br>2777 Stemmons Freeway - # 400<br>Dallas TX  75207 | 12/1/2006 | Insurance Agreements | $0.00 |
| Agility Health Professionals, Inc<br>PO Box 77000<br>Detroit MI  48277-2000 | 8/24/2009 | Physical Therapy Agreements | $82,874.23 |
| AHS Oklahoma Health System, LLP<br>1145 S Utica, Suite 410<br>Tulsa OK  74104<br><br>AHS Oklahoma Health System, LLP<br>General Counsel<br>One Burton Hills Blvd., # 250<br>Nashville TN  37215 | 3/1/2010 | Transfer Agreement | $0.00 |
| Air Products and Chemicals, Inc<br>Dept CH 10200<br>Palatine IL  60055-0200 | 11/23/2004 | Supply Agreement | $4,561.94 |
| Ameripath<br>Tulsa Diagnostics/Quest Diagnostics<br>3030 North Expressway<br>Oklahoma City, OK  73112 | 9/15/2011 | Hospital Services Agreement- Lab | $0.00 |
| Arizant Healthcare<br>10393 West 70th Street<br>Eden Prairie, MN 55344 | 7/17/2008 | Medical Equipment Supply Agreement | $0.00 |
| AT&T Oklahoma | 9/3/2010 | Communications Line Agreement | $1,212.11 |

---

[15] Unless otherwise noted, the cure amounts stated are as of June 1, 2012.

[16] Pursuant to agreement memorialized in the Confirmation Order and to be paid in 24 equal monthly installments beginning on the 28th day after the Effective Date.

| Counterparty | Start Date | Description | Cure Amount[15] |
|---|---|---|---|
| Beymer, James DO<br>11095 South 54th Place<br>Sapulpa OK  74066 | 9/16/2010 | Employment Agreement | $0.00 |
| Blue Cross and Blue Shield of Kansas City<br>2300 Main Street<br>Kansas City, MO 64108 | 6/1/2011 | Employee Benefit Agreement | $0.00 |
| Blue Cross Blue Shield of OK<br>Attn C Wayne Wallace, Corp VP<br>1215 South Boulder<br>Tulsa OK  74119 | 9/15/2011 | Insurance Agreements | $0.00 |
| Cardenas, Alfonso A MD<br>co CAH Acquisition Company #4, Inc.<br>610 W. Truck Bypass<br>Drumright     OK       74030 | 3/1/2010 | Physician: Employment Agreement | $0.00 |
| Carefusion / Pyxis<br>3750 Torrey View<br>San Diego, CA 92130 | 10/21/2009 | Pharmacy Dispensing Equipment Lease | $10,720.50 |
| Cerner Corporation<br>2800 Rockcreek Parkway<br>Kansas City MO  64117 | 3/24/2011 | Information Technology Service Agreements | $95,572.55[17] |
| Cerner Physician Practice, Inc<br>2800 Rockcreek Parkway<br>Kansas City MO  64117 | 6/20/2008 | Software License & Service Agreement | $0.00 |
| ChoiceCare Network<br>PO Box 19013<br>Green Bay       WI       54307 | 6/7/2007 | Insurance Agreements | $0.00 |
| CIGNA HealthCare | 12/1/2005 | Insurance Agreements | $0.00 |
| Cimarron Urgent Care Center, LLC | 3/1/2009 | Miscellaneous Contracts | $0.00 |
| Commercial Medical Electronics, Inc<br>PO Box 4567<br>Tulsa OK  74159-0567 | 3/25/2011 | Maintenance Agreement | $4,280.78 |
| Community Care HMO<br>218 West 6th Street<br>Tulsa OK 74119 | | Insurance Agreements | $0.00 |
| CPSI[18]<br>6600 Wall Street<br>Mobile AL  36695 | 6/24/2009 | Software License & Service Agreement | $40,895.20 (prepetition); $24,750.60 |

[17] As of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[15] |
|---|---|---|---|
| | | | (postpetition) |
| Coventry Health and Life Insurance<br>3030 North Expressway<br>Oklahoma City, OK  73112 | 9/1/2009 | Managed Care Contract | $0.00 |
| Cushing Regional Hospital<br>1027 E Cherry<br>PO Box 14090<br>Cushing OK  74023 | 3/1/2010 | Facility Service Agreement | $0.00 |
| Cushing Regional Hospital<br>1027 E Cherry<br>PO Box 14090<br>Cushing OK  74023 | 3/1/2010 | Transfer Agreement | $0.00 |
| Douglas Brant, D.O.<br>PO Box 168<br>Drumright OK 74030 | 6/19/2007 | Physician Employment Agreement | $0.00 |
| Drumright Nursing Home | 2005 | Laboratory Service Agreement | $0.00 |
| Farnum Street Financial, Inc.<br>240 Pondview Plaza<br>5850 Opus Parkway<br>Minnetonka MN  55343 | 6/1/2011 | Lease Agreement | $0.00 |
| Fowler, Zachary DO | 8/1/2012 | Physician: Employment Agreement | $0.00 |
| GE Healthcare Financial Services<br>20225 Watertower Blvd<br>Brookfield WI  53045 | 11/29/2010 | Equipment Lease Agreement | $39,911.96[19] |
| GlobalHealth Provider Networks | 10/1/2006 | Insurance Agreements | $0.00 |
| Healthcare Professional Equipment Services, LP<br>4400 SW 34th Street<br>Oklahoma City OK  73119 | 3/15/2010 | Equipment Rental Agreement | $1,628.40 |
| Heart Institute of Tulsa, Inc<br>802 S Jackson Ave., # 200<br>Tulsa OK  74127 | 3/15/2005 | Miscellaneous Contracts | $0.00 |

---

[18] The CPSI Cure Amounts will be paid in equal monthly installments over 12 months beginning on the 28th day after the Effective Date of the Plan.  To the extent that the Debtor terminates the relevant agreement between CPSI and such Debtor before the end of this 12-month period, the balance of the CPSI Cure Amount with respect to such Debtor shall be paid to CPSI upon termination.  The CPSI Cure Amount listed is as of November 1, 2012.

[19] As of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[15] |
|---|---|---|---|
| Heartland Pathology Consultants, PC | 1/1/2010 | Consulting Agreement | $0.00 |
| Hubbard, Frank L DO<br>2340 East Main<br>Cushing OK  74023 | 1/1/2011 | Employment Agreement | $0.00 |
| Humana Health<br>Health Value Management<br> dba Choicecare Network<br>PO Box 19013<br>Green Bay, WI 54307 | 2/1/2005 | Managed Care Contract | $0.00 |
| Humana Military Healthcare Services<br>Attn Network Dev Department<br>500 West Main Street<br>Louisville KY  40201 | 2/1/2006 | Insurance Agreements | $0.00 |
| Lifeshare Transplant Donor Services of Oklahoma<br>7200 Broadway Extension<br>Oklahoma City OK  73116 | 3/1/2010 | Organ And Tissue Recovery Agreement | $0.00 |
| Medavant Healthcare Solutions | 4/1/2007 | Insurance Agreements | $0.00 |
| Medrad, Inc<br>100 Global View Dr<br>Warrendale PA  15086 | 12/20/2010 | Radiology Services Agreement | $6,174.13 |
| Moore, Debbie MS RD LD<br>703 Holmes<br>Cushing OK  74023 | 3/4/2011 | Dietary Service Agreement | $0.00 |
| Murphy, Larry<br>145 East Broadway<br>Drumright OK  74030 | 3/1/2005 | Pharmacist Employment Agreement | $559.11 |
| Neuro-Links, Inc<br>6218 S Lewis Ave., # 112<br>Tulsa OK  74136 | 9/13/2006 | Miscellaneous Contracts | $3,575.00 |
| Oklahoma Blood Institute<br>Sylvan Goldman Center<br>1001 N. Lincoln Blvd.<br>Oklahoma City OK 73104 | 8/1/2009 | Blood Supply agreement | $18,100.75 |
| Oklahoma Cardiovascular Associates, PC<br>4050 West Memorial Road<br>Oklahoma City OK  73120-8382 | 5/1/2007 | Consulting Agreement | $0.00 |

| Counterparty | Start Date | Description | Cure Amount[15] |
|---|---|---|---|
| Oklahoma Department of Corrections Attn Network Manager PO Box 12878 Oklahoma City OK 73157-2878 | 7/1/2007 | Managed Care Agreement | $0.00 |
| Oklahoma Foundation for Medical Quality, Inc 14000 Quail Springs Parkway, Ste 400 Oklahoma City, OK 73134-2600 | 7/24/2006 | Miscellaneous Contracts | $0.00 |
| Oklahoma State and Education Employees Group Insurance Board Attn Provider Relations / Network Management 3545 NW 58th Street, # 600 Oklahoma City OK 73112 | 5/27/2005 | Managed Care Agreement | $0.00 |
| Oklahoma State University Medical Center 744 W 9th Street Tulsa OK 74127 | 8/11/2008 | Radiology Services Agreement | $0.00 |
| Oklahoma State University 744 W 9th Street Tulsa OK 74127 | 1/1/2011 | Education Affiliation Agreement | $0.00 |
| Oklahoma State University Center for Health Sciences 1111 West 17th Street Tulsa OK 74107 | 1/1/2011 | Education Affiliation Agreement | $0.00 |
| Ortho-Clinical Diagnostics, Inc 100 Indigo Creek Drive Rochester NY 14626 | 10/28/2010 | Equipment Support/Service Agreement | $0.00 |
| Pacificare of Oklahoma, Inc Attn Director, Network Mgmt & Dev 7666 East 61st Street, # 500 Tulsa OK 74133 | 12/1/2005 | Insurance Agreements | $0.00 |
| Physicians Choice In Care 111 West First Street Chandler OK 74864 | 8/3/2010 | Miscellaneous Contracts | $0.00 |
| Preferred CommunityChoice PPO, Inc 218 W 6th Street Tulsa OK 74119-1004 | 7/1/2005 | Insurance Agreements | $0.00 |

| Counterparty | Start Date | Description | Cure Amount[15] |
|---|---|---|---|
| Private Healthcare Systems, Inc<br>Attn Territory Director<br>2405 Grand Blvd., Suite 1030<br>Kansas City MO  64108-2507<br><br>Attn Legal Network Resources<br>1100 Winter Street<br>Waltham PA  02451 | 12/1/2005 | Insurance Agreements | $0.00 |
| Shared Medical Services, Inc.<br>PO Box 330<br>Cottage Grove, WI  53527-0330 | | MRI Services | $23,450[20] |
| Silver Bullet Pest Control<br>PO Box 4711170<br>Tulsa, OK 74147 | 6/16/2008 | Maintenance Service Agreement | $555.00 |
| Sterling Life Insurance Company<br>Attn  Debbie J. Ahl, Pres / CEO<br>2219 Rimland Drive<br>Bellingham WA  98226-8660 | 4/11/2006 | Insurance Agreements | $0.00 |
| Suddenlink Communications<br>PO Box 660365<br>Dallas TX  75266-0365 | 11/11/2010 | Information Technology Service Agreements | $0.00 |
| United Healthcare<br>Attn John Lovelady, VP Network Management<br>5800 Granite Parkway, # 900<br>Plano TX  75024 | 11/1/2005 | Insurance Agreements | $0.00 |
| Ward, David L RN, CRNA<br>1216 North Oak Grove Rd<br>Drumright OK  74030 | 10/1/2010 | Employment Agreement | $0.00 |
| WM Healthcare Solutions, Inc<br>PO Box 660345<br>Dallas TX  75266-0345 | 6/28/2010 | Miscellaneous Contracts | $0.00 |
| Xerox<br>PO Boxd 802555<br>Chicago IL  60680-2555 | 12/10/2008 | Miscellaneous Contracts | $5,424.23 |

---

[20] As of November 1, 2012.

CAH Acquisition Company #5, LLC d/b/a Hillsboro Community Hospital
(Case No. 11-44743)

| Counterparty | Start Date | Description | Cure Amount[21] |
|---|---|---|---|
| Account Recovery Specialists, Inc<br>3505  N Topeka<br>Wichita KS  67219 | 4/14/2003 | Collection Service Agreement | $0.00 |
| American Fire Sprinkler Corp<br>6750 Weast 47th Terr<br>Mission KS  66203 | 8/29/2007 | Facility Service Agreement | $0.00 |
| American National Red Cross<br>Midway-Kansas Chapter<br>1900 E Doulgas<br>Wichita, KS 67214 | 10/1/2009 | Blood Supply Contract | $4,743.25 |
| Beckman Coulter, Inc<br>250 S Kraemer Boulevard<br>Brea CA  92821 | 11/2/2009 | Equipment Support/Service Agreement | $64,655.55 |
| Beech Street Corporation<br>173 Technology Dr.<br>Irvine CA  92718 | 10/1/2000 | Insurance Agreements | $0.00 |
| Blue Cross and Blue Shield of Kansas City<br>2300 Main Street<br>Kansas City, MO 64108 | 6/1/2011 | Employee Benefit Agreement | $0.00 |
| Blue Cross Blue Shield of Kansas<br>1133 SW Topeka Boulevard<br>Topeka KS  66629-0001<br><br>TriWest Healthcare Alliance<br>PO Box 42049<br>Phoeniz AZ  85053 | 6/12/2008 | Insurance Agreements | $0.00 |
| Bogner, Paul MD<br>700 Medical Center Dr., # 210<br>Newton KS  67114 | 1/1/2011 | Real Estate Lease (Hospital As Landlord) | $0.00 |
| Cascade Health Services<br>1045 Swift Ave<br>North Kansas City MO  64116 | 5/8/2007 | Staffing Agreement | $42,222.67 |

---

[21] Unless otherwise noted, the cure amounts stated are as of June 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[21] |
|---|---|---|---|
| Century Health Solutions, Inc<br>Attn  Gina Ochsner, CEO<br>2951 SW Woodside Dr.<br>Topeka KS  66614 | 12/1/2006 | Insurance Agreements | $0.00 |
| Champus<br>PO Box 870014<br>Surfside Beach SC  29587-8714 | 4/3/2010 | Benefit Administrator | $0.00 |
| Children's Mercy's Family Health Partners<br>Attn  Chief Executive Officer<br>215 West Pershing Road, 6th Floor<br>Kansas City MO  64108 | 1/1/2007 | Insurance Agreements | $0.00 |
| ChoiceCare Network<br>PO Box 19013<br>Green Bay, WI 54307 | 1/1/2007 | Insurance Agreements | $0.00 |
| Clear Channel Outdoor<br>3405 N Hydraulic<br>Wichita, KS 67219 | 9/6/2010 | Billboard Advertising Agreement | $0.00 |
| Cornerstone Medical Technology Finance<br>9722 South Windsor Drive<br>Lees Summit MO  64086 | 1/14/2010 | Equipment Lease | $0.00 |
| Cornerstore Healthcare<br>PO Box 96<br>Ellinwood KS  67526 | 12/1/2009 | Interim Staff Agreement | $0.00 |
| Coventry Health Care, Inc.<br>Preferred Health Systems<br>8535 21st Street N<br>Wichita KS 67206 | 1/11/2011 | Insurance Agreements | $0.00 |
| CPSI[22]<br>6600 Wall Street<br>Mobile AL  36695 | 6/22/2009 | Computer Equipment Lease and Service Agreement | $5,725.68 (prepetition); $26,443.71 (postpetition) |

[22] The CPSI Cure Amounts will be paid in equal monthly installments over 12 months beginning on the 28th day after the Effective Date of the Plan.  To the extent that the Debtor terminates the relevant agreement between CPSI and such Debtor before the end of this 12-month period, the balance of the CPSI Cure Amount with respect to such Debtor shall be paid to CPSI upon termination.  The CPSI Cure Amount listed is as of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[21] |
|---|---|---|---|
| Docs Who Care PA<br>Attn  Gary Coulter, CEO<br>1337 So Fountain Drive<br>Olathe KS  66061 | 10/3/2011 | Supervisory Service Agreement | $0.00 |
| Drager Medical<br>3122 Commerce Drive<br>Telford, PA 18969 | 11/28/2006 | Equipment Service And Maintenance Contract | $2,020.91 |
| Drigger, Eric PhD<br>508 S. Ash<br>Hillsboro        KS        67063-1559 | | Pharmacist Agreement | $1185 |
| Enserv Midwest, LLC<br>7051 College Blvd<br>Overland Park KS 66211 | 11/1/2009 | Service Agreement | $0.00 |
| Farnum Street Financial, Inc.<br>240 Pondview Plaza<br>5850 Opus Parkway<br>Minnetonka MN  55343 | 6/1/2011 | Lease Agreement | $0.00 |
| Haney, Brian D CRNA | 3/16/1999 | Anesthesiology Services Agreement | $0.00 |
| Health Partners of Kansas, Inc<br>550 North Lorraine<br>Wichita KS  67214 | 12/1/1997 | Insurance Agreements | $0.00 |
| Health Value Management<br>ChoiceCare Network<br>Attn  President<br>PO Box 19013<br>Green Bay WI  54307 | 1/1/2007 | Hospital Participation Agreement | $0.00 |
| Healthcare USA of Missouri, LLC<br>10 South Broadway, # 1200<br>St Louis MO  63102 | 1/1/2007 | Participating Hospital Agreement | $0.00 |
| Heartland Lions Eye Banks<br>404 Portland Street<br>Columbia MO 65201 | 4/3/2006 | Clinical Service Agreements | $0.00 |
| Hospice Care of Kansas, LLC<br>750 N. Socora<br>Wichita KS 67212 | 4/1/2009 | Other Clinical Personnel Agreement | $0.00 |
| HP<br>3000 Hanover Street<br>Palo Alta CA 94304 | 5/5/2009 | Computer Equipment Maintenance/Service | $0.00 |

| Counterparty | Start Date | Description | Cure Amount[21] |
|---|---|---|---|
| Integrated Health Plan, Inc<br>Attn  Carol E Fant, VP / General Counsel<br>150 - 153 Avenue, # 303<br>St Petersburg FL  33708-1856 | 12/1/2003 | Insurance Agreements | $0.00 |
| Interim Healthcare Managers<br>333 S. Broadway<br>Wichita          KS        67202-4325 | 4/20/2006 | Physician: Recruitment Agreement | $0.00 |
| Kim Krase, LMSW<br>609 Walnut Court<br>Galva, KS 67443 | 3/23/2010 | Social Worker Services Agreement | $300.00 |
| Konica Minolta Business Systems<br>12847 Collections Center Drive<br>Chicago IL 60693 | 9/12/2011 | Office Equipment Lease | $4,367.87 |
| KU School of Medicine<br>Department of Internal Medicine<br>1010 N Kansas<br>Wichita KS  67214-3199 | 7/1/2009 | Employment Agreement | $0.00 |
| Laboratory Corporation of America Holdings<br>PO Box 12140<br>Burlington NC  27216-2140 | 7/19/2004 | Laboratory Service Agreement | $7,845.20 |
| Laurie J Methvin RN, ARNP<br>857 North Old Mill Road<br>Peabody KS  66866 | 9/1/2011 | Employment Agreement | $0.00 |
| Med One Capital Funding, LLC<br>10712 S 1300 E<br>Sandy UT  84904 | 3/30/2011 | Radiology Services Agreement | $7,028.90 |
| MedAssets Supply Chain Systems, LLC<br>280 South Mt. Auburn Rd.<br>Cape Girardeau, MO   63703-4918 | 7/25/2007 | Group Purchasing Agreements | $0.00 |
| Micheal Reeh, MD<br>104 North Washington<br>Hillsboro, KS 67063 | 8/15/2011 | Physician Agreement | $5,900.00 |
| Midland Professional Services, Inc | 5/19/2003 | Collection Service Agreement | $0.00 |
| Midwest Transplant Network, Inc.<br>1900 W. 47th Place, Suite 400<br>Westwood, KS 66205 | 5/14/2009 | Clinical Service Agreements | $0.00 |
| Milliman Care Guidelines, LLC | 4/28/2009 | Software License & Service Agreement | $0.00 |

29

| Counterparty | Start Date | Description | Cure Amount[21] |
|---|---|---|---|
| Mindray North America<br>24312 Network Place<br>Chicago IL  60673-1243 | 3/31/2010 | Equipment Purchase Agreement | $949.48 |
| Multiplan, Inc.<br>115 Fifth Ave<br>New York NY  1003-1004 | 11/1/1997 | Participating Facility Agreement | $0.00 |
| Nuss, Dan<br>1082 Highway 56<br>Hillsboro KS  67063 | 3/18/2009 | Crop Share Agreement | $0.00 |
| Oklahoma Health Care Authority<br>Legal Division<br>Attn Provider Enrollment<br>PO Box 54015<br>Oklahoma City OK  73154 | 9/27/2009 | Health Care Service Agreement | $0.00 |
| Parkside Homes<br>200 Willow Road<br>Hillsboro, KS    67063-1999<br>609 Parkside Road<br>Norman, OK    73072-4231 | 7/1/1998 | Diagnostic Testing Agreement | $0.00 |
| Pitney Bowes<br>PO Box 371887<br>Pittsburg PA  15250-7887 | 7/6/2009 | Miscellaneous Contracts | $0.00 |
| Premier Specialty Network, LLC<br>Attn Robert Jackson, DO - President<br>3610 Buttonwood Dr., # 200<br>Columbia MO  65201 | 10/1/2009 | Physician Services Agreement | $32,253.27 |
| Principal HealthCare<br>Attn  Executive Officer<br>8301 East 21st Street North, # 300<br>Wichita KS  67206 | 12/1/2007 | HMO Hospital Agreement | $0.00 |
| Private Healthcare Systems, Inc<br>Attn  Market Director, Kansas<br>2405 Grand Ave., # 1240<br>Kansas City MO  64108 | 10/7/2007 | Insurance Agreements | $0.00 |
| QS Nurses-Kansas, LLC<br>1117 Washington Street<br>Great Bend      KS         67530-4350 | 3/10/2008 | Staffing Agreement | $0.00 |

| Counterparty | Start Date | Description | Cure Amount[21] |
|---|---|---|---|
| Reese, Frank Jr CRNA<br>730 Smoky Valley Road<br>Lindsborg KS  67456 | 1/1/2006 | Anesthesiology Services Agreement | $0.00 |
| Rettig, Esther V MD<br>400 W. 4th<br>McPherson, KS        67460-2300 | 8/1/2001 | Physician : Office Lease | $0.00 |
| Reusser, Layne MD<br>9350 E. 35th Street N #101<br>Wichita           KS       67226-2022 | 1/1/2011 | Real Estate Lease (Hospital As Landlord) | $0.00 |
| Salem Home<br>704 S Main<br>Hillsboro, KS 67063 | 11/12/2008 | Maintenance And Food Services Agreement | $45,734.76 |
| Salem Hospital, Inc<br>701 S Main Street<br>Hillsboro KS  67063-1553 | 6/30/1997 | Linen Supply Contract | $0.00 |
| Shared Medical Services, Inc<br>PO Box 330<br>Cottage Grove, WI  53527-0330 | 4/12/2010 | Radiology Services Agreement | $0.00 |
| Siemens Financial Services<br>170 Wood Avenue South<br>Iselin, NJ 08830 | 11/8/2007 | C Arm Lease | $4,851.30 [23] |
| Siemens Financial Services<br>170 Wood Avenue South<br>Iselin, NJ 08830 | 11/8/2007 | CT Injector Lease | $2,274.30 [24] |
| Sleeptec<br>Sleep Diagnostic Services, Inc<br>1841 N. Road Road Ct., Suite 100<br>Wichita, KS      67206-4210<br><br>Oak Hill Park<br>1680 Route 23, Suite 400<br>Wayne NJ       07470-7520 | 1/1/2002 | Radiology Services Agreement | $0.00 |
| Sonovison, Inc<br>292 S Maple Dunes Ct<br>Wichita KS  67235 | 10/13/2003 | Radiology Services Agreement | $8,038.00 |

[23] As of November 1, 2012.
[24] As of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[21] |
|---|---|---|---|
| St Luke Hospital<br>535 South Freeborn<br>Marion KS 66861 | 5/21/2001 | Physical Therapy Agreements | $647.00 |
| St Lukes Hospital and Living Center<br>535 South Freedom<br>Marion, KS 66861 | 6/1/2011 | Respiratory Therapy Services | $647.00 |
| State of Kansas<br>Department of Health and Environment<br>1000 SW Jackson<br>Topeka KS 66612 | 10/1/2011 | Ship Contract | $0.00 |
| Tabor College<br>Attn Athletic Training Program Director<br>400 South Jefferson Street<br>Hillsboro KS 67063 | 10/29/2009 | Affiliate Site Agreement | $0.00 |
| Texas Medical Foundation<br>901 Mopax Expressway South # 200<br>Austin TX 78746<br><br>PRO-West<br>10700 Meridian Ave North, # 100<br>Seattle WAS 98133-9075 | 12/1/2007 | Managed Care Agreement | $0.00 |
| TMHC Services, Inc<br>515 S. Kansas Avenue<br>TopekaKS 66603-3405<br><br>534 S. Kansas, Suite 600<br>TopekaKS 66603-3411 | 2/28/2007 | Laboratory Service Agreement | $0.00 |
| Tri County Telephone Association, Inc.<br>1516 S. 1000 Road<br>Council Grove KS 66846<br><br>923 West Main Street<br>Council Grove KS 66846-1718 | 4/1/2007 | Internet Service Agreement | $0.00 |
| UNICARE Life & Health Insurance Company<br>UNICARE Health Plan of Kansas<br>Attn Network Support<br>5151-A Camino Ruiz - CC-42<br>Camarillo CA 93012 | 1/1/2007 | Insurance Agreements | $0.00 |

| Counterparty | Start Date | Description | Cure Amount[21] |
|---|---|---|---|
| United HealthCare of the Midwest, Inc<br>9393 West 110th Street, # 200<br>Overland Park KS  66210 | 5/1/2006 | Insurance Agreements | $0.00 |
| VCHS Clinical Services, LLC<br>2707 L Street, Suite 1<br>Ord      NE      68862-1275<br><br>3720 E. Bayley Street<br>Wichita          KS        67218-3002 | 10/31/2007 | Radiology Services Agreement | $0.00 |
| VHA Inc.<br>220 E. Las Colinas Blvd.<br>Irving  TX      75039-5814 | 4/1/2008 | Group Purchasing Agreements | $0.00 |
| Via Christi Regional Medical Center<br>Billing Department<br>PO Box 2912<br>Wichita KS  67201-2912 | 10/1/2004 | Equipment Support/Service Agreement | $7,423.95 |
| Via Christi Solutions<br>Billing Department<br>PO Box 2912<br>Wichita KS  67201-2912 | 10/2/2007 | Grant Applications | $0.00 |
| Virtual Radiologic<br>11995 Singletree Lane<br>Eden Prairie     MN      55344-5349<br><br>5995 Opus Parkway, Suite 200<br>Minneapolis     MN      55343-9058 | 5/15/2009 | Radiology Services Agreement | $0.00 |
| Wichita Clinic, PA<br>3311 E. Murdock<br>Wichita          KS        67208-3079 | 10/1/2010 | Real Estate Lease (Hospital As Landlord) | $0.00 |
| WinPharm<br>Interactive Business Systems, Inc.<br>3782 Kinsley Place, Suite 125<br>Winter Park, FL 32792 | 10/1/2009 | Pharmacy Software | $0.00 |
| WorldPay US, Inc.<br>600 Morgan Falls Road<br>Atlanta GA  30350 | 2/7/2011 | Customer Processing Agreement | $0.00 |
| WPPA, Inc<br>Attn Director of Provider Relations<br>1102 S Hillside<br>Wichita KS  67211 | 2/14/2007 | Managed Care Agreement | $0.00 |

CAH Acquisition Company 6, LLC d/b/a I-70 Community Hospital
(Case No. 11-44744)

| Counterparty | Start Date | Description | Cure Amount[25] |
|---|---|---|---|
| 3M<br>2807 Paysphere Circle<br>Chicago, IL  60674 | 6/14/2007 | Medical Software License | $21,354.44[26] |
| Aetna Health Management, LLC<br>100 North Riverside Plaza, Suite 1800<br>Chicago          IL          60606 | 9/1/2007 | Insurance Agreements | $0.00 |
| AirGas<br>PO Box 802615<br>Chicago, IL  60680-2615 | 9/20/2005 | Miscellaneous Contracts | $2,153.55 |
| Air Products<br>PO Box 360545M<br>Pittsburgh, PA  15251-0545 | | Miscellaneous Contracts | $616.00 |
| Blue Cross and Blue Shield of Kansas City<br>2300 Main Street<br>Kansas City, MO 64108 | 6/1/2011 | Employee Benefit Agreement | $0.00 |
| Blue Cross and Blue Shield of Kansas City<br>c/o Brian T. Fenimore, Esq.<br>Lathrop & Gage LLP<br>2345 Grand Blvd., Suite 20<br>Kansas City       MO       64108-2618 | 5/1/2011 | Insurance Agreements | $0.00 |
| Cardinal Health<br>Medical Products & Services<br>PO Box 70539<br>Chicago, IL  60673-0539 | 12/15/2010 | Pharmacy Agreements | $0.00 |
| Cardinal Health<br>Pharmaceutical Dist<br>5042 Collection Center Dr.<br>Chicago, IL  60693 | 10/31/2005 | Equipment Rental Agreement | $12,745.33 |
| CareFusion Solutions, LLS<br>3750 Torrey View Court<br>San Diego, CA  92130 | 1/3/2011 | Equipment Rental Agreement | $7,188.65 |
| CareLearning<br>100 Association Drive | 10/22/2011 | Education Affiliation Agreement | $0.00 |

[25] Unless otherwise noted, the cure amounts stated are as of June 1, 2012.  Certain of the Cure Amounts listed below may be subject to reduction for various reasons, including potential setoff as may be determined by the Bankruptcy Court or agreed to by the parties.
[26] Pursuant to agreement memorialized in the Confirmation Order and to be paid in 24 equal monthly installments beginning on the 28th day after the Effective Date.

| Counterparty | Start Date | Description | Cure Amount[25] |
|---|---|---|---|
| Charleston        WV        25311 | | | |
| Chance, Jolie R DO<br>607 South Main Street<br>Concordia        MO        64020 | 8/1/2010 | Employment Agreement | $0.00 |
| Chandra, Ram MD<br>1025 Main Street<br>Lexington        MO        64067 | 7/5/2007 | Physician : Contracted Services | $0.00 |
| CIGNA Healthcare of St Louis | 7/15/2007 | Insurance Agreements | $0.00 |
| Cintas<br>PO Box 633842<br>Cincinnati, OH  45263 | 10/28/2005 | Equipment Rental Agreement | $325.00 |
| CPSI[27]<br>6600 Wall Street<br>Mobile, AL  36695 | 8/10/2009 | Computer Software and Equipment | $22,632.72 (prepetition); $21,004.06 (postpetition) |
| Coventry Health Care of Kansas, Inc.<br>PO Box 6512<br>Carol Stream, IL  60197-6512 | 11/1/2006 | Insurance Agreements | $0.00 |
| Crown Linen Service, Inc.<br>PO Box 597<br>Mexico, MO  65265-0597 | 5/1/2008 | Linen Supply Contract | $3,571.55 |
| Debra Koch<br>607 South Main Street<br>Concordia        MO        64020-2503 | 8/15/2010 | Employment Agreement | $0.00 |
| Docs Who Care, PA<br>1337 S Fountain Drive<br>Olathe, KS  66061 | 1/1/2011 | Physician: Contracted Services | $12,082.77 |
| Ellett Memorial Hospital<br>610 North Ohio Avenue<br>Appleton City  MO        64724 | 1/1/2011 | Credentialing Agreement | $0.00 |
| EMBARQ<br>359 Bert Kouns<br>Shreveport        LA        71106-8124 | 9/17/2008 | Service Agreement | $0.00 |
| Engineered Recovery Systems, Inc.<br>P. O. Box 3220 | 11/8/2005 | Service Agreement | $0.00 |

---

[27] The CPSI Cure Amounts will be paid in equal monthly installments over 12 months beginning on the 28th day after the Effective Date of the Plan.  To the extent that the Debtor terminates the relevant agreement between CPSI and such Debtor before the end of this 12-month period, the balance of the CPSI Cure Amount with respect to such Debtor shall be paid to CPSI upon termination.  The CPSI Cure Amount listed is as of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[25] |
|---|---|---|---|
| Shawnee, KS   66203 | | | |
| Farnum Street Financial, Inc.<br>240 Pondview Plaza<br>5850 Opus Parkway<br>Minnetonka MN  55343 | 6/1/2011 | Lease Agreement | $0.00 |
| General Electric Credit Corporation<br>PO Box 641419<br>Pittsburgh, PA  15264 | 12/2/2010 | Bone Density Equipment Lease | $2,647.32[28] |
| Heartland Lions Eye Banks<br>404 Portland Street<br>Columbia        MO        65201 | 2/11/2010 | Miscellaneous Contracts | $0.00 |
| Herrmann, Deborah A MD | 9/1/2011 | Physician: Employment Agreement | $0.00 |
| Hospital Equipment Rental Company<br>21900 East 96th St<br>Broken Arrow, OK  74014 | 7/26/2010 | Equipment Rental Agreement | $0.00 |
| Ice-Masters, Inc.<br>421 South Kentucky<br>Sedalia MO        65301 | 8/1/2011 | Equipment Support/Service Agreement | $0.00 |
| Jones Brothers Agricultural Services, LLC<br>PO Box 217<br>Lamonte, MO  65337 | 6/1/2005 | Equipment Rental Agreement | $1,475.23 |
| Key Equipment Finance, Inc.<br>1000 S McCaslin Blvd.<br>Superior, CO  80027 | 7/20/2006 | Medical Equipment Lease | $916.87 |
| Koch, Bill<br>Box 737<br>Chillicothe        MO        64601 | 10/10/2005 | Consulting Agreement | $0.00 |
| Konica Minolta Business Solutions USA, Inc.<br>PO Box 790448<br>St. Louis, MO  63179-0448 | 9/21/2010 | Equipment Rental Agreement | $290.43 |
| Liberty Imaging Partners<br>9212 Nieman Road<br>Overland Park, KS  66214 | 10/13/2010 | Equipment Purchase Agreement | $290.43 |

[28] As of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[25] |
|---|---|---|---|
| Litton Pathology Associates<br>700 NW Hunter Drive<br>Blue Springs, MO | 7/1/2010 | Employment Agreement | $500.00 |
| Metropolitan Sleep Services, Inc.<br>622 SW 3rd St., Suite E<br>Lee's Summit, MO  64063 | 11/7/2007 | Clinical Service Agreements | $2,200.00 |
| MHA Management Services Corporation<br>PO Box 6766<br>Jefferson City, MO  65102-6766 | 1/26/2006 | Human Resources | $0.00 |
| Midwest Transplant Network, Inc.<br>1900 W. 47th Place, Suite 400<br>Westwood, KS 66205 | 5/4/2009 | Organ Donation Agreement | $0.00 |
| Oetting, Elisa Ann RN, CRNA<br>28642 Concordia Lake Road<br>Concordia        MO        64020 | 4/1/2010 | Employment Agreement | $0.00 |
| Preferred Hospice of Missouri (Central - Lexington), LLC | 9/21/2009 | Affiliation Agreement | $0.00 |
| Premier Specialty Network, LLC<br>3610 Buttonwood Drive<br>Columbia, MO  65201 | 7/1/2009 | Physician : Contracted Services | $29,135.58 |
| Primaris<br>200 N. Keene Street<br>Columbia        MO        65201 | 1/9/2006 | Patient Safety Agreement | $0.00 |
| R&R Biomedical, LLC<br>857 W Hurt St<br>Slater, MO  65349 | 7/21/2011 | Equipment Purchase Agreement | $315.00 |
| Research College of Nursing<br>2525 E. Meyer Street<br>Kansas City        MO        64132 | 8/29/2011 | Education Affiliation Agreement | |
| Shared Medical Services, Inc.<br>PO Box 330<br>Cottage Grove, WI  53527-0330 | 7/16/2007 | Radiology Services Agreement | $13,020.00 |
| Softscript, Inc.<br>Dept 3215<br>Los Angeles, CA  90084-3215 | 10/20/2009 | Miscellaneous Contract | $9.13 |
| United HealthCare Insurance Company<br>13655 Riverport Drive<br>Maryland Heights,        MO        63043 | 9/15/2007 | Insurance Agreements | $0.00 |
| University of Kansas Hospital Authority<br>Attn: Stephen Smith | 11/1/2007 | Transfer Agreement | $0.00 |

| Counterparty | Start Date | Description | Cure Amount[25] |
|---|---|---|---|
| Director of Radiology, Progr   3901 Rainbow Blvd., Mai Kansas City       KS        66160 | | | |
| University of Missouri Attn:  Ms. Gina Graves #1 Hospital Drive MA213 Columbia, MO  65212 | 1/12/2011 | Physician Services Agreement | $10.00 |
| US Bank PO Box 790448 St. Louis, MO | 3/26/2009 | Office equipment lease | $2,782.69 |
| Village Hospice 400 N.W. Murray Road Lee's Summit   MO       64081 | 12/1/2006 | Affiliation Agreement | $0.00 |
| Virtual Radiologic Corporation 11995 Singletree Lane, Suite 500 Minneapolis, MN  55344 | 10/13/2010 | Radiology Services Agreement | $2,987.50 |

CAH Acquisition Company 7, LLC d/b/a Prague Community Hospital
(Case No. 11-44745)

| Counterparty | Start Date | Description | Cure Amount[29] |
|---|---|---|---|
| Abbott Diabetes Care Sales Corporation<br>1360 South Loop Road<br>Alameda CA  94502 | 1/21/2010 | Laboratory Service Agreement | $2,776.16 |
| Aetna US Healthcare, Inc<br>7912 E 31st Court, Suite 300<br>Tulsa OK  74145 | 7/1/2001 | Insurance Agreements | $0.00 |
| Affiliated Computer Services (ACS)<br>Corporate Headquarters<br>2828 N Haskell<br>Dallas TX  75214 | 4/15/2009 | Insurance Agreements | $0.00 |
| Agility<br>560 Fifth Street, Suite 404<br>Grand Rapids, MI 49504 | 5/2/2010 | Physical Therapy Consulting Agreement | $86,160.40 |
| Airgas<br>1229 N Harrison<br>Shawnee OK  74801-5203 | 1/3/2011 | Facility Service Agreement | $7,405.28 |
| Ann Becker, ARNP<br>504 Pool Lane<br>Shawnee OK  74801 | 9/13/2010 | Employment Agreement | $0.00 |
| Aqua Pleasures<br>221 N Cleveland<br>Cushing OK  74023 | 2/9/2011 | Facility Service Agreement | $0.00 |
| BancFirst<br>Main & Jim Thorpe<br>Prague OK  74864 | 9/26/2007 | Equipment Purchase Agreement | $649.15 |
| Beech Street Corporation<br>25500 Commercentre Drive<br>Lake Forest CA  92630-8855 | 11/3/2005 | Insurance Agreements | $0.00 |
| Blue Cross and Blue Shield of Kansas City<br>2300 Main Street<br>Kansas City, MO 64108 | 6/1/2011 | Employee Benefit Agreement | $0.00 |

---

[29] Unless otherwise noted, the cure amounts stated are as of June 1, 2012.  Certain of the Cure Amounts listed below may be subject to reduction for various reasons, including potential setoff as may be determined by the Bankruptcy Court or agreed to by the parties.

| Counterparty | Start Date | Description | Cure Amount[29] |
|---|---|---|---|
| Blue Cross Blue Shield of Oklahoma<br>1215 South Boulder<br>PO Box 3283<br>Tulsa OK  74102-3283 | 5/1/2011 | Insurance Agreements | $0.00 |
| BMI Image Net<br>913 N Broadway<br>Oklahoma City OK  73102 | 3/19/2010 | Computer Equipment Lease | $904.26 |
| Broadlane, Inc<br>13727 Noel Rd, Suite 1400<br>Dallas, TX 75240<br>Attn: Operations Counsel | 4/1/2009 | Gpo Agreements | $0.00 |
| Caring Hands Hospice<br>1212 4th Street<br>Pawnee OK  74058 | 6/1/2002 | Service Agreement | $0.00 |
| CIGNA HealthCare of Oklahoma, Inc<br>5100 N Brookline, # 900<br>Oklahoma City OK  73112 | 1/1/1996 | Insurance Agreements | $0.00 |
| Community Hospice of Oklahoma, LLC<br>218 W 6th Street<br>Tulsa OK  74119 | 9/24/2004 | Service Agreement | $0.00 |
| Comprehensive Medical Care Affiliates, Inc. / Preferred Community Choice PPO<br>4720 S Harvard, # 100<br>Tulsa OK  74135 | 8/13/2007 | Managed Care Agreement | $0.00 |
| Cooper, Doyle<br>PO Box NBU 3301<br>Prague OK        74864 | 9/21/2007 | Pharmacist Employment Agreement | $0.00 |
| Coventry Health and Life Insurance Company<br>3030 NW Expressway # 265<br>Oklahoma City OK  73112 | 8/1/2009 | Insurance Agreements | $0.00 |
| CPSI[30]<br>6600 Wall Street<br>Mobile AL  36695 | 6/10/2009 | Information Technology Service Agreements | $23,906.52 (prepetition); $26,578.26 (postpetition) |

---

[30] The CPSI Cure Amounts will be paid in equal monthly installments over 12 months beginning on the 28th day after the Effective Date of the Plan.  To the extent that the Debtor terminates the relevant agreement between CPSI and such Debtor before the end of this 12-month period, the balance of the CPSI Cure Amount with respect to such Debtor shall be paid to CPSI upon termination.  The CPSI Cure Amount listed is as of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[29] |
|---|---|---|---|
| DataLink Solutions<br>8170 Upland Circle<br>Chanhassen MN  55317 | 10/5/2007 | Information Technology Service Agreements | $0.00 |
| Diagnostic Imaging Associates, Inc<br>744 West 9th<br>Tulsa OK  74127 | 12/22/2009 | Radiology Services Agreement | $0.00 |
| Ecolab<br>Corproate Headquarters<br>370 N Wabasha Street<br>St Paul MN  55102-2233 | 10/16/2007 | Equipment Rental Agreement | $419.29 |
| Employment Background Investigations, Inc<br>PO Box 629<br>Owings Mill, MD 21117 | 5/22/2008 | Service Agreement | $0.00 |
| Farnum Street Financial, Inc.<br>240 Pondview Plaza<br>5850 Opus Parkway<br>Minnetonka MN  55343 | 6/1/2011 | Lease Agreement | $0.00 |
| Fowler, Scott DO<br>1717 Shane Street<br>Prague OK  74864 | 7/29/2008 | Physician: Employment Agreement | $0.00 |
| FP Mailing Solutions<br>140 N Mitchell Ct<br>Addison IL  60101 | 4/6/2009 | Miscellaneous Contracts | $163.92 |
| Global Health Provider Network<br>710 NE 10th Street, # 30<br>Oklahoma City OK  73104-5400 | 1/1/2010 | Service Agreement | $0.00 |
| Gordon Cooper Technology Center<br>One John C Bruton Boulevard<br>Shawnee OK  74802 | 6/1/2009 | Clinical Affiliation Agreements | $0.00 |
| Government Employees Health Association<br>PPO USA Network Development<br>310 Northeast Mulberry St.<br>Lees Summit MO  64086 | 61/2008 | Managed Care Contract | $0.00 |
| Green County Rehab<br>4145 Harvard Drive<br>Tulsa OK 74135 | 8/2/10 | Physical therapy services | $12,342.70 |

| Counterparty | Start Date | Description | Cure Amount[29] |
|---|---|---|---|
| Hilltop Mowing - John Forneris, Owner<br>8721 NBU<br>Prague OK  74864 | 5/21/2011 | Maintenance Agreement | $1,100.00 |
| Hooten Oil Company<br>12583 S Highway 99<br>Seminole OK 74864 | 1/3/2011 | Facility Service Agreement | $0.00 |
| Humana, Inc.<br>8400 E Prentice Ave., # 1115<br>Englewood CO  80111-2926<br><br>ChoiceCare Network<br>PO Box 19013<br>Green Bay WI  54307<br><br>ChoiceCare<br>Attn  Network Development<br>8400 E Prentice Ave., # 1400<br>Englewood CO  80111 | 6/1/2005 | Insurance Agreements | $0.00 |
| Infolab, Inc.<br>PO Box 1309<br>Clarksdale MS 38614 | 3/3/2009 | Lab Services Agreement | $15,414.73 |
| Jackson, Darryl DO<br>PO Box 334<br>Prague OK  74864 | 8/1/2007 | Chief Of Staff Agreements | $0.00 |
| Johnson & Johnson Finance Corp<br>501 George Street<br>New Brunswick NJ | 4/24/09 | Analyzer equipment | $12,982.85 |
| L & L Oil and Tire<br>811 West Main Street<br>Prague OK  74864 | 2/9/2011 | Facility Service Agreement | $0.00 |
| LifeShare Transplant Donor Services of Oklahoma<br>7200 N Broadway Extension<br>Oklahoma City OK  73116 | 1/11/2011 | Miscellaneous Contracts | $0.00 |
| Liston, Brad DO<br>1022 W. 117th Court<br>Jenks, OK 74037 | 10/1/2008 | Physician: Employment Agreement | $0.00 |
| Medline Distribution Company<br>1 Mundelein<br>Mundelein, IL 60060 | 1/10/2008 | Medical Supply Purchasing Agreement | $9,268.24 |

43

| Counterparty | Start Date | Description | Cure Amount[29] |
|---|---|---|---|
| Metro Technology Centers<br>1900 Springdale Drive<br>Oklahoma City OK  73111 | 11/2/2007 | Clinical Affiliation Agreements | $0.00 |
| MultiPlan, Inc<br>115 Fifth Ave.<br>New York NY  10003-1004<br><br>2405 Grand Blvd, # 1030<br>Kansas City MO  64108 | 4/1/2008 | Insurance Agreements | $0.00 |
| Muscogee (Creek) Nation<br>Division of Health Administration<br>206 S. Grand, # 202<br>Okmulgee OK  74447 | 7/1/2008 | Medical Services Agreement | $0.00 |
| NetworkSolutions<br>13861 Sunrise Valley Drive<br>Dept CCD<br>Herndon, VA 20171 | 8/10/2008 | Information Technology Service Agreements | $0.00 |
| Nuesoft Technologies<br>1685 Terrel Mill Road<br>Marietta GA 30067 | 8/18/2010 | Software License | $0.00 |
| Oklahoma Blood Institute<br>DEPT #96-0115<br>Oklahoma City, OK     73196-0115 | 8/1/2010 | Blood Supply Contract | $7,668.00 |
| Oklahoma Cardiovascular Associates, PC<br>4050 West Memorial Road<br>Oklahoma City OK  73134 | 1/1/2008 | Real Estate Lease (Hospital As Landlord) | $0.00 |
| Oklahoma Department of Corrections<br>Medical Services Division<br>2901 N Classen Blvd., # 100<br>Oklahoma City OK  73106-5438 | 2/16/2009 | Insurance Agreements | $0.00 |
| Oklahoma Department of Rehabilitation Services<br>PO Box 25069<br>Oklahoma City, OK 73125 | 1/1/2009 | Insurance Agreements | $0.00 |
| Oklahoma Foundation for Medical Quality<br>14000 Quail Springs Parkway<br>Oklahoma City OK | 7/21/2011 | Consulting agreement | $420 |

| Counterparty | Start Date | Description | Cure Amount[29] |
|---|---|---|---|
| Oklahoma Organ Sharing Network, Inc 3140 W Britton Rd # B Oklahoma City OK  73120 | 11/26/2001 | Service Agreement | $0.00 |
| Oklahoma State and Education Employees Group Insurance Board Attn Provider Relations/Network Management 3545 NW 58th Street, # 600 Oklahoma City OK  73112 | 3/8/2009 | Insurance Agreements | $0.00 |
| Parkland Manor Living Center Attn  Administrator 6308 N.B.U. Prague OK  74864 | 9/1/2011 | Chief Of Staff Agreements | $0.00 |
| Parkland Manor Living Center Attn  Administrator 6308 N.B.U. Prague OK  74864 | 3/9/2007 | Transfer Agreement | $0.00 |
| Parkland Manor Nursing Home 922 West Parkland Ave. Prague OK  74864-4008 | 11/18/1994 | Service Agreement | $0.00 |
| Prairie View Hospice, Inc 1206 Manvel Ave # C Chandler OK  74834-4401 | 11/20/2007 | Service Agreement | $0.00 |
| Preferred CommunityChoice PPO, Inc 218 West 6th Street Tulsa OK  74119 | 8/13/2007 | Insurance Agreements | $0.00 |
| Preferred Hospice 717 NW 17th Oklahoma City OK  73103 | 11/1/2003 | Service Agreement | $0.00 |
| Preferred Medical Claim Solutions 17200 N Perimeter Dr., # 100 Scottsdale  AZ  85255 | 3/12/2008 | Service Agreement | $0.00 |
| Private Healthcare Systems Provision Summary 650 S Cherry St., # 1050 Denver CO  80222 | 8/1/1998 | Service Agreement | $0.00 |

| Counterparty | Start Date | Description | Cure Amount[29] |
|---|---|---|---|
| Sac and Fox Nation Health Program<br>Route 2, Box 246<br>Stroud OK  74079 | 7/8/2008 | Insurance Agreements | $0.00 |
| Shared Medical Services, Inc<br>209 Limestone Pass<br>Cottage Grove WI  53527 | 11/10/2009 | Radiology Services Agreement | $33,950.00 |
| SSM Health Care of Oklahoma, Inc<br>477 North Lindbergh Boulevard<br>St Louis MO  63141 | 1/1/2009 | Transfer Agreement | $0.00 |
| Sterling Life Insurance Company<br>2219 Rimland Drive<br>PO Box 5348<br>Bellingham WA  98227-5348 | 9/15/2009 | Insurance Agreements | $0.00 |
| T System for Nursing<br>4020 McEwen Drive<br>Dallas, TX 75244 | 4/13/2005 | Nursing Services Documentation Agreement | $1,611.64 |
| Three Rivers Provider Network, Inc<br>910 Hale Place, Ste. 101<br>Chula Vista CA  91914 | 1/6/2010 | Insurance Agreements | $0.00 |
| Tricare Management Activity (TMA)<br>PO Box 7032<br>Camden, SC 29020 | 8/1/2007 | Insurance Agreements | $0.00 |
| United HealthCare Insurance Company<br>5800 Granite Pkwy, # 900<br>Plano TX  75024 | 4/10/2009 | Insurance Agreements | $0.00 |
| USA Managed Care Organization, Inc<br>7301 N 16th Street, # 201<br>Phoenix AZ  85020 | 10/30/1997 | Insurance Agreements | $0.00 |
| Ward, Mary Ann PA<br>43 Timber Creek Drive<br>Shawnee OK  74808 | 1/16/2007 | Physician: Employment Agreement | $0.00 |
| Wes Watkins Technology Center<br>7892 Oklahoma 9<br>Welumka OK  74883-9522 | 7/1/2009 | Clinical Affiliation Agreements | $0.00 |
| Windstream Communications<br>Oklahoma<br>PO BOX 9001908 | 8/2/2010 | Internet Services Agreement | $2,249.87 |

| Counterparty | Start Date | Description | Cure Amount[29] |
|---|---|---|---|
| Louisville         KY         40290-1908 | | | |
| WorkNet of Oklahoma<br>Attn  Administrator<br>PO Box 3206<br>Tulsa OK  74101-3206 | 5/23/2001 | Insurance Agreements | $0.00 |
| Wyandotte Nation<br>dba Bearskin Health Clinic<br>One Turtle Drive<br>PO Box 30<br>Wyandotte OK  74370 | 9/1/2003 | Clinic Agreement | $0.00 |

CAH Acquisition Company 9, LLC d/b/a Seiling Community Hospital

(Case No. 11-44746)

| Counterparty | Start Date | Description | Cure Amount[31] |
|---|---|---|---|
| Aetna<br>11675 Great Oaks Way<br>Alpharetta GA 30022 | | Insurance Agreements | $0.00 |
| Agility Health<br>560 Fifth Street NW Suite 404<br>Grand Rapids MI 49504 | 8/1/2010 | Physical Therapy Agreement | $119,941.23 |
| Alice Sleep<br>Respironics, Inc.<br>801 Presque Isle Drive<br>Pittburgh PA  15239 | 9/29/2010 | Equipment Rental Agreement | $3,880.80 |
| Angelica Textile Services<br>1105 Lakewood Parkway, suite 210<br>Alpharetta GA 30004 | 1/10/2011 | Textile Service Agreement | $0.00 |
| Baytree Leasing<br>1000 Tri-State International, Suite 240<br>Lincolnshire, IL 60069 | 6/17/2007 | Equipment Lease | $1,289.16 |
| Beckman Coulter<br>PO Box 169815<br>11800 SW 147th Ave<br>Miami FL 33116 | 9/17/2008 | Service Agreement | $0.00 |
| Blue Cross and Blue Shield of Kansas City<br>2300 Main Street<br>Kansas City, MO 64108 | 6/1/2011 | Employee Benefit Agreement | $0.00 |
| Blue Cross Blue Shield of Oklahoma<br>Attn  VP / Network Management<br>PO Box 3283<br>Tulsa OK  74102-3283 | 8/1/2011 | Insurance Agreements | $0.00 |
| Brummitt & Associates<br>4418 Montecello Place<br>Enid, OK 73703 | 7/1/2009 | Dietary Consultant Agreement | $0.00 |
| Coventry<br>3030 NW Expressway, Suite 625 | | Insurance Agreements | $0.00 |

---

[31] Unless otherwise noted, the cure amounts stated are as of June 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[31] |
|---|---|---|---|
| Oklahoma City OK 73112 | | | |
| CPSi[32]<br>6600 Wall Street<br>Mobile AL  36695 | 6/11/2009 | Computer License and Equipment | $6,351.74 (prepetition); $30,397.75 (postpetition) |
| Creekridge Capital | 3/11/2008 | Equipment Lease | $4,817.35 |
| Farnum Street Financial, Inc.<br>240 Pondview Plaza<br>5850 Opus Parkway<br>Minnetonka MN  55343 | 6/1/2011 | Lease Agreement | $0.00 |
| GE Commercial Finance<br>W-490<br>PO Box 414<br>Milwaukee, WI 53201 | 12/21/2006 | Equipment Lease -- GEMS Cardiac monitoring system | $15,233.31[33] |
| Humana Gold<br>7104 South Sheridan, Suite 10A<br>Tulsa OK 74113 | | Insurance Agreements | $0.00 |
| John Hester, DO<br>310 N Locust<br>Seiling OK 73663 | 6/1/2009 | Physician Employment Agreement | $0.00 |
| Kenneth Duffy, MD<br>PO Box 845<br>Seiling OK 73663 | 2/1/2009 | Medical Director Agreement - Emergency Services | $0.00 |
| Laboratory Corporation of America<br>7777 Forst Lane, C-350<br>Dallas, TX 75230 | 3/1/2009 | Laboratory Supply Agreement | $8,173.31 |
| Leasing Associates of Barrington, Inc.<br>33 W. Higgins Road, #1030<br>Barrington, IL 60010 | 9/4/2008 | Laboratory Service Agreement | $1,494.00 |
| Lifeshare Transplant and Donor Services<br>7200 Broadway Extension<br>Oklahoma City, OK 73116 | 4/1/2011 | Organ And Tissue Recovery Agreement | $0.00 |

---

[32] The CPSI Cure Amounts will be paid in equal monthly installments over 12 months beginning on the 28th day after the Effective Date of the Plan.  To the extent that the Debtor terminates the relevant agreement between CPSI and such Debtor before the end of this 12-month period, the balance of the CPSI Cure Amount with respect to such Debtor shall be paid to CPSI upon termination.  The CPSI Cure Amount listed is as of November 1, 2012.

[33] As of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[31] |
|---|---|---|---|
| Northern Shared Medical Services Inc<br>209 Limestone Pass<br>Cottage Grove, WI 53527 | 4/1/2009 | Mobile MRI Service | $3,685.00 |
| Oklahoma Blood Institute<br>1001 N. Lincoln Blvd.<br>Oklahoma City, OK 73104 | 8/1/2010 | Blood Supply Agreement | $959.04 |
| Oklahoma Sonographic Imaging, Inc.<br>6516 NW 11th Street<br>Oklahoma City, OK 73162 | 6/25/2005 | Ultrasound Services Agreement | $19,540.00 |
| Philips Healthcare | 9/29/2010 | Medical Equipment Lease | $1,680.36 |
| Preferred Community Choice<br>218 West 6th Street<br>Tulsa OK 74119 | | Insurance Agreements | $0.00 |
| Premier Specialty Network LLC<br>Attn Robert Jackson DO, Pres.<br>3610 Buttonwood Dr., # 200<br>Columbia MO  65201 | 9/1/2009 | Physician Contract | $0.00 |
| Radiographic Equipment Service<br>7300 NW 45th Street<br>Bethany OK 73008 | 2/18/08 | Medical Equipment Contract | $3,997.34 |
| Seiling Elementary School<br>Attn: Principal Randy Seifried<br>PO Box 780<br>Seiling OK 73663 | 10/1/2011 | Physical Therapy Agreement | $0.00 |
| Seiling EMS<br>102 W 2nd Street<br>Seiling OK 73663 | 4/6/2009 | Emergency Services Agreement | $0.00 |
| Seiling Nursing Center<br>Highway 60 North<br>Seiling OK 7366 | 6/25/2005 | Patient Transfer Agreement | $0.00 |
| Shared Imaging<br>2186 Paysphere Circle<br>Chicago, IL 60674 | 3/1/2011 | CT Equipment | $16,675.00 |
| Sleep Mission LLC<br>7008 E 64TH PL<br>Tulsa OK 74023 | 2/5/2011 | Medical Services Agreement | $3,600.00 |

| Counterparty | Start Date | Description | Cure Amount[31] |
|---|---|---|---|
| Southwest Medical Equipment<br>21900 E 96th Street<br>Broken Arrow OK 74014 | | Medical Equipment Contract | $3,165.89 |
| St. Anthony Hospital<br>Business Office<br>PO Box 205<br>Oklahoma City OK  73101-0205 | 7/1/2011 | Teleradiology Services | $15,149.70 |
| St Mary's Hospital<br>305 S 5th Street<br>Enid OK 73701 | 8/1/2005 | Network Agreement | $0.00 |
| Town of Vice Nursing Home<br>PO Box 119<br>619 Speck<br>Vici OK 73589 | 6/1/2011 | Transfer Agreement | $0.00 |
| United Healthcare Insurance<br>3817 NW Expressway # 720<br>Oklahoma City, OK 73112-1443 | 2/15/2005 | Insurance Agreements | $0.00 |

CAH Acquisition Company 10, LLC d/b/a Yadkin Valley Community Hospital
(Case No. 11-44747)

| Counterparty | Start Date | Description | Cure Amount |
|---|---|---|---|
| Airgas National Welders<br>PO Box 601985 | 8/1/2012 | Supply Agreement | $1,302.27 |
| Baxter Healthcare<br>PO Box 905788<br>Charlotte, NC 28290 | 1/21/2008 | Supply Agreement | $0.00 |
| Beckman Coulter<br>PO Box 169815<br>11800 SW 147th Ave<br>Miami FL 33116 | | Lab Equipment<br>Lease | $67,639[34] |
| Blue Cross and Blue Shield of Kansas City<br>2300 Main Street<br>Kansas City, MO 64108 | 6/1/2011 | Employee Benefit<br>Agreement | $0.00 |
| Blue Cross and Blue Shield of North Carolina<br>Attn VP / Network Management<br>PO Box 2291<br>Durham NC  27702 | 11/10/2006 | Insurance<br>Agreements | $0.00 |
| Blue Ridge X-ray<br>120 Vista Blvd<br>Arden NC 28704 | 10/28/2009 | Radiology Services<br>Agreement | $3,361.30 |
| ChoiceCare Network<br>Attn  Executive Director<br>500 West Main Street<br>Louisville KY  40202 | 10/1/2001 | Insurance<br>Agreements | $0.00 |
| Cigna Healthcare of North Carolina<br>701 Corporate Center Drive<br>Raleigh NC  27607 | 9/15/2004 | Insurance<br>Agreements | $0.00 |
| CPSI[35]<br>6600 Wall Street<br>Mobile AL  36695 | 6/20/2009 | Computer Software<br>Lease | $$77,196.13<br>(prepetition);<br>$35,274.37 |

[34] As of November 1, 2012.

[35] The CPSI Cure Amounts will be paid in equal monthly installments over 12 months beginning on the 28th day after the Effective Date of the Plan.  To the extent that the Debtor terminates the relevant agreement between CPSI and such Debtor before the end of this 12-month period, the balance of the CPSI Cure Amount with respect to such Debtor shall be paid to CPSI upon termination.  The CPSI Cure Amount listed is as of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount |
|---|---|---|---|
| | | | (postpetition) |
| Farnum Street Financial, Inc.<br>240 Pondview Plaza<br>5850 Opus Parkway<br>Minnetonka MN  55343 | 6/1/2011 | Lease Agreement | $0.00 |
| GE Healthcare Financial<br>20225 Watertower Blvd<br>Brookfield WI  53045 | 1/10/2011 | Equipment Rental Agreement | $40,862.21[36] |
| Ikon Financial Services<br>PO Box 9115<br>Macon GA 50218<br>Transferred to:<br>Ricoh/GE Capital Corp Technology | 11/5/2010 | Office Equipment Agreement | $14,003.27 |
| McGrath, James MD<br>3051 Leslie Lane<br>Yadkinville NC  27055 | 10/1/2010 | Physician: Employment Agreement | $0.00 |
| MedAssets<br>200 North Point Center East, Suite 200<br>Alpharetta, GA 30022 | 8/5/2009 | Vendor Agreement- For Cintas | $0.00 |
| MedCost, LLC<br>165 Kimel Park Drive<br>Wisnton Salem NC  27114-5347 | 11/1/2001 | Insurance Agreements | $0.00 |
| Medrad<br>100 Global View Drive<br>Warrendale PA  15086 | 12/21/2010 | Medical Equipment Lease | $6,687.54 |
| One Health Plan of North Carolina, Inc<br>Attn Network Dev / Provider Relations<br>6000 Fairview Road, # 500<br>Charlotte NC  28210 | 9/1/1998 | Insurance Agreements | $0.00 |
| Palmetto<br>Government Financing Dept<br>Attn: AG-215<br>Columbia, SC 29202 | 5/1/2010 | Medicare Contract | $0.00 |
| PARTNERS National Health Plans of<br>North Carolina, Inc<br>5901 Chapel Hill Road<br>Durham NC  27707 | 9/15/2006 | Insurance Agreements | $0.00 |

---

[36] As of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount |
|---|---|---|---|
| Personal Care Plan of North Carolina, Inc | 7/1/1996 | Insurance Agreements | $0.00 |
| Philips Medical Capital<br>1111 Old Eagle School Road<br>Wayne PA  19087 | 5/24/2011 | Equipment Rental Agreement | $1,523.39 |
| Respironics<br>10712 South 1300 East<br>Sandy UT  84094 | 8/21/2009 | Medical Equipment Lease | $0.00 |
| Southeast Region Health Delivery Op<br>11675 Great Oaks Way, 3rd floor<br>Alpharetta GA  30022 | 8/21/2010 | Medical Services Agreement | $0.00 |
| Thompson Reuters<br>39353 Treasury Center<br>Chicago          IL          60694-9300 | | Information Services Agreement | $4,881.27 |
| United HealthCare Insurance Company<br>3803 North Elm Street<br>Greensboro NC  27455 | 7/15/2008 | Insurance Agreements | $0.00 |

CAH Acquisition Company 11, LLC d/b/a Lauderdale Community Hospital
(Case No. 11-44748)

| Counterparty | Start Date | Description | Cure Amount[37] |
|---|---|---|---|
| 3M<br>575 W Murray Blvd.<br>Murray UT  84123-4611 | 9/21/2010 | Software License & Service Agreement | $55,082.12[38] |
| Accurate Communications Corporation<br>2659 Thousand Oaks Boulevard<br>Memphis TN  38118-2473 | 4/15/1998 | Equipment Agreement | $0.00 |
| American College of Radiology<br>Tennessee Radiology Society<br>2301 21st Ave South<br>Nashville TN  37212 | 4/9/2003 | Business Associate Agreements | $0.00 |
| Anatomical Pathology Consortium, PLLC<br>150 Collins Street<br>Memphis TN  38112 | 10/1/2000 | Chief Of Staff Agreements | $218.75 |
| Arkansas Northeastern College<br>2501 South Division Street<br>Blytheville AR  72315 | 2/10/2005 | Clinical Affiliation Agreements | $0.00 |
| Baptist College of Health Sciences<br>1003 Monroe Ave<br>Memphis TN  38104 | 1/1/2007 | Clinical Affiliation Agreements | $0.00 |
| Baptist Health Services Group of the Mid-South Inc.<br>350 N Humphreys Boulevard, 4th Floor<br>Memphis TN  38120-2177 | 4/1/2010 | Insurance Agreements | $0.00 |
| Baptist Memorial Hospital-Tipton<br>1995 Highway 51 South<br>Covington TN  38019 | 2/3/2005 | Network Affiliation Agreement | $0.00 |
| Blue Cross and Blue Shield of Kansas City<br>2300 Main Street<br>Kansas City, MO 64108 | 6/1/2011 | Employee Benefit Agreement | $0.00 |

---

[37] Unless otherwise noted, the cure amounts stated are as of June 1, 2012.

[38] Pursuant to agreement memorialized in the Confirmation Order and to be paid in 24 equal monthly installments beginning on the 28th day after the Effective Date.

| Counterparty | Start Date | Description | Cure Amount[37] |
|---|---|---|---|
| BlueCross BlueShield of Tennessee<br>Attn Provider Contract Management<br>801 Pine Street<br>Chananooga TN 37402 | 11/1/1996 | Insurance Agreements | $0.00 |
| Cardinal Health<br>7000 Cardinal Place<br>Dublin OH 43017 | 3/1/2005 | Pharmacy Supply Agreement | $153.44 |
| CIGNA HealthCare of Tennessee, Inc<br>Attn Director Provider Contracting<br>1000 Corporate Center, Suite # 500<br>Franklin TN 37067 | 1/1/2009 | Insurance Agreements | $0.00 |
| Cole Chiropractic Clinic<br>8101 Walnut Run Road<br>Cardova TN 38018-6398 | 4/13/2011 | Radiology Services Agreement | $0.00 |
| Community Tissue Services<br>5600 Pleasant View Road, # 107<br>Memphis TN 38134-6596 | 12/4/2008 | Miscellaneous Contracts | $0.00 |
| CPSI[39]<br>6600 Wall Street<br>Mobile AL 36695 | 2/5/2010 | Computer Software And Support | $-31,045.797 (prepetition) (credit); $36,786.35 (postpetition) |
| Concorde Career College<br>5100 Poplar Ave., # 132<br>Memphis TX 38137 | 3/26/2009 | Clinical Affiliation Agreements | $0.00 |
| Consumer Adjustment Company, Inc | 11/4/2010 | Collection Service Agreement | $0.00 |
| Correctional Medical Services, Inc | 4/1/2010 | Patient Services Agreement | $0.00 |
| Dyersburg Regional Medical Center<br>Attn Accounting<br>Tickle Street<br>Dyersburg TN 38024 | 11/1/2010 | Real Estate Lease (Hospital As Landlord) | $2,240.00 |

[39] The CPSI Cure Amounts will be paid in equal monthly installments over 12 months beginning on the 28th day after the Effective Date of the Plan. To the extent that the Debtor terminates the relevant agreement between CPSI and such Debtor before the end of this 12-month period, the balance of the CPSI Cure Amount with respect to such Debtor shall be paid to CPSI upon termination. The CPSI Cure Amount listed is as of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[37] |
|---|---|---|---|
| Dyersburg State Community College Division Of Nursing 1510 Lake Road Dyersburg TN 38024-2466 | 7/24/2004 | Clinical Affiliation Agreements | $0.00 |
| Emergency Coverage Corporation Attn: John Staley, Jr. MD 1900 Winston Rd, Suite 600 Knoxville, TN 37919 | 3/1/2008 | Staffing Agreement | $38,872.01 |
| Enserve 6875 West Loop South Bellaire, TX 77401 | | Stericycle Agreement | $0.00 |
| Farnum Street Financial, Inc. 240 Pondview Plaza 5850 Opus Parkway Minnetonka MN 55343 | 6/1/2011 | Lease Agreement | $0.00 |
| First United Methodist Church of Ripley 145 South Main Ripley TN 38063 | 2/7/2009 | Facility Use Agreement | $0.00 |
| GE Healthcare PO Box 843553 Dallas TX 75284 | 1/21/11 | Service contract for CT Scanner - 0305928 | $24,907.47[40] |
| Griffin Industries, Inc 2027 River Road Union City TN 38261 | 12/14/2010 | Service Agreement | $255.00 |
| Hospira Worldwide, Inc Attn Contract Marketing 275 North Field Drive Dept 361 - Bldg H1 Lake Forest IL 60045 | 1/1/2011 | Equipment Rental Agreement | $641.28 |
| Ikon Financial Services 1738 Bass Road Macon, GA 31210 | 8/24/2010 | Copier Lease | $2,291.99 |
| Independent Radiology Associates, PLC PO Box 1296 Dyersburg TN 38025-1296 | 7/1/2001 | Radiology Services Agreement | $3,060.50 |

[40] As of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[37] |
|---|---|---|---|
| Insight Imaging<br>Attn  Contract Administrator<br>26250 Enterprise Court # 100<br>Lake Forest CA  92630 | 9/23/2010 | Equipment Rental Agreement | $39,312.00 |
| Instrumentation Laboratory<br>PO Box 83189<br>Woburn MA  01813-3189 | 8/14/2007 | Laboratory Service Agreement | $1,758.49 |
| Johnson and Johnson Health Care Systems, Inc | 4/15/2011 | Pharmacy Agreements | $368.68 |
| Karl C. Jonas, Jr., MD, FACS<br>PO box 270<br>Covington TN  38019 | 7/1/2010 | Employment Agreement | $0.00 |
| Kingsbridge  Holdings, LLC as assignee of General Electric Capital Corporation<br>c/o  Thomas  V. Askounis<br>Askounis & Darcy, PC<br>333 N. Michigan Ave., Suite 510<br>Chicago          IL          60601<br><br>Kingsbridge  Holdings, LLC<br>c/o Geoff W. Hetley<br>Hetley Law Firm<br>103 East Park Street<br>Olathe KS        66061 | 11/29/2010 | Equipment Rental Agreement – CT Scanner | $33,981.96[41] |
| Lauderdale County Ambulance Authority<br>PO Box 512<br>Ripley TN  38063 | 2/1/2011 | Service Agreement | $0.00 |
| Le Bonheur Children's Medical Center<br>50 North Dunlap Street<br>Memphis TN  38103 | 7/24/2007 | Education Affiliation Agreement | $0.00 |
| Le Bonheur Children's Medical Center<br>50 North Dunlap Street<br>Memphis TN  38103 | 7/24/2007 | Transfer Agreement | $0.00 |
| Lifeblood/Mid-south Regional Blood Center<br>PO Box 1956<br>Memphis TN  38101-1956 | 11/4/2008 | Blood Supply Contract | $14,071.00 |

---

[41] As of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[37] |
|---|---|---|---|
| Lu, Elizabeth DPM<br>600 Hw 51 Bypass<br>Dyersburg, TN 38024 | 1/7/2011 | Real Estate Lease (Hospital As Landlord) | $0.00 |
| Med One Capital Funding, LLC<br>10712 South 1300 East<br>Sandy UT  84094 | 12/16/2010 | Equipment Rental Agreement | $6,083.97 |
| Medrad, Inc<br>PO Box 360172<br>Pittsburg PA  15251-6172 | 12/10/2010 | Radiology Services Agreement | $5,043.37 |
| Memphis Communications Corporation<br>4771 Summer Ave.<br>PO Box 770389<br>Memphis TN  38177-0389 | 12/9/2009 | Equipment Rental Agreement | $0.00 |
| Mid-South Regional Blood Center<br>1040 Madison Ave<br>Memphis TN  38104-2198 | 10/11/2010 | Laboratory Service Agreement | $0.00 |
| Mid-South Transplant Foundation Inc<br>8001 Center View Parkway # 302<br>Cordova TN  38018-4276 | 9/18/2009 | Miscellaneous Contracts | $0.00 |
| MultiPlan, Inc<br>115 Fifth Avenue<br>New York NY  10003 | 4/1/2007 | Insurance Agreements | $0.00 |
| NetLearning | 3/23/2011 | Software License & Service Agreement | $0.00 |
| Ripley Dialysis, LLC<br>854 Highway 51 South<br>Ripley TN  38663-5536 | 2/10/2010 | Laboratory Service Agreement | $0.00 |
| STERIS Corporation<br>Lockbox 771652<br>1652 Solution Center<br>Chicago IL  60677-1006 | 2/1/2011 | Service Agreement | $44,137.16 |
| Tennessee Dept of Environment<br>Division of Radiological Health<br>401 Church Street<br>Nashville, TN 37243 | 7/1/2011 | Radioactive Material License | $1,055.00 |
| Tennessee Technology Center at Ripley<br>127 Industrial Drive<br>Ripley TN  38063-7360 | 10/8/2010 | Clinical Affiliation Agreements | $0.00 |

| Counterparty | Start Date | Description | Cure Amount[37] |
|---|---|---|---|
| TotalCare<br>Drager Medical, Inc.<br>3135 Quarry Road<br>Telford PA  18959 | 9/1/2010 | Service Agreement | $0.00 |
| Trane<br>1775 Pyramid Place # 100<br>Memphis TN  38132 | 8/22/2011 | Service Agreement | $25,094.83 |
| Transcription Solutions of North Carolina, LLC<br>Attn  CEO<br>127 Fairley Street<br>Laureinberg NC  28352 | 6/7/2011 | Business Associate Agreements | $2,062.79 |
| UnitedHealthcare of Tennessee, Inc<br>Street 10 Cadillac Drive # 200<br>Brentwood TN  37027 | 8/1/2011 | Insurance Agreements | $0.00 |
| Virtual Radiologic<br>11995 Singletree Lane<br>Eden Prairie MN  55344-5349 | 1/5/2011 | Radiology Services Agreement | $1,044.30 |
| WorkSTEPS, Inc<br>3019 Alvin DeVane Blvd, Suite 150<br>Austin, TX 78741 | 1/3/2008 | Physical Therapy Agreements | $0.00 |
| Zaidi, Syed MD<br>Attn  Business Manager<br>326 Asbury Avenue, # 101<br>Ripley TN  38063-5577 | 6/18/2009 | Chief Of Staff Agreements | $0.00 |
| Zaidi, Syed MD<br>Attn  Business Manager<br>326 Asbury Avenue, # 101<br>Ripley TN  38063-5577 | 6/25/2009 | Employment Agreement | $0.00 |
| Zaidi, Syed MD<br>Attn  Business Manager<br>326 Asbury Avenue, # 101<br>Ripley TN  38063-5577 | 10/31/2010 | Laboratory Service Agreement | $0.00 |

CAH Acquisition Company 12, LLC d/b/a Fairfax Community Hospital
(Case No. 11-44749)

| Counterparty | Start Date | Description | Cure Amount[42] |
|---|---|---|---|
| 3M<br>575 W Murray Blvd.<br>Murray UT  84123-4611 | 9/21/2010 | Software License & Service Agreement | $21,109.81[43] |
| Abbey Healthcare Staffing, Inc<br>816 S. Walnut<br>Stillwater, OK 74074 | 4/8/2008 | Clinical Service Agreements | $0.00 |
| Aetna<br>6120 South Yale Avenue, Suite 1225<br>Tulsa OK 74136 | | Insurance Agreements | $0.00 |
| Auto-Chlor System<br>PO Box 4869<br>Dept 205<br>Houston TX  77210-4869 | 2/1/2002 | Equipment Rental Agreement | $831.07 |
| Baron Healthcare<br>PO BOX 3249<br>New York, NY 10116 | 8/18/2011 | Staffing Agreement | $14,413.26 |
| Beckman Coulter, Inc<br>Dept CH 10164<br>Palatine IL  60055-0164 | 6/28/2007 | Equipment Rental Agreement | $22,026.15 |
| Blue Cross and Blue Shield of Kansas City<br>2300 Main Street<br>Kansas City, MO 64108 | 6/1/2011 | Employee Benefit Agreement | $0.00 |
| Blue Cross and Blue Shield of Oklahoma<br>1215 Boulder<br>PO Box 3283<br>Tulsa OK  74102-3283 | 6/1/2011 | Insurance Agreements | $0.00 |
| ChoiceCare Network<br>PO Box 19013<br>Green Bay, WI 54307 | 2/5/2008 | Insurance Agreements | $0.00 |
| Cim-Tel Cable, LLC<br>PO Box 248886<br>Oklahoma City  OK  73124-8886 | 4/27/2009 | Service Agreement | $455.39 |

---

[42] Unless otherwise noted, the cure amounts stated are as of June 1, 2012.

[43] Pursuant to agreement memorialized in the Confirmation Order and to be paid in 24 equal monthly installments beginning on the 28th day after the Effective Date.

| Counterparty | Start Date | Description | Cure Amount[42] |
|---|---|---|---|
| CPSI[44]<br>6600 Wall Street<br>Mobile AL  36685 | 3/1/2010 | Software License & Service Agreement | $38,162.55 (prepetition); $33,129.62 (postpetition) |
| Contemporary Concepts, Inc<br>PO Box 669084<br>Charlotte, NC 28266 | 4/24/2010 | Miscellaneous Contracts | $0.00 |
| Coventry<br>3030 NW Expressway, Suite 625<br>Oklahoma City OK 73112 | | Insurance Agreements | $0.00 |
| Diagnostic Imaging Associates, Inc<br>5840 S. Memorial, Suite 301<br>Tulsa OK 74145 | 8/1/2001 | Radiology Services Agreement | $12,815.00 |
| Enserve<br>6875 West Loop South<br>Bellaire, TX 77401 | 2/13/2005 | Stericycle Agreement | $0.00 |
| Fairfax Medical Facilities, Inc<br>212 N Main Street<br>Fairfax, OK | 12/12/2005 | Insurance Agreements | $0.00 |
| Farnum Street Financial, Inc.<br>240 Pondview Plaza<br>5850 Opus Parkway<br>Minnetonka MN  55343 | 6/1/2011 | Lease Agreement | $0.00 |
| Heart Institute of Tulsa, Inc<br>6972 E. 38th Street<br>Tulsa, OK 74145 | 12/27/2004 | Radiology Services Agreement | $0.00 |
| Heartland Pathology Consultants, PC<br>3509 French Park Drive, Suite D<br>Edmond, OK 74034 | 1/21/2005 | Physician : Contracted Services | $0.00 |
| Hillcrest Medical Center<br>1120 S UTICA AVE<br>Tulsa, OK 74104 | 1/1/2010 | Service Agreement | $751.24 |
| Hospice of North Central Oklahoma, Inc<br>1904 North Union - # 130<br>Ponca City OK  74601 | 9/1/2011 | Managed Care Agreement | $0.00 |

[44] The CPSI Cure Amounts will be paid in equal monthly installments over 12 months beginning on the 28th day after the Effective Date of the Plan.  To the extent that the Debtor terminates the relevant agreement between CPSI and such Debtor before the end of this 12-month period, the balance of the CPSI Cure Amount with respect to such Debtor shall be paid to CPSI upon termination.  The CPSI Cure Amount listed is as of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[42] |
|---|---|---|---|
| Hospital Equipment Rental Company<br>21900 EAST 96TH ST<br>Broken Arrow, OK 74014 | 9/27/2010 | Equipment Rental Agreement | $10,973.00 |
| Moore, Debbie MS RD LD | 4/1/2010 | Dietary Service Agreement | $0.00 |
| Preferred Community Choice<br>218 West 6th Street<br>Tulsa OK 74119 | | Insurance Agreements | $0.00 |
| Oklahoma Blood Institute<br>1001 N. Lincoln Blvd.<br>Oklahoma City, OK 73104 | 8/1/2009 | Blood Supply Agreement | $7112.50[45] |
| Oklahoma State and Education Employees Group Insurance Board | 4/1/2008 | Insurance Agreements | $0.00 |
| Osage County Health Department<br>539 Leahy # 103<br>Pawhuska OK 74056 | 7/1/2011 | Service Agreement | $0.00 |
| Shared Medical Services<br>PO Box 330<br>Cottage Grove, WI 53527-0330 | 7/13/2010 | Medical Equipment | $11,550.00 |
| Sojourn Care, Inc<br>7975 N. Hayden Rd, Suite A-208<br>Scottsdale, AZ 85258 | 1/15/2008 | Insurance Agreements | $0.00 |
| Sterling Life Insurance Company<br>2219 Rimland Drive<br>Bellingham WA 98226 | 12/21/2009 | Insurance Agreements | $0.00 |
| United Healthcare<br>7666 East 61st Street, Suite 500<br>Tulsa OK 74133 | | Insurance Agreements | $0.00 |
| United Linen Uniform Services<br>400 West Frank Phillips<br>Bartlesville, OK 74005 | 4/1/2011 | Hospital Supply Agreement | $4,919.27 |
| Vision Services Plan, Inc, Oklahoma<br>PO Box 60000<br>San Francisco CA 94160-3077 | 2/1/2010 | Insurance Agreements | $0.00 |

---

[45] As of November 1, 2012.

CAH Acquisition Company 16, LLC d/b/a Haskell County Community Hospital
(Case No. 11-44750)

| Counterparty | Start Date | Description | Cure Amount[46] |
|---|---|---|---|
| Aetna<br>6120 South Yale Avenue, Suite 1225<br>Tulsa OK 74136 | | Insurance Agreements | $0.00 |
| AirgasMidWest<br>PO Box 676015<br>Dallas TX 75267-6015 | 3/23/2011 | Service Agreement | $18,510.98 |
| Baytree Leasing<br>1000 Tri-State International, Suite 240<br>Lincolnshire, IL 60069 | 11/26/2007 | Sysmex Equipment | $8,007[47] |
| Blue Cross and Blue Shield of Kansas City<br>2300 Main Street<br>Kansas City, MO 64108 | 6/1/2011 | Employee Benefit Agreement | $0.00 |
| ChoiceCare/Humana<br>7104 South Sheridan, Suite 10A<br>Tulsa OK 74113 | | Insurance Agreements | $0.00 |
| Commercial Medical Electronics, Inc<br>355 Goodpasture Island Road, # 100<br>Eugene OR 97401 | 5/13/2010 | Equipment Rental Agreement | $31,930.00 |
| Coventry<br>3030 NW Expressway, Suite 625<br>Oklahoma City OK 73112 | | Insurance Agreements | $0.00 |
| CPSI[48]<br>6600 Wall Street<br>Mobile AL 36685 | 3/1/2010 | Software License & Service Agreement | $30,882.12 (prepetition); $24,610.94 (postpetition) |
| Ecolab<br>PO Box 70343<br>Chicago IL 60673 | 9/22/2010 | Laboratory Service Agreement | $837.12 |
| Farnum Street Financial, Inc.<br>240 Pondview Plaza<br>5850 Opus Parkway | 6/1/2011 | Lease Agreement | $0.00 |

---

[46] Unless otherwise noted, the cure amounts stated are as of June 1, 2012.

[47] As of November 1, 2012.

[48] The CPSI Cure Amounts will be paid in equal monthly installments over 12 months beginning on the 28th day after the Effective Date of the Plan.  To the extent that the Debtor terminates the relevant agreement between CPSI and such Debtor before the end of this 12-month period, the balance of the CPSI Cure Amount with respect to such Debtor shall be paid to CPSI upon termination.  The CPSI Cure Amount listed is as of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[46] |
|---|---|---|---|
| Minnetonka MN  55343 | | | |
| Khan, Faisal MD<br>607 N Broadway<br>Tulsa OK  74145 | 8/31/2011 | Physician Services Agreement | $0.00 |
| Mark McCurry MD<br>503 NW H Street<br>Stigler, OK 74462 | 1/1/2011 | Physician Employment Agreement | $0.00 |
| Merry X-Ray Corp<br>3685 S 73rd East Ave<br>Tulsa OK  74145 | 6/30/2011 | Radiology Services Agreement | $0.00 |
| Oklahoma State Education and Employees Group Insurance Board<br>3545 NW 58th Street, Suite 110<br>Oklahoma City OK 73112 | | Insurance Agreements | $0.00 |
| Philips Respironics<br>801 Presque Isle Dr<br>Pittsburgh PA  15239 | 10/4/2011 | Medical Equipment Agreement | $0.00 |
| Physical Therapy, Inc.<br>1932 N. Broadway<br>Poteau, OK 74953 | 8/26/2010 | Physical Therapy Services Agreement | $4,800.00 |
| Shared Medical Services, Inc<br>209 Limestone Pass<br>Cottage Grove WI  53527 | 9/24/2010 | Service Agreement | $48,195.00 |
| Siemens Medical Solutions USA, Inc.<br>186 West Avenue South<br>Iselin NJ  08830 | 2/18/2008 | Equipment Rental Agreement | $97,776.07 [49] |
| Southwest Fire Protection, Inc.<br>PO Box 879<br>Catoosa OK  74015 | 7/14/2011 | Facility Service Agreement | $0.00 |
| Sparks PremierCare<br>1001 Towson Avenue<br>PO Box 2406<br>Fort Smith AR 72902 | | Insurance Agreements | $0.00 |
| Stericycle<br>PO BOX 9001588<br>Louisville, KY  40290 | 2/1/2007 | Waste Service Agreement | $3,429.07 |

[49] As of November 1, 2012.

| Counterparty | Start Date | Description | Cure Amount[46] |
|---|---|---|---|
| Thomas Conklin, MD<br>109 West Main Street<br>Stigler, OK 74462 | 1/1/2011 | Physician Employment Agreement | $0.00 |
| United Anesthesia<br>PO Box 1847<br>Kernersville NC  27285 | 10/7/2011 | Medical Services | $120.00 |
| United Healthcare<br>7666 East 61st Street, Suite 500<br>Tulsa OK 74133 | | Insurance Agreements | $0.00 |

## CMS Medicare Provider Agreements

The Debtors provide Medicare and Medicaid services through agreements or arrangements with the Centers for Medicare & Medicaid Services and the U.S. Department of Health and Human Services ("HHS").  To the extent that such agreements would be deemed to be executory contracts, the Debtors hereby indicate their intention to assume any and all such agreements pursuant to the Joint Plan (including, without limitation, any and all agreements with CMS' Medicare "intermediaries").  To the extent that any cure would be required to assume such agreements, such cure will paid pursuant to the HHS Overpayment Secured Claims in the appropriate Debtors' bankruptcy cases without prejudice to HHS' rights to conduct appropriate audits as described more fully in the Joint Plan and the Disclosure Statement with respect thereto.   The Chart below lists the Debtors and the applicable National Provider Identifier ("NPI") Number pursuant to which the Debtors provide these services.

| Hospital | National Provider Identifier Number |
|---|---|
| CAH Acquisition Company #1, LLC<br>Washington County Hospital<br>PO Box 707<br>958 US Highway 64 East<br>Plymouth NC 27962 | NPI#:1124018494 |
| CAH Acquisition Company#2, LLC<br>Oswego Community Hospital<br>800 Barker Drive<br>Oswego KS 67356 | NPI#:1215992656 |
| CAH Acquisition Company #3, LLC<br>Horton Community Hospital<br>240 W 18th Street<br>Horton, KS  66439 | NPI#:1518141373 |
| CAH Acquisition Company #4, Inc.<br>Drumright Regional Hospital<br>610 West Bypass<br>Drumright, OK 74030 | NPI#:1396988903 |
| CAH Acquisition Company #5, LLC<br>Hillsboro Community Hospital<br>701 South Main Street<br>Hillsboro, KS  67063 | NPI#: 1801043906 |
| CAH Acquisition Company 6, LLC<br>I-70 Community Hospital<br>105 Hospital Drive | NPI#:1184864779 |

| | |
|---|---|
| Sweet Springs, MO 65351 | |
| CAH Acquisition Company 7, LLC<br>Prague Community Hospital<br>1322 Klabzuba Avenue<br>Prague**,** OK 74864 | NPI#:1750527768 |
| CAH Acquisition Company 9, LLC<br>Seiling Community Hospital<br>Hwy 60 NE<br>Seiling, OK 73663 | NPI#:1598993453 |
| CAH Acquisition Company 10, LLC<br>Yadkin Valley Community Hospital<br>624 W. Main St<br>Yadkinville, NC 27055 | NPI#:1003134883 |
| CAH Acquisition Company 11, LLC<br>Lauderdale Community Hospital<br>326 Asbury Drive<br>Ripley TN 38063 | NPI#:1932421401 |
| CAH Acquisition Company 12, LLC<br>Fairfax Community Hospital<br>Taft Avenue and Highway 18<br>Fairfax, OK 74637<br>918-642-3291 | NPI#:1376554006 |
| CAH Acquisition Company 16, LLC<br>Haskell County Community Hospital<br>401 NW H Street<br>Stigler, OK 74462 | NPI#:1922329853 |

<u>Schedule 11.13</u>

CFG Subordination Agreement

## SUBORDINATION AGREEMENT

**THIS SUBORDINATION AGREEMENT** (this "Agreement") is entered into as of this 31st day of March, 2010, by and among HPCG HOSPITAL INVESTMENT, L.L.C. ("Subordinated Lender"), CAH ACQUISITION COMPANY 11, LLC ("Company"), and CFG COMMUNITY BANK, or such then present holder or holders of the Senior Loan (as hereinafter defined) as may from time to time exist ("Senior Lender").

### RECITALS

**A.**    Company and Senior Lender have entered into a Loan Agreement of even date herewith (as the same may be amended, supplemented or otherwise modified from time to time, the "Senior Loan Agreement") pursuant to which, among other things, Senior Lender has agreed, subject to the terms and conditions set forth in the Senior Loan Agreement, to make certain loans and financial accommodations to Company. All of Company's obligations to Senior Lender under the Senior Loan Agreement and the other Senior Loan Documents (as hereinafter defined) are secured by liens on and security interests in substantially all of the now existing and hereafter acquired personal property of Company (all collateral, real and personal, now or hereafter encumbered by the lien of any Senior Loan Document is herein referred to collectively as the "Collateral").

**B.**    The parties comprising Subordinated Lender are (1) shareholders, officers, directors, members, partners or other parties, directly or indirectly, interested in Company, (2) entities under full or partial common ownership with Company, or (3) otherwise affiliated with Company. Subordinated Lender has extended to Company, or may in the future extend to Company, loans and other financial accommodations or Company may become obligated to the Subordinated Lender for the payment of money.

**C.**    As an inducement to and as one of the conditions precedent to the agreement of Senior Lender to consummate the transactions contemplated by the Senior Loan Agreement, Senior Lender has required the execution and delivery of this Agreement by Subordinated Lender and Company in order to set forth the relative rights and priorities of Senior Lender and Subordinated Lender under the Senior Loan Documents and the Subordinated Loan Documents (as hereinafter defined).

**NOW, THEREFORE,** in order to induce Senior Lender to consummate the transactions contemplated by the Senior Loan Agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto hereby covenant and agree as follows:

1.    _Definitions_. The following terms shall have the following meanings in this Agreement:

"**Bankruptcy Code**" shall mean Chapter 11 of Title 11 of the United States Code, as amended from time to time, and any successor statute and all rules and regulations promulgated thereunder.

"**Distribution**" means, with respect to any indebtedness, (a) any payment or distribution by any Person of cash, securities or other property, by set-off or otherwise, on account of such indebtedness or obligation, (b) any redemption, purchase or other acquisition of such indebtedness or obligation by any Person, or (c) the granting of any lien or security interest to or for the benefit of the holders of such indebtedness or obligation in or upon any property of any Person.

"**Enforcement Action**" shall mean (a) to take from or for the account of Company or any guarantor of the Subordinated Loan, by set-off or in any other manner, the whole or any part of any moneys which may now or hereafter be owing by Company or any such guarantor with respect to the Subordinated Loan; (b) to sue for payment of, or to initiate or participate with others in any suit, action or proceeding against Company or any such guarantor to (i) enforce payment of or to collect the whole or any part of the Subordinated Loan, or (ii) commence judicial enforcement of any of the rights and remedies under the Subordinated Loan Documents or applicable law with respect to the Subordinated Loan; (c) to accelerate the Subordinated Loan; (d) to exercise any put option or to cause Company or any such guarantor to honor any redemption or mandatory prepayment obligation under any Subordinated Loan Document; (e) to notify account debtors or directly collect accounts receivable or other payment rights of Company or any such guarantor; or (f) take any action under the provisions of any state or federal law, including, without limitation, the Uniform Commercial Code, or under any contract or agreement, to enforce, foreclose upon, take possession of or sell any property or assets of Company or any such guarantor including the Collateral.

"**Permitted Subordinated Loan Payments**" means payments of regularly scheduled payments of interest payments under the Subordinated Loan, due and payable on a non-accelerated basis in accordance with the terms of Subordinated Loan Documents, but only if (a) true and correct copies of such Subordinated Loan Documents have been delivered to Lender, and (b) Lender has previously approved in writing (which approval may be given or withheld in Lender's sole and absolute discretion) the Permitted Subordinated Loan Payments provided for under such Subordinated Loan Documents.

"**Person**" means any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other entity, whether acting in an individual, fiduciary or other capacity.

"**Proceeding**" shall mean any voluntary or involuntary insolvency, bankruptcy, receivership, custodianship, liquidation, dissolution, reorganization, assignment for the benefit of creditors, appointment of a custodian, receiver, trustee or other officer with similar powers or any other proceeding for the liquidation, dissolution or other winding up of a Person.

"**Senior Loan**" shall mean all obligations, liabilities and indebtedness of every nature of Company from time to time owed to Senior Lender under the Senior Loan Documents or otherwise, whether now existing or hereafter created, including, without limitation, the principal amount of all debts, claims and indebtedness, accrued and unpaid interest and all fees, costs and expenses, whether primary, secondary, direct, contingent, fixed or otherwise, heretofore, now and from time to time hereafter owing, due or payable, whether before or after the filing of a Proceeding under the Bankruptcy Code, together with (a) any amendments, modifications, renewals or extensions thereof, and (b) any interest accruing thereon after the commencement of a Proceeding, without regard to whether or not such interest is an allowed claim.

"**Senior Loan Documents**" shall mean the promissory note or other instruments evidencing the Senior Loan or the obligation to pay the Senior Loan, any guaranty with respect to the Senior Loan, any security agreement or other collateral document securing the Senior Loan (including, without limitation, the Senior Loan Agreement) and all other documents, agreements and instruments now existing or hereafter entered into evidencing or pertaining to all or any portion of the Senior Loan.

"**Subordinated Loan**" shall mean all obligations, liabilities and indebtedness of every nature of Company from time to time owed to Subordinated Lender, whether now existing or hereafter created, including, without limitation, the amount of consulting fees and all debts, claims (including, without limitation, indemnification rights arising out of that certain Master Funding Agreement and

CH3 1171531.1

Amended and Restated Credit Agreement dated as of August 13, 2009 and indebtedness, accrued and unpaid interest and all fees, costs and expenses, whether primary, secondary, direct, contingent, fixed or otherwise, heretofore, now and from time to time hereafter owing, due or payable, whether before or after the filing of a Proceeding under the Bankruptcy Code together with any amendments, modifications, renewals or extensions thereof.

"**Subordinated Loan Documents**" shall mean any agreement, promissory note, lease or other instrument evidencing the Subordinated Loan or the obligation to pay the Subordinated Loan, any guaranty with respect to the Subordinated Loan, any security agreement or other collateral document securing the Subordinated Loan and all other documents, agreements and instruments now existing or hereafter entered into evidencing or pertaining to all or any portion of the Subordinated Loan.

2.   **Subordination.**

2.1.   **Subordination of Subordinated Loan to Senior Loan.**  Company covenants and agrees, and Subordinated Lender likewise covenants and agrees, notwithstanding anything to the contrary contained in any of the Subordinated Loan Documents, that the payment of any and all of the Subordinated Loan shall be subordinate and subject in right and time of payment, to the extent and in the manner hereinafter set forth, to the prior indefeasible payment in full in cash of all Senior Loan. Each holder of the Senior Loan, whether now outstanding or hereafter created, incurred, assumed or guaranteed, shall be deemed to have acquired the Senior Loan in reliance upon the provisions contained in this Agreement. Except as otherwise permitted under subsection 2.2 below, all of the Senior Loan shall first be indefeasibly paid in full in cash and all commitments to lend under the Senior Loan Documents shall be terminated before any Distribution, whether in cash, securities or other property, shall be made to Subordinated Lender on account of any Subordinated Loan.

2.2.   **Subordinated Debt Payment Restrictions.**  Notwithstanding the provisions of subsection 2.1 hereinabove, Permitted Subordinated Debt Payments may be made by the Company or accepted by Subordinated Lender, but only if, at the time of such payment, no default exists under the Senior Debt Documents and no default thereunder will be created by reason of such payment.

2.3.   **Subordinated Loan Standstill Provisions.**  Until the Senior Loan is indefeasibly paid in full in cash and all commitments to lend under the Senior Loan Documents shall be terminated, Subordinated Lender shall not, without the prior written consent of Senior Lender, take any Enforcement Action with respect to the Subordinated Loan.

2.4.   **Incorrect Payments.**  If any Distribution on account of the Subordinated Loan not permitted to be made by Company or accepted by Subordinated Lender under this Agreement is made and received by Subordinated Lender, such Distribution shall not be commingled with any of the assets of Subordinated Lender, shall be held in trust by Subordinated Lender for the benefit of Senior Lender and shall be promptly paid over to Senior Lender for application in accordance with the Senior Loan Documents to the payment of the Senior Loan then remaining unpaid, until all of the Senior Loan is paid in full.

2.5.   **Subordination of Liens and Security Interests; Agreement Not to Contest; Agreement to Release Liens.**  Subordinated Lender acknowledges that the Subordinated Loan is unsecured with respect to the Borrower. Subordinated Lender further agrees not to file any liens or security interest to secure the Subordination Loan. Until the Senior Loan has been indefeasibly paid in full in cash and all lending commitments under the Senior Loan Documents have terminated, all liens and security interests of Subordinated Lender in the Collateral, if any, shall be and hereby are subordinated for all purposes and in all respects to the liens and security interests of Senior Lender in the Collateral,

CH3 1171531.1

regardless of the time, manner or order of perfection of any such liens and security interests and regardless of any failure, whether intervening or continuing, of Senior Lender's liens to be perfected liens. Subordinated Lender agrees that it will not at any time contest the validity, perfection, priority or enforceability of the Senior Loan, the Senior Loan Documents, or the liens and security interests of Senior Lender in the Collateral securing the Senior Loan. In the event that Senior Lender releases or agrees to release any of its liens or security interests in the Collateral in connection with the sale or other disposition thereof or any of the Collateral is sold or retained pursuant to a foreclosure or similar action, Subordinated Lender shall (or shall cause its agent) to promptly execute and deliver to Senior Lender such termination statements and releases as Senior Lender shall reasonably request to effect the release of the liens and security interests of Subordinated Lender in such Collateral. In furtherance of the foregoing, Subordinated Lender hereby irrevocably appoints Senior Lender its attorney-in-fact, with full authority in the place and stead of Subordinated Lender and in the name of Subordinated Lender or otherwise, to execute and deliver any document or instrument which Subordinated Lender may be required to deliver pursuant to this subsection 2.5.

2.6.    **Application of Proceeds from Sale or other Disposition of the Collateral**. In the event of any sale, transfer or other disposition (including a casualty loss or taking through eminent domain) of the Collateral, the proceeds resulting therefrom (including insurance proceeds) shall be applied in accordance with the terms of the Senior Loan Documents or as otherwise consented to by Senior Lender until such time as the Senior Loan is indefeasibly paid in full in cash and all commitments to lend under the Senior Loan Documents have been terminated.

2.7.    **Sale, Transfer or other Disposition of Subordinated Loan**. Subordinated Lender shall not sell, assign, pledge, dispose of or otherwise transfer all or any portion of the Subordinated Loan or any Subordinated Loan Document without the prior written consent of Senior Lender.

2.8.    **Legends**. Until the termination of this Agreement in accordance with Section 12 hereof, Subordinated Lender will cause to be clearly, conspicuously and prominently inserted on the face of each Subordinated Loan Document, a legend, in form acceptable to Senior Lender, stating that the Subordinated Loan Document is subject to the terms of this Agreement.

2.9.    **Liquidation, Dissolution, Bankruptcy**.   In the event of any Proceeding involving Company:

(a)    Any Distribution, whether in cash, securities or other property which would otherwise, but for the terms hereof, be payable or deliverable in respect of the Subordinated Loan shall be paid or delivered directly to Senior Lender (to be held and/or applied by Senior Lender in accordance with the terms of the Senior Loan Documents) until all of the Senior Loan is indefeasibly paid in full in cash and all commitments to lend under the Senior Loan Documents shall have been terminated. Subordinated Lender irrevocably authorizes, empowers and directs any debtor, debtor in possession, receiver, trustee, liquidator, custodian, conservator or other Person having authority, to pay or otherwise deliver all such Distributions to Senior Lender. Subordinated Lender also irrevocably authorizes and empowers Senior Lender, in the name of Subordinated Lender, to demand, sue for, collect and receive any and all such Distributions.

(b)    Subordinated Lender agrees that Senior Lender may consent to the use of cash collateral or provide financing to Company on such terms and conditions and in such amounts as Senior Lender, in its sole discretion, may decide and, in connection therewith, Company may grant to Senior Lender liens and security interests upon all of the property of Company, which liens and security interests (i) shall secure payment of the Senior Loan (whether such Senior Loan arose prior to the

-4-

commencement of any Proceeding or at any time thereafter) and all other financing provided by Senior Lender during the Proceeding, and (ii) shall be superior in priority to the liens and security interests, if any, in favor of Subordinated Lender on the property of Company. Subordinated Lender agrees that it will not object to or oppose a sale or other disposition of any property securing all of any part of the Senior Loan free and clear of security interests, liens or other claims of Subordinated Lender under Section 363 of the Bankruptcy Code or any other provision of the Bankruptcy Code if Senior Lender has consented to such sale or disposition. Subordinated Lender agrees not to assert any right it may have to "adequate protection" of Subordinated Lender's interest in any Collateral in any Proceeding and agrees that it will not seek to have the automatic stay lifted with respect to any Collateral without the prior written consent of Senior Lender. Subordinated Lender waives any claim it may now or hereafter have arising out of Senior Lender's election, in any Proceeding instituted under the Bankruptcy Code, of the application of Section 1111(b)(2) of the Bankruptcy Code, and/or any borrowing or grant of a security interest under Section 364 of the Bankruptcy Code by Borrower, as debtor in possession. Subordinated Lender further agrees that it will not seek to participate or participate on any creditor's committee without Senior Lender's prior written consent.

(c)       Subordinated Lender agrees to execute, verify, deliver and file any proofs of claim in respect of the Subordinated Loan requested by Senior Lender in connection with any such Proceeding and hereby irrevocably authorizes, empowers and appoints Senior Lender its agent and attorney-in-fact to (i) execute, verify, deliver and file such proofs of claim upon the failure of Subordinated Lender promptly to do so prior to thirty (30) days before the expiration of the time to file any such proof of claim, and (ii) vote such claim in any such Proceeding upon the failure of Subordinated Lender to do so prior to fifteen (15) days before the expiration of the time to vote any such claim; *provided, however,* that Senior Lender shall have no obligation to execute, verify, deliver, file and/or vote any such proof of claim. In the event that Senior Lender votes any claim in accordance with the authority granted hereby, Subordinated Lender shall not be entitled to change or withdraw such vote. Subordinated Lender hereby assigns to Senior Lender or its nominee (and will, upon request of Senior Lender, reconfirm in writing the assignment to Senior Lender or its nominee of) all rights of Subordinated Lender under such claims.

(d)       The Senior Loan shall continue to be treated as the Senior Loan and the provisions of this Agreement shall continue to govern the relative rights and priorities of Senior Lender and Subordinated Lender even if all or part of the Senior Loan or the security interests securing the Senior Loan are subordinated, set aside, avoided, invalidated or disallowed in connection with any such Proceeding, and this Agreement shall be reinstated if at any time any payment of any of the Senior Loan is rescinded or must otherwise be returned by any holder of the Senior Loan or any representative of such holder.

3.    **Modifications.**

3.1.    **Modifications to Senior Loan Documents.** Senior Lender may at any time and from time to time without the consent of or notice to Subordinated Lender, without incurring liability to Subordinated Lender and without impairing or releasing the obligations of Subordinated Lender under this Agreement, change the manner or place of payment or extend the time of payment of or renew or alter any of the terms of the Senior Loan, or amend in any manner any agreement, note, guaranty or other instrument evidencing or securing or otherwise relating to the Senior Loan.

3.2.    **Modifications to Subordinated Loan Documents.** Until the Senior Loan has been indefeasibly paid in full in cash and all lending commitments under the Senior Loan Documents have terminated, and notwithstanding anything to the contrary contained in the Subordinated Loan Documents, Subordinated Lender shall not, without the prior written consent of Senior Lender, agree to

-5-

any amendment, modification or supplement to the Subordinated Loan Documents. Nothing herein, including the provisions of this Agreement pertaining to subordination of liens on the Collateral, shall be construed to imply Senior Lender's consent to any Subordinated Loan Document which grants a lien upon any of the Collateral.

4.    **Waiver of Certain Rights by Subordinated Lender.**

4.1.    **Marshaling.** Subordinated Lender hereby waives any rights it may have under applicable law to assert the doctrine of marshaling or to otherwise require Senior Lender to marshal any property of the Company or any guarantor of the Senior Loan for the benefit of Subordinated Lender.

4.2.    **Rights Relating to Senior Lender's Actions with respect to the Collateral.** Subordinated Lender hereby waives, to the extent permitted by applicable law, any rights which it may have to enjoin or otherwise obtain a judicial or administrative order preventing Senior Lender from taking, or refraining from taking, any action with respect to all or any part of the Collateral. Without limitation of the foregoing, Subordinated Lender hereby agrees (a) that it has no right to direct or object to the manner in which Senior Lender applies the proceeds of the Collateral resulting from the exercise by Senior Lender of rights and remedies under the Senior Loan Documents to the Senior Loan, and (b) that Senior Lender has not assumed any obligation to act as the agent for Subordinated Lender with respect to the Collateral.

4.3.    **Rights Relating to Disclosures.** Subordinated Lender hereby agrees that Senior Lender has not assumed any obligation or duty to disclose information regarding Company or the Senior Loan to Subordinated Lender, and Senior Lender shall have no special or fiduciary relationship to Subordinated Lender. Subordinated Lender hereby fully waives and releases Senior Lender from any affirmative disclosures which may be required of Senior Lender under applicable law.

5.    **Construction.** The terms of this Agreement were negotiated among business persons sophisticated in the area of business finance, and accordingly, in construing the terms of this Agreement, no rule or law which would require that this instrument be construed against the party who drafted this instrument shall be given any force or effect.

6.    **Modification.** Any modification or waiver of any provision of this Agreement, or any consent to any departure by any party from the terms hereof, shall not be effective in any event unless the same is in writing and signed by Senior Lender and Subordinated Lender, and then such modification, waiver or consent shall be effective only in the specific instance and for the specific purpose given. Any notice to or demand on any party hereto in any event not specifically required hereunder shall not entitle the party receiving such notice or demand to any other or further notice or demand in the same, similar or other circumstances unless specifically required hereunder.

7.    **Additional Subordinated Lenders; Further Assurances.** To the extent requested by Lender, Subordinated Lender and Company shall cause each shareholder, director, officer, member or partner in Company to join in and execute this Agreement as a Subordinated Lender. Each party to this Agreement promptly will execute and deliver such further instruments and agreements and do such further acts and things as may be reasonably requested in writing by any other party hereto that may be necessary or desirable in order to effect fully the purposes of this Agreement.

8.    **Notices.** Any notice or other communication required or permitted under this Agreement shall be in writing and personally delivered, mailed by registered or certified mail (return receipt requested and postage prepaid), sent by telecopier (with a confirming copy sent by regular mail), or sent by prepaid overnight courier service, and addressed to the relevant party at its address set forth below, or

at such other address as such party may, by written notice, designate as its address for purposes of notice under this Agreement:

    (a)    <u>If to Senior Lender, at:</u>

        CFG Community Bank
        1422 Clarkview Road
        Baltimore, Maryland  21209
        Attention: Ellen R. Fish, Executive Vice President
        Telephone:  (410) 769-5801
        Facsimile:  (410) 769-5802

    (b)    <u>If to Company, at:</u>

        CAH Acquisition Company 11, LLC
        1100 Main Street
        Suite 2350
        Kansas City, Missouri 64105
        Attention:
        Telephone:
        Facsimile:

    (c)    <u>If to Subordinated Lender, at:</u>

        HPCG Hospital Investment, L.L.C.
        11546 F. Ranch Gate Road
        Scottsdale, Arizona  85255
        Attention:
        Telephone:
        Facsimile:

If mailed, notice shall be deemed to be given five (5) days after being sent, and if sent by personal delivery, telecopier or prepaid courier, notice shall be deemed to be given when delivered.

        **9.**    <u>**Successors and Assigns**</u>. This Agreement shall inure to the benefit of, and shall be binding upon, the respective successors and assigns of Senior Lender, Subordinated Lender and the Company. Senior Lender may, from time to time, without notice to Subordinated Lender, assign or transfer any or all of the Senior Loan or any interest therein to any Person and, notwithstanding any such assignment or transfer, or any subsequent assignment or transfer, the Senior Loan shall, subject to the terms hereof, be and remain the Senior Loan for purposes of this Agreement, and every permitted assignee or transferee of any of the Senior Loan or of any interest therein shall, to the extent of the interest of such permitted assignee or transferee in the Senior Loan, be entitled to rely upon and be the third party beneficiary of the subordination provided under this Agreement and shall be entitled to enforce the terms and provisions hereof to the same extent as if such assignee or transferee were initially a party hereto.

        **10.**    <u>**Relative Rights**</u>. This Agreement shall define the relative rights of Senior Lender and Subordinated Lender. Nothing in this Agreement shall (a) impair, as between Company and Senior Lender, the obligation of Company with respect to the payment of the Senior Loan and the Subordinated Loan in accordance with their respective terms, or (b) affect the relative rights of Senior Lender or Subordinated Lender with respect to any other creditors of Company.

-7-

11.     <u>Miscellaneous</u>.  In the event of any conflict between any term, covenant or condition of this Agreement and any term, covenant or condition of any of the Subordinated Loan Documents, the provisions of this Agreement shall control and govern.  The paragraph headings used in this Agreement are for convenience only and shall not affect the interpretation of any of the provisions hereof.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument, but in making proof hereof, it shall only be necessary to produce one such counterpart containing signatures pages signed by each party.  In the event that any provision of this Agreement is deemed to be invalid, illegal or unenforceable by reason of the operation of any law or by reason of the interpretation placed thereon by any court or governmental authority, the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby, and the affected provision shall be modified to the minimum extent permitted by law so as most fully to achieve the intention of this Agreement.  This Agreement shall be governed by and shall be construed and enforced in accordance with the internal laws of the State of Maryland, without regard to conflicts of law principles.

12.     <u>Continuation of Subordination; Termination of Agreement</u>.  This Agreement shall remain in full force and effect until the indefeasible payment in full in cash of the Senior Loan and the termination of all lending commitments under the Senior Loan Documents after which this Agreement shall terminate without further action on the part of the parties hereto.

13.     <u>CONSENT TO JURISDICTION</u>.  EACH OF SUBORDINATED LENDER AND COMPANY HEREBY CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED WITHIN THE STATE OF MARYLAND AND IRREVOCABLY AGREES THAT, SUBJECT TO SENIOR LENDER'S ELECTION, ALL ACTIONS OR PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT SHALL BE LITIGATED IN SUCH COURTS.  EACH OF SUBORDINATED LENDER AND COMPANY EXPRESSLY SUBMITS AND CONSENTS TO THE JURISDICTION OF THE AFORESAID COURTS AND WAIVES ANY DEFENSE OF FORUM NON CONVENIENS.  EACH OF SUBORDINATED LENDER AND COMPANY HEREBY WAIVES PERSONAL SERVICE OF ANY AND ALL PROCESS AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE UPON IT BY CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO SUBORDINATED LENDER AND COMPANY AT THEIR RESPECTIVE ADDRESSES SET FORTH IN THIS AGREEMENT AND SERVICE SO MADE SHALL BE COMPLETE TEN (10) DAYS AFTER THE SAME HAS BEEN POSTED.  IN ANY LITIGATION, TRIAL, ARBITRATION OR OTHER DISPUTE RESOLUTION PROCEEDING RELATING TO THIS AGREEMENT, ALL DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS OF SUBORDINATED LENDER, COMPANY OR ANY OF THEIR RESPECTIVE AFFILIATES SHALL BE DEEMED TO BE EMPLOYEES OR MANAGING AGENTS OF SUBORDINATED LENDER OR COMPANY, AS APPLICABLE, FOR PURPOSES OF ALL APPLICABLE LAW OR COURT RULES REGARDING THE PRODUCTION OF WITNESSES BY NOTICE FOR TESTIMONY (WHETHER IN A DEPOSITION, AT TRIAL OR OTHERWISE).  EACH OF SUBORDINATED LENDER AND COMPANY AGREES THAT SENIOR LENDER'S COUNSEL IN ANY SUCH DISPUTE RESOLUTION PROCEEDING MAY EXAMINE ANY OF THESE INDIVIDUALS AS IF UNDER CROSS-EXAMINATION AND THAT ANY DISCOVERY DEPOSITION OF ANY OF THEM MAY BE USED IN THAT PROCEEDING AS IF IT WERE AN EVIDENCE DEPOSITION.  EACH OF SUBORDINATED LENDER AND COMPANY IN ANY EVENT WILL USE ALL COMMERCIALLY REASONABLE EFFORTS TO PRODUCE IN ANY SUCH DISPUTE RESOLUTION PROCEEDING, AT THE TIME AND IN THE MANNER REQUESTED BY ANY LENDER, ALL PERSONS, DOCUMENTS (WHETHER IN TANGIBLE, ELECTRONIC OR OTHER FORM) OR OTHER THINGS UNDER ITS CONTROL AND RELATING TO THE DISPUTE.

CH3 1171531.1

      14.      WAIVER OF JURY TRIAL.  SUBORDINATED LENDER, COMPANY AND SENIOR LENDER HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, ANY OF THE SUBORDINATED LOAN DOCUMENTS OR ANY OF THE SENIOR LOAN DOCUMENTS.  EACH OF SUBORDINATED LENDER, COMPANY AND SENIOR LENDER ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH HAS RELIED ON THE WAIVER IN ENTERING INTO THIS AGREEMENT AND THE SENIOR LOAN DOCUMENTS AND THAT EACH WILL CONTINUE TO RELY ON THE WAIVER IN THEIR RELATED FUTURE DEALINGS.  EACH OF SUBORDINATED LENDER, COMPANY AND SENIOR LENDER WARRANTS AND REPRESENTS THAT EACH HAS HAD THE OPPORTUNITY OF REVIEWING THIS JURY WAIVER WITH LEGAL COUNSEL, AND THAT EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

CH3 1171531.1

IN WITNESS WHEREOF, intending to be legally bound, and intending that this Agreement constitute an instrument executed and delivered under seal, the parties have caused this Agreement to be executed under seal as of the date first written above.

SENIOR LENDER:

CFG COMMUNITY BANK

By: _____
Name:   Ellen R. Fish
Title:    Executive Vice President


SUBORDINATED LENDER:

HPCG HOSPITAL INVESTMENT, L.L.C.


By: _____
Name: _____
Title: _____


COMPANY:

CAH ACQUISITION COMPANY 11, LLC


By: _____
Name: _____
Title: _____

CH3 1171531.1

**IN WITNESS WHEREOF**, intending to be legally bound, and intending that this Agreement constitute an instrument executed and delivered under seal, the parties have caused this Agreement to be executed under seal as of the date first written above.

<u>SENIOR LENDER:</u>

**CFG COMMUNITY BANK**

By: _____

Name:  Ellen R. Fish

Title:    Executive Vice President

<u>SUBORDINATED LENDER:</u>

**HPCG HOSPITAL INVESTMENT, L.L.C.**
HIGH POINT CAPITAL GROUP LLC.

By: _____

Name:  DAVID BARBOUR

Title:  ITS Sole Member

<u>COMPANY:</u>

**CAH ACQUISITION COMPANY 11, LLC**

By: _____

Name: _____

Title: _____

-10-

**IN WITNESS WHEREOF,** intending to be legally bound, and intending that this Agreement constitute an instrument executed and delivered under seal, the parties have caused this Agreement to be executed under seal as of the date first written above.

**SENIOR LENDER:**

**CFG COMMUNITY BANK**

By: _____
Name:  Ellen R. Fish
Title:   Executive Vice President

**SUBORDINATED LENDER:**

**HPCG HOSPITAL INVESTMENT, L.L.C.**

By: _____
Name: _____
Title: _____

**COMPANY:**

**CAH ACQUISITION COMPANY 11, LLC**

By: _____
Name: _Lawrence J. Arthur_
Title: _President / CEO_

-10-